UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

MARK FIELDS,

                        Petitioner,

        -against-

WILLIAM A. LEE, Superintendent,
Green Haven Correctional Facility,

                      Respondent.

------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

12 Civ. 4878 (CS)(JCM)

To the Honorable Cathy Seibel, United States District Judge:

       Petitioner Mark Fields ("Petitioner"), proceeding *pro se*, filed a writ of habeas corpus pursuant to 28 U.S.C. § 2254 by papers dated June 14, 2012. (Docket No. 2).  By affidavit and memorandum of law dated November 2, 2012, Respondent William A. Lee, Superintendent, Green Haven Correctional Facility ("Respondent") opposed the petition. (Docket Nos. 11, 12). Petitioner submitted a reply by papers filed December 26, 2012. (Docket No. 16).  For the reasons set forth below, it is respectfully recommended that Petitioner's petition for a writ of habeas corpus be denied.

## I. BACKGROUND

### A. Crime

       On October 18, 1998, Petitioner unlawfully entered the Glen Island Nursing Center in New Rochelle, New York. (Ex.[1] 6 at 1).  Petitioner took a number of items, including a television, remote control, tape player and compact disc player. (*Id.* at 1).  He was apprehended shortly thereafter by a police officer who observed Petitioner pushing the above items down the

---

[1] Refers to exhibits attached to Respondent's Memorandum of Law. (Docket No. 12).

street in a laundry bin. (*Id.* at 1).  During a subsequent search, police recovered burglar's tools and a glass pipe containing cocaine from Petitioner. (*Id.* at 1).

A grand jury indicted Petitioner for the crimes of burglary in the second degree, petit larceny, criminal possession of stolen property in the fifth degree, criminal mischief in the fourth degree, and possession of burglar's tools. (Ex. 1).

## B. Guilty Plea and Sentence

On May 24, 1999, Petitioner pled guilty in the Supreme Court of the State of New York, County of Westchester ("State Trial Court") to burglary in the second degree in full satisfaction of the indictment. (Ex. 2 at 6, 18).  Burglary in the second degree is a Class C felony. (N.Y. Penal Law § 140.25; Ex. 2 at 5).  Petitioner agreed to a definite sentence of seven-and-a-half years. (Ex. 2 at 13).  The Honorable Judge John Perone, Acting Justice of the Supreme Court ("Justice Perone"), released Petitioner on bail but stated that he could sentence Petitioner to a definite sentence of "up to 15 years" if he did not return for sentencing. (*Id.* at 13-14).  Petitioner agreed. (*Id.* at 14).  Justice Perone also informed Petitioner that he would review Petitioner's probation report and impose a period of post-release supervision ("PRS") of between two-and-a-half to five years. (*Id.* at 15-17).  Petitioner stated that he had discussed the matter with his attorney and he agreed that, in consideration of the negotiated plea, he would waive the right to appeal his conviction and sentence. (*Id.* at 17-18).

Petitioner failed to appear for his sentencing hearing on September 9, 1999. (Ex. 3 at 6). The sentencing hearing was adjourned to October 7, 1999 and Petitioner again failed to appear. (*Id.* at 6).  On November 4, 1999, Justice Perone found that Petitioner "willfully absconded and willfully avoided sentence" and sentenced him "in absentia to 15 years definite term, a $155

surcharge." (*Id.* at 9).  Justice Perone also noted that Petitioner waived his right to be advised of his right to appeal by his willful failure to appear for sentencing. (*Id.* at 9).

Petitioner was later arrested on a shoplifting charge and his sentence was executed on May 20, 2003. (Ex. 6 at 3).[2]

## C.  First Motion to Vacate the Judgment or to Set Aside the Sentence

On May 27, 2009, Petitioner, proceeding *pro se*, filed in the State Trial Court a motion to vacate the judgment against him pursuant to New York Criminal Procedural Law ("N.Y. C.P.L.") § 440.10 ("440.10 Motion") or to set aside his sentence pursuant to N.Y. C.P.L. § 440.20 ("440.20 Motion").[3] (Ex. 4).  Petitioner also filed an amended § 440.10 motion and § 440.20 motion dated August 19, 2009 ("Amended 440 Motion," and, collectively with the 440.10 Motion and the 440.20 Motion, the "440 Motions"). (Supp. Ex.[4] 3).

In the 440.10 Motion, Petitioner asserted that the judgment against him should be vacated because: (i) his guilty plea was not entered voluntarily, knowingly, or intelligently because Justice Perone failed to advise him of the essential elements of the offense; (ii) Justice Perone failed to impose a period of PRS as required by law and failed to advise him that PRS was a consequence of a guilty plea; (iii) Petitioner never entered a guilty plea on the record because he believed he was only admitting to having committed a predicate felony, and not the current

---

[2] Notwithstanding his waiver of the right to appeal, Petitioner claims that he filed a notice of appeal on June 10, 2003 and did not receive any response. (Ex. 4 at B). Even if Petitioner did file a notice of appeal on or around that date, the appeal would not have been timely.  Petitioner was sentenced *in absentia* on November 4, 1999, (Ex. 3), and his time to appeal expired 30 days thereafter, on or around December 6, 1999, N.Y. C.P.L. § 460.10(1). Although N.Y. C.P.L. § 460.10(1) states that a defendant's time to appeal expires 30 days after "imposition of the sentence," and Petitioner's sentence was technically not "imposed" until May 20, 2003, "Petitioner's time to appeal cannot be extended merely because he absconded." *Ortiz v. Senkowski*, No. 01 CIV. 2402 (NRB), 2001 WL 1267178, at *1 (S.D.N.Y. Oct. 22, 2001).

[3] Petitioner also included a motion pursuant to N.Y. C.P.L. § 440.30 to produce Petitioner at any hearing conducted to determine the § 440.10 or § 440.20 motion. (Ex. 4).

[4] Refers to supplementary exhibits that Respondent filed on January 8, 2016 at the Court's request. (Docket No. 23).

charges against him; and (iv) his conviction should be reversed in the interest of justice because the building he entered is not a "dwelling" and therefore a conviction of burglary in the third degree would be more appropriate than a conviction of burglary in the second degree. (Ex. 4).

In his 440.20 Motion, Petitioner asserted that his sentence should be set aside because: (i) Justice Perone never imposed a term of PRS; (ii) his sentence was excessively harsh and severe; and (iii) his due process rights were violated by his failure to be present at sentencing. (Ex. 4).

In his Amended 440 Motion, Petitioner asserted that the judgment against him should be vacated or his sentence should be set aside because his counsel was ineffective for: (1) failing to challenge an allegedly unlawful search and seizure and unlawful identification procedure; (2) failing to negotiate a plea to the lesser offense of burglary in the third degree; and (3) proceeding with a plea agreement even though Petitioner told counsel that he was not ready to plea. (Supp. Ex. 3).

By papers dated September 16, 2009, the People of the State of New York ("the People") opposed the 440 Motions on all but one ground. (Ex. 5).  As to that ground, the People conceded that Justice Perone incorrectly failed to impose the mandatory five-year term of PRS at the time of sentencing and consented to having Petitioner produced for resentencing pursuant to *People v. Sparber*, 10 N.Y.3d 457 (N.Y. 2008). (*Id.* at 2 n.2).

By decision and order dated October 7, 2009, the State Trial Court denied the 440 Motions in all respects except one. (Ex. 6).  As to that ground, the State Trial Court stated that

> since the Court failed to impose any period of postrelease supervision at sentencing, the defendant is entitled to be resentenced in accordance with People v Sparber (10 NY3d 457 (2008)).  In Sparber, the Court noted that the remedy for the sentencing courts [sic] failure to pronounce the PRS component of the sentence is to vacate the sentence and to remit for resentencing so the trial judge can make the required pronouncement (Id.; People v Boyd, supra).  Accordingly the defendant shall be produced for resentencing in accordance with People v Sparber.

(*Id.* at 15-16).  By order dated March 9, 2010, the Supreme Court of the State of New York, Appellate Division, Second Judicial Department ("Second Department") denied Petitioner's application for leave to appeal the State Trial Court's denial of the 440 Motions, stating simply that "[u]pon the papers filed in support of the application and the papers filed in opposition thereto, it is ORDERED that the application is denied." (Ex. 7).

**D.  Second Motion to Vacate the Judgment or to Set Aside the Sentence**

On December 3, 2009, counsel was assigned to Petitioner to assist him with any resentencing issues.  (*See* Ex. 8).  By papers dated February 15, 2010, Petitioner, represented by counsel, filed a motion to: (i) vacate Petitioner's fifteen-year conviction and sentence and impose a sentence of seven-and-a-half years instead; (ii) release Petitioner from the custody of the New York State Department of Corrections; and (iii) direct that a Pre-Sentence Report be prepared. (Ex. 8).  The People opposed Petitioner's motion by papers dated February 22, 2010. (Ex. 9).

By decision and order dated February 24, 2010, the State Trial Court denied Petitioner's motion ("[t]o the extent that counsel is now rearguing the motion to vacate defendant's conviction, the motion is denied"), except stated that Petitioner "shall be produced for resentencing in accordance with *People v Sparber*, so that the Court may properly pronounce the sentence to include the mandatory 5 year postrelease supervision." (Ex. 10) (altered from original).

**E.  *Sparber* Resentencing**

On March 3, 2010, Petitioner, represented by counsel, appeared for a *Sparber* resentencing ("*Sparber* Resentencing") in the State Trial Court. (Ex. 11).  Petitioner's counsel asked the Honorable Judge Susan Capeci, Judge of the County Court ("Judge Capeci") to vacate Petitioner's sentence and to impose the originally promised sentence of seven-and-a-half years

instead. (*Id.* at 3).  Judge Perone denied counsel's request and sentenced Petitioner to his original determinate sentence of fifteen years with the added requirement of "five years post-release supervision." (*Id.* at 7).

**F.  Direct Appeal of *Sparber* Resentencing**

By papers dated August 4, 2010, Petitioner, through counsel, filed an appeal of his *Sparber* Resentencing with the Second Department. (Ex. 12).  Petitioner argued that: (1) his guilty plea was not knowing, voluntary, and intelligent because Justice Perone misinformed him that he could receive a term of PRS less than the mandatory five-year term of PRS; (2) Judge Capeci misunderstood her discretionary authority during the *Sparber* Resentencing, and the case should be remanded so that the court could consider imposing a reduced term of incarceration; (3) Judge Capeci abused her discretion by failing to consider imposing a reduced term of incarceration and failing to order a presentence report; and (4) the Second Department should exercise its discretion to impose a reduced term of incarceration. (*Id.*).  The People opposed Petitioner's appeal. (Ex. 13).

The Second Department affirmed Petitioner's resentence by order dated December 28, 2010, stating that: (i) Petitioner's claim that his underlying plea was invalid and should be vacated could not be raised on this appeal from his *Sparber* Resentencing only; (ii) the resentence was not excessive; and (iii) Petitioner's remaining contentions were "without merit." (Ex. 14).

Through counsel, Petitioner submitted an application for leave to appeal the Second Department's decision to the Court of Appeals. (Docket No. 2-3 at 39-43).  On March 25, 2011, the New York Court of Appeals (the "Court of Appeals") denied Petitioner's application for leave to appeal. (Ex. 15).  The Court of Appeals stated that Petitioner's application was "timely"

6

but that "there is no question of law presented which ought to be reviewed by the Court of

Appeals and permission is thereby denied with leave to renew within 30 days." (*Id.*). Petitioner

submitted a *pro se* motion for reconsideration. (Docket No. 2-3 at 45-53). By order dated June

23, 2011, the Court of Appeals denied Petitioner's motion for reconsideration of its March 25,

2011 order, stating simply that the motion was "UPON the papers filed and due deliberation, it is

ORDERED that the motion for reconsideration is denied." (Ex. 16).

## G. Federal Habeas Corpus Proceedings

Petitioner filed the instant habeas petition ("Petition") on June 14, 2012. (Docket No. 2).[5]

Respondent opposed the Petition by papers dated November 2, 2012. (Docket Nos. 11, 12).

Petitioner submitted a reply by papers filed December 26, 2012. (Docket No. 16).

Petitioner asserts four grounds for relief. However, construing the Petition broadly, *see*

*Williams v. Kullman*, 722 F.2d 1048, 1051 (2d Cir. 1983) ("pleading requirements in habeas

proceedings should not be overly technical and stringent"), the Court interprets the Petition to be

comprised of fifteen separate claims of error: (1) his guilty plea was not knowing and voluntary

because the State Trial Court failed to mention, prior to the entry of his plea, that his sentence

included a mandatory five-year term of PRS (Docket No. 2 at 5, 18-25); (2) Justice Perone failed

to inform him of the statutory minimum sentence of seven years, thus leaving him unable to

bargain for the minimum sentence, (*id.* at 19); (3) Justice Perone abused his discretion by

increasing Petitioner's sentence from seven years to seven-and-a-half years solely because

Petitioner exercised his legal right to have a suppression hearing, (*id.* at 19-20), and by

increasing Petitioner's sentence from seven-and-a-half years to fifteen years at the sentencing *in*

*absentia*, (Docket No. 2-1 at 34, 42); (4) the district attorney committed prosecutorial

---

[5] The Petition was submitted in four parts with varied page numbering throughout. For ease of reference, page number citations refer to the docket number and page number assigned upon electronic filing.

misconduct by failing to disclose the requirement of PRS during the plea proceeding, (*id.* at 25-27); (5) Petitioner's sentence of fifteen years of incarceration plus five years of PRS violates N.Y. Penal Law § 70.04(3)(b), (*id.* at 33); (6) Justice Perone failed to inform Petitioner that the term of PRS would be imposed *in addition* to his seven-and-a-half-year sentence of incarceration, (*id.* at 41); (7) Justice Perone induced him to plead guilty by promising him a two-and-a-half year term of PRS when the court was not authorized to impose such a term, (Docket No. 2-1 at 9-10); (8) the State Trial Court failed to review his plea agreement *de novo* and failed to hold an evidentiary hearing when considering his 440 Motions, (Docket No. 2 at 8, Docket No. 2-1 at 13, Docket No. 2-1 at 43 – No. 2-2 at 1); (9) Justice Perone improperly participated in plea discussions with counsel in violation of the standards of the American Bar Association ("ABA"), (Docket No. 2-2 at 18-19); (10) his plea counsel was ineffective for informing Petitioner prior to his plea that PRS was another name for parole when "[PRS] differs from parole in significant ways," (Docket No. 2-1 at 25-27); (11) his plea counsel was ineffective because counsel failed to consult with Petitioner prior to initiating a plea discussion with the court and failed to move for an adjournment as Petitioner requested, and Petitioner thereby did not have very much time to consider the plea offer, (Docket No. 2-2 at 25); (12) his plea counsel was ineffective for failing to be aware of the sentencing laws subjecting Petitioner to a mandatory five-year term of PRS, (*id.* at 25); (13) his plea counsel was ineffective for failing to negotiate a beneficial plea because counsel failed to argue that a nursing home is not a "dwelling" within the meaning of the statute defining burglary in the second degree, (*id.* at 25-28); (14) his plea counsel was ineffective for failing to advise Petitioner that the five-year term of PRS would be imposed *in addition* to his seven-and-a-half-year sentence of incarceration, (*id.* at

8

28); and (15) his sentencing counsel was ineffective for failing to properly object to the court's sentencing him *in absentia* to fifteen years of incarceration, (*id.* at 16, 29).

## II.  OVERVIEW OF APPLICABLE LAW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011).  "Before a federal district court may review the merits of a state criminal judgment in a *habeas corpus* action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254." *Visich v. Walsh*, No. 10 Civ. 4160(ER)(PED), 2013 WL 3388953, at *9 (S.D.N.Y. July 3, 2013).[6]

## III.  TIMELINESS

Respondent submits that the Petition is untimely because Petitioner's time to file a habeas petition challenging his original conviction expired on March 13, 2001 and Petitioner's *Sparber* Resentencing did not reset the AEDPA statute of limitations. (Opp. at 4-6).  For the reasons discussed below, we find that the Petition is timely.

A habeas petition is subject to a one-year statute of limitations. 28 U.S.C. 2244(d)(1). The statute allows for four different potential starting points to determine the limitations period and states that the latest of these shall apply.  As the statute explains:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

---

[6] In accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) and Local Rule 7.2 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, a copy of this case and other cases, *infra*, only available by electronic database, accompany this Report and Recommendation and shall be simultaneously delivered to *pro se* Petitioner.

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

The relevant provision in this case is 28 U.S.C. § 2244(d)(1)(A), which states that the one-year limitation period begins to run on "the date on which the *judgment* became final by the conclusion of direct review or the expiration of the time for seeking such review" (emphasis added). AEDPA does not define the term "judgment," and neither the Supreme Court nor the Second Circuit has directly addressed the question at issue here—namely, whether a *Sparber* resentencing leads to a new "judgment" for AEDPA purposes and thereby resets the AEDPA statute of limitations.

The Supreme Court has interpreted the term "judgment" to include both the conviction and the sentence. *See, e.g.*, *Magwood v. Patterson*, 561 U.S. 320, 342 (2010) ("a sentence and conviction form a single 'judgment' for purposes of habeas review"); *Burton v. Stewart*, 549 U.S. 147, 156 (2007) (*per curiam*) (explaining that AEDPA's statute of limitations did not run until the judgment—"both his conviction *and* sentence became final") (quotation marks omitted) (emphasis in original); *Teague v. Lane*, 489 U.S. 288, 314 n.2 (1989) ("As we have often stated, a criminal judgment necessarily includes the sentence imposed upon the defendant.") (citations omitted).

10

In *Magwood*, the district court conditionally granted a habeas petition and required that the petitioner be released or resentenced. *Magwood*, 561 U.S. at 323. After the state trial court resentenced defendant, which involved "a complete and new assessment of all of the evidence, arguments of counsel, and law," the petitioner filed a second habeas petition challenging the new sentence. *Id.* at 323, 326 (citation omitted). The Supreme Court held that the second petition was not a "second or successive"[7] petition within the meaning of AEDPA because the petitioner challenged a new "judgment"—*i.e.* the conviction and the new sentence—for the first time. *Id.* at 323-24. The petitioner in *Magwood* only raised issues as to his new sentence, and the Supreme Court explicitly declined to address the question of whether its ruling "would allow a petitioner who obtains a conditional writ as to his sentence to file a subsequent application challenging not only his resulting, *new* sentence, but also his original, *undisturbed* conviction." *Id.* at 342 (emphasis in original). In *Johnson v. United States*, 623 F.3d 41 (2d Cir. 2010), the Second Circuit answered that question in the affirmative. The Second Circuit analyzed *Magwood* and reasoned that because a "judgment" consists of both a conviction and a sentence, "where a first habeas petition results in an amended judgment, a subsequent petition is not successive regardless of whether it challenges the conviction, the sentence, or both." *Johnson*, 623 F.3d at 46.

The Second Circuit has since clarified that a judgment is only relevant for AEDPA purposes if the judgment is a result of "substantive proceedings." *See, e.g., Marmolejos v.*

---

[7] The issue of what constitutes a new "judgment" for AEDPA purposes often arises in the context of "second or successive" habeas petitions—*i.e.* additional motions attacking the same judgment. *See* 28 U.S.C. § 2244(a), (b)(2) (placing limitations on when "second or successive" habeas motions may be filed). In this case, Petitioner has only filed one habeas petition, so there is no question that his petition is not "second or successive." However, the analysis in the "second or successive" cases as to whether a resentencing leads to a new "judgment" for AEDPA purposes is relevant here.

*United States*, 789 F.3d 66, 70 (2d Cir. 2015) ("*Magwood* and *Johnson* . . . stand for the principle

that when a judgment is entered on account of new substantive proceedings involving

reconsideration of either the defendant's guilt or his appropriate punishment, it is a new

judgment for purposes of AEDPA."); *Gonzalez v. United States*, 792 F.3d 232, 236 (2d Cir.

2015) ("Where a conviction is vacated and the cause is remanded for substantive proceedings,

the new judgment is subject to renewed collateral attack under AEDPA. In contrast, where a trial

court has only the ministerial task of entering a new judgment, the original judgment is the

relevant judgment for habeas purposes.").

     In *Gonzalez*, the Second Circuit held that the AEDPA limitations period began to run, not

when defendant's conviction became final, but only when a "revised restitution order [became]

final." *Gonzalez*, 792 F.3d at 233.  The Court reasoned that "[r]estitution is a serious component

of criminal punishment, and calculating the restitution amount is hardly ministerial." *Id.* at 236.

Therefore, the Court held, the AEDPA limitations period did not begin to run until after the court

had calculated a revised restitution amount. *Id.* at 233.  The reasoning of *Gonzalez* applies in this

case.  Like restitution, PRS is a significant component of criminal punishment.  As the New

York Court of Appeals has stated:

> Postrelease supervision is significant. Upon release from the underlying term of
> imprisonment, a defendant must be furnished with a written statement setting forth
> the conditions of postrelease supervision in sufficient detail to provide for the
> defendant's conduct and supervision (*see* Penal Law § 70.45 [3]). In addition to
> supervision by and reporting to a parole officer, postrelease supervision may
> require compliance with any conditions to which a parolee may be subject (see id.),
> including, for example, a curfew, restrictions on travel, and substance abuse testing
> and treatment. Moreover, postrelease supervision may require up to six months of
> participation in a residential treatment facility immediately following release from
> the underlying term of imprisonment (*see id.*; Correction Law § 2 [6]). A violation
> of a condition of postrelease supervision can result in reincarceration for at least six
> months and up to the balance of the remaining supervision period, not to exceed
> five years (*see* Penal Law § 70.45 [1]).

*People v. Catu*, 4 N.Y.3d 242, 245 (N.Y. 2005). *See also, e.g., Ruffins v. Dep't of Corr. Servs.*, 701 F. Supp. 2d 385, 395-96 (E.D.N.Y. 2010) ("PRS represents a significant punishment component that restricts an individual's liberty [.]") (citation omitted) (alteration in original).

I find that the imposition of PRS was not merely "ministerial." It is not true that "[P]etitioner's judgment could not be altered or amended in any way by his Sparber resentencing," as Respondent argues. (*See* Opp. at 11). To the contrary, Justice Capeci had the discretion to, "on consent of the district attorney, re-impose the originally imposed determinate sentence of imprisonment *without* any term of post-release supervision." N.Y. Penal Law § 70.85.[8] (emphasis added). *See also, e.g., Mills v. Lempke*, No. 11-CV-0440 (MAT), 2013 WL 435477, at *1 (W.D.N.Y. Feb. 4, 2013) (noting that "the trial court, pursuant to P.L. § 70.85 and with the consent of the . . . District Attorney, re-imposed the original 15–year determinate sentence . . . , without imposing any period of PRS."). Therefore, I find that the *Sparber* Resentencing led to a new "judgment" for the purposes of AEDPA, and the AEDPA limitations period did not begin to run until this new judgment was final.[9]

The *Sparber* Resentencing occurred on March 3, 2010. (Ex. 11). The Court of Appeals denied Petitioner's motion for reconsideration of its order denying Petitioner's direct appeal of

---

[8] This provision applies here because Petitioner was sentenced to a determinate term of 15 years of imprisonment on November 4, 1999. The provision applies "to cases in which a determinate sentence was imposed between September first, nineteen hundred ninety-eight, and the effective date of this section," which was June 30, 2008. N.Y. Penal Law § 70.85.

[9] New York courts may reach the opposite conclusion. *See, e.g., People v. Boyer*, 22 N.Y.3d 15, 24 (N.Y. 2013) (noting that, in the context of New York's sentence enhancement statutes, "a resentencing to correct the flawed imposition of PRS . . . merely corrects a clerical error and leaves the original sentence, along with the date of that sentence, undisturbed."). However, the New York courts have never addressed this question in the context of a habeas petition, which presents different policy considerations than the context of sentence enhancement statutes. More importantly, the Court is bound by federal law on this issue. *Clay v. United States*, 537 U.S. 522, 531 (2003) ("finality for the purpose of § 2244(d)(1)(A) is to be determined by reference to a uniform federal rule"); *Summers v. Schriro*, 481 F.3d 710, 714 (9th Cir. 2007) ("the question of when a conviction becomes 'final by the conclusion of direct review,' thus triggering the one-year statute of limitations under AEDPA . . . is a question of federal law.") (citations omitted).

his *Sparber* Resentencing on June 23, 2011. (Ex. 16). The judgment against Petitioner became final 90 days after that time, on or around September 21, 2011. U.S. Sup. Ct. R. 13[10]; *Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001). Petitioner's time to file a habeas petition was set to expire, one year later, on or around September 21, 2012. Therefore, I find that the Petition was timely filed on June 14, 2012. (*See* Docket No. 2).[11]

## IV.  PROCEDURALLY BARRED CLAIMS

Petitioner sets forth six claims that are procedurally barred. Five claims (claims 2, 4, 6, 11 and 15) are unexhausted but should be deemed exhausted and procedurally barred from review by this Court. One claim (claim 7) is exhausted but procedurally barred because the state court's decision on this claim constitutes an independent and adequate ground precluding this Court's review.

### A.  Claims Deemed Exhausted and Procedurally Barred (Claims 2, 4, 6, 11 and 15)

Five of Petitioner's claims (claims 2, 4, 6, 11 and 15) are unexhausted but should be deemed exhausted and procedurally barred from review by this Court.

### i. Legal Standard

A habeas petition may not be granted unless the petitioner has exhausted his claims in state court. *See* 28 U.S.C. § 2254(b). As the statute prescribes:

---

[10] This rule states, in relevant part, that "[a] petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review." U.S. Sup. Ct. R. 13.

[11] The Court notes that Petitioner was released from incarceration on January 19, 2016. *See* http://nysdoccslookup.doccs.ny.gov/ (search in "DIN" search box for "03-A-2783" and click on "03-A-2783") (last visited January 25, 2016). However, the Petition is not moot because Petitioner is still subject to a five-year term of PRS. *See Perez v. Greiner*, 296 F.3d 123, 125 (2d Cir. 2002) ("a habeas petition challenging a criminal conviction is rendered moot by a release from imprisonment 'only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction.'") (citing *Sibron v. New York*, 392 U.S. 40, 54-56 (1968)); *Hill v. Mance*, 598 F. Supp. 2d 371, 378 (W.D.N.Y. 2009) (holding that habeas petition was not moot where petitioner was still subject to term of PRS).

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that-

>   (A) the applicant has exhausted the remedies available in the courts of the State; or

>   (B)(i) there is an absence of available State corrective process; or

>   (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

>   . . . .

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b)-(c).

Exhaustion requires a prisoner to have "fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts." *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (citation omitted).  Fair presentation includes petitioning for discretionary review in the state's highest appellate court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  However, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997) (citation omitted).  In such cases, the district court may deem the claims to be exhausted, but they are nonetheless procedurally barred from habeas review. *See id.* at 140 ("a claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'") (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 (1991)).

Under New York law, defendants are permitted only "one direct appeal." *Lowman v. New York*, No. 09-CV-0058T, 2011 WL 90996, at \*9 (W.D.N.Y. Jan. 11, 2011) (citing N.Y. Ct. R. § 500.20[12]). *See also Roa v. Portuondo*, 548 F. Supp. 2d 56, 78 (S.D.N.Y. 2008) ("Any attempt to raise these claims at this stage as part of a direct appeal would be rejected because a criminal defendant is entitled to only one direct appeal and one application for leave to appeal to the Court of Appeals.").

In addition, "all claims that are record-based must be raised in a direct appeal . . . . It is only when a defendant's claim hinges upon facts outside the trial record, that he may collaterally attack his conviction by bringing a claim under CPL § 440.10." *O'Kane v. Kirkpatrick*, No. 09 Civ. 05167(HB)(THK), 2011 WL 3809945, at \*7 (S.D.N.Y. Feb. 15, 2011) *report and recommendation adopted*, No. 09 Civ. 05167(HB)(THK), 2011 WL 3918158 (S.D.N.Y. Aug. 25, 2011). *See also Lowman*, 2011 WL 90996, at \*9 ("Collateral review of this claim—by way of another CPL § 440 motion—is also barred because the claim is a matter of record that could have been raised on direct appeal, but unjustifiably was not.") (citing N.Y. C.P.L. § 440.10(2)(c)[13]).  In the context of claims for ineffective assistance of counsel, "[c]laims are record-based when a reviewing court could conclude that defendant's counsel was ineffective simply by reviewing the trial record without the benefit of additional background facts that would need to be developed through a post-conviction motion pursuant to CPL 440.10."

---

[12] This rule states, in relevant part, that a letter application for leave to appeal "shall indicate . . . (2) that no application for the same relief has been addressed to a justice of the Appellate Division, as *only one application is available*." N.Y. Ct. R. 500.20(a) (emphasis added).

[13] N.Y. C.P.L. § 440.10(2)(c) states, in relevant part, that a court must deny a § 440.10 motion to vacate judgment when "[a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him."

*Rodriguez v. Smith*, No. 10-CV-8306 (KMK)(LMS), 2015 WL 6509153, at \*14 (S.D.N.Y. Oct. 28, 2015) (citation omitted).

To avoid the procedural default of an unexhausted claim, a petitioner may show "cause for the default and prejudice, or that failure to consider the claim will result in miscarriage of justice, *i.e.*, the petitioner is actually innocent." *Sweet v. Bennett*, 353 F.3d 135, 141 (2d Cir. 2003) (citations omitted).

**ii. Claim 2: Justice Perone Failed to Inform Petitioner of Statutory Minimum Sentence**

Petitioner's second claim is that Justice Perone failed to inform him of the statutory minimum sentence of seven years, thus leaving him unable to bargain for the minimum sentence. (Docket No. 2 at 19).

Justice Perone's omission is a matter of record that Petitioner could have raised on direct appeal but unjustifiably did not. The claim is therefore deemed exhausted but procedurally barred from review by this Court. *Cf. People v. Davis*, No. 8222/00, 2007 WL 2481906, at \*2 n.6 (N.Y. Sup. Ct. Kings Cnty. Sept. 4, 2007) ("When a trial judge failed to advise a defendant that PRS will be part of the sentence during the plea allocution . . . such omission is a matter of record and the defendant must challenge the plea . . . on direct appeal") (citation omitted). Petitioner has made no attempt to argue cause, prejudice or miscarriage of justice here.

Therefore, I respectfully recommend that the Court deny claim 2.

**iii. Claim 4: The District Attorney Committed Prosecutorial Misconduct By Failing to Disclose the Requirement of PRS**

Petitioner's fourth claim is that the district attorney committed prosecutorial misconduct by failing to disclose the requirement of PRS during the plea proceeding. (Docket No. 2 at 25-27).

This is a record-based claim that Petitioner could have raised on direct appeal but unjustifiably did not. The claim is therefore deemed exhausted but procedurally barred from review by this Court. *See Morgan v. Lee*, No. 1:11-CV-0390 (MAT), 2012 WL 5336167, at *6 (W.D.N.Y. Oct. 26, 2012) ("Petitioner's record-based claims of prosecutorial misconduct . . . are procedurally barred from habeas review"); *Williams v. Breslin*, No. 06-CV-2479 (SJF), 2008 WL 4179475, at *6 (E.D.N.Y. Sept. 9, 2008) ("Since petitioner failed to raise his claim of prosecutorial misconduct on direct appeal, the claim is procedurally defaulted").

Petitioner has made no attempt to argue a miscarriage of justice here. However, he does assert that there was "cause" for his default, arguing that his claims relating to PRS "could not be addressed on direct appeal because the court did not inform nor impose the 5 year term of post release supervision, which would have revealed the court's error of law and false promise that induced the plea." (Docket No. 2-2 at 29-30). This claim is meritless. At Petitioner's plea proceeding, the State Trial Court did tell Petitioner that he would be subject to PRS, although it failed to correctly inform Petitioner that the term was a mandatory five-year term of PRS. (Ex. 2 at 15-17). Where "the record of his plea allocution plainly shows petitioner was told only that there would be a PRS period, not the length of such term," the Petitioner "knew all he needed to know in order to raise this issue on direct appeal." *Desrosiers v. Phillips*, No. 05-CV-2941 (CBA), 2008 WL 4469594, at *5 (E.D.N.Y. Oct. 3, 2008). Contrary to Petitioner's assertion, the "cause" of Petitioner's failure to file a timely direct appeal was that he absconded for over three years and thus missed the deadline to file a timely appeal. *Ortega-Rodriguez v. United States*, 507 U.S. 234, 242, n. 12 (1993) ("If the defendant [absconds and] fails to file a timely appeal, his case concludes").

Therefore, I respectfully recommend that the Court deny claim 4.

**iv.  Claim 6: Justice Perone Failed to Inform Petitioner that PRS Would Be Imposed *In Addition* to His Sentence of Incarceration**

Petitioner's sixth claim is that Justice Perone failed to inform Petitioner that the term of PRS would be imposed *in addition* to his seven-and-a-half-year sentence of incarceration. (Docket No. 2 at 41).

Justice Perone's omission is a matter of record that Petitioner could have raised on direct appeal but unjustifiably did not.  The claim is therefore deemed exhausted but procedurally barred from review by this Court. *Cf. Davis*, 2007 WL 2481906, at *2 n.6 ("When a trial judge failed to advise a defendant that PRS will be part of the sentence during the plea allocution . . . such omission is a matter of record and the defendant must challenge the plea . . . on direct appeal") (citation omitted).  Petitioner has made no attempt to argue a miscarriage of justice here, and his claim of "cause" is meritless. *See* Section IV(A)(iii), *supra*.

Therefore, I respectfully recommend that the Court deny claim 6.

**v.  Claim 11: Plea Counsel Was Ineffective Because Counsel Failed to Consult with Petitioner Prior to Initiating a Plea Discussion with the Court**

Petitioner's eleventh claim is that his plea counsel was ineffective because counsel failed to consult with Petitioner prior to initiating a plea discussion with the court and failed to move for an adjournment as Petitioner requested, and Petitioner thereby did not have very much time to consider the plea offer. (Docket No. 2-2 at 25).

Petitioner fairly presented this claim to the State Trial Court in his Amended 440 Motion. (Supp. Ex. 3 at 10) (stating that he received ineffective assistance of counsel pursuant to the Sixth Amendment to the United States Constitution where "the defendant's lawyer was aware that his client was pleading guilty even though that client stated clealy (sic) to him that he was'nt (sic) ready.").  The State Trial Court denied his claim as "meritless" because it was "belied by

the plea transcript in this case," citing N.Y. C.P.L. § 440.30(4).[14] (Ex. 6 at 11-12).[15]   However,

because Petitioner thereafter failed to raise the claim in his application for leave to appeal to the

Second Department, (Supp. Ex. 1), the claim is unexhausted. *See Santos v. Rock*, No. 10 Civ.

2896(LTS)(AJP), 2011 WL 3449595, at *9 (S.D.N.Y. Aug. 5, 2011) *report and recommendation*

*adopted*, No. 10 Civ. 2896(LTS)(AJP), 2011 WL 4000896 (S.D.N.Y. Sept. 7, 2011).

However, Petitioner would not be able to raise the claim again in state court because this

is a record-based claim that Petitioner unjustifiably did not raise on direct appeal. *Rodriguez*,

2015 WL 6509153, at *14 (citation omitted).  As the State Trial Court correctly noted, the plea

transcript refutes Petitioner's claim.  Counsel stated on the record that Petitioner "authorized

[him] to enter a plea of guilty." (Ex. 2 at 5).  Petitioner also confirmed on the record that he "had

enough time to talk to his attorney and to make a decision" and that he was "satisfied with the

representation given to [him] by [his] attorney." (Docket No. 2 at 9).

Therefore, I respectfully recommend that the Court dismiss claim 11.

### vi.  Claim 15: Sentencing Counsel Was Ineffective for Failing to Properly Object to the Court's Sentencing Petitioner *In Absentia* to Fifteen Years of Incarceration

Petitioner's fifteenth claim is that his sentencing counsel was ineffective for failing to

properly object to the court's sentencing him *in absentia* to fifteen years of incarceration.

(Docket No. 2-2 at 16, 29).  In particular, Petitioner appears to assert that sentencing counsel was

---

[14] This rule states, in relevant part, that "[u]pon considering the merits of the motion, the court may deny it without conducting a hearing if: "(c) An allegation of fact essential to support the motion is conclusively refuted by unquestionable documentary proof; or (d) An allegation of fact essential to support the motion (i) is contradicted by a court record or other official document, or is made solely by the defendant and is unsupported by any other affidavit or evidence, and (ii) under these and all the other circumstances attending the case, there is no reasonable possibility that such allegation is true." N.Y. C.P.L. § 440.30(4).

[15] The State Trial Court did not expressly consider this argument as a claim for ineffective assistance of counsel, but it appears that the State Trial Court is responding to Petitioner's allegation of ineffective assistance of counsel. *Compare* Supp. Ex. 1 at 9 ("I made it clear to my lawyer, that I needed time to think about it") *with* Ex. 6 at 11 ("The defendant further argues that he never authorized his attorney to enter a plea of guilty on his behalf, and that he only told him he wanted to 'think about' the plea offer of 7 ½ years.").

ineffective for failing to argue that the court had lost its authority to increase Petitioner's sentence from seven-and-a-half years to fifteen years because Petitioner's underlying plea was invalid. (*Id.*).

This is a record-based claim that Petitioner unjustifiably did not raise on direct appeal. A court could make a determination as to whether or not sentencing counsel was ineffective simply by reviewing the transcripts from the plea hearing and the sentencing hearing. *See Rodriguez*, 2015 WL 6509153, at *14 (citation omitted). For example, during the plea proceeding Justice Perone warned Petitioner that he could sentence Petitioner to a definite sentence of "up to 15 years" if he did not return for sentencing. (Ex. 2 at 13-14). During the sentencing hearing, counsel objected to the sentencing *in absentia* and asked the Court to consider giving Petitioner the originally promised sentence of seven-and-a-half years rather than the increased sentence of fifteen years. (Ex. 3 at 5-6). In addition, Petitioner has made no attempt to argue a miscarriage of justice here, and his claim of "cause" is meritless. *See* Section IV(A)(iii), *supra*.

Therefore, I respectfully recommend that the Court dismiss claim 15.

## B. Claim Procedurally Barred by Independent and Adequate State Grounds (Claim 7)

One of Petitioner's claims (claim 7) is exhausted but procedurally barred from review by this Court because the state court's decision denying the claim rested on an independent and adequate state ground.

### i. Legal Standard

As the Second Circuit has instructed, federal courts "will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." *Kozlowski v. Hulihan*, 511 F. App'x 21, 23 (2d Cir. 2013) (citations omitted). This preclusion

applies even if the state court alternatively rules on the merits of the federal claim, so long as there is an adequate and independent state ground that would bar the claim in state court. *See, e.g., Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999).

A state ground is "independent" if it "'fairly appears' to rest primarily on state law." *Taylor v. Connelly*, 18 F. Supp. 3d 242, 253 (E.D.N.Y. 2014) (quoting *Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006)). In the normal case, a ground is "adequate only if it is based on a rule that is firmly established and regularly followed by the state in question." *Cotto v. Herbert*, 331 F.3d 217, 239 (2d Cir. 2003) (citation omitted). However, "there are 'exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question.'" *Id.* at 240 (citation omitted). In determining whether a case is "exceptional" in that the state ground should be held inadequate, the Second Circuit uses the following factors as "guideposts":

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had substantially complied with the rule given the realities of trial, and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Id.* (quotation marks and citation omitted). A decision that a state procedural rule is inadequate should not be made "lightly or without clear support in state law." *Garcia*, 188 F.3d at 77 (citation omitted).

To avoid a procedural default based on independent and adequate state grounds, a petitioner may "show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate

that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'"
*Harris*, 489 U.S. at 262 (citations omitted).

### ii. Claim 7: Justice Perone Unlawfully Promised Petitioner a Term of Two-And-A-Half Years of PRS

Petitioner's seventh claim is that Justice Perone induced him to plead guilty by promising him a two-and-a-half year term of PRS when the court was not authorized to impose such a term. (Docket No. 2-1 at 9-10).

Petitioner fairly presented this claim to the state courts. *See Davis v. Strack*, 270 F.3d 111, 122 (2d Cir. 2001) ("We have held that if a petitioner cites to specific provisions of the U.S. Constitution in his state court brief, the petitioner has fairly presented his constitutional claim to the state court."); *Reid v. Senkowski*, 961 F.2d 374, 376 (2d Cir. 1992) (even "a minimal reference to the Fourteenth Amendment" presents a federal constitutional claim to the state courts). Through counsel, Petitioner raised this claim to the Second Department on direct appeal of his *Sparber* Resentencing. (Ex. 12 at 10-14). Petitioner, again through counsel, failed to raise the claim in his application for leave to appeal to the Court of Appeals. (Docket No. 2-2 at 39-43). The Court of Appeals denied Petitioner's application with leave to renew, (Ex. 15), and Petitioner thereafter did raise the claim in a *pro se* motion for reconsideration to the Court of Appeals, (Docket No. 2-3 at 45-53). Petitioner's motion for reconsideration stated in relevant part that the judge "made a specific promise" that he would give "2½ years of post release supervision based upon a good probation report" and that this "unlawful plea promise" was part of the "core portion of the proceeding which embodies the Constitutional magnitude that's clearly dealing with Due Process." (*Id.* at 46). I find that this language is sufficient to satisfy the requirement that Petitioner "fairly present" his federal constitutional claim to the state's highest court. Therefore, this claim is exhausted.

The Second Department denied Plaintiff's claim on procedural grounds, stating that Petitioner's claim "that his underlying plea was invalid and should be vacated . . . may not be raised on this appeal from his resentence only." (Ex. 14) (citing N.Y. C.P.L. § 450.30(3);[16] *People v. Ferrufino*, 33 A.D.3d 623 (2d Dep't 2006); *People v. DeSpirito*, 27 A.D.3d 479, 479-80 (2d Dep't 2006) and *People v. Luddington*, 5 A.D.3d 1042 (4th Dep't 2004)). The Second Department's decision is an independent and adequate ground precluding this Court's review. *Gantt v. Martuscello*, No. 9:12-CV-657 (MAD/CFH), 2014 WL 112359, at *11 (N.D.N.Y. Jan. 10, 2014) (state court's decision that defendant's claim "should have been raised on the first appeal, not on an appeal from resentencing" was an independent and adequate ground precluding habeas review).

The ground is "independent" because the Second Department "relied on no federal law" in making its determination. *Kozlowski*, 511 F. App'x at 25. The ground is also "adequate." A review of the case law shows that N.Y. C.P.L. § 450.30(3) is in fact "firmly established and regularly followed" when a defendant attempts to challenge his underlying plea on appeal from a *Sparber* resentencing. *See, e.g., People v. Jordan*, 16 N.Y.3d 845, 846 (N.Y. 2011) (citing N.Y. C.P.L. § 450.30(3) and holding that defendant could not challenge his underlying plea on appeal from a *Sparber* resentencing); *accord People v. Toney*, 116 A.D.3d 607 (1st Dep't 2014) (citing N.Y. C.P.L. § 450.30(3) and *Jordan*); *People v. Jenkins*, 85 A.D.3d 566 (1st Dep't 2011) (citing *Jordan*); *People v. McCoy*, 84 A.D.3d 655, 656 (1st Dep't 2011) (citing *Jordan*); *People v. Harper*, 85 A.D.3d 617 (1st Dep't 2010) (citing *Jordan*). *But see People v. Franklin*, 95 A.D.3d

---

[16] N.Y. C.P.L. § 450.30(3) provides that "when a resentence occurs more than thirty days after the original sentence, a defendant who has not previously filed a notice of appeal from the judgment may not appeal from the judgment, but only from the resentence."

1591, 1592 (3rd Dep't 2012) (declining to dismiss appeal based on CPL 450.30(3) where defendant appealed from a *Sparber* resentencing).

Moreover, the *Cotto* guideposts indicate that this is not an "exceptional" case in which it would be inappropriate to rely on Petitioner's procedural default. First, it is "meaningless to ask whether the alleged procedural violation was actually relied on in the trial court—the violation only first occurred when defendant raised an argument on appeal that he had not raised earlier." *Garvey v. Duncan*, 485 F.3d 709, 719 (2d Cir. 2007). Indeed, had Petitioner raised this issue on direct appeal, "the trial court would have had the opportunity to consider" his claim. *Id.* Second, New York state case law indicates that compliance with N.Y. C.P.L. § 450.30(3) was demanded in the specific circumstances presented. *See, e.g.*, *Jordan*, 16 N.Y.3d at 846. Third, Petitioner failed to file a notice of appeal from his original conviction and therefore failed to substantially comply with the rule. *See Gantt*, 2014 WL 112359, at *11.

Petitioner has made no attempt to argue a miscarriage of justice here, and his claim of "cause" is meritless. *See* Section IV(A)(iii), *supra*. Accordingly, claim 7 is procedurally barred because the State Trial Court's decision denying the claim rested on an independent and adequate state ground.

Therefore, I respectfully recommend that claim 7 be dismissed.

## V. CLAIMS DENIED ON THE MERITS

Petitioner sets forth five claims that should be denied on the merits. Two of Petitioner's claims (claims 1 and 13) are exhausted and were adjudicated on the merits by the state courts but should be denied by this Court under the AEDPA standard of review. Three of Petitioner's claims (claims 10, 12 and 14) are unexhausted but should be denied as patently frivolous.

## A. Claims Denied Under the AEDPA Standard of Review (Claims 1 and 13)

Two of Petitioner's claims (claims 1 and 13) are exhausted and were adjudicated on the merits by the state courts but should be denied by this Court under the AEDPA standard of review.

### i. Legal Standard

When a federal court reaches the merits of a habeas petition, AEDPA prescribes a "highly deferential" standard for reviewing state court rulings. *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Fischer v. Smith*, 780 F.3d 556, 561 (2d Cir. 2015) (quoting *Harrington*, 562 U.S. at 98). An application for a writ of habeas corpus:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

Courts have interpreted the phrase "adjudicated on the merits" in AEDPA as meaning that a state court "(1) dispose[d] of the claim 'on the merits,' and (2) reduce[d] its disposition to judgment." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001). Courts examine the "last reasoned decision" by the state courts in determining whether a claim was adjudicated on the merits. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) (noting the presumption that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").

The phrase "clearly established Federal law" means "the holdings, as opposed to the dicta, of [the Supreme Court of the United States'] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 365 (2000). "A state court decision is contrary to such clearly established federal law if it applies a rule that contradicts the governing law set forth in the Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from its precedent." *Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir. 2015) (quotation marks and citations omitted).

A state court decision involves an "unreasonable application" of Supreme Court precedent if: (1) "the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. For a federal court to find a state court's application of Supreme Court precedent unreasonable, the state court's decision must have been more than incorrect or erroneous—it must have been "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). However, "the trial court's decision need not teeter on 'judicial incompetence' to warrant relief under § 2254(d)." *Alvarez v. Ercole*, 763 F.3d 223, 229 (2d Cir. 2014) (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

A state court's decision "that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (citation omitted). If a state court decision does not contain reasons for the dismissal of a defendant's claim, this Court considers "'what arguments or theories . . .

could have supported[] the state court's decision,' and may grant habeas only if 'fairminded jurists could [not] disagree that those arguments or theories are inconsistent with the holding in a prior decision of' the Supreme Court." *Lynch v. Superintendent Dolce*, 789 F.3d 303, 311 (2d Cir. 2015) (alterations in original) (citation omitted).  If a "state court addresses some of the claims raised by a defendant but not a claim that is later raised in a federal habeas proceeding . . . the federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits." *Johnson v. Williams*, 133 S. Ct. 1088, 1091 (2013) (citation omitted).

### ii.  Claim 1: Guilty Plea Was Not Knowing and Voluntary Because the State Trial Court Failed to Properly Advise Petitioner that His Sentence Included a Five-Year Mandatory Term of PRS

Petitioner's first claim is that his guilty plea was not knowing and voluntary because the State Trial Court failed to mention, prior to the entry of his plea, that his sentence included a mandatory five-year term of PRS. (Docket No. 2 at 5, 18-25).

Petitioner fairly presented this claim to the state courts.  Although Petitioner relied almost entirely on state law when raising this claim in his 440.10 Motion (Ex. 4 at 2-4), he did cite one case as holding that the Court's pronouncement on PRS "did not satisfy Due Process requirement U.S.C.A. Const. Amend. 14," (Ex. 4 at 3).  I find that this express citation to the United States Constitution satisfies the "fair presentation" requirement. *See Strack*, 270 F.3d at 122; *Reid*, 961 F.2d at 376.  Petitioner requested leave to appeal the denial of his 440 Motions,[17] (Supp. Ex. 1),

---

[17] Petitioner changed his argument somewhat in his request for leave to appeal.  Rather than stating that the State Trial Court failed to mention PRS prior to his plea, Petitioner claimed instead that the State Trial Court specifically promised him the potential of a two-and-a-half years term of PRS. (*See* Supp. Ex. 1 at 5-6).  Therefore, one could argue that Claim 1 is unexhausted because Petitioner failed to request leave to appeal the denial of this particular claim.  However, even if one considers Claim 1 unexhausted, the claim is procedurally barred from habeas review because Petitioner unjustifiably failed to raise it on direct appeal. *See Lowman*, 2011 WL 90996, at *9.

and the Second Department summarily denied his request, (Ex. 7).[18]  Therefore, the State Trial

Court's order was the last reasoned decision rejecting Petitioner's claim, and we examine this

decision to determine whether Petitioner's claim was adjudicated on the merits.

The State Trial Court adjudicated Petitioner's claim on the merits.[19]  In denying

Petitioner's claim, the State Trial Court stated in relevant part:

> This Court's review of the transcript of the plea proceeding demonstrates that the
> defendant was advised by the Court that a period of postrelease supervision of up
> to a maximum of 5 years would be imposed upon him at sentencing (Plea minutes
> at 16). *Since the defendant in this case was advised of the requirement of*
> *postrelease supervision and possible duration prior to his entry of a plea of guilty,*
> *a reversal of the defendant's conviction on this ground is unwarranted* (People v
> Cullen, 62 AD3d 1155 (3d Dept 2009); see also People v Boyd, 12 NY3d 390
> (2009) [conviction reversed where court made no mention at plea of duration of
> postrelease supervision, only that a mandatory period of postrelease supervision
> would be imposed]).
>
> However, as conceded by the People, since the court failed to subsequently impose
> any period of postrelease supervision at sentencing, the defendant is entitled to be
> resentenced in accordance with People v Sparber (10 NY3d 457 (2008)). In
> Sparber, the Court noted that the remedy for the sentencing court's failure to
> pronounce the PRS component of the sentence is to vacate the sentence and to remit
> for resentencing so the trial judge can make the required pronouncement (Id.;
> People v Boyd, supra).

(Ex. 6 at 9) (emphasis added).  Although the State Trial Court's decision appears to rest entirely

on state law grounds, the Court must presume that Petitioner's federal due process claim was

also adjudicated on the merits. *See Johnson*, 133 S. Ct. at 1091.  Therefore, I will analyze this

claim under the AEDPA standard of review.

---

[18] A claim in a N.Y. C.P.L. § 440.10 motion is exhausted after the Appellate Division denies defendant's request for
leave to appeal that claim. *See* N.Y. C.P.L. § 450.90 (orders denying leave to appeal to the Appellate Division from
a denial of a N.Y. C.P.L. § 440.10 motion are not appealable).

[19] Respondent asserts that the State Trial Court denied this claim as procedurally barred. (Opp. at 15).  That is
incorrect.  Petitioner raised the instant claim as the *second* ground of his 440.10 Motion. (Ex. 4 at 2-4).  The State
Trial Court denied the *first* ground of the 440.10 Motion as procedurally barred, (Ex. 6 at 5-8), and Respondent
incorrectly quoted language from the State Trial Court's denial of that first ground.  The State Trial Court denied the
second ground of the 440.10 Motion—the one at issue here—on the merits. (*Id.* at 8-9).

It is clearly established federal law that a guilty plea "is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of relevant circumstances and likely consequences.'" *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (citation omitted).  It is also clearly established federal law that a guilty plea is void unless a defendant is "fully aware of the direct consequences" of the plea. *Bousley v. United States*, 523 U.S. 614, 619 (1998) (citation omitted).  However, "the Supreme Court has never addressed the issue of whether mandatory supervised release is a direct consequence of one's conviction," and "there is no clearly established Supreme Court precedent that a defendant must be advised of mandatory post-release supervision prior to entering a guilty plea," *Rosario v. Laffin*, No. 13-CV-00181 (JFB), 2014 WL 2600169, at *12, *13 (E.D.N.Y. June 11, 2014) (collecting cases).[20] *Accord Bonner v. Ercole*, 338 F. App'x 61, 62 (2d Cir. 2009).  Given this lack of precedent, it cannot be said that the state court made a decision that was contrary to, or an unreasonable application of, clearly established federal law. *Cf. Carey v. Musladin*, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from this Court regarding the [relevant issue in this case], it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'") (citation omitted) (first alteration added, second and third alterations in original).[21]

---

[20] Petitioner is correct that under New York law, the State Trial Court should have advised petitioner of the five-year term of mandatory PRS. *See Catu*, 4 N.Y.3d at 245 ("Because a defendant pleading guilty to a determinate sentence must be aware of the postrelease supervision component of that sentence in order to knowingly, voluntarily and intelligently choose among alternative courses of action, the failure of a court to advise of postrelease supervision requires reversal of the conviction.").  However, this Court cannot grant a petition for habeas corpus if the state court unreasonably applied *state* law.  Instead, this Court can only grant relief if the state court made a decision contrary to, or unreasonably applied, clearly established *federal* law. *See* 28 U.S.C. § 2254(d)(1).  That is not the case here.

[21] This case is different from *Earley v. Murray*, 451 F.3d 71, 76 (2d Cir. 2006), in which the Second Circuit found that "clearly established Supreme Court precedent renders the five-year PRS term added to [petitioner's] sentence by [the New York Department of Correctional Services ("DOCS")] invalid."  The Second Circuit found that it was clearly established federal law that "[t]he judgment of the court establishes a defendant's sentence, and that sentence may not be increased by an administrator's amendment" and went on to state that "[a]ny alteration to that sentence, *unless made by a judge in a subsequent proceeding*, is of no effect." *Id.* at 75 (emphasis added).  In *Earley*, DOCS administratively imposed a five-year term of PRS on the petitioner, and a judge never imposed the sentence.  In this

In addition, the State Trial Court did not "unreasonably determine the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1)-(2).  Based on a review of the plea transcript, the State Trial Court found that "the defendant in this case was advised of the requirement of postrelease supervision and possible duration prior to his entry of a plea of guilty." (Ex. 6 at 9). The record clearly supports this determination.  Justice Perone informed Petitioner that he would be sentenced to a term of PRS, either "the minimum 2 and-a-half or maximum of 5 or anything in between," and stated that "I will make the determination of the 2 and-a-half to 5 years based on the probation report.  If it's a good report I'll give the least, if it's a bad record I will give the most. Do you understand that?" (Ex. 2 at 16).  Justice Perone went on to say:

> Do you understand, Mr. Fields, that I can not promise you now what the post supervised, post release supervision will be, whether it's the minimum 2 and-a-half or maximum of 5 or anything in between?  I will promise you that I will base it on the probation report.  If you get a good probation report, the minimum the law allows me to give you on post release supervision [sic], do you understand this?

(*Id.* at 16-17).  Petitioner said that he understood and pled guilty after receiving this information.

(*Id.* at 18).  Petitioner's claim fails under the AEDPA standard of review.

Therefore, I respectfully recommend that the Court deny claim 1.

### iii.  Claim 13: Counsel Was Ineffective for Failing to Argue that a Nursing Home Is Not A "Dwelling"

Petitioner's thirteenth claim is that his plea counsel was ineffective for failing to negotiate a beneficial plea because counsel failed to argue that a nursing home is not a

---

case, by contrast, DOCS administratively imposed a five-year term of PRS on Petitioner, and then Judge Capeci subsequently imposed the five-year term of PRS at the *Sparber* Resentencing.  Therefore, *Earley*'s holding does not apply here. *See Prendergast v. Rivera*, No. 06 Civ. 5314(BMC), 2011 WL 4899945, at *2, *8 (E.D.N.Y. Oct. 13, 2011) (denying habeas claim where the state court "precisely applied" the clearly established federal law cited in *Earley* by holding a resentencing hearing where "the judge announced petitioner's five-year PRS term in open court.").

"dwelling" within the meaning of the statute defining burglary in the second degree. (Docket No. 2-2 at 25-28).

Petitioner fairly presented this claim to the state courts. Petitioner asserted this claim in his Amended 440 Motion, (Supp. Ex. 3 at 7-8), and the State Trial Court held that Petitioner's claim was "entirely without merit" because Petitioner entered a nursing home, which meets the definition of a "dwelling" under the relevant statute, (Ex. 6 at 12-15).[22] The Second Department summarily denied Petitioner's claim. (Ex. 7). Therefore the State Trial Court's decision is the last reasoned decision rejecting Petitioner's claim, and we examine this decision to determine whether Petitioner's claim was adjudicated on the merits.

The State Trial Court clearly adjudicated Petitioner's claim on the merits. Here, the State Trial Court explicitly stated that it was addressing "defendant's right to counsel under both the Federal and State Constitutions." (Ex. 6 at 13). The State Trial Court then noted that *Strickland v. Washington*, 466 U.S. 668 (1984) provides the federal standard for analyzing an ineffective assistance of counsel claim, and held that "[a]pplying the above standards to this case, the defendant has failed to demonstrate that his counsel was ineffective." (*Id.* at 13-14). Thus, I will analyze this claim under the AEDPA standard of review.

For an ineffective assistance of counsel claim, "the *Strickland* standard . . . is the relevant clearly established Federal law, as determined by the Supreme Court of the United States." *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001) (quotation marks and citation omitted). To prove that counsel was ineffective, Petitioner must show that: (i) "counsel's representation fell

---

[22] Respondent asserts that the State Trial Court denied Petitioner's ineffective assistance of counsel claim as procedurally barred. (Opp. at 30). However, the State Trial Court only held that one portion of Petitioner's claim was procedurally barred (and also without merit). (Ex. 6 at 14). The State Trial Court denied the portion of Petitioner's ineffective assistance of counsel claim at issue in this Petition on the merits. (*Id.* at 15).

below an objective standard of reasonableness;" *Strickland*, 466 U.S. at 688, and (ii) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.  To satisfy the first *Strickland* prong, counsel "is not obliged to advance every nonfrivolous argument that could be made." *Aparicio*, 269 F.3d at 95 (citations omitted).  Moreover, "[a]n attorney's '[f]ailure to make a meritless argument does not amount to ineffective assistance.'" *United States v. Noble*, 363 F. App'x 771, 773 (2d Cir. 2010) (citation omitted) (first alteration added, second alteration in original).

The State Trial Court's decision denying Petitioner's claim was not contrary to, or an unreasonable application of, the above-cited clearly established federal law.  Here, Petitioner appears to argue that counsel's representation "fell below an objective standard of reasonableness" because counsel failed to argue that a nursing home is not a "dwelling" within the meaning of the statute defining burglary in the second degree.  However, New York law defines a "dwelling" as "a building which is usually occupied by a person lodging therein at night." N.Y. Penal Law § 140.00(3), and a nursing home certainly falls within this definition. Counsel's failure to advance this "meritless argument"—even if one considers it a "nonfrivolous argument"—does not constitute ineffective assistance and this claim fails under the AEDPA standard of review.

Therefore, I respectfully recommend that the Court deny claim 13.

## B.  Unexhausted Claims that Are Denied as Patently Frivolous (Claims 10, 12 and 14)

Petitioner asserts three claims (claims 10, 12 and 14) that are unexhausted but should be denied as patently frivolous.

### i. Legal Standard

The Court has the discretion to deny unexhausted claims on the merits. *See* 28 U.S.C. §

2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits,

notwithstanding the failure of the applicant to exhaust the remedies in the courts of the State.").

The Second Circuit has not established a standard for determining when an unexhausted claim

may be dismissed on the merits,[23] but many district courts have chosen to deny unexhausted

claims that are "patently frivolous." *Naranjo v. Filion*, No. 02Civ.5549WHPAJP, 2003 WL

1900867, at *8 (S.D.N.Y. Apr. 16, 2003) (collecting cases). The Supreme Court has noted that a

district court should deny "plainly meritless" claims rather than granting a stay and allowing

petitioner to exhaust his claims in state court. *Rhines v. Weber*, 544 U.S. 269, 277 (2005) (noting

that a "district court would abuse its discretion if it were to grant [petitioner] a stay when his

unexhausted claims are plainly meritless.").

All of the claims in this section are claims for ineffective assistance of counsel. These

claims should not be "deemed exhausted" because they may still be able to be raised in state

court. *See Johnson v. Kirkpatrick*, No. 11 Civ. 1089(CM)(AJP), 2011 WL 3328643, at *12

(S.D.N.Y. Aug. 3, 2011) (noting that "most ineffective assistance of counsel claims . . . cannot

be raised on direct state appeal but rather must be made through a C.P.L. § 440 motion"); N.Y.

C.P.L. § 440.10(1) (stating that a motion to vacate a judgment may be made "[a]t any time after

the entry of a judgment").

As noted in Section V(A)(iii), *supra*, in *Strickland v. Washington*, 466 U.S. 668 (1984),

the Supreme Court set out a two-prong test for establishing a claim for ineffective assistance of

---

[23] The Second Circuit has explicitly declined to adopt the standard that a claim may only be dismissed pursuant to
28 U.S.C. § 2254(b)(2) if "it is 'perfectly clear' that there is not 'even a colorable federal claim.'" *Abuzaid v.
Mattox*, 726 F.3d 311, 322 n.8 (2d Cir. 2013) (citation omitted).

counsel.  In the context of guilty pleas, to meet the second, or "prejudice" requirement, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58-9 (1985).  This "but-for" test requires some "objective evidence" beyond a petitioner's own statement. *United States v. Gordon*, 156 F.3d 376, 381 (2d Cir. 1998) (citation omitted).  In addition, a petitioner who has pled guilty "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010) (citation omitted).

**ii.  Claim 10: Plea Counsel Was Ineffective Because He Informed Petitioner that PRS Was Another Name for Parole**

Petitioner's tenth claim is that his plea counsel was ineffective for informing Petitioner prior to his plea that PRS was another name for parole when "[PRS] differs from parole in significant ways." (Docket No. 2-1 at 25-27).

Petitioner is correct in noting that PRS differs from parole in certain ways. *See, e.g.*, *Rivera v. Annucci*, No. 13-CV-1239 (JG), 2015 WL 590185, at *1 (E.D.N.Y. Feb. 11, 2015) ("PRS is similar to parole, but 'a critical distinction is that the period of PRS is *added to* the maximum prison term imposed by the court, thus increasing the effective length of the sentence, while in contrast a released offender's time on parole is served after release from prison prior to the expiration of the maximum prison term imposed by the court.'") (citation omitted) (emphasis in original).  However, Petitioner has utterly failed to show that "counsel's representation fell below an objective standard of reasonableness" when counsel asserted that "PRS was another name for parole."  Petitioner also has failed to even argue that there is a reasonable probability that, had counsel informed him of the precise differences between PRS and parole, "he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

35

Moreover, Petitioner has failed to convince the Court that going to trial "would have been rational under the circumstances." *Padilla*, 559 U.S. at 372. Petitioner was indicted on five separate counts: (i) burglary in the second degree; (ii) petit larceny; (iii) criminal possession of stolen property in the fifth degree; (iv) criminal mischief in the fourth degree; and (v) possession of burglar's tools. (Ex. 1). If found guilty at trial, Petitioner would have faced an incarceration term of seven to fifteen years on the top charge of burglary in the second degree alone. (N.Y. Penal Law § 70.04(3)(b)). Plea counsel negotiated a deal in which Petitioner would plead guilty to burglary in the second degree in full satisfaction of all five charges of the indictment, and he negotiated an incarceration term of seven-and-a-half years—*i.e.* at the bottom end of the permissible range. Petitioner would have received the mandatory five-year term of PRS whether he went to trial or not. (*See* N.Y. Penal Law § 70.45(2)). Under these circumstances, going to trial would not have been rational, and Petitioner's claim that he received ineffective assistance of counsel on this ground is patently frivolous.

Therefore, I respectfully recommend that the Court dismiss claim 10.

### iii. Claim 12: Counsel Was Ineffective for Failing to Be Aware of the Sentencing Laws Subjecting Petitioner to a Mandatory Five-Year Term of PRS

Petitioner's twelfth claim is that his plea counsel was ineffective for failing to be aware of the sentencing laws subjecting Petitioner to a mandatory five-year term of PRS. (Docket No. 2-2 at 25).

This claim fails the second *Strickland* prong because Petitioner has failed to show that, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Numerous courts in the Second Circuit have come to the same conclusion in cases involving similar facts. *See, e.g.*, *Wilens v. Superintendent of Clinton Corr. Facility*, No. 11-CV-1938 (JFB), 2014 WL 28995, at *13 (E.D.N.Y. Dec. 31, 2013) (denying

ineffective assistance claim where "[n]othing in the record indicates that Petitioner would not have pled had he been informed of the mandatory PRS"); *Potter v. Green*, No. 04-CV-1343 (JS), 2009 WL 2242342, at *15 (E.D.N.Y. July 24, 2009) ("Petitioner's only evidence showing that 'but for' counsel's [failure to inform him of PRS], Petitioner would not have pled guilty is Petitioner's [self-serving statement]; however this statement alone is insufficient."); *Larweth v. Conway*, 493 F. Supp. 2d 662, 692 (W.D.N.Y. 2007) (holding that petitioner did not meet "the rigorous standard . . . of demonstrating that defense counsel's failure to inform him of the period of post-release supervision [was] objectively unreasonable and created a reasonable probability that, had he known of the post-release supervision, he would have chosen not to plead guilty and instead would have proceeded to trial.") (citation omitted).

Petitioner's only evidence showing that he would have rejected the plea if he had known about the additional mandatory term of PRS is his own self-serving statement that if he had "known about the additional components of [PRS], the defendant would not have agreed to the plea." (Docket No. 2 at 27). This assertion is insufficient to establish the second *Strickland* prong, and I find that Petitioner's claim is patently frivolous.

Therefore, I respectfully recommend that the Court dismiss claim 12.

**iv.  Claim 14: Plea Counsel Was Ineffective for Failing to Advise Petitioner that the Five-Year Term of PRS Would Be Imposed *in Addition* to His Sentence of Incarceration**

Petitioner's fourteenth claim is that his plea counsel was ineffective for failing to advise Petitioner that the five-year term of PRS would be imposed *in addition* to his seven-and-a-half sentence of incarceration. (Docket No. 2-2 at 28).

This claim is similar to Petitioner's tenth claim is that his plea counsel was ineffective for informing Petitioner prior to his plea that PRS was another name for parole and Petitioner's twelfth claim that his plea counsel was ineffective for failing to be aware of the sentencing laws

37

subjecting Petitioner to a mandatory five-year term of PRS. *See* Sections V(B)(ii) and V(B)(iii), *supra*. For the reasons previously stated, this claim is patently frivolous.

Therefore, I respectfully recommend that the Court dismiss claim 14.

## VI.  CLAIMS NOT COGNIZABLE ON FEDERAL HABEAS REVIEW

Four of Petitioner's claims (claims 3, 5, 8 and 9) should be dismissed because they raise claims that are not cognizable on federal habeas review.

### A.  Legal Standard

AEDPA constrains federal court review of state court determinations to those in which a person claims to be in custody in violation of "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). *See also Guzman v. Couture*, No. 99CIV11316(RMB)(HBP), 2003 WL 165746, at *11 (S.D.N.Y. Jan. 22, 2003) ("In order for a claim to be cognizable on federal habeas corpus review, it must challenge the legality of custody on the ground that it is 'in violation of the Constitution or laws or treaties of the United States.'") (quoting 28 U.S.C. § 2254(a)).

### B.  Claim 5: Petitioner's Sentence Violates N.Y. Penal Law § 70.04(3)(b)

Petitioner's fifth claim is that his sentence of fifteen years of incarceration plus five years of PRS violates N.Y. Penal Law § 70.04(3)(b), which states that the sentence for Petitioner's crime "must not exceed fifteen years." (Docket No. 2 at 33).

For the purpose of federal habeas review, "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) (citation omitted); *Alfini v. Lord*, 245 F. Supp. 2d 493, 502 (E.D.N.Y. 2003) ("It is well settled that an excessive sentence claim may not be raised as grounds for habeas corpus relief if the sentence is within the range prescribed by state law.")

(collecting cases); *McCalvin v. Senkowski*, 160 F. Supp. 2d 586, 589 (S.D.N.Y. 2001)

("Sentencing decisions are not cognizable on habeas corpus review unless the sentence imposed

falls outside the range prescribed by state law."); *Thomas v. Senkowski*, 968 F. Supp. 953, 956

(S.D.N.Y. 1997) (dismissing excessive sentence claim where the petitioner's sentence fell within

the range prescribed by state law).

     In this case, Petitioner pled guilty to burglary in the second degree, which is a Class C

felony. (Ex. 2 at 6, 18; N.Y. Penal Law § 140.25). New York law states that the sentence for a

Class C felony "must not exceed fifteen years." N.Y. Penal Law § 70.04(3)(b).  According to

Petitioner, his sentence totals 20 years (thereby exceeding the statutory maximum) because he

was sentenced to fifteen years of incarceration plus a five-year mandatory term of PRS. (Docket

No. 2-2 at 14).

     Petitioner's sentence fell within the range prescribed by state law.  "In 1998, the New

York Penal Law was amended to provide that individuals who committed felonies after

September 1, 1998, and who were sentenced to a determinate sentence of incarceration, would

also receive a *mandatory* term of post-release supervision." *Van Gorden v. Superintendent*, No.

9:03–CV–1350, 2007 WL 844901, at *10 (N.D.N.Y. Mar. 19, 2007) (emphasis in original)

(citing N.Y. Penal Law § 70.45(1)[24]).  This provision "is quite clear that the periods of post-

release supervision are *mandatory* and are *in addition to* the determinate sentence of

incarceration imposed." *Id.* (emphasis in original).  Therefore, Petitioner's sentence was within

the range prescribed by N.Y. Penal Law § 70.04(3)(b), and this claim is not cognizable for

habeas review.

---

[24] N.Y. Penal Law § 70.45(1) states in relevant part as follows: "Each determinate sentence also includes, as a part
thereof, *an additional period* of post-release supervision." *Id.* (emphasis added).

Therefore, I respectfully recommend that the Court deny claim 5.

**C.  Claim 3: Justice Perone Abused His Discretion By Increasing Petitioner's Sentence Solely Because Petitioner Exercised His Legal Right to Have a Suppression Hearing And By Increasing Petitioner's Sentence to Fifteen Years During the Sentencing *In Absentia***

Petitioner's third claim is that Justice Perone abused his discretion by increasing Petitioner's sentence from seven years to seven-and-a-half years solely because Petitioner exercised his legal right to have a suppression hearing, (Docket No. 2 at 19-20), and by increasing Petitioner's sentence from seven-and-a-half years to fifteen years at the sentencing *in absentia*, (Docket No. 2-1 at 34, 42).

A claim that a sentencing judge abused his or her discretion is generally not cognizable on federal habeas review. *See Rustici v. Philips*, 497 F. Supp. 2d 452, 469 (E.D.N.Y. 2007) ("[t]he assertion that a sentencing judge abused his or her discretion in sentencing is generally not a federal claim subject to review by a habeas court.") (citation omitted) (alteration in original); *Simmons v. McGinnis*, No. 04 Civ. 6150(PAC)(DF), 2006 WL 3746739, at *12 (S.D.N.Y. Dec. 19, 2006) ("To the extent Petitioner is claiming that the trial court abused its discretion in sentencing him to a particular prison term, such a claim is not reviewable"); *Brown v. Donnelly*, 371 F. Supp. 2d 332, 342 (W.D.N.Y. 2005) ("a petitioner's assertion that a sentencing judge abused his discretion in sentencing is generally not a federal claim subject to review by a habeas court."). To the extent Petitioner is claiming that Justice Perone abused his discretion in increasing his sentence, that is not a federal claim subject to review by a habeas court.

Therefore, I respectfully recommend that the Court deny claim 3.

**D. Claim 8: The State Trial Court Failed to Review His Plea Agreement *De Novo* and Failed to Hold an Evidentiary Hearing**

Petitioner's eighth claim is that the State Trial Court failed to review his plea agreement *de novo* and failed to hold an evidentiary hearing when considering his 440 Motions.[25] (Docket No. 2 at 8, Docket No. 2-1 at 13, *id.* at 43 – Docket No. 2-2 at 1).

Claims relating to alleged errors in a state's post-conviction procedures are not cognizable on federal habeas review. *See, e.g., Guzman*, 2003 WL 165746, at *13 ("[C]laims relat[ing] to alleged deficiencies in [the state's] post-conviction procedures, fail [ ] to present a viable habeas claim.") (citation omitted) (alterations in original); *Jones v. Duncan*, 162 F. Supp. 2d 204, 219 (S.D.N.Y. 2001) (Petitioner's "assertion that the failure to hold a hearing on his CPL §§ 440.10 and 330.30 newly discovered evidence motions violated due process is not cognizable on federal habeas review."); *Diaz v. Greiner*, 110 F. Supp. 2d 225, 235 (S.D.N.Y. 2000) ("Petitioner's unsupported assertion that the trial court denied his (third) CPL § 440.10 motion without a hearing violated due process is not cognizable on federal habeas review."); *Franza v. Stinson*, 58 F. Supp. 2d 124, 152 (S.D.N.Y. 1999) (Petitioner's "vague assertion that the trial court's denial of his CPL § 440.10 motion violated due process and equal protection is not cognizable on federal habeas review.").  Petitioner's claim is not cognizable on federal habeas review.

Therefore, I respectfully recommend that the Court dismiss claim 8.

---

[25] Respondent reads the Petition to assert a claim that "the appellate court, when considering his appeal from his resentencing, refused to review any issues dealing with petitioner's plea proceeding." (Opp. at 31).  The Court reads the Petition differently. (*See* Docket No. 2 at 8, Docket No. 2-1 at 13, *id.* at 43 – Docket No. 2-2 at 1).

**E. Claim 9: Justice Perone Improperly Participated in Plea Discussions with Counsel**

Petitioner's ninth claim is that Justice Perone improperly participated in plea discussions with counsel in violation of the standards of the ABA.[26] (Docket No. 2-2 at 18-19).

Nothing in the record suggests that Justice Perone acted improperly. (*See* Ex. 2). Moreover, a possible violation of the ABA standards is not cognizable on federal habeas review. *Cf. Bergman v. Lefkowitz*, 569 F.2d 705, 714 n.15 (2d Cir. 1977) ("a possible violation of the State Disciplinary Rule is not of constitutional magnitude so as to be cognizable in federal habeas.").

Therefore, I respectfully recommend that the Court dismiss claim 9.

## VII. CONCLUSION

The Court finds that all of Petitioner's fifteen claims of error should be dismissed. Five claims (claims 2, 4, 6, 11 and 15) are unexhausted but should be deemed exhausted and procedurally barred from review by this Court. One claim (claim 7) is exhausted but procedurally barred because the state court's decision on this claim constitutes an independent and adequate ground precluding this Court's review. Two claims (claims 1 and 13) are exhausted and were adjudicated on the merits by the state courts but should be denied by this Court under the AEDPA standard of review. Three claims (claims 10, 12 and 14) are

---

[26] Petitioner cites Rule 3.3(a), which is not relevant to his claim. The Court presumes he meant to cite Rule 3.3(d), which states as follows: "A judge should not ordinarily participate in plea negotiation discussions among the parties. Upon the request of the parties, a judge may be presented with a proposed plea agreement negotiated by the parties and may indicate whether the court would accept the terms as proposed and if relevant, indicate what sentence would be imposed. Discussions relating to plea negotiations at which the judge is present need not be recorded verbatim, so long as an appropriate record is made at the earliest opportunity. For good cause, the judge may order the record or transcript of any such discussions to be sealed." ABA Standards for Criminal Justice Pleas of Guilty Third Edition, http://www.americanbar.org/content/dam/aba/publications/criminal_justice_standards/pleas_guilty.authcheckdam.pdf.

unexhausted but should be denied as patently frivolous.  Four claims (claims 3, 5, 8 and 9) should be dismissed because they raise claims that are not cognizable on federal habeas review.

For the foregoing reasons, I conclude and respectfully recommend that this habeas petition be denied in its entirety.

## VIII.  NOTICE

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts, the parties shall have fourteen (14) days from the receipt of this Report and Recommendation to serve and file written objections.  If copies of this Report and Recommendation are served upon the parties by mail, the parties shall have seventeen (17) days from receipt of the same to file and serve written objections. *See* Fed. R. Civ. P. 6(d).  Objections and responses to objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Cathy Seibel at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same address.

Requests for extensions of time to file objections must be made to the Honorable Cathy Seibel and not to the undersigned.  Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be rendered. *See* 28 U.S.C. § 636(b)(1); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008).

Dated:   January 27, 2016
         White Plains, New York

RESPECTFULLY SUBMITTED,

JUDITH C. McCARTHY
United States Magistrate Judge

43

338 Fed.Appx. 61
This case was not selected for
publication in the Federal Reporter.
United States Court of Appeals,
Second Circuit.

Ivan BONNER, Petitioner-Appellee,

v.

Robert E. ERCOLE, Superintendent,
Respondent-Appellant.

No. 08-4841-pr.

|

July 21, 2009.

**Synopsis**

**Background:** Following affirmance of his conviction in state court for robbery in the second degree, 21 A.D.3d 1184, 802 N.Y.S.2d 263, state prisoner filed federal petition for writ of habeas corpus. The United States District Court for the Northern District of New York, James J. Singleton, Jr., J., 2008 WL 4031983, granted petition. State appealed.

**Holding:** The Court of Appeals held that prisoner was not entitled to habeas relief.

Vacated and remanded.

**\*61 UPON DUE CONSIDERATION** of the appeal from the United States District Court for the Northern District of New York (Singleton, J.) **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **VACATED AND REMANDED.**

**Attorneys and Law Firms**

Marjorie M. Smith, Piermont, N.Y., for Petitioner-Appellee.

Paul B. Lyons, Assistant Attorney General, Barbara D. Underwood, Solicitor General, Roseann B. MacKechnie, Deputy **\*62** Solicitor General for Criminal Matters, for Andrew M. Cuomo, Attorney General of the State of New York, New York, N.Y., for Respondent-Appellant.

PRESENT: GUIDO CALABRESI, PETER W. HALL, Circuit Judges, and WILLIAM K. SESSIONS, III, District Judge. *

**SUMMARY ORDER**

**\*\*1** Respondent-Appellant Robert E. Ercole, superintendent of the Green Haven Correctional Facility ("the State"), appeals from an August 25, 2008, order of the United States District Court for the Northern District of New York (Singleton, J.), granting Petitioner-Appellee Ivan Bonner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The District Court found that Bonner's guilty plea was not knowing, intelligent, and voluntary. Bonner v. Ercole, No. 9:07-cv00399-JKS, 2008 WL 4031983, 2008 U.S. Dist. Lexis 67622 (N.D.N.Y. Aug. 25, 2008). On appeal, the State challenges the District Court's grant of the writ. We assume the parties' familiarity with the facts of the case, its procedural history, and the scope of the issues on appeal.

We may only grant a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court if the state adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Because the Supreme Court has not considered the issue of whether a trial court's failure to inform a defendant of a mandatory term of supervised release makes the subsequent plea involuntary- and, indeed, has expressly reserved the very similar question of whether a trial court must inform a defendant of a mandatory parole requirement, Lane v. Williams, 455 U.S. 624, 625, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982)-we conclude that the state court has not "unreasonably applied clearly established Federal law." See Carey v. Musladin, 549 U.S. 70, 77, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006) (internal modifications omitted); see also Rodriguez v. Miller, 537 F.3d 102, 109 (2d Cir.2008).

Accordingly, the judgment of the District Court is VACATED and REMANDED for consideration of Bonner's remaining habeas claim.

**All Citations**

338 Fed.Appx. 61, 2009 WL 2171276

Footnotes

*      The Honorable William K. Sessions III, Chief Judge of the United States District Court for Vermont, sitting by designation.

---

Desrosiers v. Phillips, Not Reported in F.Supp.2d (2008)
Case 7:12-cv-04878-CS Document 24 Filed 01/28/16 Page 46 of 150
2008 WL 4469594

2008 WL 4469594
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court,
E.D. New York.

Petrix DESROSIERS, Petitioner,
v.
William PHILLIPS, Superintendent, Green
Haven Correctional Facility, Respondent.

No. 05-CV-2941 (CBA).
|
Oct. 3, 2008.

**Attorneys and Law Firms**

Jane Simkin Smith, Millbrook, NY, for Petitioner.

Ellen C. Abbot, Queens, NY, for Respondent.

*AMENDED MEMORANDUM AND ORDER*

AMON, District Judge.

**\*1** On April 25, 2005, petitioner Petrix Desrosiers filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In a Memorandum and Order dated September 26, 2006 (the "9/26/06 Order"), this Court denied the claims in his original petition, granted leave to file an amended petition, and appointed him counsel. In the amended petition, Desrosiers pursues two claims. First, he claims that he did not plead guilty knowingly, voluntarily, and intelligently, because he was not informed of the length of his post-release supervision ("PRS"). Second, he claims that the imposition of his period of PRS by the Department of Correctional Services ("DOCS") after sentencing, rather than by the judge at sentencing, violated Due Process. The parties briefed these issues and, on September 13, 2007, the Court issued an order (the "9/13/07 Order") dismissing the first claim on the ground that petitioner failed to exhaust it before filing his petition, and held that because he could not return to state court to do so, the claim had been procedurally defaulted. With respect to the second claim, the Court ordered further briefing on the issues of timeliness and exhaustion. The parties have briefed those issues, and, in addition, petitioner has moved for reconsideration of the portion of the Court's 9/13/07 Order that dismissed his first claim as procedurally

defaulted. For the reasons stated below, petitioner's motion for reconsideration is denied. The Court will defer entry of Judgment and stay this proceeding to permit petitioner to exhaust his Due Process claim.

**I. Background**

On February 13, 2003, petitioner pled guilty to one count of robbery in the Second Degree, in satisfaction of an indictment for three counts of Second Degree Murder, two counts of Second Degree Burglary, one count of Second Degree Criminal Possession of a Weapon, and one count of Fourth Degree Conspiracy. At his plea allocution, the court advised the petitioner that he would be subject to a period of post-release supervision, but did not specify its length. Petitioner indicated that he understood that he would be subjected to PRS. Petitioner was subsequently sentenced to a determinate term of twelve years imprisonment. However, PRS was not mentioned by the judge at sentencing. Sometime thereafter, DOCS may have administratively added a five-year period of PRS to petitioner's sentence. Neither this Court nor the petitioner have been provided with a definite confirmation that this has occurred nor any details regarding how and when this was effectuated.

After his sentencing, instead of filing a direct appeal, petitioner filed a *pro se* motion to vacate judgment pursuant to N.Y.C.P.L. § 440.10 in State Supreme Court. Therein, he claimed that his guilty plea was not entered knowingly and voluntarily because he was coerced into pleading guilty. In support of his claim, petitioner contended that he was advised that if he did not plead guilty-and subsequently lost at trial-he would be sentenced to 25 years imprisonment. He also claimed that he was not guilty, only confessed because he was beaten, and that one of the crime victims had informed the prosecutor of his innocence. His motion was denied, and leave to appeal this ruling to the Appellate Division was also denied.

**\*2** Thereafter, petitioner, with the assistance of counsel, filed a direct appeal in the form of a motion to reduce his sentence. He did so pursuant to Rule 670.12(c) of the Appellate Division, Second Department, which permits a criminal defendant's direct appeal to take the form of a motion where the only claim raised challenges the propriety or excessiveness of a sentence. In his appeal, petitioner claimed that his waiver of his right to file that appeal was not knowing, voluntary, or intelligent, and, as a result, the Appellate Division could consider whether or not his sentence was excessive. The state replied, arguing that petitioner's waiver

of his right to file an appeal was valid. In a decision dated October 25, 2004, the Appellate Division affirmed petitioner's sentence without opinion, and petitioner's subsequent motion for leave to appeal to the Court of Appeals was denied.

After losing on direct appeal, petitioner, proceeding *pro se,* filed another motion pursuant to section 440 in State Supreme Court, this time a motion to set aside his sentence pursuant to N.Y.C.P.L. § 440.20. Therein, petitioner raised arguments similar to those raised by counsel in his direct appeal. In a decision dated January 25, 2005, the court denied petitioner's 440.20 motion, and his application for leave to appeal was denied by the Appellate Division on April 15, 2005. Thereafter, petitioner moved, again *pro se,* for reargument of his 440.20 motion, and this motion was denied on November 3, 2005.

In his original *pro se* habeas petition, filed April 4, 2005 (before his motion for reargument regarding his 440.20 motion was filed), petitioner raised a single argument: that he plead guilty under duress imposed by the prosecutor and judge. On September 26, 2006, the Court dismissed the claim in the original petition, but granted leave to amend and assigned counsel to represent the petitioner. After the parties briefed the issues raised in the amended petition, the Court issued its September 13, 2007 order dismissing the involuntary plea claim but ordering further briefing on the Due Process claim regarding the administratively-imposed PRS. Those issues are now fully briefed.

## II. Discussion

### A. Motion for Reconsideration

Petitioner moves for reconsideration of the portion of the Court's 9/13/07 Order which dismisses the claim that his guilty plea was involuntary as procedurally barred. [1] He primarily argues that the Court improperly applied the procedural default rule articulated in *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), because the state courts never explicitly relied on CPL § 440.10(2)(c)-which the Court cited in its order-in rejecting petitioner's claims. Without such an explicit reliance, he argues that the state courts did not rely on an independent and adequate procedural basis to reject this claim, and that this Court therefore erred. Petitioner's argument misconstrues the purpose of the Court's citation to section 440.10(2)(c) and the underlying basis for its decision.

**\*3** Petitioner cites *Klein v. Harris,* 667 F.2d 274 (2d Cir.1981) in support of his argument. In *Klein,* the petitioner failed to file a direct appeal of his conviction. Rather, he filed a motion pursuant to N.Y. CPLR § 440.10, which the court denied on the merits. *Id.* at 281.He then filed a habeas petition in federal court, which the district court granted. On appeal, the Second Circuit first held that petitioner had exhausted his available state remedies, because although he did not directly appeal his conviction, he did present his claim, through his 440.10 motion and its appeal, to the highest state court available to review it. *Id* . at 282-84.Having determined that the petitioner's claim was exhausted, the court then moved on to the State's argument that the claims were barred for petitioner's failure to contemporaneously object and for his failure to raise them on direct appeal.*Id.* at 284.The court rejected this argument under *Wainwright* and the independent and adequate state law doctrine discussed therein. The court's decision rested on the fact that the underlying 440.10 court did not explicitly reject the petitioner's claim on procedural grounds-though it probably could have. The court concluded that under these circumstances the federal habeas court could not assume that the state court relied on an independent and adequate state law grounds for decision. *Id.* at 284-87.Accordingly, *Klein* stands for the proposition that a federal habeas court cannot rely on a state procedural default that was not explicitly relied on by the underlying state court to be an independent and adequate state law ground for decision under *Wainwright.*

Petitioner's argument and citation to *Klein* miss the mark. Nowhere in its 9/13/07 Order did the Court rely on the independent and adequate state law doctrine, and the Court is aware that it is inapplicable in this case. Rather, the Court relied on the equally well-settled but entirely distinct principle that "[i]f a claim has not been exhausted and the petitioner no longer has a state forum in which to raise the claim, the claim should be deemed exhausted but procedurally barred from habeas review."(9/13/07 Op. at 6.) Although sometimes couched in language similar to that employed in the independent and adequate state law context-specifically because both are often referred to as "procedural defaults"-this principle is simply a logical outgrowth of the exhaustion doctrine. It essentially provides that where the failure to exhaust becomes irreparable because the petitioner has lost his chance to avail himself of the proper state law forum, his claim for federal habeas relief is procedurally barred. *See St. Helen v. Senkowski,* 374 F.3d 181, 183-84 (2d Cir.2004) (federal claim was not presented to state courts and could no longer be raised on direct appeal or by collateral review

Desrosiers v. Phillips, Not Reported in F.Supp.2d (2008)
Case 7:12-cv-04878-CS Document 24 Filed 01/28/16 Page 48 of 150
2008 WL 4469594

such that it was deemed exhausted but procedurally barred from habeas review); *Ramirez v. Att'y Gen. of N.Y.,* 280 F.3d 87, 94 (2d Cir.2001) ("Even if a federal claim has not been preserved to the highest state court or preserved in lower state courts under state law, it will be deemed exhausted if it is, as a result, then procedurally barred under state law. Review of a procedurally barred claim in a federal court will, however, be subject to the cause and prejudice standard before reaching the merits."(internal citation omitted)); *Reyes v. Keane,* 118 F.3d 136, 139 (2d Cir.1997) ("For exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred."(internal quotations omitted) (quoting *Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991), which in turn quoted *Harris v. Reed,* 489 U.S. 255, 263 n. 9, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989))); *Bossett v. Walker,* 41 F.3d 825, 828-29 (2d Cir.1994); *McCormick v. Hunt,* 461 F.Supp.2d 104, 109-10 (W.D.N.Y.2006).

**\*4** The Supreme Court acknowledged the distinction between the two types of procedural defaults in *Harris.*The Court first added to the *Wainwright* jurisprudence, holding, in the context of the independent and adequate state law doctrine, that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar."*489 U.S. at 263.* However, the Court appended a footnote to that very sentence which illustrates the distinction at issue here:

> [The independent and adequate state law] rule necessarily applies only when a state court has been presented with the federal claim, as will usually be true given the requirement that a federal claimant exhaust state-court remedies before raising the claim in a federal habeas petition. Of course, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred. This case, however, does not involve an application of this exhaustion principle because petitioner did raise

his ineffective-assistance claim in state court.

489 U.S. 263 n. 9.

In further support of his argument, petitioner cites *Pratt v. Greiner,* 306 F.3d 1190 (2d Cir.2002) and *Bennett v. Artuz,* 199 F.3d 116, 121-23 (2d Cir.1999). These cases did not deal with the issue before this Court. Rather, these cases dealt with a different issue: namely, determination as to when a state collateral challenge is "properly filed" with respect to AEDPA's tolling provision. These cases do not undermine the applicable precedent that explicitly requires that a federal court determine whether or not the failure to exhaust can be cured.

The Court did not, as petitioner argues, rely on section 440.10(2)(c) to conclude that there was an independent and adequate state law basis on which to deny his claim. Rather, the Court cited section 440.10(2)(c) to demonstrate that petitioner's claim could no longer be heard in state court and thus was deemed exhausted but procedurally barred. This is routinely done by federal courts in this context. *See, e.g., St. Helen,* 374 F.3d at 183-84; *Reyes,* 118 F.3d at 139; *Bossett,* 41 F.3d at 828-29; *McCormick,* 461 F.Supp.2d at 110.

Accordingly, the Court's 9/13/07 Order rests on the initial conclusion that petitioner did not exhaust the claim that his plea was involuntary on the grounds that the judge did not inform him of the duration of his period of PRS at his plea allocution. In his motion for reconsideration, petitioner once again contests this conclusion. [2] By statute, a federal district court cannot grant a habeas petition brought by a state prisoner unless he first exhausts all available state remedies. *See*28 U.S.C. § 2254(b): *see also Coleman v. Thompson,* 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Ramirez,* 280 F.3d 94 ("Under 28 U.S.C. § 2254(b), applicants for habeas relief serving state sentences must first exhaust all state remedies."(citing *Grey,* 933 F.2d at 199))."State remedies are deemed exhausted when a petitioner has: (i) presented the federal constitutional claim asserted in the petition to the highest state court ... and (ii) informed that court (and lower courts) about the factual and legal basis for the federal claim."*Ramirez,* 280 F.3d at 94 (citing, among other cases, *Picard v. Connor,* 404 U.S. 270, 276-77, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)); *see also Daye v. Att'y Gen. of N.Y.,* 696 F.2d 186, 190 n. 3 (2d Cir.1982). This requires that a petitioner "alert the state court to the constitutional nature of a claim," but he need

not "refer to chapter and verse of the U.S. Constitution." *St. Helen,* 374 F.3d at 182 (internal quotations and alterations omitted). Thus, in order to have exhausted his federal claims, a petitioner must have "presented the substance" of his federal constitutional claim to the state courts. *Bossett,* 41 F.3d at 828. This serves to provide the state courts with a fair opportunity to resolve the federal constitutional issues before a state prisoner can proceed to federal court. *McCormick,* 461 F.Supp.2d at 108 (quoting *O'Sullivan v. Boerckel,* 526 U.S. 838, 844, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999)).

**\*5** Petitioner concedes that he did not present this claim to the state courts on direct appeal but argues that he did so in his subsequent 440.20 motion, citing the general duty to read a *pro se* litigant's papers liberally. He bases this argument on a few key additions to the brief submitted in support of the 440.20 motion that were not included in his brief on direct appeal. First, in the 440.20 motion, petitioner cited *People v. Goss,* 286 A.D.2d 180, 733 N.Y.S.2d 310 (App.Div.2001), a case in which the defendant successfully challenged his guilty plea on the basis that he had not been advised that he would be subject to PRS. [3] Second, he cited two other cases which stand for the more general proposition that a trial court has a duty to ensure that a defendant's guilty plea was entered knowingly and voluntarily, one federal and one state. [4] Because these citations were added to the 440.20 motion, petitioner argues that his claim was presented to the state courts and is therefore exhausted.

As the Court concluded in the 9/13/07 Order, petitioner did not exhaust his claim in state court. The Court concluded that the 440.20 motion was properly read by the state court as challenging only the legality of his sentence, and not the validity of his guilty plea. The Court reaffirms its holding in the 9/13/07 Order that these few citations in the context of petitioner's overall 440.20 motion-which made no explicit argument that his guilty plea was illegal and should be vacated by virtue of the failure of the judge to inform him of the length of the PRS-are insufficient to meet the standard for exhaustion set out above. This conclusion is reinforced by the fact that the motion itself was a motion pursuant to section 440.20, which can only challenge the legality of a sentence, and not section 440.10, which can be used to attack a judgment of conviction. Accordingly, the 440.20 court, in deciding the motion, construed petitioner's arguments as pertaining to his sentence. It asserted that the claims raised regarding the invalidity of petitioner's waiver were the same as those raised on the direct appeal. It is uncontested that on appeal the issue was the legality of the sentence. The 440.20 court wrote:

"To the extent that the defendant is alleging that *the sentence is somehow illegal* because the Court did not specifically mention the length of the term of post-release supervision, that claim is barred pursuant to C.P.L. § 440.20(2) since the merits of that application have been previously rejected by an appellate court." *People v. Desrosiers,* Ind. No. 3520/2000 (N.Y.Crim.Ct. Jan. 25, 2005) (emphasis added). Petitioner has made no showing that the 440.20 court-the only court that petitioner contends he presented this claim to-was given a fair opportunity to assess a claim regarding the constitutionality of his guilty plea.

Finally, as is explained above, the Court must consider whether or not it would be futile for petitioner to return to state court to cure this defect. The Court did so in the 9/13/07 Order, but will briefly review that conclusion here. While New York provides a mechanism for collateral review of a judgment of conviction-section 440.10-review is precluded in the event that "sufficient facts appear on the record with respect to the ground raised" such that it could have been raised on direct appeal. N.Y.C.P.L. § 440.10. Here, as is noted in the 9/13/07 Order, the record of his plea allocution plainly shows petitioner was told only that there would be a PRS period, not the length of such term. Accordingly, he knew all he needed to know in order to raise this issue on direct appeal. Further review pursuant to a 440.10 motion is precluded because this on the record claim could have been raised on appeal and was not.

**\*6** For the foregoing reasons, petitioner's claim that his plea was involuntary is "deemed exhausted" but is procedurally defaulted. As the Court explained in the 9/13/07 order, this default can be excused on a showing of cause and prejudice or a potential fundamental miscarriage of justice-neither of which are present here. Petitioner's motion for reconsideration did not challenge these conclusions. Accordingly, the motion for reconsideration is denied, and petitioner's claim that his guilty plea was involuntary is dismissed.

### B. Due Process Claim

The Court now turns to petitioner's claim that the administrative imposition of his period of PRS violated Due Process. In accord with the Court's 9/13/07 Order, the parties have briefed the issues of timeliness and exhaustion with respect to this claim, and those issue are now ripe for decision.

### 1. Timeliness

In the 9/13/07 Order, the Court observed that petitioner's Due Process claim appeared to be untimely, but noted that it would survive if it relates back to a timely filed claim (the validity of the plea claim), or if the predicate facts giving rise to the claim were undiscoverable to the petitioner until a time within one year of when the claim was brought. The Court addresses each issue in turn.

### a. Relation Back

The Federal Rules of Civil Procedure provide that a claim brought for the first time in an amended pleading "relates back" to the date of the original filing for statute of limitations purposes if "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."Fed.R.Civ.P. 15(c)(2); *see also Hiraldo v. United States,* No. 05 CV 0760, 2006 WL 1794775, at *3 (E.D.N.Y. June 7, 2006). This serves to ensure that "the original complaint gave the defendant fair notice of the newly alleged claims."*Fama v. Comm'r of Corr. Servs.,* 235 F.3d 804, 815 (2d Cir.2000).Rule 15(c) applies in the habeas context despite the fact that a habeas petition is not an ordinary civil action. *See Fama,* 235 F.3d at 814-16. Thus, the Due Process claim will be deemed timely if it relates back to the claim regarding the validity of the guilty plea.

The Supreme Court concluded it is not appropriate to define "conduct, transaction, or occurrence" more broadly in the habeas context than in ordinary civil context. *See Mayle v. Felix,* 545 U.S. 644, 657, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005); *Veal v. United States,* Nos. 01 Civ. 8033, 97 Cr. 544, 04 Civ. 5122, 2007 WL 3146925, at *4 (S.D.N.Y. Oct.9, 2007). In *Mayle,* the Court rejected the approach of both the Seventh and Ninth Circuits, which "define[d] those words to allow relation back of a claim first asserted in an amended petition, so long as the new claim stem[med] from the habeas petitioner's trial, conviction, or sentence."*Mayle,* 545 U.S. at 656. The Court criticized this approach, noting that "[u]nder that comprehensive definition, virtually any new claim introduced in an amended petition will relate back, for federal habeas claims, by their very nature, challenge the constitutionality of a conviction or sentence, and commonly attack proceedings anterior thereto."*Id.* at 656-57.The Court then adopted the more restrictive approach employed by several other circuits, which "allow[s] relation back [in the habeas context] only when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes."*Id.* at 657

(quoting *United States v. Craycraft,* 167 F.3d 451, 457 (8th Cir.1999)); *see also Veal,* 2007 WL 3146925 at *4; *Hiraldo,* 2006 WL 1794775 at *4.

**\*7** Where the underlying facts of the two claims occur at different times, relation back is generally inappropriate-even if the two claims involve some common factual nexus. For instance, in one of the examples given by the Supreme Court in *Mayle, In re Coastal Plains, Inc.,* 179 F.3d 197, 216 (5th Cir.1999), both the original complaint and the subsequent claim were linked to a creditor's alleged plan to destroy Coastal Plains. Nevertheless, the claims did not relate back, as one involved the creditor's attempt to interfere with business relations by attempting to sell Coastal to a third party and the other was a claim for failure of that creditor to return inventory to Coastal.[5] Even more instructive is another example cited by the *Mayle* Court, *Sierra Club v. Penfold,* 857 F.2d 1307, 1315-16 (9th Cir.1988). In *Penfold,* both claims challenged an agency regulation. However, there was no relation back because one claim challenged the manner in which the agency applied the regulation, and the other attacked the agency's conduct in adopting it. The court explained:

> [Plaintiff's] amendment goes beyond alleging a different theory of recovery. It alleges a new claim for relief. The original challenge based on BLM's "policy and practice" requires evidence showing how BLM conducts Notice mine review. The new claim alleging invalidity of the Notice regulations requires evidence of the procedures used in adopting the regulations. The original claim was premised on a theory of unlawful application of the five-acre rule. The new procedural challenge [plaintiff] attempted to add is based upon a theory of invalidity of the regulations as adopted. In short, the procedural challenge does not arise out of the same conduct or transaction. It arises out of BLM's conduct in adopting the regulations rather than BLM's "policy and practice" in Notice mine review.

*Id.* at 1316.Similarly, the Due Process claim, which arises from the fact that the state allegedly imposed the PRS term administratively, does not relate back to the validity of the plea claim, which arises from the fact that petitioner was not informed of the length of his PRS term at the time of his guilty plea, simply because the PRS term provides an underlying factual nexus.

Petitioner cites only one case, *Hiraldo,* in support of the proposition that the Due Process claim relates back to the

claim regarding the validity of his guilty plea. In *Hiraldo,* the original petition directly challenged the petitioner's guideline range and sentence under *Blakely v. Washington,* 542 U.S. 961, 125 S.Ct. 21, 159 L.Ed.2d 851 (2004).2006 WL 1794775, at *2. His subsequent claim was for ineffective assistance of counsel regarding the assistance he received in connection with his sentence and guideline range.*Id.* at *3. The court held that because the operative facts for both claims arose from his guideline calculation and sentencing, the ineffective assistance of counsel claim did relate back. *Id.* at *4.

**8** *Hiraldo* is distinguishable. There, both claims depended on details regarding the same two occurrences-the guideline range calculation and subsequent sentencing. Here, by contrast, the factual occurrences underlying the two respective claims take place at completely different times. The invalidity of plea claim arose on the record at the time of the plea allocution, while the Due Process claim arose at some later time when DOCS apparently administratively imposed the period of PRS. Thus, the factual predicates for these claims are not common, but rather are different in time and type. In sum, the Due Process claim does not relate back to the timely filed claim regarding the validity of the guilty plea.

### b. Discoverable Predicate Facts

The Due Process claim still may be timely if the petitioner could not reasonably have discovered the facts giving rise to the claim until within one year of when it was brought. AEDPA provides that the one-year limitation period shall run from the latest of four possible dates of accrual. *See*28 U.S.C. § 2244(d)(1). One of those possible dates of accrual is "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."*Id.*§ 2254(d)(1)(D). Thus, this provision "resets the limitations period's beginning date, moving it from the time when the conviction became final, to the later date on which the particular claim accrued."*See Wims v. United States,* 225 F.3d 186, 190 (2d Cir.2000) (internal citation omitted) (describing AEDPA's corresponding provision of 28 U.S.C. § 2255(4), which applies to federal, rather than state, habeas petitioners).

Here, the predicate fact in question is the date that DOCS imposed petitioner's PRS term.[6]The Due Process claim accrued when DOCS administratively imposed petitioner's sentence, assuming that petitioner could have immediately

discovered that fact through the exercise of due diligence.[7] As has been well-documented in petitioner's filings-and has not been meaningfully disputed-respondent has yet to admit that DOCS ever administratively imposed the period of PRS, despite requests for the appropriate records. To the contrary, respondent made representations in state appellate court that the sentencing judge had, in fact, imposed the PRS term. Although it is now apparent that a PRS term was imposed administratively, the Court will not charge petitioner with knowledge of a fact about which respondent has failed to provide accurate information. Moreover, even if petitioner were to be charged with knowledge of the administratively imposed PRS term as of the moment it occurred, respondent has not established that it was imposed more than one year prior to the date upon which the Due Process claim was first brought. Thus, pursuant to section 2244(d)(1)(D), petitioner's Due Process claim is timely.

### 2. Exhaustion

In its 9/13/07 Order, the Court observed that it is possible that petitioner's Due Process claim, if timely, remains unexhausted. As set forth above, a section 2254 petition generally cannot be granted unless the petitioner has exhausted all available state court remedies. Here, petitioner concedes that he never presented his Due Process claim to the New York state courts. This is not a situation where the claim would be deemed exhausted but procedurally barred since petitioner appears to have a procedural vehicle in the state proceedings where this claim can be raised; that is, a 440.20 motion. Under these circumstances, it is appropriate to stay the proceedings here to permit petitioner to raise this issue in state court. *Zarvela v. Artuz,* 254 F.3d 374 (2d Cir.2001) (establishing an exception to the limitations period for "mixed" habeas petitions including both exhausted and unexhausted claims). When such a stay is granted, it should be conditioned upon petitioner's raising the issue in the state court "within a brief interval, normally 30 days, after the stay is entered and returning to federal court within a similarly brief interval, normally 30 days after state court exhaustion is completed."*Id.* at 381.

**9** Petitioner argues that the Court should excuse and decide the merits of his due process claim since the circumstances here warrant an exception to the exhaustion requirement. The exhaustion requirement is subject to exceptions if it appears that "there is an absence of available State corrective process," or "circumstances exist that render such process ineffective to protect the rights of the applicant."28 U.S.C.

**Desrosiers v. Phillips, Not Reported in F.Supp.2d (2008)**
Case 7:12-cv-04878-CS Document 24 Filed 01/28/16 Page 52 of 150
2008 WL 4469594

§ 2254(b)(1)(B). Petitioner argues that this is the case here. In support of his argument, petitioner claims that although he could bring this claim before the New York courts in the form of a 440.20 motion, and indeed would likely prevail, such a procedure would be ineffective to protect petitioner's rights in this case because of the likelihood that, after entering an order vacating any DOCS-imposed PRS term, the court will impose its own PRS term, and that this would undermine the validity of the guilty plea. The Court fails to perceive how the existence of a remedy which would likely result in his obtaining the relief in state court that he seeks before this Court-the declaration that a DOCS-imposed PRS is a nullity-is ineffective to protect his rights. The possibility that thereafter the sentencing court may impose a PRS term does not render the state process ineffective. Accordingly, because the New York courts were not presented with an opportunity to address petitioner's Due Process claim, and because there exists a procedural vehicle for the claim to be presented to those courts, the claim is dismissed but the petition stayed. Petitioner has 30 days from the date of this order to bring the Due Process claim in state court, If he does not prevail on that claim in state court, he shall have 30 days from the date of the state's resolution of that claim to return to this Court.

### III. Conclusion

For the foregoing reasons, petitioner's motion for reconsideration is denied. His claim that his sentence violates Due Process because it was administratively imposed is dismissed but the petition is stayed to permit him to exhaust that claim. Because Desrosiers's petition is stayed, the Court hereby administratively closes the case until either of the parties hereto moves to restore the matter to the Court's calendar.

SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2008 WL 4469594

### Footnotes

1   The Court has the inherent power to reconsider and modify its interlocutory orders. *See United States v. LoRusso,* 695 F.2d 45, 53 (2d Cir.1982); *see also* Fed. R. Ci.v P. 54(b); E.D.N.Y. Local Rule 6.3.

2   The Court need not reconsider this conclusion, which has already been litigated and decided. *See Aramony v. United Way of Am.,* 254 F.3d 403, 410 (2d Cir.2001). However, it will address petitioner's renewed argument here to clarify and amplify its prior decision.

3   It is unclear whether *Goss* was decided on federal or state constitutional grounds, though it is worth noting that it cites mostly New York state cases.

4   The federal case cited is *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) and the state case is cited as *People v. Ford,* 86 N.Y.S.2d 394, 402-03.However, the citation to the latter is clearly incorrect, as a case entitled *In re Graves' Will* appears at that citation (as 86 N.Y.S.2d 382).

5   Similarly, it is now fairly well-established that ineffective assistance of counsel claims in the habeas context do not relate back to one another merely because they both involve counsel's allegedly deficient performance. *See Craycraft,* 167 F.3d 451, 457 (8th Cir.1999) (ineffective assistance claim for failure to file an appeal did not relate back to claims for failure to pursue a downward departure or failure to object to the type of drugs at issue); *Valerio v. Phillips,* No. 02-CV-903, 2007 WL 4191817, at *5-6 (W.D.N.Y. Nov. 21, 2007) (ineffective assistance claims premised on a conflict of interest and failure to advise regarding a plea offer do not relate back to claims premised on several allegations regarding counsel's performance at trial); *Veal,* 2007 WL 3146925 at *5 (new claim alleging ineffective assistance of counsel for failure to notify the defendant of a plea offer did not relate back to claims for failure to object to defendant's arrest warrant, conspiring with the prosecution, failing to move for dismissal of certain counts, and failing to object to a particular jury instruction).

6   As the Court noted in the 9/13/07 Order, the gravamen of this claim is a violation of the principle that it is the role of the judge, and not an administrative officer, to set a defendant's sentence.

7   If petitioner could not have immediately discovered that his PRS had been administratively imposed by the exercise of due diligence, accrual would have been further delayed.

---

**End of Document**
© 2016 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 112359
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Mark Wade GANTT, Petitioner,

v.

Daniel MARTUSCELLO, Superintendent,
Coxsackie Correctional Facility, Respondent.

No. 9:12–cv–657 (MAD/CFH).
|
Jan. 10, 2014.

**Attorneys and Law Firms**

Mark Wade Gantt, Elmira, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General of the State of
New York, Michelle Elaine Maerov, Esq., Assistant Attorney
General, of Counsel, Albany, NY, for Respondent.

**ORDER ADOPTING REPORT–
RECOMMENDATION AND ORDER**

MAE A. D'AGOSTINO, District Judge.

*1 On April 18, 2012, Petitioner, proceeding *pro se*,
filed a petition seeking habeas corpus relief pursuant to
28 U.S.C. § 2254. Dkt. No. 1. In his petition, Petitioner
claims (1) his guilty plea was not knowingly, intelligently,
and voluntarily made; (2) the prosecution presented perjured
testimony before the grand jury; (3) the prosecution withheld
exculpatory evidence; and (4) trial counsel was ineffective
in failing to inform him of the effects of his guilty plea. On
November 25, 2013, Magistrate Judge Christian F. Hummel
issued a Report–Recommendation and Order, recommending
that Petitioner's Petition for a Writ of Habeas Corpus be
denied. Dkt. No. 16 at 27 ("Report"). [1]

As noted in Magistrate Judge Hummel's Report, Petitioner
pled guilty to two counts of Burglary in the Second Degree
on April 18, 2008. The plea agreement also imposed a
provision that Petitioner would be sentenced as a second
violent felony offender for twelve years with five years
of supervised release. In addition, the prosecution sought
mandatory surcharges, fees associated with collection of a
DNA sample, waiver of a right to appeal and bring post-

conviction remedies, and an order of protection for the victim
of Petitioner's crimes.

Petitioner appeared for sentencing on July 10, 2008, and
sought to withdraw his guilty plea, which application was
denied over objection. Petitioner was sentenced to concurrent
and determinate prison terms of twelve years for each
burglary count, five years of post-release supervision, five
hundred dollars in restitution sought by the New York
State Crime Victims Board, a mandatory surcharge and fees
for a DNA sample, and an order of protection prohibiting
Petitioner from contacting the victim of his crimes.

Thereafter, Petitioner appealed his sentence to the Appellate
Division, Third Department. On May 27, 2009, that court
remitted the matter "to afford defendant the opportunity to
either withdraw his plea or accept the enhanced sentence of
restitution[,]" or accept "the sentence that was promised in the
plea agreement[.]" *People v. Gantt*, 63 A.D.3d 1379, 1380 (3d
Dept.2009) (citations omitted). On July 1, 2009, Petitioner
appeared for sentencing and again sought to withdraw his
guilty plea. Over objection, Petitioner was given the original
sentence without the restitution order.

On March 29, 2010, Petitioner again appealed to the
Appellate Division, Third Department, this time claiming
that: (1) his guilty plea was not intelligently, knowingly,
or voluntarily made; (2) the court failed to afford him
an opportunity to withdraw his guilty plea; and (3) he
received ineffective assistance of trial counsel. The Appellate
Division affirmed. *People v. Gantt*, 77 A.D.3d 988, 989 (3d
Dept.2010). Petitioner thereafter moved to reargue at the
Appellate Division and for leave to appeal to the Court of
Appeals, which motions were denied.

On November 5, 2010, Petitioner moved pursuant to New
York Criminal Procedure Law Section 440.10 to vacate
his judgment of conviction on the following grounds: (1)
the court relied on improper sentencing considerations; (2)
the prosecution made inflammatory remarks at sentencing;
(3) trial counsel was ineffective; (4) the guilty plea was
not knowingly, voluntarily, and intelligently made; and (5)
the court should have permitted him to withdraw his plea.
Petitioner's Section 440 motion was denied on December 27,
2010, and Petitioner thereafter sought leave to appeal from
the Appellate Division. On April 20, 2011, the Appellate
Division denied that application. Petitioner filed the instant
federal habeas petition on April 18, 2012.

**\*2** In a November 25, 2013, Report–Recommendation and Order, Magistrate Judge Christian F. Hummel recommended that the Court dismiss Petitioner's petition in its entirety. [2] Magistrate Judge Hummel correctly asserted that "[i]t is well-settled that before seeking habeas review, a petitioner must first exhaust all state remedies." Report at 9 (citing, *inter alia,* 28 U.S.C. § 2254(b), (c)). Magistrate Judge Hummel stated that to exhaust available state judicial remedies, "the petitioner must seek discretionary review where it is available at the highest state court and raise the same federal constitutional claims." *Id.* (citing *O'Sullivan v. Boerckel,* 526 U.S. 838, 847–48 (1999). Magistrate Judge Hummel concluded that Petitioner's first claim was exhausted, but because Petitioner's second and third "claims were never presented to the Appellate Division," they were not exhausted. *Id.* at 10–11. Magistrate Judge Hummel also concluded that Petitioner's fourth claim of ineffective assistance of counsel was unexhausted because "Gantt did not cite the Sixth Amendment or federal cases employing the relevant constitutional analysis" in either his second direct appeal or his Section 440 motion. *Id.* at 11.

Magistrate Judge Hummel then considered whether these claims "may still be 'deemed' exhausted by the habeas court 'if it is clear that the state court would hold the claim procedurally barred.' " *Id.* at 12 (citing, *inter alia, Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991)). Magistrate Judge Hummel concluded that because "Gantt may return to state court and raise the unexhausted claims concerning coerced testimony and non-disclosure of exculpatory materials in a second CPL § 440.10 motion[,]" those two claims remained unexhausted and not procedurally barred. *Id.* at 12 (citing CPL § 440.10(3)(c)). With respect to his ineffective assistance counsel claim, Magistrate Judge Hummel found that since Petitioner already had the one direct appeal to which he is entitled he could not now raise this claim in state court, and could not bring this claim in a second CPL Section 440 motion as the claim is based on the record, "the ineffective assistance claim is deemed exhausted but procedurally barred." *Id.* at 13.

Magistrate Judge Hummel next considered whether federal habeas review of Petitioner's claims was prohibited on the grounds that "the state court rested its judgment 'on a state law ground that is independent of the federal question and adequate to support the judgment.' " *Id.* at 13 (citing *Coleman v. Thompson,* 501 U.S. 722, 729 (1991)). The Report noted that, on direct appeal, the Appellate Division had held that Petitioner's involuntary plea and ineffective

assistance claims should have been raised in the first appeal, not on appeal from resentence. Finding no exception where a petitioner "shows cause for the default and actual prejudice, or a miscarriage of justice" were the claims not considered, Magistrate Judge Hummel ultimately concluded that these claims were procedurally defaulted due to an adequate and independent state law ground. *Id.* at 15–16.

**\*3** Ultimately, Magistrate Judge Hummel reviewed the merits of each of Petitioner's claims and found them to be meritless. Magistrate Judge Hummel first found that "the record clearly contradicts Gantt's challenge to his guilty plea" and that aspect of "[t]he County Court's decision was neither contrary to nor an unreasonable application of [ ] clearly established Federal law." *Id.* at 21. Second, Magistrate Judge Hummel concluded that "Gantt has neither established that [a witness's] grand jury testimony was actually and intentionally false nor [that the] prosecution knew or had reason to know that [the witness] was allegedly committing perjury." *Id.* at 22. Third, Magistrate Judge Hummel recommended that "Gantt's claim based on the non-disclosure of exculpatory evidence must fail" on the merits and, in any event, "Gantt waived the claims of Brady violations by pleading guilty[.]" *Id.* at 23. Finally, applying the "highly deferential" standard of review of ineffective assistance of counsel claims, Magistrate Judge Hummel found neither "deficient performance" by Petitioner's trial counsel, nor any indication "that but for trial counsel's deficient performance, [Petitioner] would not have entered such a favorable plea." *Id.* at 25 (citing *Strickland v. Washington,* 466 U.S. 668, 694 (1984). Neither party objected to Magistrate Judge Hummel's November 25, 2013, Report–Recommendation and Order.

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). When a party files general objections, however, the court reviews those recommendations for clear error. *See O'Diah v.. Mawhir,* No. 9:08–CV–322, 2011 WL 933846, \*1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

A litigant's failure to file objections to a magistrate judge's report and recommendation, even when that litigant is proceeding *pro se,* waives any challenge to the report on

appeal. *See Cephas v. Nash,* 328 F.3d 98, 107 (2d Cir.2003) (holding that, "[a]s a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point" (citation omitted)). A *pro se* litigant must be given notice of this rule; notice is sufficient if it informs the litigant that the failure to timely object will result in the waiver of further judicial review and cites pertinent statutory and civil rules authority. [3] *See Frank v. Johnson,* 958 F.2d 298, 299 (2d Cir.1992); *Small v. Sec 'y of Health and Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989) (holding that a *pro se* party's failure to object to a report and recommendation does not waive his right to appellate review unless the report explicitly states that failure to object will preclude appellate review and specifically cites 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and former 6(e) of the Federal Rules of Civil Procedure).

**\*4** Having reviewed the Report and the applicable law, the Court concludes that Magistrate Judge Hummel correctly recommended that the Court should dismiss Petitioner's petition in its entirety. Magistrate Judge Hummel properly determined that each of Petitioner's claims were either unexhausted or procedurally barred, and that they are otherwise without merit.

The Court notes that 28 U.S.C. § 2253(c)(1) provides, in relevant part, that, "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]" [4] 28 U.S.C. § 2553(c)(1). A court may only issue a Certificate of Appealability "if the applicant has made a substantial showing of the denial of a constitutional right."28 U.S.C. § 2553(c)(2).

Since Petitioner has failed to make such a showing with regard to any of his claims, the Court declines to issue a Certificate of Appealability in this matter. *See Hohn v. United States,* 524 U.S. 236, 239–40 (1998) (quotation omitted). Further, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962); *see also Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

After carefully considering Magistrate Judge Hummel's Report–Recommendation and Order, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Hummel's Report–Recommendation and Order is **ADOPTED** in its entirety for the reasons stated therein; and the Court further

**ORDERS** that Petitioner's petition for a writ of habeas corpus is **DENIED** and **DISMISSED;** and the Court further

**ORDERS** that no Certificate of Appealability shall be issued with respect to any of Petitioner's claims; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum–Decision and Order on all parties in accordance with the Local Rules; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Respondent's favor and close this case.

**IT IS SO ORDERED.**

### REPORT–RECOMMENDATION AND ORDER [1]

CHRISTIAN F. HUMMEL, United States Magistrate Judge.

Petitioner *pro se* Mark Wade Gantt ("Gantt") is currently an inmate in the custody of the New York State Department of Correctional and Community Supervision ("DOCCS") at Elmira Correctional Facility ("Elmira"). On April 18, 2008, Gantt pled guilty to two counts of burglary in the second-degree before the Clinton County Court. Dkt. Nos. 1–3 at 91–105, 10–1 at 1–17. Gantt was sentenced to, and is presently serving, a determinate term of twelve years with five years of post-release supervision. Dkt. No. 1–3 at 136–40.Gantt now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his guilty plea. Pet. (Dkt. No. 1). Respondent Martuscello, the superintendent at Coxsackie Correctional Facility, filed a response to Gantt's petition. Dkt. Nos. 8–10.Gantt filed a traverse in reply to Martuscello. Dkt. No. 13.For the reasons that follow, it is recommended that the petition be denied.

### I. Background

### A. Plea Proceedings

**\*5** On February 7, 2008, Gantt was arraigned on a twenty-one count indictment. Dkt. Nos. 1–3 at 86:2–11, 1–5 at 26–39. These criminal charges, in part, involved assault and sexual assault charges associated with June Garrow ("Garrow").Dkt. No. 1–5 at 26–39.The charges also included two burglaries which occurred at Garrow's residence, the first one on or about November 18, 2007 and the second between November 19, 2007 and November 27, 2007. [2] Dkt. No. 1–3 at 101:9–102:14.

On April 18, 2008, Gantt and trial counsel appeared before the Honorable Kevin K. Ryan in Clinton County Court ("County Court") to set a trial date. Dkt. No. 1–3 at 91:8–14.Prosecution presented a final plea offer wherein Gantt would plea guilty to two counts of burglary in the second-degree and sentenced as a second violent felony offender for twelve years of imprisonment with five years of parole release supervision. *Id.* at 91:19:–92:4.Prosecution also sought mandatory surcharges, fees associated with a DNA sample, waiver of his right to appeal and bring post-conviction remedies, and an order of protection for Garrow. *Id.* at 92:4–12.If Gantt declined to take the offer, the case would go to trial or Gantt would have to plea to the entire indictment. *Id.* at 92:12–18.After conferring with trial counsel, Gantt accepted the final plea offer. *Id.* at 92:20–95:1.

The County Court began a plea colloquy with Gantt. Dkt. No. 1–3 at 95:4.Under oath, Gantt acknowledged that he: (1) had sufficient time to consider the offer; (2) was satisfied with trial counsel's representation; (3) waived certain trial and appeal rights; (4) entered the plea freely and voluntarily; (5) understood the proposed plea agreement; and (6) could be subjected to an enhanced sentence after the County Court reviewed the pre-sentence investigation report. *Id.* at 95:4–102:14.Throughout the colloquy, the County Court permitted Gantt to confer with trial counsel on multiple occasions. *See, e.g., id.* at 95:20–7, 97:16–20, 99:10–20.Gantt took the plea. *Id.* at 102:10–14.

**B. First Sentencing Proceeding and Direct Appeal**

On July 10, 2008, Gantt and trial counsel appeared for sentencing. Dkt. No. 1–3 at 127–128:8.Trial counsel moved to withdraw Gantt's guilty plea, arguing that the plea was not knowingly and voluntarily made because Gantt did not have adequate time to consider the offer and entered the plea under duress. *Id.* at 129:9–21.However, trial counsel declined to support the motion because "all different variations and

permutations of possible outcomes of the various charges in this case and the sentence that attach thereto had been reviewed...."*Id.* at 129:23–130:24.

The County Court asked Gantt the reason for withdrawing his plea. Dkt. No. 1–3 at 131:6–11.Gantt argued that he could not have committed the burglaries because he was married to and lived with Garrow. Dkt. No. 9–1 at 62:14–63:8.Further, Gantt testified that he pled guilty because he was scared and confused, which was compounded by his post traumatic stress disorder and social anxiety. *Id.* at 63:11–16.Moreover, Gantt produced a letter to prosecution, purportedly sent to him by Garrow, which allegedly "exonerated" Gantt. Dkt. No. 1–3 at 132:14–16.Prosecution argued that based on markings on the envelope containing the letter, it was clear that the letter was not sent by Garrow. *Id.* at 132:16–20.This letter was not produced at sentencing. *Id.* at 132:20–133:6.Prosecution further argued that Garrow and Gantt were not married and noted how Gantt failed to produce a marriage license supporting his claim of marriage. *Id.* at 133:7–14.Prosecution stated she had spoken with Garrow, who maintained that she did not send a letter to Gantt. *Id.* at 133:14–16.

**\*6** Gantt submitted to this Court two letters and accompanying envelopes that Garrow had purportedly sent him. Dkt. No. 1–3 at 46–53, 56–71.While the sender addresses on both envelopes are not clearly shown, the postal codes for the sender addresses are identical to the recipient address's postal code.*Id.* at 45, 55.The letters contain statements indicating that Garrow and Gantt were married, Garrow pressed charges against Gantt in order to remain at a shelter, and Garrow desired to reunite with Gantt. *See generally id.* at 46–53, 56–71.Gantt further claims that Garrow provided false testimony against him out of fear of being incarcerated for possessing controlled substances. Traverse (Dkt. No. 13) at 3–8.

The County Court denied Gantt's unsupported motion to withdraw the plea.Dkt. No. 1–3 at 133:24–25.Trial counsel took exception to the ruling.*Id.* 134:20–22.Prosecution and trial counsel asked the County Court to abide by the plea agreement. *Id.* at 135:2–15, 135:22–24.Gantt declined to address the County Court prior to sentencing. *Id.* 136:5–9.The County Court noted Gantt's extensive criminal history and multiple parole release revocations, found charges of criminal contempt to be most "alarming," and the negotiated sentence to be fair in light of Gantt's criminal history. *Id.* at 136:17–138:24.The County Court sentenced Gantt to concurrent and determinate prison terms of twelve years for each burglary

count, five years of post-release supervision, five hundred dollars in restitution sought by the New York State Crime Victims Board, a mandatory surcharge and fees for a DNA sample, and an order of protection prohibiting Gantt from contacting Garrow. *Id.* at 139:3–22, 140:8–10.

On January 29, 2009, Gantt filed a counseled brief appealing his sentence.Dkt. No. 1–3 at 73–77.He argued that (1) the County Court erred in ordering him to pay restitution without first offering him the opportunity to withdraw his plea or accept the enhanced sentence and (2) his waiver of appeal does not preclude him from challenging the restitution order. *Id.* at 74.On May 27, 2009, the Appellate Division, Third Department, remitted the matter for the purpose of affording Gantt an opportunity to withdraw his plea or accept the restitution order, or the imposition of the sentence as promised in the plea agreement. *People v. Gantt,* 63 A.D.3d 1379, 1380 (3d Dep't 2009) (Dkt. No. 1–4 at 111–13).

### C. Resentencing Proceeding and Direct Appeal

On July 1, 2009, Gantt and trial counsel appeared before Judge Ryan for resentence. Dkt. No. 1–4 at 10–15.Gantt again moved to withdraw his plea.*Id.* at 11:15–13:4.The County Court imposed the original sentence without the restitution order. *Id.* at 14:7–23.Trial counsel took an exception.*Id.* at 14:24–15:3.

On March 29, 2010, Gantt filed a counseled brief appealing the resentence to the Appellate Division. Dkt. Nos. 1–4 at 96–104, 9–4 at 2–15. Gantt claimed that: (1) his guilty plea was not intelligently, knowingly, or voluntarily made; (2) the County Court failed to afford him an opportunity to withdraw his guilty plea after failing to abide by terms of the plea agreement; and (3) he received ineffective assistance of trial counsel. *Id.* at 99.On October 7, 2010, the Appellate Division affirmed the judgment, noting that their order remitting the matter did not require the County Court "to afford defendant the opportunity to withdraw his plea."*People v. Gantt,* 77 A.D.3d 988, 989 (3d Dep't 2010) (citing *People v. Schwickrath,* 40 A.D.3d 1218, 1219 (2007), *People v. Toms,* 2 A.D.3d 897, 898 (2003)). The Appellate Division rejected the remaining claims as they should have been raised on appeal from the original judgment of conviction, not on an appeal from resentencing. *Id.* (citing *People v. Ryder,* 239 A.D.2d 364, 365 (1997), lv. *denied,*90 N.Y.2d 910 (1997), *People v. Cahill,* 190 A.D.2d 744, 744–45 (1993), lv. *denied,*81 N.Y.2d 883 (1993), *People v. Foster,* 42 A.D.2d 801, 801 (1973)).

*7  On October 29, 2010, Gantt filed a counseled motion in the Appellate Division to reargue the appeal and for leave to appeal to the New York Court of Appeals ("Court of Appeals").Dkt. No. 9–8.On January 10, 2011, the Appellate Division denied that motion. Dkt. No. 9–10.

### D. Motion to Vacate Judgment of Conviction

On November 5, 2010, Gantt, proceeding *pro se,* moved to vacate his judgment of conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10.Dkt. No. 1–6 at 5–43.Gantt argued that: (1) the County Court relied on improper sentencing considerations; (2) prosecution made inflammatory remarks at sentencing; (3) trial counsel was ineffective; (4) the guilty plea was not knowingly, voluntarily, and intelligently made; and (5) the County Court should have permitted him to withdraw his plea. *Id.* at 22–43.

On December 27, 2010, the County Court denied Gantt's CPL § 440.10 motion.Dkt. No. 1–6 at 95–98.Without addressing the improper sentence and prosecutorial misconduct claims, the County Court reasoned that it was required to deny the motion because Gantt's leave application to appeal to the Court of Appeals was still pending. *Id.* at 96–97 (citing CPL § 440.10(2)(b), which states in part, "the court must deny a motion to vacate a judgment when ... the judgment is, at the time of the motion, appealable or pending on appeal, and sufficient facts appear on the record with respect to the ground or issued raised upon the motion to permit adequate review...."). Furthermore, the County Court held that Gantt's claims were without merit. *Id.* at 97–98.

On February 22, 2011, Gantt sought leave to appeal the CPL § 440.10 motion to the Appellate Division. Dkt. No. 9–15.On April 20, 2011, the Appellate Division denied that leave application. Dkt. No. 9–17.

### E. Petition Before the Court

By petition for writ of habeas corpus dated April 18, 2012, [3] Gantt contends that: (1) his guilty plea was not knowingly, intelligently, and voluntarily made; (2) prosecution presented perjured testimony before the grand jury; (3) prosecution withheld exculpatory evidence; and (4) trial counsel was ineffective in failing to inform him of the effects of the plea.

Gantt v. Martuscello, Slip Copy (2014)
2014 WL 112359

Pet. at 9–10. [4]  With respect to the second claim, Gantt alleged that Garrow's testimony was false and coerced. *Id.* at 9. As for the third claim, Gantt alleged that prosecution withheld from him a document showing that he was residing with Garrow. *Id.* at 10.This document lists a number of addresses associated with the following names: Mark Wade Gantt; Mark Ganti; Mark Lawrence Gant; Mark W Grantt; Mark Wade Gant; Mark Gauft; Mark L Gaut; Mark W Gantt; and Mark Wade Gaint. Dkt. No. 1–3 at 6–7.

## II. Exhaustion [5]

It is well-settled that before seeking habeas review, a petitioner must first exhaust all state remedies. 28 U.S.C. § 2254(b), (c); *Shabazz v. Artuz,* 336 F.3d 154, 160 (2d Cir.2003) (quoting *Aparicio v. Artuz,* 269 F.3d 78, 89 (2d Cir.2001)). Specifically, 28 U.S.C. § 2254(b)(1)(A) & (B) directs that

**\*8**  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B) (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

*Id.*

The exhaustion requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights."*Coleman v. Thompson,* 501 U.S. 722, 731 (1991). Thus, pursuant to § 2254(b)(1)(A), "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."*O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). State remedies are *"properly* exhausted" when the petitioner has "fairly presented" to the state court, *O'Sullivan,* 526 U.S. at 848,"both the factual and legal premises of the claim he asserts in federal court."*Daye v. Attorney General of New York,* 696 F.2d 186, 191 (2d Cir.1982) (en banc) (citations

omitted). The petitioner may fairly present the constitutional nature of his claim by

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, [or] (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Id.* at 194.In addition, the petitioner must seek discretionary review where it is available at the highest state court and raise the same federal constitutional claims. *See O'Sullivan,* 526 U.S. at 847–48; *Brown v. Senkowski,* 152 F. App'x 15, 17 (2d Cir.2005). The petitioner bears the burden of proving exhaustion. *Colon v. Johnson,* 19 F.Supp.2d 112, 119–20 (S.D.N.Y.1998) (citations omitted).

In this case, the petition contains exhausted and unexhausted claims. Gantt exhausted his first claim of an involuntary plea. Gantt contends that his plea was invalid because he did not understand the terms and consequences of the plea. Pet. at 9. This claim was raised in the second direct appeal with citation to *Boykin v. Alabama,* 395 U.S. 238 (1969), which discusses the voluntary and knowing requirements of a valid plea. Dkt. No. 1–4 at 102.Gantt further sought from the Appellate Division, reargument or leave to appeal to the Court of Appeals on this claim, which was denied. Dkt. No. 9–8 at 3. Gantt could not appeal the Appellate Division's denial of leave to appeal."New York Criminal Procedure Law § 450.90 sets forth the instances in which appeals to the Court of Appeals are authorized. New York courts have held that there is no statutory authority in ... providing that Appellate Division denials of leave to appeal are reviewable by the Court of Appeals."*Walker v. Graham,* 10–CV–5558 (PKC), 2013 WL 3338683, at \*4 (E.D .N.Y. July 2, 2013) (citations omitted). Therefore, this claim has been exhausted.

**\*9**  The second and third claims are not exhausted. Gantt claims that prosecution allowed Garrow to testify falsely before the grand jury and withheld exculpatory evidence from trial counsel. These claims were never presented to the Appellate Division. Thus, these claims are unexhausted.

Gantt's fourth claim of ineffective assistance of trial counsel is unexhausted. Gantt contends that trial counsel should have explained to him the terms and effects of the plea. Pet. at 10. Gantt raised this claim in his second direct appeal and a CPL § 400 .10 motion. Dkt. Nos. 9–4 at 12–14, 9–11 at 25–26. However, in doing so, Gantt did not cite the Sixth Amendment or federal cases employing the relevant constitutional analysis. Rather, Gantt relied on state cases that do not employ a constitutional analysis in like fact situations. *See* Dkt. Nos. 9–4 at 12–13 (citing *People v. Bryant,* 180 A.D.2d 874 (3d Dep't 1992) (lacking discussion of a federal basis for a claim of ineffective assistance of counsel); *People v. Britt,* 200 A.D.2d 401 (1st Dep't 1994) (same), 9–11 at 25 (citing the same)). Gantt couched this claim solely in state law terms, failing to raise it in federal constitutional terms. *Daye,* 696 F.2d at 194; see also *Cornell v. Kirkpatrick,* 665 F.3d 369, 376 (2d Cir.2011) (citing *Baldwin v. Reese,* 541 U.S. 27, 32–34 (2004)) ("[M]ere mention of 'ineffective assistance of counsel' in a filing in the Appellate Division, without more, [is] insufficient to alert the New York courts to the possible federal basis of that claim."). Thus, the ineffective assistance claim is unexhausted.

A claim that was not fairly presented to the state courts and does not satisfy the requirements of § 2254(b)(1) may still be "deemed" exhausted by the habeas court "if it is clear that the state court would hold the claim procedurally barred." *Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991) (collecting cases); *Aparicio,* 269 F.3d at 90 ("When a claim has never been presented to a state court, a federal court may theoretically find that there is an 'absence of available State corrective process' under § 2254(b)(1)(B)(i) if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile."). Here, Gantt may return to state court and raise the unexhausted claims concerning coerced testimony and non-disclosure of exculpatory materials in a second CPL § 440.10 motion because those claims appear to fall outside the record. *See* CPL § 440.10(3)(c) ("[T]he court may deny a motion to vacate a judgment when ... [u]pon a previous motion made pursuant to this section, the defendant was in a position adequately to raise the ground or issue underlying the present motion but did not do so."(emphasis added)). Accordingly, these two claims remain unexhausted and not procedurally barred.

As for Gantt's ineffective assistance claim, he cannot now raise it in state court because he already had one direct appeal to which he is entitled. *Grey v. Hoke,* 933 F.2d 117, 120

(1991) (citing N .Y. COURT RULES § 500.10(a)). Gantt cannot bring this claim in a second CPL § 400.10 motion because the claim is based on the record. CPL § 440.10(2)(b)). As such, the ineffective assistance claim is deemed exhausted but procedurally barred. *Ramirez v. Attorney General of State of New York,* 280 F.3d 87, 94 (2d Cir.2001).

**\*10** Accordingly, Gantt's involuntary plea claim is exhausted, the claims based on coerced testimony and non-disclosure of exculpatory materials are unexhausted, and the ineffective assistance claim is unexhausted, deemed exhausted, and procedurally barred.

### III. Independent and Adequate State Law Ground

Federal habeas review of a question of federal law decided by a state court is prohibited if the state court rested its judgment "on a state law ground that is independent of the federal question and adequate to support the judgment."*Coleman,* 501 U.S. at 729 (citations omitted) (noting that federal court resolution of the federal issue would merely be advisory where the state judgment is supported by independent and adequate state grounds); see also *Harris v. Reed,* 489 U.S. 255, 261–62 (1989); *Cotto v. Herbert,* 331 F.3d 217, 238 (2d Cir.2003); *Garcia v. Lewis,* 188 F.3d 71, 76 (2d Cir.1999); *Levine v. Comm'r of Corr. Servs.,* 44 F.3d 121, 126 (2d Cir.1995)."This rule applies whether the state law ground is substantive or procedural."*Coleman,* 501 U.S. at 729 (citation omitted)."Because it can be difficult to determine if the state law discussion is truly an independent basis for decision or merely a passing reference, ... such reliance on state law must be clear from the face of the opinion."*Fama v. Comm'r of Corr. Servs.,* 235 F.3d 804, 809 (2d Cir.2000) (internal quotation marks omitted) (citing *Coleman,* 501 U.S. at 732, 735.) Thus, the mere existence of a state procedural default is not enough, as the Supreme Court explained,

the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case. Moreover, we will not assume that a state-court decision rests on adequate and independent state grounds when the state court decision fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any

possible state law ground is not clear from the face of the opinion.

*Caldwell v. Mississippi,* 472 U.S. 320, 327 (1985) (internal quotation marks and citations omitted).

In addition to being "independent," the state procedural bar must also be "adequate." *Cotto,* 331 F.3d at 239. Adequacy requires a state procedural ground that is "strictly or regularly followed." *Johnson v. Mississippi,* 486 U.S. 578, 587 (1988) (citations omitted). A violation of such "firmly established and regularly followed" state rules would ordinarily be adequate to bar federal review. *Cotto,* 331 F.3d at 239–40 (internal quotation marks omitted). In an "exceptional case[ ] in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question[,]" the court considers three guideposts in determining whether a procedural bar is adequate to preclude federal review of claims raised in the petition:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

**\*11** *Id.* at 240. A claim that is procedurally defaulted due to an adequate and independent state law ground may also avoid the procedural bar if the petitioner shows cause for the default and actual prejudice, or a miscarriage of justice will result if the claims are not considered. *Coleman,* 501 U.S. at 750; *DiGuglielmo,* 366 F.3d at 135.

In this case, Gantt's involuntary plea and ineffective assistance claims were raised on appeal from resentence and in a § 440.10 motion. In the direct appeal, the Appellate Division held that these claims should have been raised on the first appeal, not on an appeal from resentencing. The Appellate Division cited to three state appellate cases, all of which relied on state case law. *See People v. Ryder,* 239

A.D.2d 364, 365 (1997), lv. *denied,* 90 N.Y.2d 910 (1997) ("Alleged errors committed at the trial may not be raised on an appeal from a resentence, regardless of whether or not they were raised on the appeal from the original judgment.") (citations omitted); *People v. Cahill,* 190 A.D.2d 744, 744–45 (1993), lv. *denied,* 81 N.Y.2d 883 (1993) (same); *People v. Foster,* 42 A.D.2d 801, 801 (1973) (same); *see also People v. Williams,* 6 N.Y.2d 193, 196 (1959) (holding it is a "settled rule that a defendant may not procure a review of the original judgment of conviction by appeal from an order or judgment of resentence."). In the § 440.10 motion, the County Court denied the claim because it was a record-based claim that could only be raised on direct appeal. *McCormick v. Morrisey,* 770 F.Supp.2d 556, 563 (W.D.N.Y.2011) (citation omitted) (holding state court's reliance on § 440.10(2)(b) to deny an ineffective assistance claim was independent and adequate state law ground).

Moreover, the guideposts indicate that reliance on procedural default is appropriate. First, the Appellate Division relied on Gantt's failure to raise his claim in the original appeal. Similarly, the County Court expressly relied on § 440.10(2)(b). Second, New York requires compliance with these procedural rules. *See Ryder,* 239 A.D.2d at 365; *Cahill,* 190 A.D.2d at 744–45; *Foster,* 42 A.D.2d at 801; *Williams,* 6 N.Y.2d at 196; see also *People v. Williams,* 59 A.D.3d 172 (1st Dep't 2012) ("The court was correct in summarily denying the C.P.L. § 440.10 motion since sufficient facts appear on the record on the direct appeal to permit our review") (citing C.P.L. § 440.10(2)(b)). Finally, Gantt omitted this claim entirely from his original appeal and raised it in his appeal from the resentence and in a C.P.L. § 440.10 motion; thus, failing to substantially comply with the state procedural rules. Accordingly, Gantt's involuntary plea claim is procedurally defaulted.

As for cause and prejudice or a miscarriage of justice, neither is present in the record. Ineffective assistance of counsel may constitute cause and to successfully allege it, the petitioner must raise it as a separate and meritorious claim. *Edwards v. Carpenter,* 529 U.S. 446, 451–52 (2000). Even though Gantt raised ineffective assistance of trial counsel as a separate claim, as discussed *infra,* he has failed to demonstrate that the claim is meritorious. Thus, Gantt has failed to establish cause for overcoming the procedural bar. Because cause is not established, the Court does not need to reach the inquiry on prejudice. *Horton v. Ercole,* 557 F.Supp.2d 308, 323 (N.D.N.Y.2008) (citations omitted). As for the fundamental miscarriage of justice, Gantt does not

allege new evidence tending to establish his actual innocence. While Gantt argues that Garrow's letters show his actual innocence, as discussed *infra,* such a contention is without merit. Therefore, Gantt's involuntary plea and ineffective assistance claims are procedurally defaulted.

## IV. Mixed Petition

**\*12** A habeas petition containing both exhausted and unexhausted claims is a "mixed" petition. *Rhines v. Weber,* 544 U.S. 269, 271 (2005)."An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."28 U.S.C. § 2254(b)(2). A district court confronted with a mixed petition has discretionary power to dismiss it in its entirety, or "stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims."*Rhines,* 544 U.S. at 275. The stay-and-abeyance procedure is available only when the petitioner's failure to exhaust his claims was based on good cause.*Id.* at 277.However, even if good cause exists, granting a stay would be an abuse of discretion if the unexhausted claims are plainly meritless. *Id.* (citation omitted). Here, Gantt has not provided good cause for his failure to exhaust certain claims. Accordingly, this Court will review the merits of Gantt's claims.

## V. Merits

### A. Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996) ("AEDPA"), a federal court may grant a writ of habeas corpus only if the state court's adjudication on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Williams v. Taylor,* 529 U.S. 362, 412 (2000); *Hawkins v. Costello,* 460 F.3d 238, 242 (2d Cir.2006); *DeBerry v. Portuondo,* 403 F.3d 57, 66 (2d Cir.2005).

The Supreme Court has given independent meaning to the "contrary to" and "unreasonable application" clauses in § 2254(d)(1).*Williams,* 529 U.S. at 405. "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."*Id.* at 412–13.As for the "unreasonable application" clause, a writ may be granted if "the state court's application of clearly established federal law was objectively unreasonable."*Id.* at 409, 413."[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law."*Id.* at 410.In addition, the statutory phrase "clearly established Federal law ... refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions...."*Id.* at 412 (internal citations omitted).

The petitioner bears the burden of proving, by a preponderance of the evidence, that "he is in custody in violation of the Constitution or laws or treaties of the United States."28 U.S.C. § 2254(a); *see also Smalls v. Batista,* 191 F.3d 272, 278 (2d Cir.1999); *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir.1997). Further, when evaluating a habeas petition, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."28 U.S.C. § 2254(e)(1); *DeBerry,* 403 F.3d at 66.

**\*13** On the other hand, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo.*"*Dolphy v. Mantello,* 552 F.3d 236, 238 (2d Cir.2009) (quoting *Spears v. Greiner,* 459 F.3d 200, 203 (2d Cir.2006)). Furthermore, "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."*Harrington v. Richter,* 131 S.Ct. 770, 784 (2011). Because Gantt's claims based on prosecutorial misconduct were never adjudicated on their merits, the Court reviews the merits of those claims *de novo.*

## B. Guilty Plea

The ultimate question of whether a guilty plea was knowing and voluntary is a question of federal law. *See Marshall v. Lonberger,* 459 U.S. 422, 431 (1983). It is well settled that "[t]he longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant ."* *Hill v. Lockhart,* 474 U.S. 52, 56 (1985) (internal quotation marks and citations omitted). A plea of guilty is considered voluntary when entered by one fully aware of the direct consequences of the plea. *Bousley v. United States.,* 523 U.S. 614, 618–19 (1998) (quoting *Brady v. United States,* 397 U.S. 742, 748–57 (1970)); *see also Miller v. Angliker,* 848 F.2d 1312, 1320 (2d Cir.1988) ("[A plea] is deemed 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally") (citations omitted). A plea of guilty is intelligent if the defendant is: (1) advised by competent counsel; (2) in control of his mental faculties; and (3) made aware of the nature of the charge against him.*Bousley,* 523 U.S. at 618–19;*see also Miller,* 848 F.2d at 1320 ("[A] plea is deemed 'intelligent' if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way.") (citations omitted). Thus, a guilty plea is knowingly, intelligently, and voluntarily entered, when the court has advised the defendant of the consequences of the plea and conducted a sufficient inquiry to assure itself that defendant plead guilty because he was actually guilty.

In this case, the County Court found that the record and plea allocution established that Gantt's plea was both knowing and voluntary. During the plea colloquy, Gantt waived certain rights in exchange for a plea. On several occasions, the County Court granted Gantt an opportunity to confer with trial counsel before answering the County Court. Gantt's statements indicated that he understood the ramifications of pleading guilty and the waiver of certain rights, was satisfied with trial counsel's representation, and had sufficient time to consider the final plea offer. Gantt also stated that he understood he may be subjected to a more severe sentence after the County Court reviewed a pre-sentence report and he was subjected to enhance sentencing for future felony convictions.

**\*14** Gantt contends the state courts unreasonably applied the above stated Supreme Court precedent because he did not understand the terms and consequences of the guilty plea. However, the record is devoid of any evidence substantiating such a claim. Gantt was made aware that he was to receive twelve years of imprisonment with five years of supervised release, a sentence that could be enhanced after the County Court reviewed a pre-sentence report. To the extent Gantt contends he was unaware that restitution payment was part of the plea, this claim is mooted by the resentencing proceeding.

Moreover, were Gantt to argue that he received faulty information with regard to the plea offer, Gantt must show that he was unaware of sentencing possibilities and receipt of accurate information would have made a difference in his decision to enter a plea. *Williams v. Smith,* 591 F.2d 169, 172 (2d Cir.), *cert. denied,*442 U.S. 920 (1979) (citation omitted). Here, Gantt makes no assertions as to what faulty information was conveyed to him nor how such information would have changed his decision to enter a plea. Gantt acknowledged that prosecution had explained the plea offer and Gantt took the plea. While at one point Gantt indicated his confusion with the terms of the plea by stating, "I understand it but I don't understand," the County Court allowed him to confer with trial counsel. Dkt. No. 1–3 at 95:14–96:10.Gantt then advised the court he understood the terms and wished to take the plea.*Id.* In short, the record clearly contradicts Gantt's challenge to his guilty plea. Gantt's plea was knowing, voluntary and intelligent. The County Court's decision was neither contrary to nor an unreasonable application of the clearly established Federal law as discussed above.

Accordingly, Gantt's petition on this claim should be denied.

## C. Perjured Testimony

It is well-settled that alleged deficiencies or errors in state grand jury proceedings are generally not cognizable on habeas corpus review. *Davis v. Mantello,* 42 F. App'x 488, 490 (2d Cir.2002) (citing inter alia *Lopez v. Riley,* 865 F.2d 30, 32 (2d Cir.1989) ("If federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are a *fortiori* foreclosed in a collateral attack brought in a federal court."))."To establish prosecutorial misconduct premised upon the presentation of perjury, [petitioner] must first establish that perjury was committed; i.e. that the testimony was 'actually, and intentionally, false."

*Gibson v. Artus,* No. 04–CV–820 (LEK), 2008 WL 9434482, at *14 (N.D.N.Y. Mar. 21, 2008) (collecting cases). A petitioner "must also establish that 'the prosecution knew, or should have known, of the perjury." *Id.* (citation omitted).

Here, Gantt has neither established that Garrow's grand jury testimony was actually and intentionally false nor prosecution knew or had reason to know that Garrow was allegedly committing perjury. First, Gantt does not specify what portion of Garrow's grand jury testimony was false. Second, the record evidence gives no indication that the letters submitted to the Court allegedly exonerating Gantt were in fact produced by Garrow. Third, even assuming those letters were from Garrow to Gantt, their contents do not exonerate Gantt. At best, Garrow allegedly expressed sorrow that Gantt's sentence was more severe than she had expected. *See generally,*Dkt. No. 1–3 at 55–71.In fact, the letters indicate that Garrow was staying at a shelter because Gantt had assaulted her. *Id.* Given Gantt's failure to show that Garrow has provided perjured testimony, Gantt also failed to establish that the prosecution knew or should have known of the alleged perjury.

**\*15** Accordingly, Gantt's petition on this claim should be denied.

### D. Brady Violation

"The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment."*Brady v. Maryland,* 373 U.S. 83, 87 (1963); *see also Kyles v. Whitley,* 514 U.S. 419, 431 (1995)."The government's obligation to make such disclosures is pertinent not only to an accused's preparation for trial but also to his determination of whether or not to plead guilty. The defendant is entitled to make that decision with full awareness of favorable material evidence known to the government."*Hill v. West,* 599 F.Supp.2d 371, 379 (W.D.N.Y.2009) (citation omitted)."It is well settled that evidence 'is not considered to have been suppressed within the meaning of the *Brady* doctrine if the defendant or his attorney either knew, or should have known of the essential facts permitting him to take advantage of [that] evidence.' " *United States. v. Torres,* 129 F.3d 710, 717 (2d Cir.1997) (quoting *United States v. Gonzalez,* 110 F.3d 936, 944 (2d Cir.1997)); *see also Leka v. Portuondo,* 257 F.3d 89, 100 (2d Cir.2001).

Here, Gantt's claim based on the non-disclosure of exculpatory evidence must fail. Gantt alleged that prosecution withheld a document showing that he and Garrow shared the same residence; thus, he could not have committed burglaries against Garrow. However, this document does not indicate that Gantt had resided with Garrow at the time of the burglaries. Rather, the document only lists a number of names and addresses without connecting Gantt's name to Garrow's residence. While Gantt alleged that he did not possess this document until after taking the guilty plea, he failed to allege and show that prosecution failed to turn over this document to trial counsel. Furthermore, this information was not "suppressed" for Gantt would have known where he lived at the time of the burglaries. *Torres,* 129 F.3d at 717; Leka, 257 F.3d at 100. Moreover, "federal law does not require a prosecutor to present exculpatory evidence to a grand jury."*Warren v. Ercole,* No. 07–CV–3175 (JG), 2007 WL 4224642, at *10 (E.D.N.Y. Nov. 27, 2007).

Lastly, Gantt waived the claims of *Brady* violations by pleading guilty when he "solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea...."*Tollett v. Henderson,* 411 U.S. 258, 267 (1973); *Canal v. Donelli,* No. 06–CV–1490 (TJM/DRH), 2008 WL 4287385, at *3 (N.D.N.Y. Sept. 17, 2008) ("an unconditional guilty plea waives all claims ... relating to events prior to the guilty plea that did not affect the voluntariness of the plea" (citations omitted)); *see also Ariola v. LaClair,* No. 07–CV–57 (GLS/ VEB), 2008 WL 2157131, at *12–13 (N.D.N.Y. Feb. 20, 2008) ("[A] defendant's guilty plea cured any possible deficiency in the grand jury proceeding."(collecting cases)).

**\*16** Accordingly, Gantt's petition on this claim should be denied.

### E. Ineffective Assistance of Trial Counsel

The Sixth Amendment mandates that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence."U.S. CONST. amend. VI. "[T]he right to counsel is the right to the effective assistance of counsel."*McMann v. Richardson,* 397 U.S. 759, 771 n. 14 (1970). To prevail on this claim, petitioner must satisfy a two-prong test showing

that his counsel's performance was deficient and that such deficient performance caused actual prejudice to the petitioner. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). "Deficient performance" requires petitioner to show that counsel's performance "fell below an objective standard of reasonableness."*Murden v. Artuz,* 497 F.3d 178, 198 (2d Cir.2007) (quoting *Strickland,* 466 U.S. at 688). "Prejudice" requires petitioner to show that there is a reasonable probability that, but for counsel's deficient performance, the outcome would have been different.*Strickland,* 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome."*Id.*

Federal courts apply a "highly deferential" standard of review for a claim of ineffective assistance of counsel alleged in a habeas corpus petition. *Premo v. Moore,* 131 S.Ct. 733, 740 (2011) (collecting cases). A federal habeas court must not equate unreasonableness under *Strickland* with unreasonableness under § 2254(d) for once the latter applies, "the question is not whether counsel's actions were reasonable ... [but it is] whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."*Id.*

The County Court's decision on the ineffective assistance claim is neither contrary to nor an unreasonable application of the federal legal standard delineated above. Trial counsel's performance did not fall below an objective standard of reasonableness and was not deficient. *Murden,* 497 F.3d at 198. Gantt contends that trial counsel failed to inform him the particular effects of the plea and the sentencing exposure associated with the plea. The record belies this claim. In light of the severity and numerosity of charges pending against him, Gantt's twelve-year prison sentence is a favorable sentence. The indictment charged Gantt with crimes committed on separate dates, which subjects Gantt to substantial exposure to consecutive sentences. *See*Dkt. No. 1–5 at 26–39; N.Y. PENAL LAW § 70.25. Moreover, Gantt was charged with rape in the first degree, a violent felony sex offense, which alone carries a maximum prison term of twenty-five years. Dkt. No. 9–1 at 30–31;*see*N.Y. Penal Law §§ 70.02, 70.80, 130.35. Both the County Court and prosecution explained the plea agreement to Gantt and Gantt acknowledged that he understood the terms of the negotiated plea. Furthermore, Gantt proffers no facts, nor does the record indicate otherwise, that but for trial counsel's deficient performance, he would not have entered such a favorable plea. *Strickland,* 466 U .S. at 694.

*17 Gantt argued before the Appellate Division that trial counsel (1) "half heartedly" requested the County Court to allow him to withdraw his guilty plea despite his mental health issues and difficulty in understanding the plea allocution and (2) failed to join in the motion to withdraw or file a formal motion to withdraw the plea. Dkt. No. 9–4 at 12–13.However, Gantt stated under oath that he had consulted with trial counsel and was satisfied with the representation. *Cf. Salerno v. Berbary,* 389 F.Supp.2d 480, 484–85 (W.D.N.Y.2005) (rejecting challenge to validity of guilty plea where sworn statements at plea allocution contradict allegations in habeas proceeding). Further, the plea colloquy shows the County Court permitting Gantt to confer with trial counsel at various times.

Furthermore, it is well-settled that a failure to object is not prejudicial under *Strickland* if the objection would not have been sustained. *Lafler v. Cooper,* ––– U.S. ––––, 132 S.Ct. 1376, 1386 (2012); *Dowtin v. Cohen,* No. 99–CV– 323, 2005 WL 697981, at *26 (E.D.N.Y. Mar. 25, 2005), *aff'd,*179 F. App'x 737 (2d Cir.2005). Here, the County Court did not have a basis to allow Gantt to withdraw his plea. Moreover, trial counsel was not unreasonable in declining to join in the plea withdrawal application. As noted, Gantt's sentencing exposure surpassed the twelve-year sentence, which is favorable to Gantt. Finally, Gantt never adduced any evidence, such as an affidavit, showing difficulties in entering the plea. *Montstream v. Superintendent, Bedford Hills Corr. Facility,* No. 06–CV–0787, 2011 WL 284461, at *6 (W.D.N.Y. Jan. 4, 2011) (denied ineffective assistance claim where petitioner "never ... substantiate[d] her assertion that trial counsel's alleged off-the-record statements overbore her will and coerced her into pleading guilty"). Therefore, the County Court's decision on this claim satisfies the AEDPA standard fo review.

Accordingly, Gantt's petition on this claim should be denied.

## VI. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that Gantt's petition for a writ of habeas corpus (Dkt. No. 1) be **DENIED.**

It is further **RECOMMENDED** that no certificate of appealability should be issued with respect to any of Gantt's claims as Gantt has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C.

§ 2253(c)(2).*See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 112 (2d Cir.2000).

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

**All Citations**

Slip Copy, 2014 WL 112359

Footnotes

1    To avoid confusion, anytime the Court references a specific page number for an entry on the docket, it will cite to the page number assigned by the Court's electronic filing system.

2    In addition to the four claims raised in his petition, Petitioner raised two more claims in his traverse. *See* Dkt. No. 13.Since these claims were not asserted in his Petition, they are waived. *See, e.g., Morgan v. Lee,* 2012 WL 5336167, (W.D.N.Y. Oct. 26, 2012) (collecting cases). Notwithstanding Petitioner's waiver of these new arguments, Magistrate Judge Hummel considered them and recommended that they both be denied. First, Petitioner claimed that his sentence was based upon impermissible considerations. Magistrate Judge Hummel recommended that this claim be denied because: (a) it was procedurally barred; (b) federal habeas relief is unavailable for errors of state law which do not have constitutional implications; and (c) the claim was meritless. Report at 8 n. 4. Second, Petitioner claimed that the prosecuting attorney held a "personal vendetta" against him. Magistrate Judge Hummel recommended that this claim also be denied because it was unexhausted and not procedurally barred and, in any event, it was unsubstantiated and mertiless. *Id.*

3    Magistrate Judge Hummel's Report included notice of this rule, asserting that "[f]ailure to object to this report within fourteen days will preclude appellate review."Report at 27 (citing *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec 'y of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e)).

4    Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed in such actions "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."Fed. R.App. P. 22(b) (1).

1    This matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

2    During the first burglary, Gantt destroyed Garrow's furniture.Dkt. No. 1–5 at 28.As for the second burglary, Gantt stole Garrow's clothing and personal effects such as body wash, body spray, and jewelry.*Id.* at 29.

3    *Pro se* petitioners are deemed to have filed their habeas petitions on the date they turned them over to prison officials for mailing. *See Houston v. Lack,* 487 U.S. 266, 270 (1988); *Noble v. Kelly,* 246 F.3d 93, 97 (2d Cir.2001) (extending the "prisoner mailbox rule" to habeas petitioners), *cert. denied,* 534 U.S. 886 (2001).

4    Gantt's traverse raises the additional claims that (1) his sentence was based on improper considerations such as being sentenced more severely in electing to stand trial and (2) the prosecuting attorney held a "personal vendetta" against him because she was a survivor of domestic violence. Traverse at 23, 26–27.

     Liberally construing Gantt's *"pro se* submissions [ ] 'to raise the strongest arguments that they suggest,' " *Diaz v. United States,* 517 F.3d 608, 613 (2d Cir.2008), this Court interprets Gantt's improper sentence claim as proffering the same argument in his § 440.10 motion, that the County Court incorrectly applied the second violent felony offender statute, N.Y. Penal Law § 70.04, in sentencing him. Dkt. No. 1–6 at 22.Gantt cited to federal cases discussing errors of state law, arguing the County Court improperly used a twenty-year-old violent felony conviction in applying § 70.04 when the statute directs that the sentence for the predicate offense "must have been imposed not more than ten years before commission of the felony of which the defendant presently stands convicted." N.Y. PENAL LAW § 70.04(1)(b)(iv). Even though it is not addressed by the § 440.10 court, this claim is procedurally barred as there was a pending direct appeal. *Id.* § 440.10(2)(b). Gantt has failed to proffer any cause or prejudice or evidence of actual innocence for the default. *See* Section III *infra.*Moreover, federal habeas corpus relief is not available for alleged errors of state law that do not rise to the level of a constitutional violation. *Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991) (citations omitted). Gantt has not shown which twenty-year-old conviction that the County Court had used, nor has he shown the absence of any

violent felony convictions and sentences that could be used to trigger the statute. Thus, the improper sentence claim is meritless. Accordingly, Gantt's petition on this claim should be denied.

Turning to the remaining claim, Gantt's claim against the prosecuting attorney is unexhausted because it was never presented before a state court. The claim is not procedurally barred because it appears to concern matters outside the record and Gantt may raise the claim in a second § 440.10 motion. *See* Section II *infra.*Nevertheless, the claim is without merit. Gantt does not substantiate his claim that the prosecuting attorney was a survivor of domestic violence. Furthermore, Gantt fails to allege a specific instance in which the prosecutor exhibited bias against him.*Ruiz v. U.S. Dep't of Homeland Sec.,* No. 07–CV–2615 (JG), 07–CV–5173 (JG), 2008 WL 899353, at *12 (E.D.N.Y. Apr. 1, 2008). Accordingly, Gantt's petition on this claim should be denied.

5    Martuscello concedes that Gantt's petition was timely made. Martuscello Mem. (Dkt. No. 8–1) at 14.Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996) ("AEDPA"), the one-year time period for filing a federal habeas corpus petition starts to run when the conviction becomes "final by the conclusion of direct review or the expiration of the time for seeking such review."28 U.S.C. § 2244(d)(1)(A); *Cook v. N.Y. State Div. of Parole,* 321 F.3d 374, 279–80 (2d Cir.2003). A judgment of conviction becomes final at the conclusion of the ninety-day period during which the defendant could seek certiorari review from the United States Supreme Court. *Epps v. Poole,* 687 F.3d 46, 49 (2d Cir.2012) (citations and footnote omitted). Here, Gantt's conviction became final on April 10, 2011, ninety days after the Appellate Division denied Gantt's leave application on January 10, 2011. Thus, Gantt's time to seek a writ of certiorari expired on April 10, 2012. However, the statute of limitation was tolled until April 20, 2011, while Gantt's leave application on his § 440.10 motion was pending. *Smith v. McGinnis,* 208 F.3d 13, 16 (2d Cir.2000) (citing 28 U.S.C. § 2244(d)(2)). The limitations began to run on April 21, 2011 with a new expiration date of April 21, 2012. Since the petition is dated April 18, 2012, the petition is timely made.

---

**End of Document**            © 2016 Thomson Reuters. No claim to original U.S. Government Works.

Guzman v. Couture, Not Reported in F.Supp.2d (2003)
Case 7:12-cv-04878-CS Document 24 Filed 01/28/16 Page 67 of 150
2003 WL 165746

KeyCite Yellow Flag - Negative Treatment
**Declined to Follow by** *Pepe v. Walsh,* N.D.N.Y., May 24, 2012

2003 WL 165746
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Armando GUZMAN, Petitioner,
v.
Earl COUTURE, Superintendent, Gouverneur
Correctional Facility, Respondent

No. 99CIV11316(RMB)(HBP).
|
Jan. 22, 2003.

Following affirmance of his conviction for criminal possession of a weapon in the third degree, 682 N.Y.S.2d 851, defendant filed a pro se petition for writ of habeas corpus. In adopting the report and recommendation of United States Magistrate Judge Pitman, the District Court, Berman, J., held that: (1) federal habeas review of denial of defendant's ineffective assistance claim was procedurally barred; (2) procedural errors in state post-conviction proceedings were not cognizable on federal habeas review; (3) defendant failed to show that his plea agreement was breached; and (4) defendant's plea was not rendered involuntary as result of judge's failure to advise him that his sentence would run consecutively to his prior undischarged term.

Petition denied.

*DECISION & ORDER*

BERMAN, J.

**I. Background**
 **\*1** On or about November 15, 1999, Armando Guzman ("Petitioner" or "Guzman") filed a *prose* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Petition"), challenging his September 19, 1996 conviction, upon his guilty plea, in the Supreme Court, Bronx County, for criminal possession of a weapon in violation of N.Y. Penal Law § 265.02(4).[1] On February 2, 1999, Petitioner's conviction was affirmed by the Appellate Division, First Department. *People*

*v. Guzman,* 258 A.D.2d 263, 682 N.Y.S.2d 851 (1st Dep't 1999). On June 8, 1999, the New York Court of Appeals denied leave to appeal.*People v. Guzman,* 93 N.Y.2d 971, 695 N.Y.S.2d 57, 716 N.E.2d 1102 (1999).

On January 3, 2003, Magistrate Judge Henry B. Pitman, to whom this matter had been referred, issued a through and detailed report and recommendation ("Report"), recommending that the Petition be denied both because Guzman's claims are "not cognizable on federal habeas review" and fail on the merits. Report at 15. Magistrate Pitman also recommended that a certificate of appealability not be issued. *Id.* at 42, 695 N.Y.S.2d 57, 716 N.E.2d 1102. Neither party has filed objections to the Report.

**II. Standard of Review & Analysis**
The Court may adopt those portions of a Magistrate's report to which no objections have been made and which are not facially erroneous. *See*Fed.R.Civ.P. 72(b); *see,e.g.,Letizia v. Walker,* No. 97 Civ. 0333, 1998 WL 567840, at \*1 (W.D.N.Y. Aug. 27, 1998); *Pizarro v. Bartlett,* 776 F.Supp. 815, 817 (S.D.N.Y.1991); *Nelson v. Smith,* 618 F.Supp. 1186, 1189 (S.D.N.Y.1985).

Having conducted a review of the record herein, including, among other things, the Report and applicable legal authorities, and recognizing the leniency which should be afforded *prose* litigants. *Bey v. Human Resources Admin.,* 1999 WL 31122, at \*2 (E.D.N.Y. Jan.12, 1999), the Court finds the Report is not facially erroneous and adopts the Report in its entirety and dismisses the Petition. Because Petitioner has not "made a substantial showing of the denial of a constitutional right," a certificate of appealability should not issue. Report at 42; 28 U.S.C. 2253(c)(2); *see*United States v. Perez,* 129 F.3d 255, 260 (2d Cir.1997).

**III. Order**
The Petition is dismissed and the Clerk of Court is respectfully requested to close this case.

*REPORT AND RECOMMENDATION*

PITMAN, Magistrate J.

**I. *Introduction***
Petitioner Armando Guzman seeks, by his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, an

Guzman v. Couture, Not Reported in F.Supp.2d (2003)
Case 7:12-cv-04878-CS   Document 24   Filed 01/28/16   Page 68 of 150
2003 WL 165746

order vacating the sentence imposed on him on September 19, 1996, after a guilty plea, by the Supreme Court, Bronx County (Torres, J.), for one count of criminal possession of a weapon in the third degree, in violation of New York Penal Law § 265.02(4). By that judgment, petitioner was sentenced to a term of three and one-half to seven years imprisonment. Petitioner is currently on parole pursuant to both that judgment and a previous judgment of conviction entered on February 20, 1975, for manslaughter in the first degree, in violation of New York Penal Law § 125.20.

**\*2** For the reasons set forth below, I respectfully recommend that the petition be denied.

## II. *Facts*

### A. *Background*
Petitioner's claims arise out of the interaction of four separate sentences imposed over the course of twenty-one years.

On or about February 20, 1975, petitioner was convicted in the Supreme Court, Bronx County, after a jury trial, of two counts of manslaughter in the first degree and one count of criminal possession of a dangerous weapon (Petition for Writ of Habeas Corpus ("Petition"), dated September 1, 1999, at ¶ 2). Pursuant to that conviction, petitioner was sentenced to eight and one-third to twenty-five years imprisonment on each man-slaughter count and one year on the weapon count, all sentences to run concurrently (Petition at ¶ 4).

On or about February 6, 1978, while serving the sentence imposed in 1975, petitioner was arrested on a Wyoming County indictment charging him with manslaughter in the second degree (Petition at ¶ 3). Following a jury trial, petitioner was convicted of criminally negligent homicide on February 13, 1979 and sentenced to a prison term of two to four years, to run consecutively to petitioner's 1975 sentences (Petition at ¶ 4).

On December 16, 1985, petitioner was released on parole from both his 1975 and 1979 convictions (Petition at ¶ 5).

Petitioner was arrested on November 18, 1986 and indicted by a Bronx County Grand Jury on November 26, 1986, on charges of murder in the second degree, criminal possession of a weapon in the second degree, criminal use of a firearm in the second degree, and criminal possession of a weapon in the third degree (Petition at ¶ 6; Respondent's Affidavit in Opposition to Petition for Habeas Corpus ("Respondent's

Aff."), dated May 12, 2000, at ¶ 5). These charges arose out of conduct alleged to have occurred while petitioner was released on parole. On December 20, 1988, following a jury trial, petitioner was convicted of criminal possession of a weapon in the third degree and sentenced as a persistent felony offender to serve an indeterminate term of imprisonment of fifteen years to life (Petition at ¶ 7, Respondent's Aff. at ¶ 6). The Honorable Frank Torres, Justice of the New York State Supreme Court, imposed this sentence to run concurrently with the sentences imposed in 1975 and 1979 (Petition at ¶ 9, 10, 51; Petitioner's Exhibits, Ex. 1 at 59-60). It appears that Justice Torres's imposition of a concurrent sentence was erroneous since New York state law required consecutive sentences for offenses committed by an individual while released on parole. See N.Y. Penal Law § 70.25(2-a) (1987), *available at* Westlaw, New York Historical Statutes Annotated (1987).

The Supreme Court of the State of New York, Appellate Division, First Department, affirmed petitioner's 1988 conviction on October 15, 1991. *People v. Guzman,* 176 A.D.2d 561, 575 N.Y.S.2d 26 (1st Dep't 1991). On February 7, 1992, the New York State Court of Appeals denied petitioner's application for leave to appeal. *People v. Guzman,* 79 N.Y.2d 920, 590 N.E.2d 1208, 582 N.Y.S.2d 80 (1992). In June 1992, petitioner filed a petition for a writ of habeas corpus in the Southern District of New York, challenging his 1988 conviction and alleging, *inter alia,* that the Trial Court erroneously excluded petitioner's family from the courtroom during the testimony of an eyewitness to the shooting alleged in the 1986 indictment (Respondent's Aff. at ¶ 9). The petition was dismissed on March 29, 1995 by the Honorable John F. Keenan, United States District Judge for the Southern District of New York (Respondent's Aff. at ¶ 9). On April 8, 1996, the United States Court of Appeals for the Second Circuit reversed the dismissal of the petition and remanded for further proceedings, finding that petitioner's right to a public trial had been violated by the exclusion of his family from the courtroom. *Guzman v. Scully,* 80 F.3d 772 (2d Cir.1996). Judge Keenan, thereafter, set aside petitioner's conviction for criminal possession of a weapon in the third degree and ordered a new trial on April 16, 1996 (Respondent's Aff. at ¶ 11).

### B. *The Sentence in Issue*
**\*3** In order to resolve the remaining charge resulting from his 1986 arrest, petitioner pled guilty on September 10, 1996 to criminal possession of a weapon in the third degree in Supreme Court, Bronx County, pursuant to an agreement

that provided he would be sentenced to a term of three and one-half to seven years imprisonment (Petition at ¶ 9). One week after the plea, petitioner was informed by the New York State Division of Parole that he was being restored to parole supervision for his 1975 manslaughter convictions as a result of the Second Circuit's vacatur of his 1988 conviction (Letter from the Division of Parole, dated September 17, 1996, annexed as Exhibit 1 to Respondent's Aff.).

On September 19, 1996, petitioner was sentenced to serve three and one-half to seven years imprisonment for the offense of possession of a weapon in the third degree (Respondent's Aff. at ¶ 14). Although Justice Torres did not state at the time of sentencing whether the sentence was to run concurrently with or consecutively to petitioner's 1975 and 1979 sentences, his decision on petitioner's writ of habeas corpus stated that this 1996 sentence had to run consecutively to petitioner's prior sentences (Respondent's Aff., Ex. 8 at 4 "The sentence imposed in 1996 must run consecutively to the undischarged imprisonment under the 1975 and 1979 convictions. *See*Penal Law § 70.25(2)(a)."). Four days later, petitioner received a letter informing him that the Board of Parole had issued a final declaration of delinquency based on petitioner's new conviction for an offense that occurred while petitioner was under parole supervision, namely, the illegal possession of a weapon that petitioner admitted on September 10, 1996 (Letter from the Board of Parole, dated September 23, 1996, annexed as Exhibit 2 to Respondent's Aff.).

On November 7, 1996, petitioner filed a petition for a writ of habeas corpus in New York State Supreme Court, Sullivan County, alleging that his plea agreement provided that "no parole sanction would be pursued against petitioner, irrespective as to the outcome of the case" (Petition at ¶ 13). Petitioner also filed a *prose* motion pursuant to N.Y.Crim. Proc. L § 440.10 [1] on November 16, 1996, "seeking to enforce a component of the plea agreement, as that agreement was understood by the petitioner and as reflected in the record of the State Court proceedings, or alternatively, that the judgment be vacated" (Petition at ¶ 13; Respondent's Aff., Ex. 3). Pursuant to N.Y.Crim. Proc. L. § 440.30(5), a hearing was held before Justice Torres in New York State Supreme Court, Bronx County, in January and February 1997 (Petition at ¶ 16; Respondent's Aff. at 18). At approximately the same time as petitioner filed his habeas petition and 440.10 motion, petitioner also sought a writ of mandamus pursuant to Article 78 of the N.Y. C.P.L.R. directing the Chairman of the New York State Division of Parole and the Commissioner of the New York State Department of Correctional Services to

recompute his 1996 sentence as being satisfied in its entirety (Respondent's Aff., Ex. 9 at 1). [2]

**\*4** Prior to Justice Torres's decisions on these matters, petitioner wrote to the Court, asserting three new grounds for relief:
(a) Defendant objects to having been compelled to proceed with attorney Martin Fisher, whom had previously issued a documented declaration regarding his lack of experience and expressed also that his involvement as my attorney would be contrary to my best interest (see attachment "A").

(b) Defendant objects to the preclusion of being afforded the opportunity of calling witnesses in support of his dual petitions for enforcement of the plea agreement, when in fact it was the assigned attorney who admittingly [*sic* ] erroneously mislead [*sic* ] defendant into believing that the court itself was responsible for the limitation of witnesses that defendant would be allowed to call upon to testify (see 2/24/97, proceedings record).

(c) Defendant objects to the court's failure to have issued a new sentencing and commitment order in accordance with the new provisions of [C.P.L.] Section 430.20 4(a) deeming the new 3 1/2 to 7 Year sentence term of September 19, 1996, as having been served in it's entirety and requiring any time already served in excess thereof, to be separately applied to that of any discharged term.

(Letter to Justice Torres, dated February 27, 1997, annexed as Exhibit 5 to Respondent's Aff.).

On March 21, 1997, Justice Torres issued three separate decisions denying all three of petitioner's applications for relief.

Justice Torres first denied petitioner's Section 440.10 motion, concluding that petitioner had failed to establish the existence of any promise that his parole would not be revoked as a result of his 1996 plea.
A promise allegedly made by the Division of Parole was not made a condition or part of the offer by this court. The court explicitly stated the terms to be that should defendant plead guilty he would be sentenced to 3½ to 7 years imprisonment as a predicate felon. There was also no mention of concurrent or consecutive time. Neither the defense attorney nor the defendant placed on the record any

Guzman v. Couture, Not Reported in F.Supp.2d (2003)
Case 7:12-cv-04878-CS  Document 24  Filed 01/28/16  Page 70 of 150
2003 WL 165746

other terms or conditions that they wished to have included as part of the plea agreement.

The defendant cannot support reliance on an alleged promise from the Division as a condition to the plea where there has been no revelation[ ] of such promise or reliance thereon to the court at the time the plea was contemplated or entered. If defendant wanted to rely on the Division's alleged promise as an inducement to plead guilty, the time for him to say so was at the time of the plea.

After conducting a hearing in this matter, and after reviewing all materials submitted, this court finds that there was no promise made by anyone with respect to the defendant's parole status. The defendant submitted a letter from the Division of Parole which reinstated the defendant to parole. This letter clearly stated that he was being reinstated to parole as a result of the federal vacatur of his 1988 conviction. It makes no mention of any promise.

**\*5**  (Respondent's Aff., Ex. 7 at 6-9).

In a second, separate decision, Justice Torres denied petitioner's application for a writ of habeas corpus (Respondent's Aff., Ex. 8). At the outset, Justice Torres noted:

> This petitioner raises issues regarding specific performance by the Division of Parole and their failure to honor a plea agreement. These issues have also been raised in the [Section 440] Motion requesting specific performance and have been addressed and decided on the merits in a separately filed decision rendered by this court. Neither issue is a proper subject for this Writ.

(Respondent's Aff., Ex. 8 at 3). Nevertheless, Justice Torres concluded that (1) petitioner was not entitled to immediate release because his maximum expiration date for release on his 1975 and 1979 convictions was October 2003; (2) petitioner was not entitled to a parole revocation hearing because the revocation was mandatory pursuant to N.Y. Executive Law § 259-I(3)(d)(iii) as a result of petitioner's commission of a crime while on parole; (3) under N.Y. Penal Law § 70.25(2-a), petitioner's 1996 sentence was required

to run consecutively to the previous sentences imposed in 1975 and 1979, and (4) contrary to petitioner's assertion that he had been credited with only 142 days towards his 1988 conviction, he was actually credited with 921 days (Respondent's Aff., Ex. 8 at 3-5).

In his third decision of March 21, 1997, Justice Torres denied petitioner's application for a writ of mandamus (Respondent's Aff., Ex. 9). In denying this application, the Court concluded that "the application raise[d] the same issues previously considered and ask[ed] for essentially the same relief, and that said issues [had] been dealt with on the merits" (Respondent's Aff., Ex. 9 at 2-3 ("The court notes that the objective of this application is the same as sought in the aforementioned, i.e., granting of credit towards undischarged parole time, requirement of assessment and computation of good time credit towards undischarged term of parole.")).

Petitioner filed a notice of appeal of the denial of his habeas corpus petition and his other motions to the Supreme Court of the State of New York, Appellate Division, First Department, on March 21, 1997 (Respondent's Aff., Ex. 10).[3]

While his appeal was pending, petitioner filed a second writ of mandamus pursuant to N.Y. C.P.L.R. Article 78 against Justice Torres on April 25, 1997, seeking an order requiring the Trial Court to (1) "issue a statutorily correct sentence and commitment order" and (2) "assess jail time credit due petitioner upon lower court's original 12/20/88 concurrent sentence and commitment mandate towards an undischarged term of parole prior to resentencing commitment" (Respondent's Aff., Ex. 11). The Appellate Division, First Department, summarily denied this Article 78 proceeding and granted respondent's cross motion to dismiss the proceeding on June 3, 1997. *Guzman v. Torres,* 240 A.D.2d 1014, 659 N.Y.S.2d 823 (1st Dep't 1997). The New York State Court of Appeals dismissed petitioner's application for leave to appeal from the denial of his writ of mandamus on November 20, 1997, on the ground that it was untimely. *Guzman v. Torres,* 91 N.Y.2d 829, 689 N.E.2d 530, 666 N.Y.S.2d 560 (1997).

**\*6**  On or about July 17, 1997, petitioner filed a second motion to vacate his conviction pursuant to N.Y.Crim. Proc. L. § 440.10(1)(b), alleging:

(A) That the judgment was obtained by misrepresentation and fraud on the part of both the prosecutor and assigned counsel;

Guzman v. Couture, Not Reported in F.Supp.2d (2003)
Case 7:12-cv-04878-CS  Document 24  Filed 01/28/16  Page 71 of 150
2003 WL 165746

(B) That the judgment was obtained by misrepresentation and fraud on the part of the court;

(C) That [petitioner] was denied effective counsel representation; and

(D) That the judgment was obtained in violation of [petitioner's] constitutional rights

(Respondent's Aff., Ex. 15). On November 3, 1997, Justice Torres denied this motion, finding his claims were either procedurally barred from review or were resolved by the decisions issued on March 21, 1997 (Respondent's Aff., Ex. 17). Justice Torres specifically found that:

All of the allegations made by the [petitioner] concerning a constitutionally defective plea as well as concerning ineffective assistance of counsel are clearly issues discernible from the record. The [petitioner] has previously filed a motion pursuant to C.P.L. § 440.10 in which a hearing was conducted before this court. He also filed a Writ of Habeas Corpus which was decided by this court, along with a motion. Both were denied. In this new motion, the [petitioner] raises the same issues which have been thoroughly litigated.

Since the [petitioner's] allegations are the appropriate subject matter of an appeal and he raises no issues which were not already addressed at the C.P.L. § 440.30(5) hearing, the prior 440.10 motion or the Writ, the motion to vacate the judgment is denied.

(Respondent's Aff., Ex. 17 at 2).

Petitioner appealed the denial of his second Section 440.10 motion to Appellate Division, First Department and then to the New York State Court of Appeals. Each denied petitioner relief without opinion. *See* Respondent's Aff., Exs. 20 and 22; *People v. Guzman,* 92 N.Y.2d 898, 702 N.E.2d 847, 680 N.Y.S.2d 62 (1998). [4]

On October 1, 1998, petitioner filed a direct appeal from the 1996 conviction to the Appellate Division, First Department (Respondent's Aff. at ¶ 34). [5] Petitioner raised only one argument on appeal:

THE COURT VIOLATED CRIMINAL PROCEDURE LAW § 430.20(4) BY COMMITTING APPELLANT TO A CORRECTIONAL FACILITY AFTER RE-

SENTENCING HIM TO 3 1/2 TO 7 YEARS IMPRISONMENT, DESPITE COUNSEL'S NUMEROUS REQUESTS THAT APPELLANT BE IMMEDIATELY RELEASED BECAUSE HE HAD ALREADY SERVED 10 YEARS IN PRISON ON THIS CONVICTION. C.P.L. § 430.20(4).

(Respondent's Aff., Ex. 23 at 6). The Appellate Division affirmed petitioner's conviction, finding that "[t]he sentencing court's decision to commit [petitioner] to the Department of Correctional Services pending a determination of [petitioner's] parole status was proper (*see,*CPL 430.20 [4] [b] ). In any event, a remand for resentencing would be futile under the circumstances."*People v. Guzman,* 258 A.D.2d 263, 682 N.Y.S.2d 851 (1st Dep't 1999).

**\*7** Petitioner sought leave to appeal the Appellate Division's decision to the New York Court of Appeals. Petitioner submitted a *prose* application in which he raised two specific issues for review:
[a] The constitutionality of the sentencing court's selective application of statutory sentencing mandate provisions.

[b] The appellate division's procedure of determining an appeal upon factors not a part of the record on appeal.

(Respondent's Aff., Ex. 26 at 2). Petitioner alleged that the Appellate Division's actions ultimately resulted in the denial of petitioner's right to effective assistance of counsel and violated his state and federal constitutional rights to due process (Respondent's Aff., Ex. 26 at 8). Petitioner's counsel also submitted a letter to the Court of Appeals, arguing that leave should be granted "to provide the Court of Appeals with an opportunity to announce, in this case of first impression, the proper interpretation of Criminal Procedure Law § 430.20(4)" (Respondent's Aff., Ex. 27 at 4). Both applications for leave to appeal were denied by the New York Court of Appeals on June 8, 1999. *People v. Guzman,* 93 N.Y.2d 971, 716 N.E.2d 1102, 695 N.Y.S.2d 57 (1999).

On October 4, 1999, petitioner filed the present petition for a writ of habeas corpus, again challenging his confinement pursuant to his 1996 conviction. Petitioner asserts four claims: (1) ineffective assistance of counsel; (2) his plea was involuntary because the terms of the plea agreement were violated; (3) his sentence was improperly imposed, and (4) the post-conviction hearing court committed errors in reviewing petitioner's claims (Petition at 5).

Guzman v. Couture, Not Reported in F.Supp.2d (2003)
Case 7:12-cv-04878-CS Document 24 Filed 01/28/16 Page 72 of 150
2003 WL 165746

For the reasons set forth below, none of petitioner's claims afford a basis for relief. Petitioner's first claim alleging ineffective assistance of counsel is procedurally barred. Petitioner's second claim, pertaining to the voluntariness of his plea agreement, fails on the merits. His third claim, alleging errors in sentencing, is either not cognizable on federal habeas review, or fail on the merits. Lastly, petitioner's fourth claim, alleging errors by the post-conviction trial court, is not cognizable on federal habeas review.

## III. *Analysis*

### A. *Exhaustion and Procedural Bar*
Respondent first contends that petitioner's first and second claims, which allege ineffective assistance of counsel and an involuntary plea, respectively, are procedurally barred because they were rejected by the Trial Court on state procedural grounds.

Where a state court refuses to entertain a federal claim on state procedural grounds, the claim is ordinarily barred from serving as a basis for federal habeas corpus relief. As the Court of Appeals for the Second Circuit has explained:
The independent and adequate state ground doctrine first arose in the context of direct appeals to the Supreme Court from final judgments of the state courts. Under that doctrine the Supreme Court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."*Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Moreover, "[t]his rule applies whether the state law ground is substantive or procedural."*Id.*

 **\*8** The doctrine also applies in the context of federal courts reviewing applications for a writ of habeas corpus.... [I]nvoking principles of comity and federalism ... federal habeas courts faced with an independent and adequate state ground of decision defer in the same manner as does the Supreme Court on direct review.

An exception obtains only if the petitioner demonstrates both good cause for and actual prejudice resulting from his noncompliance with the state's procedural rule. *SeeEngle v. Isaac,* 456 U.S. 107, 129, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wainwright v.. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

*Garcia v. Lewis,* 188 F.3d 71, 76-77 (2d Cir.1999).*Seealso Coleman v. Thompson,* 501 U.S. 722, 730, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Norwood v. Hanslmaier,* 93 CV 3748, 1997 WL 67669 at *2 (E.D.N.Y. Feb.11, 1997).

Dismissal of a claim on the ground that consideration of the merits is precluded by an adequate and independent state procedural ground is appropriate where the last reasoned state court decision expressly relies on a state procedural bar: In *Harris [ v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) ], the Court held that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar."*Harris,* 489 U.S. at 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (internal quotation marks omitted). We apply the *Long/Harris* presumption to the last "reasoned state judgment"....*SeeYlst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

*Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir.2000).

 **[1]** In this case, petitioner first raised his claim of ineffective assistance of counsel in a letter addressed to Justice Torres dated February 27, 1997 (Respondent's Aff., Ex. 8). Justice Torres did not consider these claims in rendering any of his decisions issued on March 21, 1997. In deciding petitioner's second motion pursuant to N .Y.Crim. Proc. Law § 440.10 on July 17, 1997 (Respondent's Aff., Ex. 15), Justice Torres expressly denied the claim as procedurally deficient under N.Y.Crim. Proc. Law § 440.10(2)(b) & (c):
Criminal Procedure Law Section 440.10 Subdivisions 2(b) and 2(c) specifically state:

2 .... the court *must* (emphasis added) deny any motion to vacate a judgment when: ... (b) The judgment is, at the time of the motion, appealable or pending an appeal, and sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such an appeal; or (c) Although sufficient facts appear on the record of the proceeding underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to

Guzman v. Couture, Not Reported in F.Supp.2d (2003)
Case 7:12-cv-04878-CS  Document 24  Filed 01/28/16  Page 73 of 150
2003 WL 165746

raise such ground or issue upon an appeal actually perfected by him.

 **\*9**  "The purpose of these provisions is to prevent C.P.L. 440.10 from being employed as a substitute for direct appeal when defendant was in a position to raise an issue on appeal ... or could readily have raised it on appeal but failed to do so."*People v. Cooks, supra* at 103-104; See *People v. Griffin, supra.*

All of the allegations made by the defendant concerning a constitutionally defective plea as well as concerning ineffective assistance of counsel are clearly discernable from the record. The defendant has previously filed a motion pursuant to C.P.L. § 440.10 in which a hearing was conducted before this court. He also filed a Writ of Habeas Corpus which was decided by this court, along with the motion. Both were denied. In this new motion, the defendant raises the same issues which have been thoroughly litigated.

Since all the defendant's allegations are the appropriate subject matter of an appeal and he raises no issues which were not already addressed at the C.P.L. § 440.30(5) hearing, the prior 440.10 motion or the Writ, the motion to vacate judgment is denied.

(Respondent's Aff., Ex. 17 at 1-2 (emphasis in original)). [6]

Admittedly, there is some tension between Justice Torres's conclusion that petitioner's claims were "clearly ... discernable from the record" and his conclusion that the "issues ... have been throughly litigated" in the first 440.10 motion. If all of the claims raised in petitioner's second 440.10 motion were "clearly discernable" from the record, there would have been no need for Justice Torres to conduct a hearing on petitioner's first 440.10 motion and that motion too should have been summarily denied on the basis of 440.10(2)(b) & (c). However, upon closer examination, I submit that the inconsistency is more apparent than real.

None of the three decisions issued by Justice Torres on March 21, 1997 even obliquely refer to a claim of ineffective assistance of counsel. None of the decisions utilize the phrase "ineffective assistance," none make reference to the Sixth Amendment of the United States Constitution and none cite the landmark case on the issue-*Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).* Since none of Justice Torres's March 21, 1997 decisions refer to

an ineffective assistance argument, he could not have meant that this claim had previously been "throughly litigated." Thus, I conclude that Justice Torres must have meant that petitioner's claim of ineffective assistance-and only his claim of ineffective assistance-was "clearly discernable" from the record, and was therefore procedurally deficient pursuant to 440.10(2)(b) & (c).

However, Justice Torres's November 3, 1997 decision unmistakably concluded that some aspect of the claims asserted in the second 440.10 motion had been previously litigated. I believe that this aspect of the decision referred to petitioner's claim concerning the voluntariness of his plea. The hearing conducted in January and February 1997 dealt extensively with what petitioner knew at the time of his plea, what promises were made and what the conditions of the plea were. These same subjects were also discussed at length in Justice Torres's March 21, 1997 decisions. If Justice Torres believed that the facts concerning this claim were "clearly discernable" from the record, there would have been no need for the hearing in January and February 1997.

 **\*10**  Accordingly, I conclude that when properly read in light of the record, Justice Torres's November 3, 1997 decision found that (1) petitioner's ineffective assistance claim was manifest from the record and procedurally defective because it could be raised on direct appeal, and (2) petitioner's voluntariness claim had been previously resolved on the merits and was not, therefore, an appropriate subject of a second 440.10 motion.

Justice Torres's denial of the ineffective assistance claim, in conjunction with petitioner's subsequent failure to assert this claim on his direct appeal, was a denial on state procedural grounds that gives rise to a procedural bar. *SeeRamirez v. Attorney Gen., 280 F.3d 87, 96 (2d Cir.2001)* (denial of a motion pursuant to N.Y.Crim. Proc. L. § 440.10(2)(c) is a denial pursuant to state law that gives rise to a procedural bar); *Spence v. Superintendent, Great Meadow Corr. Facility, 219 F.3d 162, 170 (2d Cir.2000)* (denial of a motion pursuant to N.Y.Crim. Proc. L. § 440 .10(2)(c) is a denial pursuant to state law that gives rise to a procedural bar); *Strogov v. Attorney Gen., 191 F.3d 188, 193 (2d Cir.1999), cert.denied,530 U.S. 1264, 120 S.Ct. 2723, 147 L.Ed.2d 987 (2000)* (denial of a motion pursuant to N.Y.Crim. Proc. L. § 440.10(2)(c) is a denial pursuant to state law that gives rise to a procedural bar).*SeealsoSpence v. Superintendent, Great Meadow Corr. Facility, supra,* 219 F.3d 170 (failure of a New York criminal defendant to raise all available claims on direct appeal gives

rise to a procedural bar with respect to such claims); *Aparicio v. Artuz,* 269 F.3d 78, 91 (2d Cir.2001); *Black v. McGinnis,* 99 Civ. 755(MBM), 2001 WL 209916 at *4 (S.D.N.Y. Mar. 1, 2001).

Accordingly, petitioner's ineffective-assistance-of-counsel claim is barred in this Court unless he can show cause for and prejudice resulting from the default, *Garcia v. Lewis,supra,* 188 F.3d at 76-77, or that a fundamental miscarriage of justice will result if the procedural bar is enforced.*Coleman v. Thompson,supra,* 501 U.S. at 750. Petitioner has made no attempt to make either showing.

 [2]   Petitioner's claim concerning the voluntariness of his plea, however, stands on a different footing. This claim was resolved on the merits in petitioner's first 440.10 motion. While petitioner did file a notice of appeal from Justice Torres's decision denying his first 440.10 motion, the record before me does not disclose whether petitioner perfected this appeal or what claims, if any, were raised on appeal. Similarly, the record does not disclose whether petitioner attempted to raise this claim before the New York Court of Appeals.

Nevertheless, whether petitioner has properly exhausted his voluntariness claim is of small consequence for two reasons. First, respondent does not allege that petitioner's voluntariness claim is procedurally barred because petitioner has failed to exhaust the claim and no longer has any state remedies available to him. Rather, respondent's argument is that petitioner's claim was denied on state procedural grounds as having been either "thoroughly litigated" or the appropriate subject matter of a direct appeal (Respondent's Mem. at 14-15). Second, regardless of whether petitioner's claim has been properly exhausted, it fails on the merits. *See*28 U.S.C. 2254(b)(2).

 **11**  Therefore, in light of this record and the language used in the Justice Torres's November 3, 1997 decision, I conclude that petitioner's voluntariness claim was rejected in the second 440.10 because it had been resolved on the merits in the first 440.10 motion and habeas petition. Such a disposition is a disposition on the merits that does not result in a procedural bar.

'A dismissal under § 440.10(2)(a) is not based on any procedural default. To the contrary, it is premised on a prior decision.'*Anderson v. Scully,* No. Civ. 90-0171, 1991 WL 156234 at *3 (Aug. 7, 1991 S.D.N.Y.); *seealso,Hartley v. Senkowski,* No. Civ. 90-0395, 1992 WL 58766 at *10 (Mar.

18, 1992 E.D.N.Y..) ('A procedural rule such as § 440.10(2)(a) acts neither as a procedural bar nor as a decision on the merits.'). Thus, this 'subsection applies only to claims that have been previously decided on the merits and does not constitute a state law ground for dismissal that is independent of the merits of petitioner's federal claims.'*Anderson,* 1991 WL 156234 at *3,*citing,Ylst v. Nunnemaker,* 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). Therefore, since the trial court expressly relied on CPL § 440.10(2)(a) to deny petitioner's application, it cannot be said that the court relied on a procedural bar, and this court is not precluded from turning to the merits of these two claims.

*Taylor v. Kuhlmann,* 36 F.Supp.2d 534, 546 (E.D.N.Y.1999) (footnotes omitted).*SeealsoYlst v. Nunnemaker,* 501 U.S. 797, 801, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) ("If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available.).

Accordingly, I conclude that petitioner's ineffective assistance claim is procedurally barred, but his claim concerning the voluntariness of his plea is not.

## B. *Claims Not Cognizable on Federal Habeas Review*
Next, respondent argues that petitioner's third and fourth claims, alleging the imposition of an illegal sentence and that the post-conviction hearing court committed errors in reviewing his claims, respectively, are state law claims that are not cognizable in a federal habeas corpus petition.

In order for a claim to be cognizable on federal habeas corpus review, it must challenge the legality of custody on the ground that it is "in violation of the Constitution or laws or treaties of the United States."28 U.S.C. § 2254(a).
A federal court conducting habeas review is limited to determining whether a petitioner's custody is in violation of federal law. *See*28 U.S.C. § 2254(a). Federal habeas corpus relief does not lie for errors of state law. *SeeEstelle v. McGuire,* 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). The writ of habeas corpus is an "extraordinary remedy," *seeBrecht v. Abrahamson,* 507 U.S. 619, 633, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), and "[f]ederal courts are not forums in which to relitigate state trials."*Barefoot v. Estelle,* 463 U.S. 880, 887, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). As the Supreme Court has stated, "[i]t hardly bears repeating that 'an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a

2003 WL 165746

final judgment." ' *Brecht,* 507 U.S. at 634 (*quoting United States v. Frady,* 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)). Direct review is the principal avenue for challenging a conviction, *see Brecht,* 507 U.S. at 633, and "[w]hen the process of direct review ... comes to an end, a presumption of finality and legality attaches to the conviction and sentence." *Barefoot,* 463 U.S. at 887.

**\*12** *Bramble v. Smith,* 96 Civ. 5905(JFK), 1998 WL 395265 at \*11 (S . D.N.Y. July 15, 1998). *See Estelle v. McGuire,* 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990); *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Smith v. Phillips,* 455 U.S. 209, 221, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) (non-constitutional claims not cognizable in federal habeas corpus proceedings); *Petrucelli v. Coombe,* 735 F.2d 684, 687 (2d Cir.1984) (same); *McCoy v. Walker,* 99 Civ. 3926(RWS), 1999 WL 1191988 at \*7 (S.D.N.Y. Dec. 14, 1999) (same).

**[3]** In petitioner's third claim, he argues that "[t]he state sentencing court's refusal to have sentenced petitioner in accordance with the statutory sentencing mandates or to have conducted a sentence computation associated with the resentence procedure and term imposed, violated petitioner's constitutional rights to due process and equal protection" (Petition at 5-a). Petitioner asserts three specifications with respect to his claim: (a) the state court's failure to apply N.Y.Crim. Pro. L. § 430.20 [7] when sentencing petitioner violated his due process and equal protection; (b) the state court failed to conduct a time computation upon the record, and (c) the state court did not inform petitioner of the consequences of entering the plea, namely that the sentence would run consecutively with his prior term and that the 10 1/2 years petitioner served would not be credited against the new sentence (Petition at 20-21, 40-41).

Petitioner's first specification alleges that his 1996 sentence was improper because he had already served a period of incarceration for the offense that was greater than the sentence imposed in 1996. Although either the due process clause or the prohibition against double jeopardy probably would be violated if the same sovereign punished the same defendant twice for the same offense,[8] petitioner's argument overlooks the fact that the 1996 sentence corrected the error of concurrent sentencing that occurred in connection with the 1988 sentencing and imposed a consecutive term of

imprisonment. When this correction was made, the period of petitioner's incarceration from 1988 through 1996 could not have been credited against the sentence imposed in 1996. Clearly, this correction resulted in the disappointment of petitioner's expectations. Nevertheless, a state prisoner has no liberty or property interest in being sentenced in violation of state law. Accordingly, this specification fails to assert a constitutional violation.

To the extent petitioner alleges that the 1996 sentencing violated the Equal Protection Clause, the petition also fails to allege a colorable violation of the United States Constitution because petitioner does not assert discrimination on the basis of his membership in an identifiable or suspect class. *Jackson v. Mann,* 196 F.3d 319, 321 (2d Cir.1999); *Giano v. Senkowski,* 54 F.3d 1050, 1057 (2d Cir.1995); *Grandal v. City of New York,* 966 F.Supp. 197, 203 (S.D.N.Y.1997); *Avello v. Hammons,* 963 F.Supp. 262, 269-70 (S.D.N.Y.1997).

**\*13** Therefore, because the first specification of petitioner's sentencing claim regarding the application of N.Y.Crim. Proc. L. § 430.20 is based entirely on state law, it should be dismissed as improperly raised in a petition for habeas corpus. The remaining sentencing claims stem from and are intertwined with petitioner's plea agreement claims and, therefore, will be addressed on their merits in Section III(C) (3) below.

In his fourth claim, petitioner alleges that the post-conviction hearing court deciding his first Section 440.10 motion failed to consider the written objections he submitted to Justice Torres on February 27, 1997,[9] and thereby, violated his rights to effective assistance of counsel, due process, and equal protection (Petition at 61-62).

**[4]** As explained by the Honorable Andrew J. Peck, United States Magistrate Judge, procedural errors in state post-conviction proceedings are not cognizable on federal habeas review:
"All the circuits that have considered the issue, except one, have held that 'federal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings.' ' *Franza v. Stinson,* F.Supp.2d 124, 151 (S.D.N.Y.1999) (Kaplan, D.J. & Peck, M.J.) (quoting *Ortiz v. Stewart,* 149 F.3d 923, 939 (9th Cir.1998), *cert.denied,* 526 U.S. 1123, 119 S.Ct. 1777, 143 L.Ed.2d 806 (1999)); *accord, e.g., Golden v. Kaiser,* No. 00-6315, 1 Fed. Appx. 841, 2001 WL 15526 at \*1 (10th Cir.2001) ("[C]laims relat[ing] to alleged deficiencies in [the state's] post-

conviction procedures, fail [ ] to present a viable habeas claim."); *Trevino v. Johnson,* 168 F.3d 173, 180 (5th Cir .), *cert.denied,*527 U.S. 1056, 120 S.Ct. 22, 144 L.Ed.2d 825 (1999); *Villafuerte v. Stewart,* 111 F.3d 616, 632 n. 7 (9th Cir.1997) (claim that petitioner was denied due process in state habeas proceeding is "not addressable in a section 2254 proceeding"), *cert.denied,*522 U.S. 1079, 118 S.Ct. 860, 139 L.Ed.2d 759 (1998); *Montgomery v. Meloy,* 90 F.3d 1200, 1206 (7th Cir.) (per curiam) ("Unless state collateral review violates some independent constitutional right, such as the Equal Protection Clause, ... errors in state collateral review cannot form the basis for federal habeas corpus relief."), *cert.denied,*519 U.S. 907, 117 S.Ct. 266, 136 L.Ed.2d 190 (1996); *Williams-Bey v. Trickey,* 894 F.2d 314, 317 (8th Cir.), *cert.denied,*495 U.S. 936, 110 S.Ct. 2183, 109 L.Ed.2d 511 (1990) (cited with approval in *Banks v. People of the State of New York,* 94 Civ. 555, 1994 WL 661100 at *3 (S.D.N.Y. Nov.22, 1994)). Only the First Circuit appears to hold to the contrary, *see,e.g.,Dickerson v. Walsh,* 750 F.2d 150, 152-54 (1st Cir.1984), and the validity of that decision has been questioned within that circuit.

While the Second Circuit has not directly addressed this issue, district court decisions within the Circuit (several of which have been affirmed by the Second Circuit) have followed the majority rule. *See,e.g.,Diaz v. Greiner,* 110 F.Supp.2d 225, 235 (S.D.N.Y.2000) ("Petitioner's unsupported assertion that the trial court denied his (third). [*sic* ] CPL § 440.10 motion without a hearing violated due process is not cognizable on federal habeas review."); *Lugo v. Kuhlmann,* 68 F.Supp.2d 347, 376 n. 15 (S.D.N.Y.1999) (Patterson, D.J. & Peck, M.J.); *Franza v. Stinson,* 58 F .Supp.2d at 152; *Sparman v. Edwards,* 26 F.Supp.2d 450, 468 n. 13 (E.D.N.Y.1997) ("the weight of authority holds that in habeas corpus proceedings federal courts do not have jurisdiction to review state court denials of motions for a new trial"), *aff'd,*154 F.3d 51 (2d Cir.1998); *Bellamy v. Cogdell,* 802 F.Supp. 760, 772-73 (E.D.N.Y.1991); *Michael v. Dalsheim,* No. CV 90-2959, 1991 WL 99368 at *9 (E.D.N.Y. May 22, 1991); *Turner v. Sullivan,* 661 F.Supp. 535, 540-41 (E.D.N.Y.1987) (claim that trial court violated due process by denying CPL § 440.10 motion without setting out findings, conclusions and its reasoning not cognizable on federal habeas review; "Petitioner has not suggested in what respect the failure to comply with the state rule has violated his federal due process rights. A writ of habeas corpus may not be issued on the basis of a perceived error of state law."), *aff'd,*842 F.2d 1288 (2d Cir.), *cert.denied,*487 U.S. 1240, 108 S.Ct. 2913, 101 L.Ed.2d 944 (1988).

**\*14** This Court reiterates its agreement with the majority view. *SeeFranza v. Stinson,* 58 F.Supp.2d at 152. Thus, [petitioner's] assertion that the failure to hold a hearing on his CPL §§ 440.10 and 330.30 newly discovered evidence motions violated due process is not cognizable on federal habeas review.

*Jones v. Duncan,* 162 F.Supp.2d 204, 217-18 (S.D.N.Y.2001) (footnotes omitted).*SeealsoCalderon v. Keane,* 97 Civ. 2116(RCC)(JCF), 2002 WL 1205745 at *6 (S.D.N.Y. Feb. 21, 2002) ("Claims that focus only on the state's post-conviction remedy and not on the conviction which is the basis for his incarceration are not cognizable on habeas review.").

Since these claims relate solely to alleged procedural defects in petitioner's post-conviction proceedings, the weight of authority holds that they are not cognizable on federal habeas review. Thus, petitioner's claims alleging that the post-conviction Trial Court improperly handled his written objections should be denied.

### C. *The Merits of Petitioner's Claims*

#### 1. *Standard of Review*

Where the state courts have addressed a habeas petitioner's claims on the merits, a habeas petitioner must meet a stringent standard before a federal court can issue the writ. Specifically, 28 U.S.C. § 2254(d) provides that in such a situation, habeas relief may be granted only when the Trial Court's decision (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Court of Appeals has recently explained these alternative standards as follows:

A decision is "contrary to" clearly established federal law as determined by the Supreme Court if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case

2003 WL 165746

differently than [the Supreme Court] has on a set of materially indistinguishable facts."*Taylor,* 529 U.S. at 413, 120 S.Ct. 1495, 146 L.Ed.2d 389....

A decision is an "unreasonable application" of clearly established Supreme Court law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case."*Taylor,* 529 U.S. at 413, 120 S.Ct. 1495, 146 L.Ed.2d 389. Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."*Id.* at 411, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389. In order to grant the writ there must be "[s]ome increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence."*Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000) (internal quotation marks omitted). Under the "unreasonable application" prong, "we must determine not whether the state court was incorrect or erroneous ..., but whether [the state court's decision] was 'objectively unreasonable.' ' *Sellan,* 261 F.3d at 315. Moreover, the unreasonable application of federal law must be referable to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *Taylor,* 529 U.S. at 412, 120 S.Ct. 1495, 146 L.Ed.2d 389.

**\*15** *Brown v. Artuz,* 283 F.3d 492, 500-01 (2d Cir.2002).

However, in order to be entitled to the deferential standard of review, the state courts must have resolved the petitioner's claims "on the merits." *Brown v. Artuz,supra,* 283 F.3d at 498 ("If a state court has failed to adjudicate a claim 'on the merits,' § 2254 does not apply, and we apply the pre-AEDPA standard of review, reviewing both questions of law and mixed questions of law and fact *denovo.*"); *Aparicio v. Artuz,* 269 F.3d 78, 93 (2d Cir.2001).
To determine whether a state court disposition is "on the merits," we ask " '(1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state court's opinion suggests reliance upon procedural grounds rather than a determination on the merits." '

*Jenkins v. Artuz,* 294 F.3d 284, 291 (2d Cir.2002), *quoting Sellan v. Kuhlman,* 261 F.3d 303, 314 (2d Cir.2001).*Accord Brown v. Artuz,supra,* 283 F.3d at 498.

As noted in detail in section III(A) above, Justice Torres's second 440.10 decision addressing petitioner's remaining claim-the voluntariness of the plea-though appearing as a denial on procedural grounds, actually denied this claim as having been previously decided on the merits. In deciding petitioner's second 440.10 motion, Justice Torres notes that "[petitioner] raises the same issues which have been thoroughly litigated" and "he raises no issues which were not already addressed at the C.P.L § 440.30(5) hearing, the prior 440.10 motion or the Writ" (Respondent's Aff., Ex. 17 at 2). Logically, Justice Torres must be referring to his decisions addressing petitioner's first 440.10 motion and State petition for habeas corpus.

With respect to petitioner's plea agreement claim, in his decision addressing petitioner's first 440.10 motion, Justice Torres concluded: "This court finds that there was no promise made to the defendant and therefore he is not entitled to the relief he seeks of specific performance or vacatur of the plea and sentence."(Respondent's Aff., Ex. 7 at 10). Likewise, with respect to petitioner's sentencing claims, Justice Torres found: Although the petitioner was sentenced in September of 1996, the sentence reverts back to November 18, 1986. *See*Penal Law § 70.30(5). The sentence imposed in 1996 must run consecutively to the undischarged imprisonment under the 1975 and 1979 convictions. *See*Penal Law § 70.25(2)(a). The maximum term set by this court on September 19, 1996, 7 years, is added to the maximum sentence of the undischarged prison term, 29 years. *See*Penal Law § 70.30(3)(b). Petitioner is incorrect in stating that he has served this term of 3 1/2 to 7 years in its entirety.

The petitioner's position is that the 1988 term has been served in its entirety because he has been imprisoned since November 18, 1986 to date. Based on the calculations submitted in Exhibit C in the Attorney General's response, the petitioner is incorrect. Computations from the Department of Correctional Services containing facts and explanations regarding the petitioner's incarcerory history were received into evidence.

**\*16** (Respondent's Aff., Ex. 8 at 4).

Given the language in Justice Torres's decisions, I conclude that petitioner's remaining claims were denied on the merits.

## 2. *The Plea Agreement*

 [5]  Petitioner argues that "the state sentencing court's blatantly unconstitutional refusal to enforce a plea agreement representation directly affecting petitioner's constitutional liberty interest rights, rendered the plea as constitutionally involuntary" (Petition at 5-a). Petitioner raises three specifications with respect to this claim: (1) the Supreme Court improperly interpreted the Division of Parole's statements concerning petitioner's parole status as representations rather than promises; (2) the Supreme Court denied petitioner a fair adjudication of his guilty plea challenge and violated his due process and equal protection right when they ignored the record showing that petitioner relied on statements that his parole would not be violated, and (3) the prosecutor engaged in misconduct at the plea hearing, sentencing, and post-conviction hearing concerning his knowledge of the voluntariness of the plea.

The standards applicable to claims by state prisoners that the terms of their plea agreement have been breached were summarized by the Court of Appeals in *Spence v. Superintendent,supra,* 219 F.3d at 167-68:

Because a defendant pleading guilty pursuant to a plea agreement waives a number of fundamental constitutional rights, *seeBoykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the circumstances surrounding the plea agreement must comport with due process to ensure defendant's understanding of its consequences. *SeeJohnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Innes v. Dalsheim,* 864 F.2d 974, 979 (2d Cir.1988). The notion of fundamental fairness embodied in due process implies that whatever promises the government makes in the course of a plea agreement to induce a guilty plea must be fulfilled. *SeeSantobello v. New York,* 404 U.S. 257, 261-62, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). In construing the promises made in return for the plea, a court must look to what the parties reasonably understood the terms to mean, and resolve any ambiguity in the agreement in favor of the defendant. *SeeUnited States v. Lawlor,* 168 F.3d 633, 636 (2d Cir.1999); *Innes,* 864 F.2d at 979 ("[T]he state must bear the burden for any lack of clarity in the agreement...."). Principles of contract law and special due process concerns for fairness govern our interpretation of plea agreements. *SeeUnited States v. Rodgers,* 101 F.3d 247, 253 (2d Cir.1996).

*Seealso**United States v. Colon,* 220 F.3d 48, 51 (2d Cir.2000); *In re Altro,* 180 F.3d 372, 375 (2d Cir.1999).

The first step in deciding whether petitioner's plea agreement has been violated is to determine what the terms of the agreement are. *Innes v. Dalsheim,* 864 F.2d 974, 978 (2d Cir.1988) ("First, it must be determined precisely what was provided [in the plea agreement]."). The terms of a plea agreement are issues of fact. *United States v. Doe,* 233 F.3d 642 (1st Cir.2000); *United States v. Williams,* 198 F.3d 988, 992 (7th Cir.1999); *United States v. Rockwell Int'l Corp.,* 124 F.3d 1194, 1199 (10th Cir.1997); *United States v. Clark,* 55 F.3d 9, 11 (1st Cir.1995); *United States v. Robison,* 924 F.2d 612, 614 (6th Cir.1991); *see**United States v. Rourke,* 74 F.3d 802, 805 (7th Cir.1996); *United States v. Fry,* 831 F.2d 664, 666-67 (6th Cir.1987). Since a state court's finding of fact is presumed correct in a federal habeas corpus proceeding, a federal court may reject a state court's findings regarding the terms of a plea agreement only where the petitioner has rebutted the presumption of correctness "by clear and convincing evidence." *28 U.S.C. § 2254(e)(1); Leslie v. Artuz,* 230 F.3d 25, 31 (2d Cir.2000); *Morales v. Artuz,* 98 Civ. 6558(JGK), 2000 WL 1693563 at *9 (S.D.N.Y. Nov. 13, 2000); *Torres v. Artuz,* 99 Civ. 9755(VM), 2000 WL 1639424 at *2 (S.D.N.Y. Oct. 31, 2000).

 **\*17**  In deciding petitioner's first 440.10 motion, the Trial Court found that neither the prosecutor nor the Division of Parole promised petitioner that his guilty plea would not result in a parole violation; nor did either promise petitioner that he would be released following his plea (Respondent's Aff., Ex. 7 at 6). Rather, the Court explicitly stated that in return for petitioner's guilty plea, he would be sentenced to a term of imprisonment of three and one-half to seven years (Respondent's Aff., Ex. 7 at 6). Moreover, the Court noted that neither the issue of concurrent versus consecutive time, nor any other terms of the plea agreement were placed on the record (Respondent's Aff., Ex. 7 at 6).

The Court concluded: "After conducting a hearing in this matter, and after reviewing all materials submitted, this court finds that there was no promise made by anyone with respect to the [petitioner's] parole status."(Respondent's Aff., Ex. 7 at 9).

On the date of the plea, the defendant's attorney expressed his client's wishes to plead guilty to criminal possession of a weapon in the third degree, and "hopes" that the court would offer 3 1/2 to 7. The defense attorney then requested time to consult with his client about the parole hold. When they were

Guzman v. Couture, Not Reported in F.Supp.2d (2003)
Case 7:12-cv-04878-CS Document 24 Filed 01/28/16 Page 79 of 150
2003 WL 165746

finished, the court asked the defense attorney to state what the defendant's wishes were. The defense attorney again stated that his client would agree to plead guilty and requested that the court impose a 3 1/2 to 7 year sentence "as a condition of the plea."This singular condition was reiterated by the defense attorney during the same proceeding. The court also personally inquired of the defendant his understanding of the agreement or condition of his plea during the allocution. No mention was made of any promise by the Division as part of the terms of the plea.

(Respondent's Aff., Ex. 7 at 9).

At the plea hearing, the Court asked defendant: "You understand that the offer is subject to the Court granting the imposing of the sentence of three and a half to seven [years]; is that right?"(P. 12). [10] Petitioner responded affirmatively (P. 12). No other condition for the plea was placed on the record. Petitioner testified that he had "no contact" with the prosecutor regarding the Division of Parole's alleged promise not to violate him; nor did the Court make such a promise to him (H.123). [11]

Since petitioner has not rebutted the state court's finding of fact that the plea agreement contained no promises on behalf of the Division of Parole, petitioner has failed to show that his plea agreement was breached; therefore, he has failed to establish a basis for habeas relief.

**3. *Alleged Errors at Petitioner's Sentencing***

Petitioner's remaining claims allege that his due process rights were violated by the State Court's failure to conduct a time served computation on the record and by the State Court's failure to inform petitioner of the consequences of his plea; specifically, that his sentence would run consecutively with his prior term and that his sentence would not be credited as time served (Petition at 20-21, 40-41).

**\*18** [6] Petitioner points to no federal caselaw or authority requiring a sentencing Court to conduct a computation of the time served by a person released on parole, who is subsequently convicted of a new crime, on the record. Rather, New York Executive Law Section 259-c(1) provides that the state board of parole shall "have the power and duty of determining which inmates serving an indeterminate or determinate sentence of imprisonment may be released on parole...." Moreover, it is the responsibility of the Division

of Parole, not the sentencing Justice, to assess "jail time credit." [12] N.Y. Exec. Law § 259-c(12).

Therefore, there is no basis in either federal or state law for petitioner's claim that Justice Torres was required to assess his time served on the record.

[7] Petitioner's claim that the Trial Court failed to advise him that his sentence for the 1985 offense conduct would run consecutively to his prior undischarged term is unavailing. "Collateral consequences" resulting from petitioner's decision to plead guilty have no effect upon the voluntariness of the plea itself.

> Certain possible consequences of a guilty plea are "collateral" rather than direct and need not be explained to the defendant in order to ensure that the plea is voluntary. *United States v. Russell,* 686 F.2d 35, 38 (2d Cir.1982). For example, judges are not required to inform a defendant of the possibility of deportation after a guilty plea. *Michel v. United States,* 507 F.2d 461, 465-66 (2d Cir.1974); *United States v. Santelises,* 476 F.2d 787, 790 (2d Cir.1973); *seealsoUnited States v.. Yearwood,* 863 F.2d 6, 8 (4th Cir.1988); *Fruchtman v. Keaton,* 531 F.2d 946, 948-49 (9th Cir.), *cert.denied,*429 U.S. 895, 97 S.Ct. 256, 50 L.Ed.2d 178 (1976).*Similarly, whether a federal sentence runs concurrently or consecutively to a state sentence is not a direct consequence of a guilty plea and therefore need not be explained to a defendant for a plea to be constitutionally valid.United States v. Ray,* 828 F.2d 399, 418 (7th Cir.1987), *cert.denied,*485 U.S. 964, 108 S.Ct. 1233, 99 L.Ed.2d 432 (1988); *United States v. Degand,* 614 F.2d 176, 177 (8th Cir.1980). Moreover, because a federal court has no control over any enhancement of a defendant's sentence by a state court, the court is not required to inform the defendant of such a possibility prior to accepting a plea of guilty. *Torrey v. Estelle,* 842 F.2d 234, 236 (9th Cir.1988); *United States v. Garrett,* 680 F.2d 64, 66 (9th

Cir.1982). Other collateral consequences include parole eligibility or revocation, *see.e.g.,Holmes v. United States,* 876 F.2d 1545, 1549 (11th Cir.1989); *Brown v. Perini,* 718 F.2d 784, 788 (6th Cir.1983); *Sanchez v. United States,* 572 F.2d 210, 211 (9th Cir.1977); the likelihood of an undesirable military discharge, *Redwine v. Zuckert,* 317 F.2d 336, 338 (D.C.Cir.1963); and the potential for civil commitment proceedings, *George v. Black,* 732 f.2d 108, 111 (8th Cir.1984).

**\*19** *United States v. United States Currency in the Amount of $228,536.00,* 895 F.2d 908, 915 (2d Cir.1990) (emphasis added).*SeealsoUnited States v. Salerno,* 66 F.3d 544, 550-51 (2d Cir.1995); *Marcelin v. Garvin,* 97 Civ. 2996(AJP), 1999 WL 977221 at \*5 n. 4 (S.D.N.Y. Oct. 26, 1999). As a "collateral consequence" of the plea, there is no constitutional provision requiring that petitioner was informed whether his sentence would run consecutively or concurrently.

Accordingly, petitioner's remaining sentencing claims regarding the State Court's failure to inform petitioner of the consequences associated with taking the plea should be denied on their merits.

## IV. *Conclusion*

Accordingly, for all the foregoing reasons, I respectfully recommend that the petition be denied in all respects.

Additionally, I recommend that a certificate of appealability not be issued since petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel,* 529 U.S. 473, 482, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000); *Barefoot v. Estelle,* 463 U.S. 880, 893, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983); *Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 112 (2d Cir.2000); *Purdy v. United States,* 208 F.3d 41, 44 (2d Cir.2000); *Guerrero v. United States,* 186 F.3d 275, 279

(2d Cir.1999); *Tankleff v. Senkowski,* 135 F.3d 235, 241-42 (2d Cir.1998). The Second Circuit has found the "substantial showing" requirement to be fulfilled " 'if the issues involved in a petition are debatable among jurists of reason, could be resolved in a different manner, or adequate to deserve encouragement to proceed further." ' *Thornton v. Reynolds,* 99 Civ. 10605(GEL), 2001 WL 845452 at \*3 (S.D.N.Y. July 26, 2001), *quotingLucidore v. New York State Div. of Parole,* 209 F.3d at 112,*citingBarefoot v. Estelle,* 463 U.S. 880 at 893 n. 4, 103 S.Ct. 3383, 77 L.Ed.2d 1090. Petitioner has not made such a showing with respect to any of his claims. Accordingly, his petition must be denied and a certificate of appealability should not be issued.

## V. *Objections*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of this Report and Recommendation to file written objections. *See also*Fed.R.Civ.P. 6(a) and 6(e). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Richard M. Berman, United States District Judge, Room 201, 500 Pearl Street, New York, New York 10007 and to the chambers of the undersigned, Room 750, 500 Pearl Street, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Berman. FAILURE TO OBJECT WITHIN TEN (10) DAYS *WILL* RESULT IN A WAIVER OF OBJECTIONS AND *WILL* PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997); *IUE AFL-CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57-59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237 & n. 2 (2d Cir.1983).

## **All Citations**

Not Reported in F.Supp.2d, 2003 WL 165746

## Footnotes

1      Petitioner informed the Court in a letter, dated October 3, 2002, that he would be released from Governor Correctional Facility on October 31, 2002 and that he would be subject to a (unspecified) period of supervised release. *SeeScanio v. United States,* 37 F.3d 858, 860 (2d Cir.1994) ("a petitioner under supervised release may be considered 'in custody' ' for the purpose of invoking federal habeas corpus review). Petitioner appears to be on parole pursuant to a previous

2003 WL 165746

judgment of conviction entered on February 20, 1975, for manslaughter in the first degree, in violation of N.Y. Penal Law § 125.20.

1   Although petitioner did not expressly state that his motion was being made pursuant to N.Y.Crim. Proc. L. § 440.10, Justice Torres deemed the motion to be made under Section 440.10 (Respondent's Aff., Ex. 7).

2   Neither party has provided the Court with a copy of petitioner's writ of mandamus, nor does either party allege the specific date upon which it was filed.

3   Respondent submitted petitioner's "Notice of Appeal" from Justice Torres's March 21, 1997 decisions denying his petition for habeas corpus and his first Section 440.10 motion (Respondent's Aff., Ex. 10). Neither respondent nor petitioner, however, have provided any information concerning the disposition of that appeal.

4   The Appellate Division's decision denying petitioner leave to appeal is unreported.

5   Petitioner alleges that a notice of appeal was timely filed on June 19, 1997 and that the court "granted him leave to proceed as poor person on the original record and typewritten briefs" (Respondent's Aff., Ex. 23 at 1). In addition, petitioner was assigned counsel to represent him on direct appeal (*Id.*).

6   Curiously, although petitioner filed a direct appeal *after* the foregoing decision by Justice Torres, petitioner never raised his claim of ineffective assistance of counsel in that appeal.

7   Among other things, N.Y.Crim. Proc. L. § 430.20(4) provides that when a sentence of imprisonment is vacated and a defendant is re-sentenced, and the period of incarceration imposed at the resentencing is less than or equal to the time previously served, the defendant should be released.

8   It appears that petitioner may have at least a colorable claim that his resentencing violated the Fifth Amendment's prohibition against double jeopardy. *See generally Stewart v. Scully,* 925 F.2d 58 (2d Cir.1991). However, petitioner never asserted a double jeopardy claim in state court and does not assert such a claim in his petition. Consideration of such a claim *sua sponte* would, therefore, violate the principals of exhaustion that are fundamental to habeas corpus.

9   These objections are set forth on pages 7-8 above.

10  "P" refers to the transcript of petitioner's plea hearing before Justice Torres on September 10, 1996.

11  "H" refers to the transcript of the hearing held before Justice Torres on February 11, 1997 regarding petitioner's state writ of habeas corpus and first Section 440.10 motion.

12  "Jail time credit" includes "[a]ny time spent by a person in custody from the time of delinquency to the time service of the sentence resumes [that is] credited against the term or maximum term of the interrupted sentence ..." N.Y. Penal Law § 70.40(3)(c).

---

**End of Document**                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 3328643
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Leroy JOHNSON, Petitioner,
v.
Robert KIRKPATRICK, Superintendent,
Wende Correctional Facility, Respondent.

No. 11 Civ. 1089(CM)(AJP).
|
Aug. 3, 2011.

**Attorneys and Law Firms**

Leroy Johnson, Marcy, NY, pro se.

Susan Axelrod, New York, NY, for Respondent.

### *REPORT AND RECOMMENDATION*

ANDREW J. PECK, United States Magistrate Judge.

 **\*1**  To the Honorable Colleen McMahon, United States District Judge:

Pro se petitioner Leroy Johnson seeks a writ of habeas corpus from his June 27, 2006 conviction, after a jury trial in Supreme Court, New York County, of two counts of first degree rape, three counts of first degree sodomy, two counts of first degree robbery, and one count of first degree burglary (Dkt No. 18: Trial Transcript ["Tr."] 838–40), and sentence of eight consecutive terms of 25 years imprisonment (Dkt No. 18: 6/27/06 Sentencing ["S."] 31). (*See also*Dkt. No. 1: Pet. ¶¶ 1–5.)[1]

Johnson's habeas petition asserts that: (1) Johnson was denied legal counsel during questioning by police (Pet. ¶ 13; Pet. Att. at 7); (2) the police fabricated a statement later attributed to Johnson (Pet. ¶ 13; Pet. Att. at 8); (3) a sample of Johnson's DNA taken by police detectives during questioning was never presented to him or used at trial (Pet. Att. at 9); and (4) Johnson's prosecution was time-barred by "the 5 yrs statute of limitations" (Pet. ¶ 13; Pet. Att. at 10–11). Johnson's habeas petition also attached the Table of Contents pages of his First Department brief (Pet. Att. at 12–14) which asserted additional claims that: (1) Johnson "was deprived of the effective assistance of counsel when counsel failed to ...

develop a statute of limitations defense at trial ... due to his erroneous belief that [this] was a purely legal issue that could not be submitted to the jury" (Pet. Att. at 13, Johnson 1st Dep't Br. Point II); and (2) "in light of the unusual circumstances arising from the delay in prosecution," Johnson's sentence violates his due process rights (Pet. Att. at 14, Johnson 1st Dep't Br. Point III).

For the reasons set forth below, Johnson's habeas petition should be DENIED.

### *FACTS*

On November 18, 1996, Leroy Johnson forced his way into a Greenwich Village apartment where he raped, sodomized and robbed two women. (Dkt. No. 19: Axelrod Aff. Ex. B: Johnson 1st Dep't Br. at 3; Axelrod Aff. Ex. C: State 1st Dep't Br. at 1–2.) Semen recovered from the back of one of the victims was tested in 2005 and found to match Johnson's DNA. (Johnson 1st Dep't Br. at 3, 16, 19; State 1st Dep't Br. at 3–4.) Johnson was charged with robbery, burglary, and the rape and sodomy of both women. (Johnson 1st Dep't Br. at 1, 3; State 1st Dep't Br. at 4.)

### *Pre–Trial Motion to Dismiss*

In 1996, a sample of the perpetrator's DNA was taken from his ejaculate on the back of one of the rape victims. (Dkt. No. 19: Axelrod Aff. Ex. B: Johnson 1st Dep't Br. at 5; Axelrod Aff. Ex. C: State 1st Dep't Br. at 19.) This sample was analyzed using a 6–loci test and compared to the DNA of a suspect the police had in custody, but there was no match. (Johnson 1st Dep't Br. at 5–6; State 1st Dep't Br. at 19.) In March 2000, the New York City Police Department and the Office of the Chief Medical Examiner sent approximately 18,000 DNA evidence samples to be reanalyzed using a more modern 13–loci test.

(Johnson 1st Dep't Br. at 4, 6; State 1st Dep't Br. at 19.)[2] In April 2005, the DNA sample from the 1996 rape was analyzed using the 13–loci test, and matched a sample that had been obtained from Leroy Johnson while he was serving a sentence for a 1997 robbery conviction. (Johnson 1st Dep't Br. at 4–5; State 1st Dep't Br. at 20.) Police arrested Johnson on May 13, 2005. (Johnson 1st Dep't Br. at 14; State 1st Dep't Br. at 11.)

 **\*2**  Prior to trial, Johnson's counsel moved to dismiss the charges, arguing that the prosecution had not been commenced within the statute of limitations specified by New York Criminal Procedure Law § 30.10. (Johnson 1st Dep't Br.

at 3–4; State 1st Dep't Br. at 18.) In 1996, when the rapes were committed, C.P.L. § 30.10 provided that a prosecution for rape, sodomy, robbery, or burglary (*i.e.,* non-Class A felonies) had to be commenced within five years of the crime. *See*C.P.L. § 30.10(2)(b) (as codified in 1996).[3] C.P . L. § 30.10 also provided for tolling:

> 4. In calculating the time limitation applicable to commencement of a criminal action, the following periods shall not be included:
>
> (a) Any period following the commission of the offense during which (i) the defendant was continuously outside this state or (ii) the whereabouts of the defendant were continuously unknown and continuously unascertainable by the exercise of reasonable diligence. However, in no event shall the period of limitation be extended by more than five years beyond the period otherwise applicable under subdivision two.

C.P.L. § 30.10(4)(a) (as codified in 1996). Johnson's motion to dismiss asserted that Johnson's identity could have been ascertained as early as March 2000, when investigators began sending DNA samples to be analyzed using the 13–loci test and Johnson's DNA profile was present in the State's DNA databank. (Johnson 1st Dep't Br. at 4–5; State 1st Dep't Br. at 18–19.) Johnson argued that the C.P.L. § 30.10(4)(a)(ii) tolling ended in March 2000, meaning prosecution was time barred after March 2005, and since Johnson was not arrested until May 2005, the charges should be dismissed. (Johnson 1st Dep't Br. at 5; State 1st Dep't Br. at 18–19.)

The State countered that the police had exercised " 'reasonable diligence' " from 1996 to 2005 while the identity of the perpetrator remained " 'continuously unknown and continuously unascertainable' " and, as such, the C.P.L. § 30.10(4) tolling provision should apply to the entire period. (Johnson 1st Dep't Br. at 5; State 1st Dep't Br. at 20.)

Justice Renee A. White denied Johnson's motion. (*See* Johnson 1st Dep't Br. at 7–8; State 1st Dep't Br. at 20.) Justice White found that the backlog of 17,000 DNA samples awaiting retesting delayed analysis of the DNA sample from the 1996 crime. (*See* Johnson 1st Dep't Br. at 7–8; State 1st Dep't Br. at 20.) Justice White found that Johnson had failed to demonstrate that this delay represented a lack of

reasonable diligence in determining the perpetrator's identity. (*See* Johnson 1st Dep't Br. at 8; State 1st Dep't Br. at 20.)

Johnson's new counsel moved to reargue, asserting that the police could have obtained a 6–loci DNA profile from the incarcerated Johnson in 2000, and failure to do so meant the police had not exercised reasonable diligence. (Johnson 1st Dep't Br. at 9; State 1st Dep't Br. at 21.) Johnson's counsel also argued that because Johnson's prior crimes fit the profile of the 1996 crime, failing to test his DNA as a potential suspect was a further failure of reasonable diligence. (State 1st Dep't Br. at 21.) Finally, Johnson's counsel argued that the DNA backlog should not give rise to an extended tolling period for the statute of limitations. (Johnson 1st Dep't Br. at 9; State 1st Dep't Br. at 21.)

**\*3** The State responded that Johnson's profile in the State DNA databank was a 13–loci sample while the DNA from the 1996 crime scene was analyzed using a 6–loci profile, meaning no match was possible until the crime scene DNA was re-analyzed in 2005. (Johnson 1st Dep't Br. at 9–10; State 1st Dep't Br. at 22.) Furthermore, the State argued that failing to analyze Johnson's DNA while he was in prison was not a not a failure of due diligence, because the police would have needed probable cause to obtain a 6–loci sample from Johnson and his criminal history was not enough to amount to probable cause. (State 1st Dep't Br. at 22.) Instead, Johnson's DNA sample was acquired pursuant to a state statute that required violent felons to submit DNA samples to the New York State DNA databank, and not because he fit the profile of the perpetrator of this crime. (Johnston 1st Dep't Br. at 43, 44 n. 28; State 1st Dep't Br. at 22.)

Justice White again denied Johnson's motion to dismiss, finding that the State had " 'exercised reasonable diligence to ascertain the identity of the perpetrator' " from the time of the crime through Johnson's May 2005 arrest. (*See* Johnson 1st Dep't Br. at 11; State 1st Dep't Br. at 22.)

### The Trial
On June 5, 2007, Johnson proceeded to a jury trial before Justice White in Supreme Court, New York County. (Dkt. No. 18: Tr. 1.)

### The Prosecution Case
Around 5:00 p.m. on November 18, 1996, MG[4] came home from work to a fourth floor apartment she shared with others in Greenwich Village. (Dkt. No. 18: MG: Tr. 460–62.) As

she was unlocking the apartment door, a man approached her from behind, put his gloved hand over her mouth and held a knife to her throat. (MG: Tr. 466–67, 488, 502.) The man told MG that he would kill her if she screamed and that she should open the door and throw her keys on the ground. (MG: Tr. 466, 502.)

Roommate KY was in the living room watching television when she "heard a commotion at the door."(KY: Tr. 527, 529; *see* MG: Tr. 467.) She saw a "six foot tall black man" wearing gloves and a knit cap pulled down to his upper lip. (KY: Tr. 529–30, 551.) The man was restraining MG and told KY that he had a gun. (KY: Tr. 530.) The man took a knit cap from a nearby coatrack and pulled it down over the hat he was already wearing, covering his face. (MG: Tr. 467, 503; KY: Tr. 531.)

The man pushed MG and KY into MG's bedroom and demanded money. (MG: Tr. 467; KY: Tr. 531–32.) MG gave the man some money and jewelry, but he asked for more. (MG: Tr. 468, 499; KY: Tr. 532.) MG offered him their TV, but the man said " '[n]o, I want money and money and jewelry.' " (KY: Tr. 532; MG: Tr. 469, 491.) Brandishing a six-inch knife, the man took KY to her room so that she could retrieve money and jewelry to give to him. (MG: Tr. 469–70; KY: Tr. 533–34.)

Returning with KY to MG's room, the man ordered the two women to take off their clothes. (MG: Tr. 469, 471; KY: Tr. 535.) Using a bed-sheet, he attempted to bind KY's wrist, but became agitated when he could not do so with his gloved hands. (MG: Tr. 472; KY: Tr. 536 .) After the man threatened to kill both women, MG used the bed-sheet and clothing to bind KY's wrists and cover her eyes. (MG: Tr. 472; KY: Tr. 536, 547.) The man turned off the lights, shut the blinds and cut the chord of the telephone, claiming he had a friend who would be watching them from the building across the street. (MG: Tr. 473; KY: Tr. 535.) The man instructed the bound and blindfolded KY to go to the living room so that he could see her while he went into a bedroom with MG. (MG: Tr. 473, 489, 495; KY: Tr. 537.)

*\*4* In the bedroom the man instructed MG to put a condom on his penis. (MG: Tr. 474–75, 505.) While threatening to kill her, the man forced MG to perform oral sex on him and he performed oral sex on her. (MG: Tr. 476–77.) The man ordered MG to get on her hands and knees and penetrated her vagina and anus. (MG: Tr. 477.) The man removed the condom, and MG felt him ejaculate onto her back before he

took a towel and wiped the semen off of her. (MG: Tr. 478, 506.) Throughout his assault on MG, the man called out to KY that she would be next. (MG: Tr. 479; KY: Tr. 538.)

After binding MG's ankles and wrists, the man approached KY in the living room, pulled down her pants and inserted his penis into her vagina and anus. (MG: Tr 479–80; KY: Tr. 538.) The man stopped briefly to put his finger and mouth on KY's vagina, and resumed vaginal and anal penetration with his penis. (KY: Tr. 538–39.) KY felt the man ejaculate onto her back, after which he wiped her back with a towel. (KY: Tr. 539.) The man bound KY's ankles and placed her in one of the bedrooms, all the while threatening to kill her if she "snitched." (KY: Tr. 539, 541.)

MG and KY could hear the man rummaging through drawers in the apartment and running water from the bathroom. (MG: Tr. 481; KY: Tr. 541.) After some time they heard the apartment door close. (MG: Tr. 481; KY: Tr. 541.) MG crawled to KY in the adjoining room and the two untied each other. (MG: Tr. 482; KY: Tr. 541.) MG and KY were terrified that their attacker would kill them if they called the police, so MG called a friend instead. (MG: Tr. 482–83, 508; KY: Tr. 542.) While waiting for the friend to arrive, MG and KY observed that, in addition to the money and jewelry they had given him, the attacker had taken the sheets from the bed, the knit hat that he had used to cover his face, underwear from both women, MG's keys, KY's ID, the used condoms and the towel he used to wipe the semen off both women. (MG: Tr. 497–98; KY: Tr. 543.) At the friend's urging, MG called the police. (MG: Tr. 483, 508–09; KY: Tr. 542.)

The police took MG and KY to Saint Vincent's Hospital. (MG: Tr. 483, 512; KY: Tr. 543) Doctors and nurses performed a "rape kit" examination, taking swabs from various parts of MG and KY's bodies, including the area on their backs where their attacker ejaculated. (MG: Tr. 483–84, 513, 514; KY: Tr. 543–44.) The women also received medication to prevent pregnancy and HIV. (KY: Tr. 543–44.)

Both MG and KY went to the police station to view lineups. (MG: Tr. 498, 504; KY: Tr. 545.) MG could not identify her attacker visually because she had never seen his face. (MG: Tr. 498–99, 504–05.) The police asked MG to try to identify the man's voice. (MG: Tr. 498, 504.) MG thought one of the voices from the lineup sounded familiar, but the voice belonged to a filler. (MG: Tr. 499, 504–05.) KY was unable to identify anybody in the lineup. (KY: Tr. 545.)

**\*5** The Office of the Chief Medical Examiner ("OCME") tested the swab taken from MG's back, developed a DNA profile and compared it to a DNA sample from a suspect, but there was no match. (Chernjawski: Tr. 570–71, 582.) The case remained unsolved. (Tacchi: Tr. 668.)

Nearly nine years later, on April 13, 2005, OCME tested the swab taken from MG's back using more modern technology and developed a 13–loci DNA profile. (Chernjawski: Tr. 578, 582–83.) OCME sent that DNA profile for comparison to the New York State DNA databank. (Chernjawski: Tr. 583–85.) On May 12, 2005, OCME was advised that there was a match with the DNA of Leroy Johnson. (Chernjawski: Tr. 585.) OCME gave the identification information to Det. Edward Tacchi, an investigator with the Manhattan Special Victims Squad. (Chernjawski: Tr. 585; Tacchi: Tr. 667–68.)

On May 13, 2005, Detectives Tacchi and Alan Sandomir traveled to the Bronx to find Leroy Johnson. (Tacchi: Tr. 670–71; Sandomir: Tr. 706.) The detectives saw Johnson in front of a building on Matilda Avenue, but as Det. Tacchi approached, Johnson ran into the building. (Tacchi: Tr. 671, 697; Sandomir: Tr. 706–07, 714.) Johnson was apprehended on Carpenter Avenue, near the rear of the building. (Tacchi: Tr. 672–74; Sandomir: Tr. 709.)

The detectives brought Johnson to the 26th Precinct and read him his *Miranda* rights. (Tacchi: Tr. 675–79, 699; Sandomir: Tr. 710 .) Det. Tacchi showed Johnson photos of MG and KY as they appeared in 1996, and Johnson denied ever having seen them before, stating, " 'I don't know them, I don't know them at all. What, were they raped or something? I don't know them.' " (Tacchi: Tr. 681, 687.) Johnson discussed his previous crimes with Det. Tacchi, describing how " '[u]sually it starts as a regular robbery, it starts off as a robbery then became rape,' " and that he would carry " 'a knife, probably a usually small kitchen knife.' " (Tacchi: Tr. 685.) When Det. Tacchi asked Johnson about the 1996 robbery and rape of MG and KY, Johnson stated, in pertinent part:

> "I don't know nothing about this crime. That's not me. I want a lawyer now. I don't know nothing about it. You're showing me shit ... from 1996. I don't want a lawyer. I want to talk about it, let's finish this case. That's not me. It ain't me. You told me what happened, showed me the photos, you knew where I was. It's a crime I didn't commit, and it's old 1996. You knew

> where I was.... You woulda ... got me, because the statute of limitations. You had years to pick me up. Why didn't you get me nine years ago. I don't know them at all. You had evidence back then. Locking me up for a crime in 1996.... If you have evidence, okay, in 1996, it should have popped up in the database. This can turn into a city lawsuit.... I'm going to sue the city for this."

(Tacchi: Tr. 689–90; *see also* Dkt. No. 1: Pet. Att. at 16–17 (Johnson handwritten statement).)

**\*6** Pursuant to a court order, Det. Sandomir obtained a confirmatory swab from Johnson for DNA verification purposes. (Sandomir: Tr. 712 .) Det. Sandomir submitted the swab to the OCME for DNA testing. (Sandomir: Tr. 713). OCME developed a DNA profile from Johnson's confirmatory swab, compared it to the sample obtained from MG's rape kit and found that they were a match. (Chernjawski: Tr. 585–86, 588–89, 653, 655.) An OCME expert testified that there was a one in one trillion chance that two people would have the same DNA profile as that developed from the semen in MG's rape kit. (Chernjawski: Tr. 592, 653.)

### The Defense Case At Trial

Defense counsel moved to dismiss the charges claiming that the DNA evidence was faulty and was insufficient to establish the perpetrator's identity beyond a reasonable doubt. (Tr. 716.) Justice White denied the motion. (Tr. 716.)

The defense rested without calling any witnesses. (Tr. 717–20.)

### Verdict and Sentence

The jury convicted Johnson of two counts of first degree rape, three counts of first degree sodomy, two counts of first degree robbery and one count of first degree burglary (Tr. 838–40.)

On June 27, 2006, Justice White sentenced Johnson as a predicate felon to a term of 25 years imprisonment on each of the eight counts, each to run consecutively. (Dkt. No. 18: S. 5, 31.) Pursuant to C.P.L. § 70.30(1)(c)(iii), the total sentence is deemed to be 50 years.

### Johnson's Direct Appeal

Represented by counsel from the Legal Aid Society, Johnson appealed to the First Department, claiming that: (1) the prosecution was time-barred by C.P.L. § 30.10 because the prosecution "failed to establish that [Johnson's] identity as the perpetrator and whereabouts were 'continuously unascertainable by the exercise of reasonable diligence' so as to toll the five-year statute of limitations" (Dkt. No. 19: Axelrod Aff. Ex. B: Johnson 1st Dep't Br. at 22–50); (2) Johnson "was deprived of the effective assistance of counsel when counsel failed to ... develop a statute of limitations defense at trial-the only legitimate defense here-due to his erroneous belief that [this] was a purely legal issue that could not be submitted to the jury" (Johnson 1st Dep't Br. at 50–63); and (3) due to the "unusual circumstances arising from the delay in prosecution," Johnson's sentence is excessive so as to violate his due process rights (Johnson 1st Dep't Br. at 63–77).

On September 29, 2009, the First Department unanimously affirmed Johnsonn's conviction, holding in full:

> The court properly denied defendant's motion to dismiss the action as time-barred. Defendant raises a statute of limitations claim that is indistinguishable from a claim this Court rejected in *People v. Rolle*, and we decline to revisit our prior holding.
>
> Defendant claims that his trial counsel rendered ineffective assistance by failing to present a statute of limitations defense to the jury after the court denied his pretrial motion to dismiss the indictment. This claim is unreviewable on direct appeal because it involves matters outside the record concerning counsel's strategy. We note that the record suggests legitimate reasons for not pursuing a statute of limitations defense, and that counsel's statements to the court do not, under the circumstances, render a postconviction motion unnecessary. On the existing record, to the extent it permits review, we find that defendant received effective assistance under the state and federal standards. Even were we to assume that defense counsel erred in determining that the particular statute of limitations issue in this case, *i.e.*, a reasonable diligence issue, was a matter of law to be decided only by the court, defendant has not shown that his counsel's decision affected the outcome of the proceeding or caused him any prejudice.
>
> **\*7** Defendant is not entitled to any reduction in his sentence as a matter of law, and we perceive no basis for

reducing the sentence as a matter of discretion. To the extent that defendant is challenging the constitutionality of the statutory sentencing scheme as it applies to his situation, such claim is unpreserved, and we decline to review it in the interest of justice. As an alternative holding, we also reject it on the merits.

*People v. Johnson,* 65 A.D.3d 975, 976, 886 N.Y.S.2d 375, 375–76 (1st Dep't 2009) (citations omitted).

Johnson sought leave to appeal on only two of the three grounds: statute of limitations and ineffective assistance of counsel. (Axelrod Aff. Ex. F: 12/11/09 Johnson Ct.App. Leave Letter at 2–10). On January 15, 2010, the New York Court of Appeals denied leave to appeal. *People v. Johnson,* 13 N.Y.3d 939, 895 N.Y.S.2d 330 (2010).

### Johnson's Federal Habeas Corpus Petition

Johnson's pro se habeas corpus petition asserts that: (1) Johnson was denied legal counsel during questioning by police and was assured "don't worry you will not need a lawyer" (Dkt No. 1: Pet. ¶ 13; Pet. Att. at 7); (2) while giving a statement to police, Johnson's "words [were] change[d] and the Detective put his ow[n] words in the statement" (Pet. Att. at 8; Pet. ¶ 13); (3) a sample of Johnson's DNA taken by police detectives during questioning was never presented to him or used at trial (Pet. Att. at 7); and (4) the prosecution "never showed any pro[of]" for why the case was not time-barred by "the 5 yrs statute of limitations" (Pet. Att. at 10–11; Pet. ¶ 13). Johnson's habeas petition also attached the Table of Contents pages of his First Department brief (Pet. Att. at 12–14), which in addition to raising the statute of limitations claim also asserted that: (1) Johnson "was deprived of the effective assistance of counsel when counsel failed to ... develop a statute of limitations defense at trial—the only legitimate defense here—due to his erroneous belief that [this] was a purely legal issue that could not be submitted to the jury" (Pet. Att. at 13, Johnson 1st Dep't Br. Point II); and (2) "in light of the unusual circumstances arising from the delay in prosecution," Johnson's sentence violates his due process rights (Pet. Att. at 14, Johnson 1st Dep't Br. Point III).

### *ANALYSIS*

### I. *THE AEDPA REVIEW STANDARD*

Before the Court can determine whether petitioner is entitled to federal habeas relief, the Court must address the proper

habeas corpus review standard under the Antiterrorism and Effective Death Penalty Act ("AEDPA").

In enacting the AEDPA, Congress significantly "modifie[d] the role of federal habeas courts in reviewing petitions filed by state prisoners."*Williams v. Taylor,* 529 U.S. 362, 403, 120 S.Ct. 1495, 1518, 146 L.Ed.2d 389 (2000). The AEDPA imposed a more stringent review standard, as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> **\*8** (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) ... was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). [5]

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have "independent meaning." *Williams v. Taylor,* 529 U.S. at 404–05, 120 S.Ct. at 1519. [6] Both, however, "restrict[ ] the source of clearly established law to [the Supreme] Court's jurisprudence."*Williams v. Taylor,* 529 U.S. at 412, 120 S.Ct. at 1523. [7] "That federal law, as defined by the Supreme Court, may be either a generalized standard enunciated in the [Supreme] Court's case law or a bright-line rule designed to effectuate such a standard in a particular context."*Kennaugh v. Miller,* 289 F.3d at 42;*accord, e.g., Davis v. Grant,* 532 F.3d 132, 140 (2d Cir.2008), *cert. denied,*—— U.S. ——, 129 S.Ct. 1312, 173 L.Ed.2d 595 (2009)."A petitioner can not win habeas relief solely by demonstrating that the state court unreasonably applied Second Circuit precedent."*Yung v. Walker,* 341 F.3d at 110;*accord, e.g., DelValle v. Armstrong,* 306 F.3d at 1200.

As to the "contrary to" clause:

> A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme

> Court] cases.... A state-court decision will also be contrary to [the Supreme] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.

*Williams v. Taylor,* 529 U.S. at 405–06, 120 S.Ct. at 1519–20. [8]

In *Williams,* the Supreme Court explained that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."*Williams v. Taylor,* 529 U.S. at 413, 120 S.Ct. at 1523. [9] However, "[t]he term 'unreasonable' is ... difficult to define ."*Williams v. Taylor,* 529 U.S. at 410, 120 S.Ct. at 1522. The Supreme Court made clear that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law."*Id.* [10] Rather, the issue is "whether the state court's application of clearly established federal law was objectively unreasonable."*Williams v. Taylor,* 529 U.S. at 409, 120 S.Ct. at 1521. [11] "Objectively unreasonable" is different from "clear error." *Lockyer v. Andrade,* 538 U.S. at 75, 123 S.Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."). This is a " 'substantially higher threshold' " than incorrectness. *Renico v. Lett,* 130 S.Ct. at 1862;*accord, e.g., Knowles v. Mirzayance,* 129 S.Ct. at 1420. [12] Federal habeas relief is precluded "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter,* ——U.S. ——, ——, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011). "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings.' " *Cullen v. Pinholster,* 131 S.Ct. at 1398 (citations omitted).

**\*9** "[T]he range of reasonable judgment can depend in part on the nature of the relevant rule."*Yarborough v. Alvarado,* 541 U.S. at 664,124 S.Ct. at 2149. [13] "Even if the state court issued a decision 'contrary to' clearly established Supreme Court law, a petitioner 'cannot obtain relief ... unless application of a *correct* interpretation of that [Supreme Court] decision leads to the conclusion that his rights were

Johnson v. Kirkpatrick, Not Reported in F.Supp.2d (2011)
Case 7:12-cv-04878-CS   Document 24   Filed 01/28/16   Page 88 of 150
2011 WL 3328643

violated.' " *Cousin v. Bennett,* 511 F.3d 334, 339 (2d Cir.), *cert. denied,* 553 U.S. 1096, 128 S.Ct. 2910, 171 L.Ed.2d 847 (2008) (citation omitted).

Moreover, the Second Circuit has held "that a state court determination is reviewable under AEDPA if the state decision unreasonably failed to extend a clearly established, Supreme Court defined, legal principle to situations which that principle should have, in reason, governed." *Kennaugh v. Miller,* 289 F.3d at 45.[14]

Under the AEDPA, in short, the federal courts "must give the state court's adjudication a high degree of deference." *Yung v. Walker,* 341 F.3d at 109; *accord, e.g., Cullen v. Pinholster,* 131 S.Ct. at 1398; *Felkner v. Jackson,* ––– U.S. ––––, ––––, 131 S.Ct. 1305, 1307, 179 L.Ed.2d 374 (2011) (per curiam) ("On federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.' " (citations omitted)); *Renico v. Lett,* 130 S.Ct. at 1862; *Bell v. Cone,* 543 U.S. at 455, 125 S.Ct. at 853; *Mosby v. Senkowski,* 470 F.3d at 519. "[I]t is the petitioner's burden to demonstrate that the state court applied the relevant clearly established law to th[e] record in an unreasonable manner." *Acosta v. Artuz,* 575 F.3d 177, 184 (2d Cir.2009); *accord, e.g., Cullen v. Pinholster,* 131 S.Ct. at 1398 ("The petitioner carries the burden of proof."); *Georgison v. Donelli,* 588 F.3d at 154. As the Supreme Court explained:

> If this standard is difficult to meet, that is because it was meant to be .... [§ 2254(d) ] preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decisions conflict with [the Supreme] Court's precedents. It goes no further.... As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington v. Richter,* 131 S.Ct. at 786–87.

Even where the state court decision does not specifically refer to either the federal claim or to relevant federal case law, the deferential AEDPA review standard applies.

> Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning. And as this Court has observed, a state court need not cite or even be aware of [Supreme Court] cases under § 2254(d). Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.

**\*10** *Harrington v. Richter,* 131 S.Ct. at 784 (citations to *Sellan v. Kuhlman,* 261 F.3d at 312, & other cases omitted); *accord, e.g., Cullen v. Pinholster,* 131 S.Ct. at 1402; *Bell v. Cone,* 543 U.S. at 455, 125 S.Ct. at 853; *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (State court not required to cite Supreme Court cases, or even be aware of them, to be entitled to AEDPA deference, "so long as neither the reasoning nor the result of the state-court decision contradicts them."); *Wilson v. Mazzuca,* 570 F.3d 490, 499 (2d Cir.2009) ("Where, as here, 'a state court fails to articulate the rationale underlying its rejection of a petitioner's claim, and when that rejection is on the merits, the federal court will focus its review on whether the state court's ultimate decision was an unreasonable application of clearly established Supreme Court precedent.' ").[15] " '[A] habeas court must determine what arguments or theories ... could have supporte[d] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court.' " *Cullen v. Pinholster,* 131 S.Ct. at 1402.

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter,* 131 S.Ct. at 784–85.

Johnson v. Kirkpatrick, Not Reported in F.Supp.2d (2011)

2011 WL 3328643

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."*Cullen v. Pinholster,* 131 S.Ct. at 1398.

Finally, in appropriate circumstances, "[i]f [the] court finds that the state court engaged in an unreasonable application of established law, resulting in constitutional error, it must next consider whether such error was harmless."*Howard v. Walker,* 406 F.3d at 122.

In addition to the standard of review of legal issues, the AEDPA provides a deferential review standard for state court factual determinations: "a determination of a factual issue made by a State court shall be presumed to be correct."*28 U.S.C. § 2254(e)(1)*; *accord, e.g., Bierenbaum v. Graham,* 607 F.3d at 48; *Lynn v. Bliden,* 443 F.3d at 246–47; *Rosa v. McCray,* 396 F.3d at 220. "The petitioner bears the burden of 'rebutting the presumption of correctness by clear and convincing evidence.' " *Parsad v. Greiner,* 337 F.3d at 181 (quoting § 2254(e)(1)); *accord, e.g., Bierenbaum v. Graham,* 607 F.3d at 48 ("A state court's determination of a factual issue is presumed to be correct, and may only be rebutted by clear and convincing evidence."); *Brown v. Alexander,* 543 F.3d at 100; *Lynn v. Bliden,* 443 F.3d at 246–47.

## II. JOHNSON'S FALSE EVIDENCE AND INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS ARE UNEXHAUSTED AND BARRED FROM FEDERAL HABEAS REVIEW

### A. *The Exhaustion Doctrine: Background*

**\*11** Section 2254 codifies the exhaustion requirement, providing that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that —(A) the applicant has exhausted the remedies available in the courts of the State...."*28 U.S.C. § 2254(b)(1)(A).* [16] As the Supreme Court has made clear, "[t]he exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings."*Rose v. Lundy,* 455 U .S. at 518, 102 S.Ct. at 1203;*accord, e.g., O'Sullivan v. Boerckel,* 526 U.S. at 845, 119 S.Ct. at 1732.

The Second Circuit determines whether a claim has been exhausted by applying a two-step analysis:

First, the petitioner must have fairly presented to an appropriate state court

the same federal constitutional claim that he now urges upon the federal courts.... Second, having presented his federal constitutional claim to an appropriate state court, and having been denied state relief, the petitioner must have utilized all available mechanisms to secure [state] appellate review of the denial of that claim.

*Diaz v. Coombe,* 97 Civ. 1621, 1997 WL 529608 at *3 (S.D.N.Y. June 12, 1997) (Mukasey, D.J. & Peck, M.J.); *accord, e.g., O'Sullivan v. Boerckel,* 526 U.S. at 843–48, 119 S.Ct. at 1732–34.

"The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts."*Daye v. Attorney Gen.,* 696 F.2d at 191. [17] The Second Circuit has held that a federal habeas petitioner must have alerted the state appellate court that a federal constitutional claim is at issue. *E.g., Cox v. Miller,* 296 F.3d at 99; *Jones v. Vacco,* 126 F.3d at 413–14; *Grady v. LeFevre,* 846 F.2d 862, 864 (2d Cir.1988); *Petrucelli v. Coombe,* 735 F.2d 684, 688–89 (2d Cir.1984); *Daye v. Attorney Gen.,* 696 F.2d at 191. In *Daye,* the Second Circuit en banc stated:

[T]he ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye v. Attorney Gen.,* 696 F.2d at 194. [18] The Supreme Court has confirmed the long-held view of the Second Circuit that "a state prisoner must present his claims to a state supreme [*i.e.,* highest] court in a petition for discretionary review in order to satisfy the exhaustion requirement."*O'Sullivan v. Boerckel,* 526 U.S. at 839–40, 119 S.Ct. at 173. [19]

### B. *Johnson's False Evidence And Ineffective Assistance Of Counsel Habeas Claims Were Not Presented to the State Courts and Thus are Unexhausted*

**\*12** Johnson claims that the statement Det. Tacchi read at trial did not accurately reflect the statements he made during police questioning. (*See* page 13 above.) This claim is based on evidence outside the trial record.[20] Similarly, as the First Department noted, Johnson's ineffective assistance of counsel claim was "unreviewable on direct appeal because it involves matters outside the record concerning counsel's strategy." *People v. Johnson,* 65 A.D.3d 975, 976, 886 N.Y.S.2d 375, 375–76 (1st Dep't), *appeal denied,*13 N.Y.3d 939, 895 N.Y.S.2d 330, 922 N.E.2d 919 (2010).[21]

Claims based on evidence outside the trial record, including most ineffective assistance of trial counsel claims, cannot be raised on direct state appeal but rather must be made through a C.P.L. § 440 motion. *See, e.g., Gomez v. Duncan,* 02 Civ. 0846, 2004 WL 119360 at \*17 (S.D.N.Y. Jan.27, 2004) (Peck, M.J.); *Quinones v. Miller,* 01 Civ. 10752, 2003 WL 21276429 at \*21 & n. 34 (S.D.N.Y. June 3, 2003) (Peck, M.J.) ("[U]nder New York law, ineffective [trial] counsel claims involving matters outside the record ... 'must be pursued by way of a CPL 440.10 motion.' " (citing cases)), *report & rec. adopted,* 2005 WL 730171 (S.D.N.Y. Mar.31, 2005), *aff'd,*224 F. App'x 44 (2d Cir.2007); *People v. Stevenson,* 58 A.D.3d 948, 949, 870 N.Y.S.2d 637, 638 (3d Dep't) ("[I]nsofar as defendant's claims [including ineffective assistance claim] involve matters outside the record, they should be pursued via a CPL article 440 motion."), *appeal denied,*12 N.Y.3d 860, 881 N.Y.S.2d 671, 909 N.E.2d 594 (2009); *People v. Nason,* 31 A.D.3d 818, 820, 819 N.Y.S.2d 790, 792 (3d Dep't) ("[M]ost of defendant's complaints concerning counsel involved matter dehors the record, which should be addressed by way of a CPL article 440 motion."), *appeal denied,*7 N.Y.3d 869, 824 N.Y.S.2d 614, 857 N.E.2d 1145 (2006); *People v. Santer,* 30 A.D.3d 1129, 1129, 816 N.Y.S.2d 444, 444 (1st Dep't) ("Since defendant's ineffective assistance of counsel claim turns on matters outside the record, ... it is not reviewable on direct appeal and would require further record to be developed by way of a CPL 440.10 motion ."), *appeal denied,*7 N.Y.3d 928, 827 N.Y.S.2d 697, 860 N.E.2d 999 (2006).

Since Johnson never filed a C.P.L. § 440 motion alleging false evidence or ineffective assistance of trial counsel, and since there is no time limit for filing such a motion,[22] that remedy was still available to Johnson in state court when he filed his federal habeas petition. *See, e.g., Hernandez v. Lord,* 00 Civ. 2306, 2000 WL 1010975 at \*3 (S.D.N.Y. July 21, 2000) (Peck, M.J.).

## C. *Johnson's Unexhausted Claims are Deemed Deleted*

With these two claims unexhausted, Johnson presents to this Court a habeas petition containing both exhausted and unexhausted claims.[23] The Supreme Court addressed the issue of "mixed" petitions in *Rhines v. Weber,* holding in pertinent part:

> [I]t likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. In such circumstances, the district court should stay, rather than dismiss, the mixed petition. In such a case, the petitioner's interest in obtaining federal review of his claims outweighs the competing interests in finality and speedy resolution of federal petitions.

**\*13** *Rhines v. Weber,* 544 U.S. at 278, 125 S.Ct. at 1535 (citations omitted).

On the other hand, the Supreme Court cautioned that the stay and abeyance procedure should not be used if the petitioner does not demonstrate good cause for his failure to exhaust claims in state court. *Rhines v. Weber,* 544 U.S. at 277, 125 S.Ct. at 1535 ("Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court."); *accord, e.g., Spurgeon v. Lee,* No. 11–CV–00600, 2011 WL 1303315 at \*3 (E.D.N.Y. Mar.31, 2011) (Because "petitioner offers no explanation, let alone asserts 'good cause,' as to why he did not previously raise his ... claim in state court," stay and abeyance denied as to those claims.); *Redd v. Woughter,* 09 Civ. 9819, 2010 WL 4983169 at \* 1 (S.D.N.Y. Dec.3, 2010) ("[P]etitioner has not demonstrated good cause because the petitioner has not provided any reason for not exhausting his ineffective assistance of appellate counsel claim before bringing his current petition."Stay and abeyance denied.); *Johnson v. Fischer,* 06 Civ. 4759, 2010 WL 1779158 at \*5– 6 (S.D.N.Y. Apr.23, 2010) (Finding lack of good cause and denying stay and abeyance where "[p]etitioner has provided no explanation for his failure to move for *coram nobis* relief at the conclusion of his appeal."); *Jones v. Walsh,* No. 08 CV 915, 2008 WL 2064555 at \*6 n. 4 (E.D.N.Y. May 12, 2008) (No showing of good cause where petitioner "has offered no reason for why he failed to exhaust his claims in state court."Stay and abeyance denied.).

Johnson has offered no explanation for why his state claims remain unexhausted, and therefore has not shown the requisite good cause to receive a stay and abeyance. Johnson has been on notice of the need to file a C.P.L. § 440 motion since September 2009, when the First Department advised him that his ineffective assistance of counsel claim "involve[d] matters outside the record" and that a "postconviction motion" would be necessary. *People v. Johnson,* 65 A.D.3d 975, 976, 886 N.Y.S.2d 375, 376 (1st Dep't 2009), *appeal denied,*13 N.Y.3d 939, 895 N.Y.S.2d 330, 922 N.E.2d 919 (2010); *see, e.g., Taylor v. Poole,* 07 Civ. 6318, 2009 WL 2634724 at *25 (S.D.N.Y. Aug.27, 2009) ("[N]othing in the record would justify granting a stay inasmuch as [petitioner] has not shown 'good cause' for the failure to present the claim earlier. To the contrary, the record reflects that [petitioner] has been aware that he was required to move to withdraw his guilty plea since at least March 30, 2004, when the Appellate Division specifically stated that the proper manner in which to challenge any sentence attributable to his plea was to move to withdraw the plea."(citation to *Rhines* omitted)); *Horton v. Ercole,* 557 F.Supp.2d 308, 328 (N.D.N.Y.2008) (Petitioner has not shown good cause for failure to exhaust ineffective assistance of appellate counsel claim where "[a]lthough he is aware that this claim must be raised in a state coram nobis petition in order to be properly exhausted, [petitioner] failed to file such a petition, and offers no explanation for that failure."(record citation omitted)). Thus, a stay and abeyance would be inappropriate here.

**\*14** In *Rhines* the Supreme Court addressed such a situation:

> [I]f a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief.

*Rhines v. Weber,* 544 U.S. at 278, 125 S.Ct. at 1535. In this case, were the Court to dismiss Johnson's petition in its entirety, Johnson would be unable to re-file a federal habeas petition because the one-year AEDPA statute of limitations already has run. *See* 28 U.S.C. § 2244(d)(1). [24] Therefore Johnson would have to either delete his unexhausted claims and have his other claims reviewed by the Court, or the entire petition would have to be dismissed and Johnson would

have no federal review of his claims. The Court presumes that Johnson would prefer his unexhausted claims deleted and other claims reviewed, and the Court proceeds as such. *See Reyes v. Morrissey,* 07 Civ. 2539, 2010 WL 2034531 at *9 (S.D.N.Y. Apr.21, 2010) ("On the assumption that Petitioner would prefer the Court to consider the majority of his claims, rather than dismiss the entire Petition outright and risk being barred from raising any of those claims again in federal court, this Court will proceed to consider the remainder of the claims."(fn.omitted)), *report & rec. adopted,* 2010 WL 2034527 (S.D.N.Y. May 19, 2010); *accord, e .g., Taylor v. Poole,* 2009 WL 2634724 at *25 n. 11 ("The Court assumes that [petitioner] would prefer to have this [unexhausted and not stayed] claim omitted from his petition rather than having the entire petition dismissed."); *Lee v. Paquin,* No. 08–CV–697, 2009 WL 3047603 at *5 (W.D.Wis. Sept. 18, 2009) (Court "assume[s] that [petitioner] would prefer to exclude the unexhausted claims rather than have the petition dismissed in its entirety."); *cf. Davis v. McKane,* No. 05–3442, 2006 WL 3718181 at *4 (D.Kan. Dec.13, 2006) (Where no good cause for failure to exhaust and thus no stay and abeyance, Court treats unexhausted claims as if petitioner had deleted them.), *appeal dismissed,*241 F. App'x 507 (10th Cir .2007); *Butler v. Bershuis,* No. 02CV394, 2005 WL 2417655 at *6 (W .D.Mich. July 12, 2005) (Where no good cause for failure to exhaust claim and thus no stay and abeyance, Court addresses merits of habeas claims rather than dismiss as mixed petition.), *report & rec. adopted,* 2005 WL 2417667 (W.D.Mich. Sept.30, 2005).

## III. JOHNSON'S REMAINING CLAIMS ARE UNEXHAUSTED, BUT DEEMED EXHAUSTED AND PROCEDURALLY BARRED

### A. *Johnson's Remaining Claims Are Unexhausted*

#### 1. *Johnson's Fifth Amendment and Brady Claims Were Not Raised On Appeal*

Johnson alleges that his Fifth Amendment rights were violated because during police questioning he asked for a lawyer but was told "don't worry you will not need a lawyer" and was assured that once he wrote a statement and provided a DNA sample he would be allowed to go home. (Dkt. No. 1: Pet. ¶ 13; Pet. Att. at 7; *see* page 13 above.) Johnson also asserts that a DNA sample taken during police questioning was never returned to him and was never used at trial. (Pet. ¶ 13; Pet. Att. at 9.) Liberally construed, this allegation supports a claim that the State withheld potentially exculpatory material in violation of *Brady v. Maryland,* 373

U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). However, Johnson never raised these claims to the First Department nor the New York Court of Appeals. (*See* Dkt. No. 19: Axelrod Aff. Ex. B: Johnson 1st Dep't Br. at 2; Axelrod Aff. Ex. D: Johnson 1st Dep't Reply Br. at 1; Axelrod Aff. Ex. F: 12/11/09 Johnson Ct.App. Leave Letter at 2–10; see pages 11–13 above.) Because Johnson failed to present these claims to the state courts, Johnson's Fifth Amendment and *Brady* claims are unexhausted. (*See* cases cited on pages 23–25 above.)

### 2. Johnson's Statute Of Limitations Claim Was Not Raised In Federal Terms

 **\*15** Johnson claims his prosecution was time-barred by "the 5 yrs statute of limitations" as then-codified in C.P.L. § 30. 10, and thus his "constitutional rights" were violated. (Dkt. No. 1: Pet. ¶ 13; Pet. Att. at 10–11; *see* page 13 above.) Although Johnson's habeas petition mentions the "United States Constitution" and "constitutional rights," Johnson's appeal to the First Department and subsequent leave letter to the New York Court of Appeals raised solely a state law claim as to the interpretation of the tolling provision of C.P.L. § 30. 10, without citing any federal case law and making no mention of any constitutional rights. (Pet. Att. at 10–11; Dkt. No. 19: Axelrod Aff. Ex. B: Johnson 1st Dep't Br. at 22–50; Axelrod Aff. Ex. D: Johnson 1st Dep't Reply Br. at 3–7; Axelrod Aff. Ex. F: 12/11/09 Johnson Ct.App. Leave Letter at 2–6.) As Johnson failed to raise his statute of limitations claim in federal terms, any federal claim he now raises was not properly exhausted before the New York courts. *See, e.g., Fernandez v. Artus,* 07 Civ 2532, 2009 WL 1586271 at * 14 (S.D.N.Y. June 8, 2009) (Peck, M.J.) (Claim unexhausted where petitioner " 'made no references to any federal constitutional issues or claims' in his leave letter."(citing cases)); *Harrison v. Walsh,* 06 Civ. 13328, 2007 WL 1576265 at *22 (S.D.N.Y. June 1, 2007) (Peck, M.J.) (Petitioner's C.P.L. § 30.10 claim "was not raised in a way to 'call to mind' due process issues. His present federal due process claim thus was not raised on direct appeal" and is therefore unexhausted.), *report & rec. adopted,* 2007 WL 2844867 (S.D.N.Y. Sept.27, 2007); *Rosario v. Walsh,* 05 Civ. 2684, 2006 WL 1431410 at *16 (S.D.N.Y. May 25, 2006) (Peck, M.J.) (Claim unexhausted where petitioner "did not cite to the Constitution no [r] refer to 'due process,' 'fair trial,' or similar constitutional phrases; [petitioner] cited no federal cases nor state cases employing constitutional analysis."), *report & rec. adopted,* 2006 WL 1880958 (S.D.N.Y. July 5, 2006); *see also Ayala v. Artus,* No. 07–CV–0404, 2010

WL 1492232 at *9 n .4 (W.D.N.Y. Apr. 12, 2010) (Petitioner "argues that the trial court misapplied or misinterpreted the tolling provisions of CPL § 30.10 in denying his motion. Such a claim is a matter of state law that is generally not cognizable on habeas review."). [25]

### 3. Johnson's Excessive Sentence Claim Was Not Raised To The New York Court Of Appeals

Johnson's habeas petition attached the Table of Contents of his First Department brief, asserting that due to the "unusual circumstances arising from the delay in prosecution," Johnson sentence was excessive, and the Court assumes that Johnson intended to raise that claim in federal law. (*See* page 13 above.) However, Johnson's leave to appeal letter only asked the New York Court of Appeals to review "issues concerning ... tolling of the former five-year statute of limitations," and made no mention of his excessive sentence claim. (Dkt. No. 19: Axelrod Aff. Ex. F: 12/11/09 Johnson Ct.App. Leave Letter at 2–10; *see* pages 12–13 above.) By not including the excessive sentence claim in his leave letter, Johnson did not present the claim to the New York Court of Appeals. *See, e.g., Smith v. Duncan,* 411 F.3d 340, 345 (2d Cir.2005) ("Generally 'we assume that the [New York] Court of Appeals would construe a petitioner's leave application as abandoning claims that the petitioner had pressed to the Appellate Division below' where those claims were not presented to the New York high court for review."); *accord, e.g., Jackson v. Lee,* 10 Civ. 3062, 2010 WL 4628013 at *19–21 (S.D.N.Y. Nov.16, 2010) (Peck, M.J.) ( & cases cited therein), *report & rec. adopted,* 2010 WL 5094415 (S.D.N.Y. Dec.10, 2010). Therefore, Johnson's excessive sentence claim is unexhausted. (*See* cases cited on page 25 above.)

### B. Johnson's Unexhausted Claims Are Deemed Exhausted And Procedurally Barred

 **\*16** " ' For exhaustion purposes, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." ' " *Reyes v. Keane,* 118 F.3d 136, 139 (2d Cir.1997) (quoting *Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991) (quoting *Harris v. Reed,* 489 U.S. 255, 263 n. 9, 109 S.Ct. 1038, 1043 n. 9, 103 L.Ed.2d 308 (1989))). [26] "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." *Grey v. Hoke,* 933 F.2d at 120. Consequently, such procedurally barred claims are "deemed exhausted" by the federal courts. *E.g., St. Helen v. Senkowski,* 374 F.3d at

183; *DiGuglielmo v. Smith,* 366 F.3d at 135; *McKethan v. Mantello,* 292 F.3d at 122–23; *Ramirez v. Attorney Gen.,* 280 F.3d at 94; *Reyes v. Keane,* 118 F.3d at 139; *Bossett v. Walker,* 41 F.3d at 828; *Washington v. James,* 996 F.2d 1442, 1446–47 (2d Cir.1993), *cert. denied,* 510 U.S. 1078, 114 S.Ct. 895, 127 L.Ed.2d 87 (1994); *Grey v. Hoke,* 933 F.2d at 120–21.

As the Second Circuit has explained:

> In New York, to invoke "one complete round of the State's established appellate review process," a criminal defendant must first appeal his or her conviction to the Appellate Division, and then must seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal.

*Galdamez v. Keane,* 394 F.3d 68, 74 (2d Cir.) (citation omitted; quoting *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999)), *cert. denied,* 544 U.S. 1025, 125 S.Ct. 1996, 161 L.Ed.2d 868 (2005).

In this case, it is clear that Johnson is now barred from raising his Fifth Amendment, *Brady,* statute of limitations and excessive sentence claims before the New York Court of Appeals since he has already used his one opportunity for leave to appeal to that court. *See* N.Y. Comp. Codes R. & Regs. tit. 22, § 500.20(a)(2) (permitting only one application for leave to appeal). [27]

To avoid a procedural default on his unexhausted claims, Johnson would have to "show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claims will result in a 'fundamental miscarriage of justice,' " *i.e.,* a showing of "actual innocence." *Harris v. Reed,* 489 U.S. at 262, 109 S.Ct. at 1043 (citations omitted); *accord, e.g., Schlup v. Delo,* 513 U.S. 298, 324–27, 115 S.Ct. 851, 865–67, 130 L.Ed.2d 808 (1995); *Coleman v. Thompson,* 501 U.S. 722, 735, 111 S.Ct. 2546, 2557, 115 L.Ed.2d 640 (1991); *see also, e.g., Messiah v. Duncan,* 435 F.3d 186, 195 (2d Cir.2006); *Green v. Travis,* 414 F.3d 288, 294 (2d Cir.2005); *Smith v. Duncan,* 411 F.3d 340, 347 (2d Cir.2005); *DeBerry v. Portuondo,* 403 F.3d 57, 64 (2d Cir.), *cert. denied,* 546 U.S. 884, 126 S.Ct. 225, 163 L.Ed.2d 189 (2005); *St. Helen v. Senkowski,* 374 F.3d 181, 183–84 (2d Cir.2004), *cert. denied,* 543 U.S. 1058, 125 S.Ct. 871, 160 L.Ed.2d 785 (2005); *DiGuglielmo v. Smith,* 366 F.3d 130, 135 (2d Cir.2004); *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir.1997); *Glenn v. Bartlett,* 98 F.3d 721, 724 (2d Cir.1996), *cert. denied,* 520 U.S. 1108, 117 S.Ct. 1116, 137 L.Ed.2d 317 (1997); *Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir.1990).

*17 Here, Johnson makes no showing of cause or prejudice, but instead questions why the perpetrator's DNA was found on only one of the victims and not the other. (Dkt. No. 1: Pet. Att. at 11.) Liberally construed, this might constitute an argument that Johnson is actually innocent, and hence his claims should be excepted from procedural default.

The Supreme Court has explained that the fundamental miscarriage of justice exception is "tied ... to [a] petitioner's innocence" and exists to protect those who are "actually innocent." *Schlup v. Delo,* 513 U.S. at 321, 324, 115 S.Ct. at 864, 865. Because " 'actual innocence' means factual innocence, not mere legal insufficiency," *Bousley v. United States,* 523 U.S. 614, 623–24, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998); *accord, e.g., Sweet v. Bennett,* 353 F.3d 135, 142 (2d Cir.2003); *Dunham v. Travis,* 313 F.3d 724, 730 (2d Cir.2002), "prisoners asserting innocence as a gateway to defaulted claims must establish that, *in light of new evidence,* 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.' " *House v. Bell,* 547 U.S. 518, 536–37, 126 S.Ct. 2064, 2076–77, 165 L.Ed.2d 1 (2006) (emphasis added); *see also, e.g., Schlup v. Delo,* 513 U.S. at 324–27, 115 S.Ct. at 865–67 (fundamental miscarriage of justice must be demonstrated by showing through "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence."); *Murden v. Artuz,* 497 F.3d 178, 194 (2d Cir.2007) (" 'To demonstrate actual innocence a habeas petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.' This requires 'a stronger showing' than the showing of prejudice necessary to prevail on an ineffective assistance claim. Actual innocence requires 'not legal innocence but factual innocence.' " (citations omitted)), *cert. denied,* 552 U.S. 1150, 128 S.Ct. 1083, 169 L.Ed.2d 823 (2008).

Accordingly, the fundamental miscarriage of justice exception is "extremely rare" and should be applied only in "extraordinary case[s]." *Schlup v. Delo,* 513 U.S. at 321–22, 115 S.Ct. at 865; *see also, e.g., Morrison v. Ercole,* 07 Civ. 3576, 2009 WL 161040 at *6 (S.D.N.Y. Jan.16, 2009) ("The Second Circuit has emphasized that the type of evidence on which claims of actual innocence may be based is strictly

limited and that petitioners must meet a 'demanding standard' in order to take advantage of this 'gateway.' ").

Johnson fails to meet the heavy burden required in *Schlup* and *House.*As part of his petition, Johnson questions why the perpetrator's DNA was only recovered from one victim, when "if I suppose[d]ly done this to both victims ... then they should of had my DNA on both victims."(Pet. Att. at 11.) This assertion of actual innocence falls well short of the standard as Johnson fails to provide any *new* evidence to support his actual innocence claim. Johnson's actual innocence claim fails because "[w]ithout any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."*Schlup v. Delo,* 513 U.S. at 316, 115 S.Ct. at 861;*accord, e.g., Jones v. Armstrong,* 367 F. App'x 256, 259 (2d Cir.) (Petitioner "has not presented any new evidence that was not presented at his trial. Instead, he argues that the jury placed too much emphasis on the testimonial evidence and not enough emphasis on the physical evidence. This does not make out an actual innocence claim allowing this Court to disregard [petitioner's] procedural default."), *cert. denied,*—— U.S. ——, 130 S.Ct. 3367, 176 L.Ed.2d 1263 (2010); *Celaj v. Artuz,* 49 F.App'x 331, 334 (2d Cir.2002) (quoting *Schlup* );*cert. denied,*538 U.S. 912, 123 S.Ct. 1495, 155 L.Ed.2d 236 (2003); *Rodriguez v. Marshall,* No. 07–CV–1328, 2011 WL 2650196 at *4 (E.D.N.Y. June 29, 2011) ("[A] habeas petition alleging 'actual innocence' must provide 'new reliable evidence' of innocence 'that was not presented' at trial; a petitioner's bare statement that he is innocent is insufficient."(quoting *Schlup* )); *Thomas v. Heath,* 10 Civ. 5861, 2011 WL 1849097 at *6 (S.D.N.Y. May 16, 2011) ("To be credible, a claim of actual innocence must be supported by 'new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial.' " (quoting *Schlup* )); *Lasso–Reina v. Haponick,* 05 Civ. 8817, 2009 WL 3334843 at *9 (S.D.N.Y. Oct.14, 2009) ("Moreover, the petitioner is expected to establish actual innocence based on new evidence rather than what was presented at trial."); *Fernandez v. Artus,* 07 Civ. 2532, 2009 WL 1586271 at *15 (S.D.N.Y. June 8, 2009) (Peck, M.J.) ("To claim actual innocence, a petitioner must show more than the prosecution's evidence was weak or even insufficient; rather, he must present new evidence (such as DNA evidence) of his innocence.").

*18 As Johnson has not shown cause, prejudice or a fundamental miscarriage of justice, his Fifth Amendment, *Brady,* statute of limitations and excessive sentence habeas claims should be *DENIED* as unexhausted but deemed exhausted and procedurally barred from habeas review.

### CONCLUSION

For the reasons discussed above, Johnson's habeas petition should be *DENIED* and a certificate of appealability should not issue.

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also*Fed.R.Civ.P. 6.[28] Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Colleen McMahon, 500 Pearl Street, Room 1350, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge McMahon (with a courtesy copy to my chambers). Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,*513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298,300 (2d Cir.), *cert. denied,*506 U.S. 1038, 113 S.Ct. 825 (1992); *Small v. Sec'y of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 3328643

Footnotes

1    Pursuant to C.P.L. § 70.30(1)(c)(iii), the total sentence is deemed to be 50 years.

2    The trial judge, Justice Renee A. White, noted that the 6–loci DNA profile and the 13–loci DNA profile are not comparable. (*See* Johnson 1st Dep't Br. at 11; State 1st Dep't Br. at 22.)

3    *C.P.L. § 30.10* has since been amended to, inter alia, remove any statute of limitations for a prosecution for first degree rape or for any crime previously defined as sodomy. See *C.P.L. §§ 30.10, 130.50.*

4    To protect the privacy of the victims, they will be referred to by their initials instead of their names.

5    *See also, e.g., Cullen v. Pinholster,* —— U.S. ——, ——, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011); *Knowles v. Mirzayance,* 556 U.S. 111, 129 S.Ct. 1411, 1418, 173 L.Ed.2d 251 (2009); *Portalatin v. Graham,* 624 F.3d 69, 78–79 (2d Cir.2010) (en banc), *cert. denied,*131 S.Ct. 1691, 1693 (2011); *Henry v. Poole,* 409 F.3d 48, 67 (2d Cir.2005), *cert. denied,*547 U.S. 1040, 126 S.Ct. 1622, 164 L.Ed.2d 334 (2006); *Howard v. Walker,* 406 F.3d 114, 121–22 (2d Cir.2005); *Cox v. Donnelly,* 387 F.3d 193, 197 (2d Cir.2004); *Dallio v. Spitzer,* 343 F.3d 553, 559–60 (2d Cir.2003), *cert. denied,*541 U.S. 961, 124 S.Ct. 1713, 158 L.Ed.2d 402 (2004); *Eze v. Senkowski,* 321 F.3d 110, 120 (2d Cir.2003) ("AEDPA changed the landscape of federal habeas corpus review by 'significantly curtail[ing] the power of federal courts to grant the *habeas* petitions of state prisoners.' " (quoting *Lainfiesta v. Artuz,* 253 F.3d 151, 155 (2d Cir.2001), *cert. denied,*535 U.S. 1019, 122 S.Ct. 1611, 152 L.Ed.2d 625 (2002))).

6    *Accord, e.g., Henry v. Poole,* 409 F.3d at 68; *Howard v. Walker,* 406 F.3d at 122; *Parsad v. Greiner,* 337 F.3d 175, 181 (2d Cir.), *cert. denied,*540 U.S. 1091, 124 S.Ct. 962, 157 L.Ed.2d 798 (2003); *Jones v. Stinson,* 229 F.3d 112, 119 (2d Cir.2000); *Lurie v. Wittner,* 228 F.3d 113, 125 (2d Cir.2000), *cert. denied,*532 U.S. 943, 121 S.Ct. 1404, 149 L.Ed.2d 347 (2001); *Clark v. Stinson,* 214 F.3d 315, 320 (2d Cir.2000), *cert. denied,*531 U.S. 1116, 121 S.Ct. 865, 148 L.Ed.2d 778 (2001).

7    *Accord, e.g., Carey v. Musladin,* 549 U.S. 70, 77, 127 S.Ct. 649, 654, 166 L.Ed.2d 482 (2006) ("Given the lack of holdings from this Court regarding [this issue], it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"); *Yarborough v. Alvarado,* 541 U.S. 652, 661, 124 S.Ct. 2140, 2147, 158 L.Ed.2d 938 (2004) ("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"); *Wiggins v. Smith,* 539 U.S. 510, 519, 123 S.Ct. 2527, 2534, 156 L.Ed.2d 471 (2003); *Lockyer v. Andrade,* 538 U.S. 63, 71, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003) ("*Section 2254(d)(1)*'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'"); *Portalatin v. Graham,* 624 F.3d at 79 ("To qualify as 'clearly established' for the purposes of federal habeas review, a rule of law must be embodied in the 'holdings, as opposed to the dicta,' of Supreme Court precedent."); *Georgison v. Donelli,* 588 F.3d 145, 153–54 (2d Cir.2009); *Dunlap v. Burge,* 583 F.3d 160, 164 (2d Cir.), *cert. denied,*—— U.S. ——, 130 S.Ct. 642, 175 L.Ed.2d 502 (2009); *Hargett v. Giambruno,* 291 F. App'x 402, 403 (2d Cir.2008); *Howard v. Walker,* 406 F.3d at 122; *Tueros v. Greiner,* 343 F.3d 587, 591 (2d Cir.2003), *cert. denied,*541 U.S. 1047, 124 S.Ct. 2171, 158 L.Ed.2d 739 (2004); *Yung v. Walker,* 341 F.3d 104, 109–10 (2d Cir.2003); *Parsad v. Greiner,* 337 F.3d at 181; *DelValle v. Armstrong,* 306 F.3d 1197, 1200 (2d Cir.2002); *Kennaugh v. Miller,* 289 F.3d 36, 42 (2d Cir.), *cert. denied,*537 U.S. 909, 123 S.Ct. 251, 154 L.Ed.2d 187 (2002); *Loliscio v. Goord,* 263 F.3d 178, 184 (2d Cir.2001); *Sellan v. Kuhlman,* 261 F.3d 303, 309 (2d Cir.2001).

8    *Accord, e.g., Knowles v. Mirzayance,* 129 S.Ct. at 1419 (The Supreme "Court has held on numerous occasions that it is not 'an unreasonable application of clearly established federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this [Supreme] Court."(quotation omitted)); *Brown v. Payton,* 544 U.S. 133, 141, 125 S.Ct. 1432, 1438–39, 161 L.Ed.2d 334 (2005); *Bell v. Cone,* 543 U.S. 447, 452–53, 125 S.Ct. 847, 851, 160 L.Ed.2d 881 (2005); *Price v. Vincent,* 538 U.S. 634, 640, 123 S.Ct. 1848, 1853, 155 L.Ed.2d 877 (2003); *Lockyer v. Andrade,* 538 U.S. at 73–74, 123 S.Ct. at 1173–74; *Portalatin v. Graham,* 624 F.3d at 79; *Bierenbaum v. Graham,* 607 F.3d 36, 47–48 (2d Cir.2010), *cert. denied,*—— U.S. ——, 131 S.Ct. 1693, 179 L.Ed.2d 645 (2011); *Ortiz v. N.Y.S. Parole in Bronx, N.Y.,* 586 F.3d 149, 156 (2d Cir.2009), *cert. denied,*—— U.S. ——, 131 S.Ct. 320, 178 L.Ed.2d 254 (2010); *Dunlap v. Burge,* 583 F.3d at 164; *Davis v. Grant,* 532 F.3d at 140; *Hawkins v. Costello,* 460 F.3d 238, 242 (2d Cir.2006), *cert. denied,*549 U.S. 1215, 127 S.Ct. 1267, 167 L.Ed.2d 92 (2007); *Henry v. Poole,* 409 F.3d at 68; *Howard v. Walker,* 406 F.3d at 122; *Rosa v. McCray,* 396 F.3d 210, 219 (2d Cir.), *cert. denied,*546 U.S. 889, 126 S.Ct. 215, 163 L.Ed.2d 201 (2005); *Tueros v. Greiner,* 343 F.3d at 591; *Yung v. Walker,* 341 F.3d at 109; *DelValle v. Armstrong,* 306 F.3d at 1200; *Kennaugh v. Miller,* 289 F.3d at 42; *Loliscio v. Goord,* 263 F.3d at 184; *Lurie v. Wittner,* 228 F.3d at 127–28.

9    *Accord, e.g., Cullen v. Pinholster,* 131 S.Ct. at 1399; *Waddington v. Sarausad,* 555 U.S. 179, 190, 129 S.Ct. 823, 831, 172 L.Ed.2d 532 (2009); *Brown v. Payton,* 544 U.S. at 141, 125 S.Ct. at 1439; *Wiggins v. Smith,* 539 U.S. at 520, 123

S.Ct. at 2534–35; *Bierenbaum v. Graham,* 607 F.3d at 48; *Brisco v. Ercole,* 565 F.3d 80, 87 (2d Cir.), *cert. denied,*—— U.S. ——, 130 S.Ct. 739, 175 L.Ed.2d 542 (2009); *Jones v. West,* 555 F.3d 90, 96 (2d Cir.2009); *Davis v. Grant,* 532 F.3d at 140; *Lynn v. Bliden,* 443 F.3d 238, 246 (2d Cir.2006), *cert. denied,*549 U.S. 1257, 127 S.Ct. 1383, 167 L.Ed.2d 168 (2007); *Howard v. Walker,* 406 F.3d at 122; *Parsad v. Greiner,* 337 F.3d at 181.

10   *See also, e.g., Renico v. Lett,* —— U.S. ——, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010); *Waddington v. Sarausad,* 555 U.S. at 190, 129 S.Ct. at 831; *Yarborough v. Alvarado,* 541 U.S. at 664, 124 S.Ct. at 2150; *Wiggins v. Smith,* 539 U.S. at 520, 123 S.Ct. at 2535; *Price v. Vincent,* 538 U.S. at 641, 123 S.Ct. at 1853 ("As we have explained: '[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.' " (quoting *Woodford v. Visciotti,* 537 U.S. 19, 24– 25, 123 S.Ct. 357, 360, 154 L.Ed.2d 279 (2002))); *Lockyer v. Andrade,* 538 U.S. at 75, 123 S.Ct. at 1175; *Dunlap v. Burge,* 583 F.3d at 165–66 (A "federal court might agree with a petitioner that the relevant federal law should have been interpreted differently than the way it was interpreted by the state court yet still conclude that the state court's application of the federal law was not unreasonable."); *Brisco v. Ercole,* 565 F.3d at 87–88; *Jones v. West,* 555 F.3d at 96; *Davis v. Grant,* 532 F.3d at 140; *Hawkins v. Costello,* 460 F.3d at 243; *Lynn v. Bliden,* 443 F.3d at 246; *Henry v. Poole,* 409 F.3d at 68; *Howard v. Walker,* 406 F.3d at 122; *Rosa v. McCray,* 396 F.3d at 219; *Cox v. Donnelly,* 387 F.3d at 197; *Eze v. Senkowski,* 321 F.3d at 124–25; *DelValle v. Armstrong,* 306 F.3d at 1200 ("With regard to issues of law, therefore, if the state court's decision was not an unreasonable application of, or contrary to, clearly established federal law as defined by *Section 2254(d),* we may not grant habeas relief even if in our judgment its application was erroneous.").

11   *Accord, e.g., Yarborough v. Alvarado,* 541 U.S. at 664, 124 S.Ct. at 2150; *Wiggins v. Smith,* 539 U.S. at 520–21, 123 S.Ct. at 2535; *Price v. Vincent,* 538 U.S. at 641, 123 S.Ct. at 1853; *Lockyer v. Andrade,* 538 U.S. at 75, 123 S.Ct. at 1174–75; *Woodford v. Visciotti,* 537 U.S. at 25–27, 123 S.Ct. at 360–61; *Portalatin v. Graham,* 624 F.3d at 79; *Dunlap v. Burge,* 583 F.3d at 165; *Davis v. Grant,* 532 F.3d at 140; *Mosby v. Senkowski,* 470 F.3d 515, 519 (2d Cir.2006), *cert. denied,*552 U.S. 836, 128 S.Ct. 75, 169 L.Ed.2d 56 (2007); *Hawkins v. Costello,* 460 F.3d at 243; *Lynn v. Bliden,* 443 F.3d at 246; *Henry v. Poole,* 409 F.3d at 68; *Howard v. Walker,* 406 F.3d at 122; *Cox v. Donnelly,* 387 F.3d at 197; *Eze v. Senkowski,* 321 F.3d at 125; *Ryan v. Miller,* 303 F.3d 231, 245 (2d Cir.2002); *Loliscio v. Goord,* 263 F.3d at 184; *Lurie v. Wittner,* 228 F.3d at 128–29.

12   However, the Second Circuit has explained "that while '[s]ome increment of incorrectness beyond error is required ... the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.' " *Jones v. Stinson,* 229 F.3d at 119 (quoting *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000)); *accord, e.g., Brisco v. Ercole,* 565 F.3d at 88; *Jones v. West,* 555 F.3d at 96; *Brown v. Alexander,* 543 F.3d 94, 100 (2d Cir.2008) ("[W]e have observed that the 'unreasonable application' standard 'falls somewhere between merely erroneous and unreasonable to all reasonable jurists.' "); *Davis v. Grant,* 532 F.3d at 140; *Lynn v. Bliden,* 443 F.3d at 246; *Henry v. Poole,* 409 F.3d at 68; *Howard v. Walker,* 406 F.3d at 122; *Rosa v. McCray,* 396 F.3d at 219; *Cox v. Donnelly,* 387 F.3d at 197, 200–01; *Yung v. Walker,* 341 F.3d at 110; *Eze v. Senkowski,* 321 F.3d at 125; *Ryan v. Miller,* 303 F.3d at 245; *Loliscio v. Goord,* 263 F.3d at 184.

13   The Supreme Court explained:

   [T]he range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

   *Yarborough v. Alvarado,* 541 U.S. at 664, 124 S.Ct. at 2149;*accord, e.g., Harrington v. Richter,* 131 S.Ct. at 786; *Renico v. Lett,* 130 S.Ct. at 1864; *Knowles v. Mirzayance,* 129 S.Ct. at 1420 (Where the Supreme Court "standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."); *Portalatin v. Graham,* 624 F.3d at 79; *Ortiz v. N.Y.S. Parole in Bronx, N.Y.,* 586 F.3d at 157; *Dunlap v. Burge,* 583 F.3d at 166; *Hawkins v. Costello,* 460 F.3d at 243.

14   *Accord, e.g., Bierenbaum v. Graham,* 607 F.3d at 47–48; *Davis v. Grant,* 532 F.3d at 140–41; *Tueros v. Greiner,* 343 F.3d at 591; *Yung v. Walker,* 341 F.3d at 109;*see Yarborough v. Alvarado,* 541 U.S. at 665–66, 124 S.Ct. at 2150–51 ("The petitioner contends that if a habeas court must extend a rationale before it can apply to the facts at hand then the rationale cannot be clearly established at the time of the state-court decision. There is force to this argument. *Section 2254(d)(1)* would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law. At the same time, the difference between applying a rule and extending it is not always clear. Certain

principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt."(citations omitted)).

15    *See also, e.g., Wade v. Herbert,* 391 F.3d 135, 140, 142 (2d Cir.2004) (Appellate Division held claim was " 'without merit.' " "Such a summary determination, even absent citation of federal case law, is a determination 'on the merits' and as such requires the deference specified by § 2254." Moreover, "[i]f any reasonable ground was available [for the state court's decision], we must assume the [state] court relied on it."); *Francolino v. Kuhlman,* 365 F.3d 137, 141 (2d Cir.) (Where "the Appellate Division concluded its opinion by stating that it had 'considered and rejected defendants' remaining claims,' " AEDPA deference applies.), *cert. denied,*543 U.S. 872, 125 S.Ct. 110, 160 L.Ed.2d 120 (2004); *Jenkins v. Artuz,* 294 F.3d 284, 291 (2d Cir.2002) ("In *Sellan,* we found that an even more concise Appellate Division disposition-the word 'denied'-triggered AEDPA deference.").

16    *See, e.g., O'Sullivan v. Boerckel,* 526 U.S. 838, 842, 119 S.Ct. 1728, 1731, 144 L.Ed.2d 1 (1999); *Rose v. Lundy,* 455 U.S. 509, 515–16, 102 S.Ct. 1198, 1201, 71 L.Ed.2d 379 (1982) ("The exhaustion doctrine existed long before its codification by Congress in 1948" in 28 U.S.C. § 2254.); *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); *Bossett v. Walker,* 41 F.3d 825, 828 (2d Cir.1994), *cert. denied,*514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995); *Pesina v. Johnson,* 913 F.2d 53, 54 (2d Cir.1990); *Daye v. Attorney Gen.,* 696 F.2d 186, 190–94 (2d Cir.1982) (en banc), *cert. denied,*464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984).

17    *Accord, e.g., O'Sullivan v. Boerckel,* 526 U.S. at 844, 119 S.Ct. at 1732; *Picard v. Connor,* 404 U.S. at 275–76, 92 S.Ct. at 512; *Jones v. Keane,* 329 F.3d 290, 294–95 (2d Cir.), *cert. denied,*540 U.S. 1046, 124 S.Ct. 804, 157 L.Ed.2d 693 (2003); *Cox v. Miller,* 296 F.3d 89, 99 (2d Cir.2002), *cert. denied,*537 U.S. 1192, 123 S.Ct. 1273, 154 L.Ed.2d 1026 (2003); *Jones v. Vacco,* 126 F.3d 408, 413 (2d Cir.1997).

18    *Accord, e.g., Smith v. Duncan,* 411 F.3d 340, 348 (2d Cir.2005); *Jackson v. Edwards,* 404 F.3d 612, 618 (2d Cir.2005); *Rosa v. McCray,* 396 F.3d 210, 217–18 (2d Cir.), *cert. denied,*546 U.S. 889, 126 S.Ct. 215, 163 L.Ed.2d 201 (2005); *St. Helen v. Senkowski,* 374 F.3d 181, 182–83 (2d Cir.2004), *cert. denied,*543 U.S. 1058, 125 S.Ct. 871, 160 L.Ed.2d 785 (2005); *Cox v. Miller,* 296 F.3d at 99; *Ramirez v. Attorney Gen.,* 280 F.3d 87, 95 (2d Cir.2001); *Levine v. Comm'r of Corr. Servs.,* 44 F.3d 121, 124 (2d Cir.1995), *cert. denied,*520 U.S. 1106, 117 S.Ct. 1112, 137 L.Ed.2d 313 (1997); *Grady v. LeFevre,* 846 F.2d at 864; *Garofolo v. Coomb,* 804 F.2d 201, 206 (2d Cir.1986); *Petrucelli v. Coombe,* 735 F.2d at 688.

19    *Accord, e.g., Rosa v. McCray,* 396 F.3d at 217; *Galdamez v. Keane,* 394 F.3d 68, 73 (2d Cir.), *cert. denied,*544 U.S. 1025, 125 S.Ct. 1996, 161 L.Ed.2d 868 (2005); *Calderon v. Keane,* 115 F. App'x 455, 457 (2d Cir.2004); *Cotto v. Herbert,* 331 F.3d 217, 237 (2d Cir.2003); *Ramirez v. Attorney Gen.,* 280 F.3d at 94; *Jordan v. LeFevre,* 206 F.3d 196, 198 (2d Cir.2000); *Morgan v. Bennett,* 204 F.3d 360, 369 (2d Cir.), *cert. denied,*531 U.S. 819, 121 S.Ct. 59, 148 L.Ed.2d 26 (2000); *Bossett v. Walker,* 41 F.3d at 828 ("To fulfill the exhaustion requirement, a petitioner must have presented the substance of his federal claims 'to the highest court of the pertinent state.'"); *Grey v. Hoke,* 933 F.2d 117, 119 (2d Cir.1991) ("a petitioner must present his federal constitutional claims to the highest court of the state before a federal court may consider the merits of the petition"); *Pesina v. Johnson,* 913 F.2d at 54 ("We have held that the exhaustion requirement mandates that federal claims be presented to the highest court of the pertinent state before a court may consider the petition," citing *Daye* ); *Daye v. Attorney Gen.,* 696 F.2d at 191 n. 3 ("Exhaustion of available state remedies requires presentation of the claim to the highest state court from which a decision can be had.").

20    During sentencing, Johnson told Justice White that Dets. Tacchi and Sandomir "basically add[ed] on what they wanted to add on into that letter [*i.e.,* his statement], and that letter should have never been allowed in trial for the jury" (Dkt No. 18: S. 22), but made no mention of this claim during the trial itself. To prevail on this claim, Johnson would need to demonstrate what his true statement was and show Det. Tacchi's perjury; thus, this claim appears to lie outside the trial record. *See generally, See e.g ., Polanco v. Ercole,* 06 Civ. 1721, 2007 WL 2192054 at *7 (S.D.N.Y. July 31, 2007) (Claims are part of the record for direct appeal "only if all the factual information necessary to determine the claim appears in the trial record."). Even if Johnson's statements at sentencing made a record for the claim, he did not raise it on direct appeal. (*See* pages 11–12 above.)

21    Johnson alleges his trial counsel was ineffective for not presenting a statute of limitations defense to the jury. (*See* page 13 above.) As this claim is based on trial counsel's understanding of the law and counsel's strategy regarding potential defenses, it goes beyond the trial record. *See, e.g., Washington v. Greiger,* 00 Civ. 2383, 2001 WL 214236 at *3 (S.D.N.Y. Mar.1, 2001) ("In New York, a claim that trial counsel was ineffective may be raised on direct appeal only if all of the factual information necessary to determine the claim appears in the trial record. Since the trial record does not normally contain the requisite information, such a claim must ordinarily be raised by way of a [C.P . L.] Section 440.10 motion ...." (citation omitted)); *see generally, e.g., Rosario v. Bennett,* 01 Civ. 7142, 2002 WL 31852827 at *19 n. 27 (S.D.N.Y. Dec.20, 2002) (Peck, M.J.) ("[I]neffectiveness of counsel is usually not demonstrable on the trial record." ( & cases cited therein)).

22  C.P.L. § 440.10(1) provides: "*At any time after the entry of a judgment,* the court in which it was entered may, upon motion of the defendant, vacate such judgment upon the ground that ... (c) Material evidence adduced at a trial resulting in the judgment was false and was ... known by the prosecutor or by the court to be false; or ... (h) The judgment was obtained in violation of a right of the defendant under the constitution of ... the United States." C.P.L. § 440.10(1)(c)-(h) (emphasis added).

23  Johnson's other four claims also are unexhausted, but are deemed exhausted and procedurally barred. (*See* Section III below.) A petition containing unexhausted claims and other unexhausted claims that are deemed exhausted is considered a mixed petition within the meaning of *Rhines v. Weber,* 544 U.S. 269, 125 S.Ct. 528, 161 L.Ed.2d 440 (2005).*See, e.g., Castillo v. Murray,* 04 Civ. 4112, 2005 WL 2373921 at *2 (S.D.N.Y. Sept.28, 2005) ("[T]he Court noted that none of the claims in Castillo's petition were exhausted.... While [certain] claims ... would be 'deemed exhausted.' Thus Castillo's petition presented both exhausted and unexhausted claims-commonly referred to as a 'mixed petition.' " (record citation omitted)); *Rowe v. New York,* 99 Civ. 12281, 2002 WL 100633 at *5 (S.D.N.Y. Jan.25, 2002) (Lynch, D.J.) (Where petitioner's "first claim is unexhausted and his second claim is deemed exhausted but procedurally defaulted or without merit, then [petitioner's] is a so-called 'mixed petition' containing both unexhausted and (constructively) exhausted claims."); *Priester v. Senkowski,* 01 Civ. 3441, 2002 WL 1448303 at *8 (S.D.N.Y. July 3, 2002) (Mixed petitions include "petitions that consist of unexhausted claims alongside those that have been 'deemed' exhausted based on a procedural default.").

24  The New York Court of Appeals denied Johnson leave to appeal on January 15, 2010, (*see* page 13 above), meaning his conviction became final on April 15, 2010. *See, e.g., Pratt v. Greiner,* 306 F.3d 1190, 1195 n. 1 (2d Cir.2002) ("A conviction becomes final for purposes of 28 U.S.C. § 2244(d) upon expiration of the ninety-day period to petition for a writ of *certiorari* to the United States Supreme Court."). Hence, any habeas petition filed after April 15, 2011 would be time barred because "the filing of [a] federal habeas petition does not statutorily toll the [one-year] AEDPA limitations period."*King v. Greiner,* 02 Civ. 5810, 2002 WL 31453976 at *1 (S.D.N.Y. Nov.5, 2002) (Peck, M.J.) (citing *Duncan v. Walker,* 533 U.S. 167, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001)), *report & rec. adopted,* 2003 WL 57307 (S.D.N.Y. Jan.7, 2003).

25  In any event, Johnson's C.P.L. § 30.10 statute of limitations claim fails on the merits as a matter of state law. *See, e.g., Hardison v. Artus,* 06 Civ. 0322, 2006 WL 1330064 at *10 n. 27 (S.D.N.Y. May 16, 2006) (Peck, M.J.) ("New York courts have applied [the § 30.10] tolling provision to cases in which a defendant's identity was unknown until the advent of DNA profiling enabled identification through the State DNA data bank."(citing N.Y. cases)), *report & rec. adopted,* 2006 WL 1763678 (S.D.N.Y. June 23, 2006); *People v. Ramos,* 13 N.Y.3d 881, 881–82, 893 N.Y.S.2d 831, 831, 921 N.E.2d 598 (2009) ("The prosecution was not barred by the five-year statute of limitations pursuant to CPL 30.10(2)(b). Although the indictment was nearly 10 years after the incident, defendant's whereabouts were 'continuously unknown and continuously unascertainable,' despite the reasonable diligence of the detectives assigned to the case, until his DNA profile from the rape kit taken from the victim was matched to DNA evidence taken from defendant pursuant to a subsequent incarceration."); *People v. Bradberry,* 68 A.D.3d 1688, 1689–90, 891 N.Y.S.2d 850, 852 (4th Dep't 2009) (denying defendant's statute of limitations claim where the "delay was attributable to the lack of a DNA sample from defendant to compare with the DNA sample found at the rape and burglary scene, and the People did not obtain DNA material from defendant until after his sentencing on the 2005 manslaughter conviction. Consequently, defendant's identity was unknown until that time, and the limitations period was therefore tolled pursuant to CPL 30.10(4)(a) for five of the years between the commission of the crime and the discovery of defendant's identity."), *appeal denied,*14 N.Y.3d 838, 901 N.Y.S.2d 145, 927 N.E.2d 566 (2010); *People v. Grogan,* 28 A.D.3d 579, 580–81, 816 N.Y.S.2d 93, 95 (2d Dep't) ("Contrary to the defendant's argument, the Supreme Court properly denied his CPL 330.30 motion to set aside the verdict on the theory that the indictment was jurisdictionally defective as the prosecution occurred outside of the five-year statute of limitation. Although the indictment was filed ... eight years after the rape, the defendant's whereabouts were continuously unknown and continuously unascertainable by the exercise of reasonable diligence until the defendant's DNA profile from the rape kit was matched to the DNA profile in the CODIS databank."), *appeal denied,*7 N.Y.3d 789, 821 N.Y.S.2d 819, 854 N.E.2d 1283 (2006); *People v. Lloyd,* 23 A.D.3d 296, 297, 805 N.Y.S.2d 20, 21 (1st Dep't) ("The motion court properly denied defendant's motion to dismiss the indictment as time-barred. The applicable five-year statute of limitations was tolled pursuant to Criminal Procedure Law 30.10(4)(a)(ii) because defendant's identity and whereabouts were unknown following the attack and were unascertainable by the exercise of reasonable diligence.... After this 1996 crime, law enforcement authorities exhausted all reasonable investigative steps and when, years later, they acquired the ability to solve the crime by matching DNA, this case was one of about 16,000 similar 'cold cases' awaiting DNA comparison. Under these circumstances the record warrants the conclusion that the People acted with

2011 WL 3328643

reasonable diligence in obtaining a DNA match."(citations omitted)), *appeal denied,*6 N.Y.3d 755, 810 N.Y.S.2d 423, 843 N.E.2d 1163 (2005).

26    *Accord, e.g., Castille v. Peoples,* 489 U.S. 346, 350, 109 S.Ct. 1056, 1059, 103 L.Ed.2d 380 (1989) ("It would be inconsistent with [§ 2254(b) ], as well as with underlying principles of comity, to mandate recourse to state collateral review whose results have effectively been predetermined"); *St. Helen v. Senkowski,* 374 F.3d 181, 183 (2d Cir.2004) ("even if a federal claim has not been presented to the highest state court or preserved in lower state courts under state law, it will be deemed exhausted if it has become procedurally barred under state law."), *cert. denied,*543 U.S. 1058, 125 S.Ct. 871, 160 L.Ed.2d 785 (2005); *DiGuglielmo v. Smith,* 366 F.3d 130, 135 (2d Cir.2004) (petitioner's procedurally defaulted claims deemed exhausted where he could no longer obtain state-court review because of his procedural default); *McKethan v. Mantello,* 292 F.3d 119, 122–23 (2d Cir.2002) (claims deemed exhausted where they were "procedurally barred for not having been raised in a timely fashion"), *cert. denied,*—— U.S. ——, 129 S.Ct. 233, 172 L.Ed.2d 178 (2008); *Ramirez v. Attorney Gen.,* 280 F.3d 87, 94 (2d Cir.2001); *Bossett v. Walker,* 41 F.3d 825, 828 (2d Cir.1994) ("[I]f the petitioner no longer has 'remedies available' in the state courts under 28 U.S.C. § 2254(b), we deem the claims exhausted."), *cert. denied,*514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995).

27    Since these claims are record based, Johnson cannot raise them in a C.P.L. § 440 motion (*See*C.P.L. § 440.10(2)(c) (barring a collateral attack on claims that could have been raised on direct appeal)), or a state petition for a writ of habeas corpus (*see People ex rel. Thorpe v. Smith,* 67 A.D.3d 1135, 1135, 887 N.Y.S.2d 874, 874 (3d Dep't 2009) ("It is well settled that [state] habeas corpus relief is unavailable with respect to matters that could have been raised on direct appeal or in the context of a CPL article 440 motion."), *appeal denied,*14 N.Y.3d 705, 899 N.Y.S.2d 129 (2010))

28    If the pro se petitioner requires copies of any of the cases reported only in Westlaw, petitioner should request copies from defense counsel. *See Lebron v. Sanders,* 557 F.3d 76, 79 (2d Cir.2009); SDNY–EDNY Local Civil Rule 7.2.

---

**End of Document**                                        © 2016 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2016 Thomson Reuters. No claim to original U.S. Government Works.   18

511 Fed.Appx. 21
This case was not selected for
publication in the Federal Reporter.
United States Court of Appeals,
Second Circuit.

L. Dennis KOZLOWSKI, Petitioner–Appellant,

v.

William HULIHAN, Respondent–Appellee.

Mark H. Swartz, Petitioner–Appellant,

v.

Superintendent Paul Annetts,
Respondent–Appellee.

Nos. 12–0764–pr(L), 12–0776–pr(CON).
|
Feb. 4, 2013.

**Synopsis**

**Background:** After their convictions for grand larceny, falsifying business records, conspiracy, and violations of New York's Martin Act were affirmed, 11 N.Y.3d 223, 869 N.Y.S.2d 848, 898 N.E.2d 891, petitioners filed for federal habeas relief. The United States District Court for the Southern District of New York, Richard J. Holwell, J., 2012 WL 383667, adopted the opinion of Gabriel W. Gorenstein, United States Magistrate Judge, 2011 WL 43493, and denied the petitions. Petitioners appealed.

**[Holding:]** The Court of Appeals held that New York's contemporaneous objection rule constituted an independent and adequate state-law ground for foreclosing federal habeas review.

Affirmed.

 *22 Appeal from a February 8, 2012 judgment entered by the United States District Court for the Southern District of New York (Richard J. Holwell, Judge).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the February 8, 2012 judgment of the District Court be **AFFIRMED.**

**Attorneys and Law Firms**

Alan S. Lewis (Michael Shapiro, Jeffrey L. Loop, Michael H. Bauscher, Laura A. Zaccone, on the brief), Carter Ledyard & Milburn LLP, New York, NY, for L. Dennis Kozlowski, Petitioners–Appellants.

Nathaniel Z. Marmur, Stillman & Friedman, P.C., New York, NY, for Mark H. Swartz, Petitioners–Appellants.

Amyjane Rettew, Assistant District Attorney (Gina Mignola, Assistant District Attorney, on the brief), for Cyrus R. Vance, Jr., District Attorney for New York County, for Respondents–Appellees.

PRESENT: JOSÉ A. CABRANES, RICHARD C. WESLEY, Circuit Judges, JESSE M. FURMAN, District Judge. *

**SUMMARY ORDER**

 **\*1** L. Dennis Kozlowski and Mark H. Swartz appeal from a judgment of the District Court denying their petitions for writs of habeas corpus. They argue that the District Court erred in holding that an independent and adequate state-law ground bars federal habeas review. "We review a district court's ruling on a petition for a writ of habeas corpus *de novo.*" *Corby v. Artus,* 699 F.3d 159, 166 (2d Cir.2012). We assume familiarity with the underlying facts and procedural history of this case.

**BACKGROUND**

Although the factual and procedural history of this case is lengthy, only a brief recitation is necessary here. On June 17, 2005, petitioners, former executives of Tyco International ("Tyco"), were convicted *23 in New York Supreme Court, after trial by jury, of twelve counts of Grand Larceny in the First Degree, eight counts of Falsifying Business Records in the First Degree, Conspiracy in the Fourth Degree, and a violation of the Martin Act, which is "New York's counterpart to the Securities and Exchange Acts of 1933 and 1934," *Highland Capital Management LP v. Schneider,* 460 F.3d 308, 317 (2d Cir.2006). In simple terms, they stole more than $100 million from Tyco.

Prior to trial, petitioners served a subpoena [1] on Boies, Schiller & Flexner LLP, requesting materials created during

its internal investigation on behalf of Tyco. The trial court granted Tyco's motion to quash the subpoena, holding that the documents constituted trial preparation materials and were not discoverable under New York Civil Practice Law and Rule § 3101(d)(2) ("CPLR § 3101(d)(2)").[2] That ruling was affirmed by both the First Department and the New York Court of Appeals. Critically, the Court of Appeals noted that Kozlowski and Swartz "did not raise a constitutional argument in support of their subpoena below, and we therefore address none." *People v. Kozlowski,* 11 N.Y.3d 223, 242 n. 11, 869 N.Y.S.2d 848, 898 N.E.2d 891 (2008).

Petitioners then sought a writ of habeas corpus in the United States District Court for the Southern District of New York, contending that their constitutional right to present a defense was violated by the quashing of the subpoena. On January 6, 2011, Magistrate Judge Gabriel W. Gorenstein issued a report and recommendation, in which he concluded that the petitions for writs of habeas corpus should be denied because "the New York Court of Appeals' refusal to address petitioners' federal constitutional argument—based on their failure to raise the argument in the trial court—was an adequate and independent state ground for the state court's decision." After holding oral argument, and upon consideration of petitioners' objections to the Report and Recommendation, the District Court adopted the Report and Recommendation in full, and denied the petitions.

## DISCUSSION

**\*\*2** We " 'will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment.' " *Downs v. Lape,* 657 F.3d 97, 101 (2d Cir.2011) (quoting *Cone v. Bell,* 556 U.S. 449, 465, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009)).[3] The District Court **\*24** held that the New York Court of Appeals' reliance on petitioners' failure to raise their constitutional claim before the trial court, in violation of New York's so-called contemporaneous objection rule, constitutes an independent and adequate state-law ground. Under the contemporaneous objection rule, a party fails to preserve an issue for appeal if he or she does not "object to what he or she believes is a legal error in a trial court's ruling or instruction 'at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.' "[4] *Gutierrez v. Smith,* 702 F.3d 103, 110 (2d

Cir.2012). Kozlowski and Swartz now argue, as they did before the District Court, that the New York Court of Appeals' application of the contemporaneous objection rule provides neither an independent nor an adequate state-law ground for foreclosure of their habeas claims. For the reasons set out below, we find no error with the District Court's reasoning and affirm its judgment.

### A. Independence

**[1]** Petitioners argue that the New York Court of Appeals' decision on the contemporaneous objection rule is not an "independent" state-law ground within the meaning of federal habeas jurisprudence because the Court of Appeals "interwove" federal law with its analysis of their state-law claims. Petitioners observe that the Court of Appeals referred to Supreme Court cases in the course of its discussion on New York state-law rules regarding enforcement of third-party subpoenas. *See Kozlowski,* 11 N.Y.3d at 242, 869 N.Y.S.2d 848, 898 N.E.2d 891. They contend **\*25** that, because the Court of Appeals' discussion of New York's third party-subpoena rules invoked federal case law, the state-law ground for barring their federal habeas claims is not independent of federal law.

However, the state-law ground that forecloses their federal habeas claims is not the Court of Appeals' decision on its third-party subpoena rules. Rather, it is the Court of Appeals' application of the contemporaneous objection rule. Hence, as the District Court pointed out, the real question here is whether the Court of Appeals' finding of procedural default under the contemporaneous objection rule implicated federal law. *Cf. Green v. Travis,* 414 F.3d 288, 295–96 (2d Cir.2005) (holding that the contemporaneous objection rule did not constitute an independent state-law ground because the state court's determination that the defendant had failed to argue the proper elements of a challenge under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), depended on its analysis of *Batson*). On this issue, there is no doubt—the Court of Appeals relied on no federal law in finding that Kozlowski and Swartz had failed to contemporaneously assert a constitutional claim. Indeed, the Court of Appeals stated plainly that it was not addressing any constitutional claim because Kozlowski and Swartz "did not raise a constitutional argument in support of their subpoena below."[5] *Id.* at 242 n. 11, 869 N.Y.S.2d 848, 898 N.E.2d 891; *see Jimenez v. Walker,* 458 F.3d 130, 137–38 (2d Cir.2006). In short, the contemporaneous objection rule provides an

independent state-law ground for barring federal habeas review.

**B. Adequacy**

**\*\*3** **[2]** We have previously held that New York's contemporaneous objection rule is "firmly established and regularly followed," and, therefore, its application ordinarily constitutes an adequate state-law ground for barring federal habeas review. *Downs,* 657 F.3d at 102–04. Nonetheless, we must still consider whether this is an "exceptional case[ ] in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna,* 534 U.S. 362, 376, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002); *see also Downs,* 657 F.3d at 104. We evaluate whether a case presents such an exception by reference to three useful, but non-exclusive, considerations, or "guideposts," which are: "(1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had substantially complied with the rule given the realities of trial, and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest." *Cotto v. Herbert,* 331 F.3d 217, 240 (2d Cir.2003) (internal quotation marks omitted). As the District Court explained, none of these guideposts favors the petitioners.

As to the first guidepost, petitioners argue that the state trial court would have rejected their constitutional claim, had it **\*26** been presented, and therefore perfect compliance with the contemporaneous objection rule would not "have changed the trial court's decision." *Id.* In the words of the District Court, however, such a claim "is entirely speculative, particularly in the absence of any showing of substantial compliance." *Kozlowski v. Hulihan,* Nos. 09 Civ. 7583(RJH)(GWG), 10 Civ. 0812(RJH)(GWG), 2012 WL 383667, at \*5 (S.D.N.Y. Feb. 7, 2012). Indeed, the very purpose of the contemporaneous objection rule is to permit the parties to submit relevant arguments and for the trial court to make an informed decision at the time. *See Garvey v. Duncan,* 485 F.3d 709, 714 (2d Cir.2007). Inasmuch as the trial court had no opportunity to consider the constitutional claim, we are not now in a position to opine on what that court might have done in the hypothetical circumstance that petitioners had advanced their constitutional argument.

As to the second guidepost, petitioners contend that New York appellate courts do not consistently apply the contemporaneous objection rule to bar constitutional claims on appeal when the substance of a constitutional claim is presented to the trial court but not labeled as such. *See Cotto,* 331 F.3d at 240. To the contrary, we have noted that "New York's highest courts uniformly instruct that to preserve a particular issue for appeal, [a] defendant must specifically focus on the alleged error." *Garvey,* 485 F.3d at 714. Even crediting petitioners' theory, it is simply not true that they placed the substance of their constitutional claim before the trial court. *See Kozlowski,* 2012 WL 383667, at \*5. In fact, it is clear from their written opposition to the motion to quash that they argued only that Tyco had waived its privilege and that the documents sought were material in the sense that they constituted a relevant and appropriate subject for discovery. Joint App'x 745–69. Notably, this argument is grounded in state law and does not raise the substance of a right-to-present-a-defense claim, which requires a showing that the documents were constitutionally material and that the application of a discovery rule was " 'arbitrary or disproportionate' to the purpose that the rule is designed to serve." *Jimenez,* 458 F.3d at 146–47 (quoting *Rock v. Arkansas,* 483 U.S. 44, 55–56, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)). [6]

**\*\*4** As to the third guidepost, petitioners argue that they substantially complied with the contemporaneous objection rule. *See Cotto,* 331 F.3d at 240. Again, they contend that they presented the essence of their constitutional claim, in function if not in name, to the trial court. However, as the District Court explained, and as we have confirmed above, petitioners did not argue the substance of a right-to-present-a-defense claim to the trial court.

In sum, none of the three guideposts favors petitioners. We therefore conclude that this is not the "exceptional case[ ]" involving the "exorbitant application of a generally sound rule." *Lee,* 534 U.S. at 376, 122 S.Ct. 877. Accordingly, the decision of the New York Court of Appeals on the question of the contemporaneous objection rule supplies an adequate state-law ground for foreclosing federal habeas review.

### CONCLUSION

For the foregoing reasons, the District Court correctly held that the decision of **\*27** the New York Court of Appeals on the contemporaneous objection rule provides an independent

and adequate state-law ground for barring federal habeas review. *See Downs,* 657 F.3d at 101. We have reviewed the record and the parties' arguments on appeal, and we **AFFIRM** the February 8, 2012 judgment of the District Court.

**All Citations**

511 Fed.Appx. 21, 2013 WL 406531

Footnotes

\*     The Honorable Jesse M. Furman, of the United States District Court for the Southern District of New York, sitting by designation.

1     In fact, the subpoena was served prior to petitioners' second trial, which ended with a guilty verdict. Their first trial had resulted in a mistrial.

2     CPLR § 3101(d)(2) provides:

       Materials. Subject to the provisions of paragraph one of this subdivision, materials otherwise discoverable under subdivision (a) of this section and prepared in anticipation of litigation or for trial by or for another party, or by or for that other party's representative (including an attorney, consultant, surety, indemnitor, insurer or agent), may be obtained only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of the materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation.

3     The Supreme Court has explained the basis for the independent and adequate state ground doctrine as follows:

       When a federal habeas court releases a prisoner held pursuant to a state court judgment that rests on an independent and adequate state ground, it renders ineffective the state rule just as completely as if [the Supreme] Court had reversed the state judgment on direct review.... In such a case, the habeas court ignores the State's legitimate reasons for holding the prisoner.

       In the habeas context, the application of the independent and adequate state ground doctrine is grounded in concerns of comity and federalism. Without the rule, a federal district court would be able to do in habeas what [the Supreme] Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of [the Supreme] Court's jurisdiction and a means to undermine the State's interest in enforcing its laws. *Coleman v. Thompson,* 501 U.S. 722, 730–31, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (internal citations omitted); *see also Walker v. Martin,* ––– U.S. ––––, 131 S.Ct. 1120, 1127, 179 L.Ed.2d 62 (2011) (The independent and adequate state ground doctrine "afford[s state] courts the first opportunity to address and correct alleged violations of the prisoner's federal rights" because "without it, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court." (internal quotation marks, citations, and alterations omitted)).

4     In full, New York's contemporaneous objection rule provides:

       For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. Such protest need not be in the form of an "exception" but is sufficient if the party made his position with respect to the ruling or instruction known to the court, or if in reponse [sic] to a protest by a party, the court expressly decided the question raised on appeal. In addition, a party who without success has either expressly or impliedly sought or requested a particular ruling or instruction, is deemed to have thereby protested the court's ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question of law with respect to such disposition or failure regardless of whether any actual protest thereto was registered.

       N.Y.Crim. Proc. L. § 470.05(2) (McKinney 2009).

5     To the extent that petitioners suggest that the Court of Appeals did, in fact, address their constitutional claim by referring to Supreme Court cases on the right to present a defense, such a claim has no merit. The Court of Appeals unambiguously stated that it was resolving the claim of Kozlowski and Swartz under state law only and was not addressing any federal constitutional argument. *Kozlowski,* 11 N.Y.3d at 242 & n. 11, 869 N.Y.S.2d 848, 898 N.E.2d 891.

6     In addition to finding that Tyco did not waive its privilege, the trial court also held that (1) the "at issue" doctrine did not apply; and (2) Kozlowski and Swartz did not have a "substantial need" for the documents pursuant to CPLR § 3101(d)(2). Kozlowski Special App'x 13–16. These alternate theories are also based entirely on state law.

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 90996
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Rodney LOWMAN, Petitioner,
v.
NEW YORK State, Respondent.

No. 09–CV–0058T.
|
Jan. 11, 2011.

**Attorneys and Law Firms**

Rodney Lowman, Moravia, NY, pro se.

Priscilla I. Steward, New York State Attorney General's Office, New York, NY, for Respondent.

**DECISION AND ORDER**

MICHAEL A. TELESCA, District Judge.

**I. Introduction**

**\*1** *Pro se* petitioner Rodney Lowman ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered March 28, 2006, in New York State, County Court, Ontario County, convicting him, after a jury trial, of Criminal Sale of a Controlled Substance in the Third Degree (N.Y. Penal Law ("Penal Law") § 220.39[1] ), two counts of Criminal Possession of a Controlled Substance in the Third Degree (Penal Law § 220.16[1] ), and one count of Criminal Possession of a Controlled Substance in the Fifth Degree (Penal Law § 220.06).

For the reasons stated below, habeas relief is denied and the petition is dismissed.

**II. Factual Background and Procedural History**

**A. Introduction**

On August 10, 2005, Sandra Moracco ("Moracco"), a confidential informant working with the police, called Police Officer Brian Choffin ("Officer Choffin") and told him that she had observed Petitioner sell crack cocaine to an individual and that Petitioner was in possession of an additional quantity of crack cocaine. Moracco told Officer Choffin that she would be driving Petitioner to a McDonald's restaurant and gave Officer Choffin her travel route. Officer Choffin, along with other police officers, pulled over the car and searched Petitioner. Officer Choffin recovered $325 from Petitioner, but no drugs. Petitioner was then taken to the police precinct and a warrant was issued for the search of Petitioner's person. Officer Choffin recovered from Petitioner's rectum 38 small bags of crack cocaine alone with larger chunks of cocaine.

By Ontario County Indictment No. 05–07–089, Petitioner was charged with one count of Criminal Sale of a Controlled Substance in the Third Degree (Penal Law § 220.39[1] ), two counts of Criminal Possession of a Controlled Substance in the Third Degree (Penal Law § 220.16[1] ), and one count of Criminal Possession of a Controlled Substance in the Fifth Degree (Penal Law § 220.06). After a trial, Petitioner was found guilty as charged.

**B. The Pre–Trial Hearing**

On January 17, 2006, the Hon. Craig J. Doran conducted a hearing on Petitioner's motion to suppress physical evidence based on a lack of probable cause for arresting him.

**1. The People's Case**

On August 10, 2005, Officer Choffin received a telephone call from a confidential informant that he had been utilizing to investigate Petitioner's drug activities. [1] During the phone conversation, the informant told Officer Choffin that Petitioner was carrying a substantial amount of cocaine in his "crotch area." Hr'g Mins. [H.M.] 15–17, 25. The informant told Officer Choffin that Petitioner would be the front seat passenger of a red vehicle with which Officer Choffin was familiar. The informant stated that the vehicle was driving toward a McDonald's restaurant on Hamilton Street in the City of Geneva. H.M. 17–18. Officer Choffin went to Hamilton Street and observed the vehicle and saw that Petitioner was in the passenger seat. H.M. 18. Officer Choffin and other officers pulled over the vehicle. Officer Choffin asked Petitioner if he had anything illegal on him and Petitioner responded, "I don't have anything illegal, you can go ahead and search my pockets."H.M. 19. Officer Choffin searched Petitioner but did not find anything. H.M. 19, 23. Officer Choffin detained Petitioner at the precinct and obtained a search warrant for Petitioner's person. H.M. 20, 23. Officer Choffin recovered 38 individually packaged bags of crack cocaine as well as approximately 13 grams of cocaine

Lowman v. New York, Not Reported in F.Supp.2d (2011)
2011 WL 90996
Case 7:12-cv-04878-CS  Document 24  Filed 01/28/16  Page 106 of 150

from Petitioner's anal cavity. H.M. 20. Officer Choffin also recovered $325 from Petitioner's pockets. H.M. 21.

### 2. The Defense's Case

**\*2** Petitioner presented no evidence at the hearing.

### 3. The Hearing Court's Decision

The hearing court credited the testimony of Officer Choffin and made factual findings consistent with Officer Choffin's testimony. H.M. 29. The hearing court denied Petitioner's probable cause challenge, concluding that "there was probable cause for the officer to engage in the initial encounter with the vehicle in which [Petitioner] was a passenger."H.M. 31.

### C. The Trial

On March 27, 2006, Petitioner proceeded to trial before Justice Doran and a jury.

### 1. The People's Case

On April 1, 2005, Moracco, a crack cocaine user, was pulled over in her car by the police. At that time, her driver's license had expired. Trial Trans. [T.T.] 137–138, 140, 161–162. Rather than issue her a ticket, the police worked out an arrangement whereby she would provide them with information about drug activity in the Geneva area. T.T. 141–142.

On July 12, 2005, Moracco worked with Police Investigator Susan Kaduc ("Investigator Kaduc") to purchase drugs from Petitioner. T .T. 145, 173, 245. Moracco called Petitioner and told him that she had $100, and he told her that he would sell her six bags worth $20 each. They agreed to meet at a liquor store. T.T. 146–147, 174. Moracco and Investigator Kudac went to the store and saw Petitioner arrive in his vehicle. As Moracco and Investigator Kudac got out of their vehicle, Petitioner said that he "did not want to meet any of [her] friends," so Investigator Kudac went back to the car. T.T. 148, 175. Moracco gave Petitioner the money and Petitioner gave her a napkin containing six small bags of crack cocaine. After Petitioner drove away, Moracco gave the drugs to Kudac. T.T. 149, 167, 176–178.

On August 10, 2005, Moracco was inside a friend's apartment when Petitioner arrived. At some point, Petitioner sat on a couch next to Moracco, and another person in the apartment

gave Petitioner money for drugs. Moracco saw Petitioner reach into his boxers and pull out "a plastic bag holding numerous baggies and two big chunks of cocaine in the baggie."T.T. 150153. Petitioner gave two baggies to the man that gave him money. Petitioner asked Moracco if she would drive him to McDonald's. When Petitioner went to the bathroom, Moracco called Officer Choffin and told him that Petitioner had "about $1000 worth" of cocaine and that they would be driving toward McDonald' s. Before they left, Moracco saw Petitioner adjust his boxer shorts with his hand. T.T. 155, 168, 238–239.

As Moracco drove, Officer Choffin signaled for her to stop the car. T.T. 157–158, 241. Officer Choffin asked Petitioner if he had anything illegal on him. Petitioner said that he did not and invited Officer Choffin to search his pockets. T.T. 242. Officer Choffin removed Petitioner from the car and searched Petitioner's pockets. Officer Choffin recovered $325, but did not recover any drugs. T.T. 242. Officer Choffin searched Moracco's car for the drugs but did not find them. T.T. 244. Officer Choffin handcuffed Petitioner and directed another officer to drive Petitioner to the precinct. T.T. 194–195. Moracco gave Officer Choffin a signed statement reporting that Petitioner had individual baggies of cocaine in addition to two "rocks" of cocaine. T.T. 159–160.

**\*3** Officer Choffin received permission to search the apartment from where Moracco and Petitioner had come, but no drugs were recovered. T.T. 243. Officer Choffin subsequently obtained a search warrant for Petitioner's person. In executing the search warrant, Officer Choffin had Petitioner remove his clothing and face a wall. When Petitioner did so, Officer Choffin observed bags hanging out of his rectum and recovered them. T.T. 225. In total, Officer Choffin recovered 38 bags of crack cocaine along with additional large chunks of cocaine. T.T. 225–226, 231.

### 2. The Defense's Case

Petitioner presented no witnesses at trial.

### 3. Verdict and Sentence

On March 28, 2006, Petitioner was found guilty as charged. He was sentenced as a second felony drug offender to concurrent, determinate prison terms of four years for each count of third degree sale and drug possession, three years for the fifth degree drug possession count, plus five years post-release supervision. T.T. 359, 365–367.

**D. Petitioner's Direct Appeal**

On appeal, through counsel, Petitioner raised the following issues: (1) the police's search of Petitioner's body cavity violated his right against unreasonable searches or seizures because the search exceeded the scope of the search warrant; (2) that the undignified manner in which the body cavity search was conducted warranted suppression of the drugs that were recovered regardless of whether the search was legally permissible; and (3) the trial court improperly permitted the People to introduce evidence of an uncharged drug sale. *See* Resp't Ex. A. Petitioner also filed a *pro se* supplemental brief, arguing that the hearing court improperly denied his motion to suppress physical evidence because the police lacked probable cause to arrest him. *See* Resp't Ex. B.

On March 14, 2008, the Appellate Division, Fourth Department ("Fourth Department") unanimously affirmed the judgment of conviction. *People v. Lowman,* 49 A.D.3d 1262, 856 N.Y.S.2d 342 (4th Dep't 2008) (Resp't Ex. D); *lv. denied,* 10 N.Y.3d 936, 862 N.Y.S.2d 343, 892 N.E.2d 409 (2008) (Resp't Ex. F).

**E. Petitioner's Motion to Vacate the Judgment**

On or about May 27, 2008, Petitioner filed a *pro se* motion to vacate the judgment, pursuant to N.Y.Crim. Proc. Law ("CPL") § 440.10, arguing that he was denied effective assistance of trial counsel. *See* Resp't Ex. G. That motion was denied on procedural grounds, and leave to appeal was denied. *See* Resp't Exs. I–M.

**F. The Original Habeas Corpus Petition**

On or about January 8, 2009, Petitioner filed a *pro se* habeas corpus petition, seeking relief on the following grounds: (1) the People failed to fulfill its discovery obligations pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *People v. Rosario,* 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881 (1961); (2) the hearing court improperly failed to suppress the drugs recovered from Petitioner as fruit of an unlawful arrest; and (3) Petitioner was denied his right to a fair trial because he had an "all white jury." *See* Pet. ¶ 22, Ex. B. (Dkt.# 1).

**G. The Amended Habeas Corpus Petition**

**\*4** On or about April 2, 2009, Petitioner submitted an amended petition. Amended Pet. [Am. Pet.] (Dkt.# 9). This Court construed the amended petition as a motion to amend

the petition. *See* Dkt. # 10. Subsequently, this Court granted Petitioner's motion to amend the habeas corpus petition to include the following claims, in addition to those raised in the original habeas corpus petition: (1) the trial court improperly permitted the People to introduce evidence of an uncharged drug sale; (2) the People failed to disclose information about an alleged drug transaction between Petitioner and an undercover police officer; (3) Petitioner was denied the effective assistance of trial counsel because his attorney failed to raise a timely motion to suppress physical evidence on the ground that there was no probable cause for his arrest; (4) Petitioner was denied the effective assistance of appellate counsel; and (5) his arrest was unlawful because the police failed to read Petitioner his *Miranda* rights and did not first secure a warrant for his arrest. *See* Am. Pet., Grounds One–Six.

**H. Petitioner's Motion to Amend the Petition for a Second Time**

By letter dated December 21, 2009, Petitioner seeks to amend the habeas petition again to raise the following additional ineffective assistance of counsel claims: (1) that his trial attorney was ineffective for failing to afford him the opportunity to testify before the grand jury; and (2) that both his trial and appellate attorneys failed to raise claims with regard to laboratory records that were introduced at trial. *See* Dkt. # 34. Respondent opposed Petitioner's request, and, in response, Petitioner filed a Reply. *See* Dkts. # 40, 45–46. Petitioner's request to amend the habeas corpus petition for a second time is currently pending before this Court.

Fed.R.Civ.P. 15(a) provides that leave to amend "shall be freely given when justice so requires."*Littlejohn v. Artuz,* F .3d 360, 362–64 (2d Cir.2001). However, where a proposed amendment is meritless or would be futile, federal courts should deny leave. *Health–Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir.1990). Habeas courts may also deny leave "in order to thwart tactics that are dilatory, unfairly prejudicial or otherwise abusive."*Littlejohn,* 271 F.3d at 363; *see also Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). For the reasons that follow, the Court denies Petitioner's request to amend the habeas petition for a second time to include additional ineffective assistance of counsel claims.

First, Petitioner has offered no legitimate reason for his failure to raise the additional claims in his prior habeas petitions. The claims Petitioner now seeks to raise relate to matters that occurred either prior to or during the trial,

and, thus, the factual basis of these claims was known to Petitioner at the time he filed both the original and amended petitions. To this extent, the Court finds Petitioner's method of piecemeal submission of additional claims to be both unfair to the opposing party—who has responded to the original and amended petitions as well as to various miscellaneous motions Petitioner has filed in association therewith—and also to be a poor use of judicial resources.

**\*5** Second, it is futile to permit Petitioner to amend his petition to add these new claims because they are untimely. As Respondent correctly notes in its papers, Petitioner's conviction became final on September 11, 2008. Because Petitioner's CPL § 440.10 motion was pending at the time his judgment became final, the one year statute of limitations had not begun to run on Petitioner's time to file the habeas petition. *See* 28 U.S.C. § 2244(d)(1), (2). His CPL § 440.10 motion was denied on July 23, 2008 and, on November 26, 2008, the Fourth Department denied Petitioner's leave application. Thus, the filing period was tolled until November 26, 2008. *See Carey v. Saffold,* 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002); *Bennett v. Artuz,* 199 F.3d 116, 123 (2d Cir.1999). Thereafter, Petitioner had one year to file his habeas petition. While Petitioner's original and his first amended petition are timely, his second amended petition, which Petitioner sought to add on December 21, 2009, is untimely.

Furthermore, Petitioner's claims are new and unrelated to the claims raised in the original habeas petition. Thus, the relation-back doctrine does not apply to render the new claims timely. *See* Fed. R. Civ. Pro. 15(c). The Supreme Court has held that a new habeas claim "does not relate back [and thereby escape AEDPA's one-year time limit] when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix,* 545 U.S. 644, 650, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005). In determining whether claims in an amended petition relate back to the original pleading, the Second Circuit has stated that "the pertinent inquiry ... is whether the original complaint gave the [respondent] fair notice of the newly alleged claims." *Fama v. Comm. of Corr. Servs.,* 235 F.3d 804, 815 (2d Cir.2000), (quoting *Wilson v. Fairchild Republic Co.,* 143 F.3d 733, 738 (2d Cir.1998). At no point in his original or amended petitions did Petitioner claim that he was denied the effective assistance of counsel owing to his trial attorney's failure to secure his grand jury testimony. Nor did Petitioner ever claim that his trial and/or appellate attorneys were ineffective for failing to raise a claim

related to certain laboratory records that were introduced at trial.

Additionally, it would be futile to permit Petitioner to amend his habeas petition to include the new ineffective assistance of trial counsel claims because they are unexhausted. Accordingly, the Court denies Petitioner's December 21, 2009 request to amend his habeas corpus petition for a second time. The Court now turns to an analysis of Petitioner's amended habeas petition, which is the operative petition for purposes of this Decision and Order.

## III. General Principles Applicable to Habeas Review

### A. The AEDPA Standard of Review

Under the Anti–Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta* ) of the Supreme Court existing at the time of the relevant state-court decision. *Williams,* 529 U.S. at 412; *accord Sevencan v. Herbert,* 342 F.3d 69, 73–74 (2d Cir.2002), *cert. denied,* 540 U.S. 1197, 124 S.Ct. 1453, 158 L.Ed.2d 111 (2004).

**\*6** A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. *Williams,* 529 U.S. at 413; *see also id.* at 408–10."[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently ." *Aparicio v. Artuz,* 269 F.3d 78, 94 (2d Cir.2001). Rather, "[t]he state court's application must reflect some additional increment of

incorrectness such that it may be said to be unreasonable."*Id.* This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence."*Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir.2000)* (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."*28 U.S.C. § 2254(e)(1)*; *see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir.2003)* ( "The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), *cert. denied sub nom.Parsad v. Fischer, 540 U.S. 1091, 124 S.Ct. 962, 157 L.Ed.2d 798 (2003).* A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."*Miller–El v. Cockrell, 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).*

**B. Exhaustion and Procedural Default**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State...."*28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843–44, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied,514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995).*"The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts."*Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir.1982)* (*en banc* ), *cert. denied,464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984).* The ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of fact that is well within the mainstream of constitutional litigation. *Daye 696 F.2d at 194.*

However, "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state if it is clear that the state court would hold the claim procedurally

barred.' " *Grey v. Hoke, 933 F.2d 117, 120 (2d Cir.1991)* (quoting *Harris v. Reed, 489 U.S. 255, 263, n. 9, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)* (other citations omitted). Under such circumstances, a habeas petitioner "no longer has 'remedies available in the courts of the State' within the meaning of *28 U.S.C. Section 2254(b).*" *Id.*

**\*7** The procedural bar that gives rise to the finding that the claim should be deemed exhausted works a forfeiture and precludes litigation of the merits of the claim absent a showing of cause for the procedural default and prejudice resulting therefrom or by demonstrating that failure to consider the claim will result in a fundamental miscarriage of justice (i.e., actual innocence).*See Wainwright v. Sykes, 433 U.S. 72, 87–91, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); see also Sawyer v. Whitley, 505 U.S. 333, 277–78, ——S.Ct. ——, —— – ——, —— L.Ed.2d ——, —— – —— (1992).*

**C. The Adequate and Independent State Ground Doctrine**

"It is now axiomatic that 'cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred.' " *Dunham v. Travis, 313 F.3d 345, 729* (quoting *Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).* A habeas corpus petitioner, however, may overcome a procedural default created by the state court's invocation of an "independent and adequate" basis for its decision by (1) showing cause for the default and prejudice attributable thereto, or (2) by demonstrating that a fundamental miscarriage of justice will ensue if the claim is not reviewed by the habeas court. *See Harris, 489 U.S. at 262* (citing cases). The "fundamental miscarriage of justice" exception requires the petitioner to make a factual showing that he is "actually innocent" of the crime for which he was convicted. *See id.*It bears noting that " 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998).*

**IV. Petitioner's Claims**

**1. Petitioner's Fourth Amendment Claim Is Not Cognizable on Federal Habeas Review**

Petitioner contends, as he did in his *pro se* supplemental brief on appeal, that the police did not have probable cause to arrest him and, therefore, as a result, the drugs that were recovered

for him following his arrest should have been suppressed. *See* Pet., Ex. B; Am. Pet., Grounds One–Two. The Fourth Department rejected this claim on the merits. *See Lowman,* 49 A.D.3d at 1264, 856 N.Y.S.2d 342. As discussed below, Petitioner's Fourth Amendment claim is barred from habeas review by *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

"Where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone,* 428 U.S. at 494 (footnotes omitted). The Second Circuit has noted that *Stone* requires only that "the state have provided the opportunity to the state prisoner for full and fair litigation of the Fourth Amendment claim." *Gates v. Henderson,* 568 F.2d 830, 839 (2d Cir.1977) (en banc), *cert. denied,*434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978). A Federal court may undertake habeas review only in one of two instances: (1) "if the state provides no corrective procedures at all to redress Fourth Amendment violations," or (2) if "the state provides the process but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process...." *Id.* at 840; *accord Capellan v. Riley,* 975 F.2d 67, 70 (2d Cir.1992).

 **\*8** A petitioner receives a "full and fair opportunity" to litigate his Fourth Amendment claim where the state provides a " 'statutory mechanism' for suppression of evidence tainted by an unlawful search and seizure." *McPhail v. Warden, Attica Corr. Facility,* 707 F.2d 67, 69 (2d Cir.1983). Here, New York clearly affords defendants the requisite corrective procedures. *See*CPL § 710.10 et seq.; *see also Capellan,* 975 F.2d at 70 (noting that federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in C.P.L. § 710.10 et seq. as being facially adequate).

Petitioner may not raise his Fourth Amendment claim on habeas review because he was provided with, and indeed took full advantage of, the opportunity to fully adjudicate the issue in state court at a pre-trial suppression hearing. The record reflects that the hearing court engaged in a reasoned inquiry into the relevant issues surrounding Petitioner's arrest. After hearing all of the evidence presented on the issue, the trial court issued a decision denying Petitioner's motion to suppress. The Fourth Department subsequently affirmed the hearing court's ruling on the merits, and leave to appeal from

the decision of the Fourth Department was denied by the Court of Appeals.

Moreover, Petitioner has not demonstrated that an "unconscionable breakdown" occurred in the courts below. His dissatisfaction with the determination of the hearing court, which was subsequently affirmed by the Fourth Department, does not constitute the sort of "breakdown" referred to in *Gates.*Rather, an "unconscionable breakdown in the state's process must be one that calls into serious question whether a conviction is obtained pursuant to those fundamental notions of due process that are at the heart of a civilized society." *Cappiello v. Hoke,* 698 F.Supp. 1042, 1050 (E.D.N.Y.1988), *aff'd,*852 F.2d 59 (2d Cir.1988) (per curiam); *accord, Capellan,* 975 F.2d at 70 (observing that some sort of "disruption or obstruction of a state proceeding" of an egregious nature, *e.g.,* the bribing of a trial judge, typifies an unconscionable breakdown). No such disruption is discernable on the record. And, even if the state court erroneously decided the issue, a petitioner cannot gain federal review of a Fourth Amendment claim simply because a Federal court may reach a different result. *See Capellan,* 975 F.2d at 71.

Thus, this Court is precluded from considering Petitioner's fully litigated Fourth Amendment claim. The claim is dismissed.

## 2. Petitioner's Claim that he was Denied a Fair Trial because he had an "All White Jury" is Unexhausted but Deemed Exhausted and Procedurally Defaulted, and, in any event, Meritless

Petitioner contends that he was denied his right to a fair trial because he had an "all white jury." *See* Pet., Ex. B. Because Petitioner raises this claim for the first time in his habeas petition, the claim is unexhausted for purposes of federal habeas review. Nonetheless, the Court deems the claim exhausted but procedurally defaulted because Petitioner no longer has a state court forum available within which to exhaust the claim. *See Grey,* 933 F.2d at 120.

 **\*9** For exhaustion purposes, 28 U.S.C. § 2254(b)(1)(A) requires a petitioner "[to] give the state courts one full opportunity to resolve constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan,* 526 U.S. at 842. Petitioner failed to do so by raising this issue on direct appeal, nor did he raise this claim in a motion to vacate the judgment.

Petitioner's claim, therefore, is deemed exhausted but procedurally defaulted because state appellate review is no longer available to him. Petitioner has already used his one direct appeal to which he is entitled under New York law. *See* N.Y. Court Rules § 500.20. Collateral review of this claim —by way of another CPL § 440 motion—is also barred because the claim is a matter of record that could have been raised on direct appeal, but unjustifiably was not. *See* CPL § 440.10(2)(c) (the court must deny a motion to vacate a judgment when sufficient facts appear on the record to have permitted adequate review of the issue on appeal although no such review occurred due to Petitioner's unjustifiable failure to raise the issue on direct review). Thus, Petitioner's claim that he was denied a fair trial because he had an "all white jury" is deemed exhausted, but procedurally barred from habeas review.

A finding of procedural default bars habeas review of the federal claims unless the petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the claims will result in a miscarriage of justice. *Murray,* 477 U.S. at 492; *Wainwright,* 433 U.S. at 87–91. Petitioner has made no showing of the requisite cause and prejudice to overcome the procedural default, nor has he demonstrated that the Court's failure to review the claim will result in a miscarriage of justice. Petitioner's claim is therefore dismissed as procedurally defaulted.

In any event, Petitioner's claim is meritless. While the Sixth and Fourteenth Amendments require that a panel of jurors in a criminal trial must be "drawn from a source fairly representative of the community," the Constitution does not require that "petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population." *Taylor v. Louisiana,* 419 U.S. 522, 538, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). In other words, "[d]efendants are not entitled to a jury of any particular composition." *Id.; see also United States v. Jackman,* 46 F.3d 1240, 1244 (2d Cir.1995); *Crenshaw v. Superintendent,* 372 F.Supp.2d 361, 375 (W.D.N.Y.2005). Here, Petitioner has not demonstrated that there were any minorities who were improperly excluded from the panel of prospective jurors. Nor has Petitioner alleged that the prosecutor violated *Batson v. Kentucky,* 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), by exercising peremptory challenges in a discriminatory manner so as to exclude prospective non-white jurors from service. As such, Petitioner cannot point to any improper practice or procedure that led to the impaneling of an all-white jury for his trial, and his claim is, therefore, meritless.

### 3. Petitioner's Claim that the People Failed to Fulfill Its Discovery Obligations is Unexhausted but Deemed Exhausted and Procedurally Defaulted and, in any event, Meritless

**\*10** Petitioner argues that the People failed to fulfill its discovery obligations under *Brady* and *Rosario* with regard to the identification of the confidential informant (Moracco) working with the police. *See* Pet., Ex. B. Because Petitioner raises this claim for the first time in his habeas petition, it is unexhausted for purposes of federal habeas review. Nonetheless, as discussed above, Petitioner no longer has a state court forum available to him within which to exhaust the claim, and the Court therefore deems it exhausted but procedurally defaulted. *See Grey,* 933 F.2d at 120. Petitioner does not allege cause and prejudice to overcome the procedural default, nor has he demonstrated that this Court's failure to review the claim will result in a miscarriage of justice. Thus, the claim is dismissed as procedurally defaulted.

In any event, Petitioner's claim is meritless. A prosecutor's obligations under *Brady* are well-settled: "[t]o the extent that [a] prosecutor knows of material evidence favorable to the defendant in a criminal prosecution, the government has a due process obligation to disclose that evidence to the defendant." *Disimone v. Phillips,* 461 F.3d 181, 192 (2d Cir.2006) (citations omitted). To establish a *Brady* violation, a petitioner must demonstrate that: (1) the evidence at issue is favorable to the accused, either because it is exculpatory or because of its impeachment value; (2) the evidence was suppressed by the State, either willfully or inadvertently; and (3) prejudice ensued from the failure to disclose the evidence. *See Banks v. Dretke,* 540 U.S. 668, 691, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004) (citing *Strickler v. Greene,* 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)); *Leka v. Portuondo,* 257 F.3d 89, 98 (2d Cir.2001). To establish that the prosecutor suppressed evidence, "petitioner must demonstrate that his attorney did not possess the requested evidence in time for its effective use at trial." *Harris v. Smith,* 04–CV–1268 (LEK/GJD), 2008 U.S. Dist. LEXIS 59507, *36 (N.D.N.Y. Aug. 4, 2008). Thus, "as long as a defendant possesses *Brady* evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." *Id.* (quoting *Lutes v. Ricks,* 02–CV–1043 (TJM/DEP), 2005 U.S. Dist. LEXIS 32391, *49, n. 19 (2d Cir.2001)); *Shomo v. Zon,* 05 Civ. 10337 (JFK), 2008 U.S.

Dist. LEXIS 58459, *32, 2008 WL 2981555 (S.D.N.Y. Aug. 1, 2008).

In this case, Petitioner's *Brady* claim is meritless because he has failed to demonstrate that the prosecutor suppressed evidence. Petitioner points to no specific item(s) that were withheld. Moracco's identity as the confidential informant was revealed when she testified at trial. Moracco explained her arrangement with the police and testified about her past drug use. Defense counsel cross-examined her with respect to her relationship with the police, and Petitioner does not claim that there existed any additional information that the defense did not receive that could have been used to impeach Moracco at trial. Moreover, Petitioner does not claim that there were facts that he was unable to explore on cross-examination owing to the prosecutor's failure to disclose the information when he asked for it on November 22, 2005. Accordingly, Petitioner has not demonstrated that the information regarding Moracco was suppressed or that an earlier disclosure of it would have resulted in a different outcome at trial. *See Graham v. Ricks,* 02–CV–0303, 2004 U.S. Dist. LEXIS 5803, *23, 2004 WL 768579 (N.D.N.Y. April 7, 2004) (finding no *Brady* violation where no reasonable probability that earlier disclosure of the evidence would have produced different result at trial).

**\*11** To the extent Petitioner argues that Moracco's identity should have been disclosed for the pre-trial hearing, he cannot demonstrate that the refusal to identify the informant at that time was contrary to, or an unreasonable application of, Supreme Court law. The Supreme Court has noted that it has consistently declined to hold that an informant's identity must be disclosed in a preliminary hearing to determine probable cause for an arrest or search. *See McCray v. Illinois,* 386 U.S. 300, 312, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967).

Finally, insofar as Petitioner presents his claim as a violation of the prosecutor's discovery obligations under *Rosario,* his claim is not cognizable on habeas review. Federal courts in New York have consistently held that a *Rosario* claim, unlike a *Brady* claim, is based entirely upon New York State law and, thus, is not cognizable by a federal court on habeas review. *See Martinez v. Walker,* 380 F.Supp.2d 179, 185–86 (W.D.N.Y.2005); *Green v. Artuz,* 990 F.Supp. 267, 274–75 (S.D.N.Y.1998). Petitioner's claim is meritless and therefore provides no basis for habeas relief.

**4. Petitioner's Claim that the Trial Court Improperly Permitted the People to Introduce Evidence of an Uncharged Drug Sale is Unexhausted But Deemed Exhausted and Procedurally Defaulted**

Petitioner appears to argue, as he did on direct appeal, that the trial court improperly permitted the People to introduce evidence of a prior uncharged drug transaction between Petitioner and Moracco in violation of *People v. Molineux,* 168 N.Y. 264, 61 N.E. 286 (1901). [2] *See* Pet., Ex. B; Am. Pet., Ground Three. The Fourth Department rejected this claim on the merits. *See Lowman,* 49 A.D.3d at 1263, 856 N.Y.S.2d 342. While Petitioner did raise this claim in his appellate brief, he relied only on state law principles and did not base this claim on the deprivation of any federal constitutional rights. *See* Resp't Ex. A, Point III. Petitioner did not cite federal case law or state law employing constitutional analysis. *Id.* Accordingly, because Petitioner failed to alert the state court to the federal constitutional dimension of his claim, it is unexhausted. *See Daye,* 696 F.2d at 192–94. Nonetheless, because Petitioner no longer has a state court forum within which to exhaust the claim, the Court deems it exhausted but procedurally defaulted. *See Grey,* 933 F.2d at 120.

As discussed above, Petitioner has already used his one direct appeal to which he is entitled under New York law. *See* N.Y. Court Rules § 500.20. Collateral review of this claim—by way of another C.P.L. § 440 motion—is also barred because the claim is a matter of record that could have been raised on direct appeal, but unjustifiably was not. *See* CPL § 440.10(2)(c) (the court must deny a motion to vacate a judgment when sufficient facts appear on the record to have permitted adequate review of the issue on appeal although no such review occurred due to Petitioner's unjustifiable failure to raise the issue on direct review). [3]

**\*12** Moreover, Petitioner has not alleged cause and prejudice to overcome the procedural default or demonstrated that this Court's failure to review the claim will result in a miscarriage of justice. Therefore, the claim is dismissed as procedurally defaulted.

**5. Petitioner's Claim the People Failed to Disclose Information about an Alleged Drug Transaction between Petitioner and an Undercover Police Officer is Unexhausted but Deemed Exhausted and Procedurally Defaulted, and, in any event, Meritless**

Petitioner contends, for the first time in his habeas petition, that the prosecutor withheld information about an alleged drug sale between Petitioner and an undercover police officer. He further argues that the police subsequently "switched their

story" and accused Petitioner of selling drugs to confidential informant Moracco, but sealed any records relating to the original allegation. *See* Am. Pet., Ground Three. Because Petitioner raises this claim for the first time in his habeas corpus petition, it is unexhausted for purposes of federal habeas review. Nonetheless, as discussed above, Petitioner no longer has a state court forum available to him within which to exhaust the claim and the Court therefore deems it exhausted but procedurally defaulted. *See Grey,* 933 F.2d at 120. Petitioner does not allege cause and prejudice to overcome the procedural default, nor has he demonstrated that this Court's failure to review the claim will result in a miscarriage of justice. Thus, the claim is dismissed.

In any event, Petitioner's claim is meritless. A review of the record reveals that the only reference to a drug transaction between Petitioner and an undercover police officer was from a statement made by an Assistant District Attorney during a November 22, 2005 (pre-trial) court appearance. At that time, the ADA stated, "Judge, my understanding is that there was a confidential informant who assisted but this is a direct hand to hand sale to an undercover police officer from the New York State Police CNET team."Trans. of 11/22/05 at 4. Based on this Court's review of the record, it appears that the ADA's understanding of the facts was either mistaken or that the ADA simply misspoke. The evidence at trial established that Moracco was accompanied to the site of the drug sale by Investigator Kudac, but that Investigator Kudac was not with Moracco at the precise moment the transaction occurred because Petitioner did not want Investigator Kudac to approach him. T.T. 148–49, 167, 175–78. There was no evidence presented to the jury that suggested Petitioner had conducted a drug transaction with an undercover police officer. Moreover, defense counsel had the opportunity to cross-examine Moracco with respect to the drug transaction and, in fact, did so. T.T. 167. Additionally, defense counsel could have questioned Investigator Kudac about her role in accompanying Moracco to purchase the drugs from Petitioner, but chose not to do so. T.T. 179–80. Thus, Petitioner's claim is meritless and provides no basis for habeas relief.

**6. Petitioner's Claim that his Arrest was Unlawful because the Police Failed to Secure an Arrest Warrant and because he was not Informed of his Rights Pursuant to *Miranda v. Arizona* is Unexhausted but Deemed Exhausted and Procedurally Defaulted, and, in any event, is Not Cognizable**

**\*13** Petitioner argues, for the first time in the habeas petition, that his arrest was unlawful because the police failed to secure an arrest warrant and because he was not informed of his rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), upon his arrest. *See* Am. Pet, Ground Six. Because Petitioner raises this claim for the first time in his habeas corpus petition, it is unexhausted for purposes of federal habeas review. Nonetheless, as discussed above, Petitioner no longer has a state court forum available to him within which to exhaust the claim and the Court therefore deems it exhausted but procedurally defaulted. *See Grey,* 933 F.2d at 120. Petitioner does not allege cause and prejudice to overcome the procedural default, nor has he demonstrated that this Court's failure to review the claim will result in a miscarriage of justice. Thus, the claim is dismissed as procedurally defaulted.

In any event, Petitioner's claim is not cognizable. As discussed at Section "IV, 1" above, Petitioner is not entitled to habeas relief for a contention that his arrest violated his Fourth Amendment rights. *See Stone,* 428 U.S. at 482.

Accordingly, Petitioner's claim presents no basis for habeas relief.

**7. Petitioner's Ineffective Assistance of Trial Counsel is Procedurally Barred by an Adequate and Independent State Ground**

Petitioner argues, as he did in his CPL § 440.10 motion, that he received ineffective assistance of trial counsel because his attorney failed to file a timely motion to suppress the evidence police recovered from him on the ground that the police lacked probable cause for Petitioner's arrest. *See* Am. Pet., Ground Four. The Ontario County Court denied Petitioner's claim on procedural grounds, pursuant to CPL § 440.10(2)(a), (c).*See* Resp't Ex. I. The state court's reliance on an adequate and independent state law ground to deny the claim renders this claim procedurally barred from review by this Court.

A federal court may not review a question of federal law decided by a state court if the state court's decision rested on a state law ground that is independent of the federal question and adequate to support the judgment. *See Coleman,* 501 U.S. at 729. Here, the Ontario County rejected Petitioner's ineffective assistance of trial counsel claim pursuant to CPL § 440.10(2)(a), (c), finding that the claim was "either affirmatively addressed on appeal ... or sufficient facts appeared in the record underlying the judgment to have permitted, upon appeal from such judgment,

2011 WL 90996

adequate review of the ground or issue raised upon the instant motion and [Petitioner] failed to raise these grounds upon his appeal ....” *Id.* The Second Circuit has recognized CPL § 440.10(2)(c) as an adequate and independent state ground sufficient to preclude federal habeas review of a state-court defendant's claims. *See e.g., Sweet v. Bennett,* 353 F.3d 135, 139–40 (2d Cir.2003); *Reyes v. Keane,* 118 F.3d 136, 139 (2d Cir.1997); *Aparicio,* 269 F.3d at 91 (2d Cir.1991). Additionally, denial of a claim pursuant CPL § 440.10(2)(a) has been found to constitute an adequate and independent state ground. *See, e.g., McClarin v. Smith,* 05–CV–2478 (DLI), 2007 U.S. Dist. LEXIS 58717, 2007 WL 2323592 (E.D.N.Y.2007) (finding due process claim procedurally barred by New York Criminal Procedure Law § 440.10(2)(a) because it had been adjudicated on the merits during petitioner's direct appeal); *D'Alessandro v. Fischer,* No. 01 Civ. 2551(LTS)(DF), 2005 U.S. Dist. LEXIS 31381, 2005 WL 3159674 (S.D.N.Y.2005) (finding that the trial court's express reliance on CPL § 440.10(2)(a) indicates that the court rejected Petitioner's ineffective assistance claim on an independent and adequate state procedural ground precluding federal habeas review). Accordingly, the state court's reliance on CPL § 440.10(2)(a), (c) to deny Petitioner's claim bars this Court's review of Petitioner's ineffective assistance of trial counsel claim.

**\*14** Although Petitioner does not specifically allege cause for the default, he does allege, as a stand-alone claim, ineffective assistance of appellate counsel on these same grounds. *See* Am. Pet., Ground Five. Ineffective assistance of counsel may constitute cause for a petitioner's failure to pursue a constitutional claim, *e.g., Edwards v. Carpenter,* 529 U.S. 446, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000), but in order to constitute cause, counsel's ineffectiveness must itself rise to the level of a constitutional violation. *Id.* Here, Petitioner's underlying contention that his appellate attorney was ineffective is without merit (see Section “IV, 8” below). Thus, Petitioner is unable to make a successful showing of “cause” for purposes of overcoming the procedural default. Petitioner has also not demonstrated that this Court's failure to review the claim will result in a miscarriage of justice. Accordingly, Petitioner's ineffective assistance of counsel claim is dismissed as procedurally defaulted.

## 8. Petitioner's Ineffective Assistance of Appellate Counsel Claim is Meritless

Petitioner argues that his appellate attorney rendered ineffective assistance because appellate counsel failed to argue in his brief that the evidence against Petitioner should have been suppressed because the police improperly arrested Petitioner. *See* Am. Pet., Ground Five. [4] At the time Petitioner filed the instant amended petition, he had not exhausted this claim. Since that time, however, Petitioner filed a coram nobis application in the Fourth Department, which was summarily denied on June 11, 2010. *See* Dkt. # 46. Leave to appeal was denied on September 23, 2010. *Id.* Summary denial of Petitioner's motion constitutes an adjudication on the merits of this claim. *Sellen v. Kuhlman,* 261 F.3d 303, 311–12 (2d Cir.2001).

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his attorney's representation was unreasonable under “prevailing professional norms,” and that there is a reasonable probability that, but for his attorney's errors, “the result of the proceeding would have been different.” *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This standard applies equally to trial and appellate counsel. *See Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994), *cert. denied,* 513 U.S. 820, 115 S.Ct. 81, 130 L.Ed.2d 35 (1994). A petitioner alleging ineffective assistance of appellate counsel must prove both that appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and that absent counsel's deficient performance, there was a reasonable probability that defendant's appeal would have been successful. *Id.* at 533–34; *Smith v. Robbins,* 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). Moreover, counsel is not required to raise all colorable claims on appeal. *See Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Rather, counsel may winnow out weaker arguments and focus on one or two key claims that present “the most promising issues for review.” *Id.* at 751–53. A petitioner may establish constitutionally inadequate performance if he shows that his appellate counsel omitted material and obvious issues while pursuing matters that were patently and significantly weaker. *See Mayo,* 13 F.3d at 533.

**\*15** Petitioner cannot meet this standard insomuch as the claim he faults counsel for not raising was presented in Petitioner's *pro se* supplemental brief. *See* Resp't Ex. B. Because the Fourth Department considered this claim and rejected it on the merits, appellate counsel could not have been ineffective for failing to assert it. *See United States v. Arena,* 180 F.3d 380, 396 (2d Cir.1999) (“Failure to make a meritless argument does not amount to ineffective assistance.”).

Accordingly, the Court cannot find that the state court's adjudication of Petitioner's ineffective assistance of appellate counsel claim contravened or unreasonably applied settled Supreme Court law. The claim is dismissed.

**V. Conclusion**

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c) (2), the Court declines to issue a certificate of appealability. *See, e.g., Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 111–113 (2d Cir.2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.

*Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 90996

Footnotes

1   On July 12, 2005, the confidential informant, working with Officer Choffin and other police officers, purchased crack cocaine from Petitioner. H.M. 16–17, 21, 24–25.

2   It is unclear to the Court whether Petitioner specifically challenges the trial court's *Molineux* ruling. His pleadings in this respect are ambiguous. However, because Petitioner brings this action *pro se,* the Court will construe the ambiguity in his favor and address the claim, as he raised it on direct appeal, as a challenge to the trial court's *Molineux* ruling.

3   Additionally, the Court notes that, if raised collaterally, this claim would also be barred by CPL § 440.10(2)(a) to the extent that the issue, as it was framed on direct appeal, was addressed and rejected on the merits. *See Lowman,* 49 A.D.3d at 1263, 856 N.Y.S.2d 342.

4   The Court notes that Petitioner has listed in the habeas petition, as a final stand-alone claim, that he did not "receive[ ] a fair trial with respect to due process." Am. Pet., Ground Seven. He alleges no facts, however, to substantiate this claim. Moreover, although Petitioner has stylized this "issue" as an additional claim, it appears to the Court that this additional ground is simply a concluding paragraph. Nevertheless, to the extent Petitioner alleges a stand-alone "Ground Seven" on the grounds that, generally, he did not receive a fair trial and/or was denied due process, such claim is dismissed.

**End of Document**     © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 435477
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Richard MILLS, Petitioner,
v.
John B. LEMPKE, Respondent.

No. 11–CV–0440 (MAT).
|
Feb. 4, 2013.

**Attorneys and Law Firms**

Richard Mills, Romulus, NY, for Petitioner.

Priscilla I. Steward, New York State Attorney General's
Office, New York, NY, for Respondent.

**DECISION and ORDER**

HONORABLE MICHAEL A. TELESCA, District Judge.

**I. Introduction**

 *1  Proceeding *pro se,* Richard Mills ("Mills" or
"Petitioner") has filed a petition for a writ of habeas corpus
petition pursuant to 28 U.S.C. § 2254 alleging that he is
being held in Respondent's custody in violation of his federal
constitutional rights. Petitioner is incarcerated as the result
of a judgment originally entered on December 16, 2004,
following a jury trial in Genesee County Court (Noonan, J.)
of New York State Supreme Court. Petitioner was convicted
of Attempted Murder in the First Degree (New York Penal
Law ("P.L.") §§ 110. 00/125.27 (1)(a)(i)), Attempted Assault
in the First Degree (P.L. §§ 110.00/120.10(1)), Reckless
Endangerment in the First Degree (P.L. § 120.25), two counts
of Criminal Possession of a Weapon in the Third Degree (P.L.
§ 265.02(1)), and Criminal Possession of Marijuana in the
Third Degree (P.L. § 221.20).

**II. Factual Background**

**A. Petitioner's 2004 Trial**

For a summary of the evidence from Mills' 2004 trial and post-
conviction proceedings, the Court refers to, and incorporates
by reference herein, Magistrate Judge Bianchini's Report and
Recommendation in *Mills v. Poole,* 1:06–cv–00842–RJA–

VEB (W.D.N.Y. May 14, 2008), *adopted in full,* 1:06–cv–
00842–RJA–VEB (W.D.N.Y. July 1, 2008). A copy of the
Report and Recommendation is attached hereto as Appendix
I.

**B. Petitioner's 2011 Resentencing**

In 2011, Petitioner was resentenced with regard to the
attempted first degree assault charge, as to which he originally
had been sentenced to a determinate term of 15 years with no
term of post-release supervision ("PRS"). Under New York
law, however, where a defendant is sentenced to a determinate
prison term, the sentencing court is required to impose a
period of post-release supervision. *See* N.Y. PENAL LAW §
70.45. Pursuant to New York Corrections Law § 601–d, the
New York State Department of Corrections and Community
Supervision ("DOCCS") notified the trial court of the defect
in Petitioner's sentence.

By order dated January 31, 2011, the trial court, pursuant
to P.L. § 70.85 and with the consent of the Genesee
County District Attorney, re-imposed the original 15–year
determinate sentence for the attempted first degree assault
conviction, without imposing any period of PRS. Petitioner's
remaining sentences were undisturbed.

Petitioner filed a motion for reargument with respect to the
resentencing on the grounds that he was denied his right to
appear in court and to the assistance of counsel. Petitioner
repeated also argued that Judge Noonan should have recused
himself due to his alleged business and familial ties to various
Genesee County officials.

On March 28, 2011, Judge Noonan denied Petitioner's
motion, recognizing that "the re-imposition of the original
sentence was statutorily authorized, and was warranted
in this case inasmuch as the additional post-release
supervision would have been redundant [to] the lifetime
parole supervision mandated under [Petitioner's] [a]ttempted
[m]urder conviction."Respondent's Exhibit ("Resp't Ex.")
TT at 2. Judge Noonan further concluded that "[s]ince
[Petitioner] cannot be considered aggrieved by the
determination not to enhance his determinate sentence,
such transportation, hearing and appointment of counsel
would have been [an] unnecessary expenditure of public
resources."*Id.*

 *2  On June 27, 2011, Petitioner filed a *pro se* motion to
vacate the judgment and to set aside his sentence pursuant
to New York Criminal Procedure Law ("C.P.L.") §§ 440.10

and 440.20, based on Judge Noonan's refusal to produce him and to assign counsel for the purpose of resentencing him on the attempted first degree assault conviction. On August 23, 2011, Petitioner added a claim asserting a violation of the Ex Post Facto Clause of the federal Constitution.

On September 21, 2011, Judge Noonan denied the motion, noting that "resentencing under Correction Law § 601–d implicates the post-judgment imposition of post-release supervision, *and does not afford resentencing de novo."* Resp't Ex. YY (citing *People v. Lingle,* 16 N.Y.3d 621, 636, 926 N.Y.S.2d 4, 949 N.E.2d 952 (2011) ("The defendant's right to appeal [a resentencing under P.L. § 70.85] is limited to the correction of errors or the abuse of discretion at the resentencing proceeding. Since the resentencing court is not authorized to lower the prison sentence ..., appellate courts are likewise unauthorized to do this—i.e., the resentencing court's failure to consider a lesser sentence was not an 'error or defect' subject to reversal or modification.") (internal citations omitted); *People v. Long,* 85 A.D.3d 521, 522, 925 N.Y.S.2d 330 (1st Dept.2011) ("*Lingle* specifically prohibits both the resentencing court and this Court from revisiting the original, lawful sentence.")). Judge Noonan stated that Petitioner's "right to be heard and represented by counsel is only required where an additional term of post-release supervision is contemplated," whereas in Petitioner's case, Judge Noonan declined to impose a term of PRS. *Id.*

Petitioner sought leave to appeal the denial of his C.P.L. §§ 440.10 and 440.20 motions, which was denied on December 8, 2011, by the Appellate Division, Fourth Department. Petitioner moved for reargument and reconsideration of the denial of the leave application, which was denied on December 8, 2011.

Petitioner also has challenged his resentencing by means of a direct appeal to the Fourth Department. Based upon Petitioner's latest submissions to this Court, it appears that the appeal is scheduled to be heard by the Fourth Department in February 2013.

On November 16, 2011, Petitioner again attacked his resentencing via a motion to dismiss the indictment pursuant to C.P.L. § 380.30(1), arguing that the trial court had been divested of jurisdiction to resentence Petitioner because of an allegedly unreasonable delay in sentencing him. The trial court denied the motion in a written decision and order, Resp't Ex. HHH, concluding that it had resentenced Petitioner within a reasonable time after DOCCS notified it of the

defect in Petitioner's original sentence. The trial court noted that although Petitioner challenged the validity of the order resentencing him without a PRS term, the order had not been vacated or modified but rather had been honored by DOCCS. *Id.* Petitioner sought leave to appeal the denial of this motion, which was denied on January 26, 2012, because the trial court's order was not appealable. Petitioner moved for reargument of his motion, which was denied by the trial court on March 9, 2012.

**\*3** Further details regarding the extensive procedural history in this matter are contained in Respondent's thorough Memorandum of Law (Dkt # 34); Petitioner's various "exhaustion updates" (Dkt4, 5, 17, 20, 28, 36); and Magistrate Judge Bianchini's Report and Recommendation (Appendix I).

**E. The 2011 Federal Habeas Proceeding**
In his amended habeas petition (Dkt # 7) dated November 12, 2011, Petitioner asserts the following grounds for relief: he was entitled to be present at and to have counsel appointed for his resentencing (Ground One); his resentencing violated the Ex Post Facto Clause of the United States Constitution (Ground Two); his Confrontation Clause rights were violated because the prosecution admitted into evidence a ballistics report without having the report's author testify (Ground Three); the "administrative reviewer" of a drug analysis report did not testify, in violation of Petitioner's Confrontation Clause rights, and the report's preparer testified untruthfully (Ground Four); trial counsel erroneously stipulated to the admission of the ballistics report (Ground Five); the prosecution violated its disclosure obligations under the Due Process Clause by withholding several documents that Petitioner subsequently obtained through a Freedom of Information Law request (Ground Six); Petitioner is actually innocent of attempted first degree murder because the evidence did not establish that the weapons were operable or loaded with live ammunition, and there was no evidence that a gun was fired (Ground Seven); the trial court erroneously declined to instruct the jury regarding the defense of extreme emotional disturbance, thereby violating Petitioner's right to a fair trial (Ground Eight); the trial court improperly refused to rule on the merits of a renewed omnibus motion because it was untimely (Ground Nine); the police violated Petitioner's Fourth Amendment rights by seizing marijuana from his residence (Ground Ten); the trial court erroneously failed to make a finding on the record that Petitioner was competent to stand trial (Ground Eleven); Inv. Stone's testimony established that he had tampered with the rifle before it was examined by the ballistics

expert (Ground Twelve); the conviction for possession of marijuana was not supported by legally sufficient evidence and was against the weight of the credible evidence (Ground Thirteen); the remaining convictions were not supported by legally sufficient evidence and was against the weight of the credible evidence because the prosecution failed to present proof that the weapons were loaded with live ammunition, there was an absence of fingerprint proof that Petitioner had actual possession of a gun, and Petitioner's alleged intoxication and psychosis negated his ability to form the requisite intent (Ground Fourteen); Petitioner's statements to the police were taken in violation of his constitutional rights (Ground Fifteen); Petitioner's motion to suppress was erroneously denied without a hearing (Ground Sixteen); Petitioner's Sixth Amendment right to a speedy trial was violated (Ground Seventeen); the indictment was defective because it failed to give notice of the charges against him (Ground Eighteen); the prosecution withheld documents from the Genesee County Sheriff's Department establishing Petitioner's mental illness (Ground Nineteen); the marijuana possession charge (count nine) was improperly joined in the indictment (Ground Twenty); the trial judge was biased and should have recused himself (Ground Twenty–One); the pre-sentence investigation report was inaccurate and "prosecuted" Petitioner so as to prevent him from ever being granted parole (Ground Twenty–Two); one of the jurors was biased due to his relationship with one of the victims, Dep. Duyssen (Ground Twenty–Three); pre-trial counsel Felix Lapine, Esq., and trial counsel David Morabito, Esq., were ineffective for numerous reasons (Ground Twenty–Four); Petitioner's direct appeal was unconstitutional because the court appointed ineffective appellate counsel (Ground Twenty–Five); and the Double Jeopardy Clause should apply to protect Petitioner from the alleged repeated errors by the Genesee County and New York state entities involved in his criminal prosecution (Ground Twenty–Six).

**\*4** Petitioner has filed a motion (Dkt # 14) to have these proceedings stayed and held in abeyance while he pursues a direct appeal in the Fourth Department regarding the 2011 resentencing. The Fourth Department has assigned counsel to represent him, but this appeal addresses only the resentencing proceeding. Assigned counsel has refused Petitioner's request to attack the underlying conviction because such a challenge is impermissible under *People v. Lingle, supra.*

Petitioner also has filed a motion for sanctions and to have Respondent's affirmative defenses of non-exhaustion and

procedural default struck because they were not properly asserted in Respondent's answer.

For the reasons discussed below, Petitioner's motion for a stay is denied, and Petitioner's motion for sanctions is denied. Because the Court has elected to consider all of Petitioner's claims on the merits, Petitioner's request to have Respondent's affirmative defenses struck is denied as moot. Petitioner's motion to amend is denied as futile. Finally, Petitioner's request for a writ of habeas corpus is denied, and the amended petition is dismissed.

### III. Motion for a Stay

Petitioner has filed a motion (Dkt # 14) to have the amended petition (Dkt # 7) stayed and held in abeyance pending the outcome of his direct appeal in the Appellate Division, Fourth Department, of the 2011 resentencing. *See Rhines v. Weber,* 544 U.S. 269, 277, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005) (approving of the stay-and-abeyance procedure described by the Second Circuit in *Zarvela v. Artuz,* 254 F.3d 374, 380 (2d Cir.), *cert. denied sub nom.Fischer v. Zarvela,* 534 U.S. 1015, 122 S.Ct. 506, 151 L.Ed.2d 415 (2001)).

In light of the total exhaustion requirement for federal habeas review, a district court faced with a habeas petition containing unexhausted claims generally has three options. First, the court may dismiss the unexhausted claims without prejudice. *See Rhines,* 544 U.S. at 273, 274. Second, the district court may deny-but not grant-a mixed petition on the merits. *See*28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *see also Rhines,* 544 U.S. at 277 ("[T]he district court would abuse its discretion if it were to grant [petitioner] a stay when his unexhausted claims are plainly meritless"). Third, where an unexhausted claim is contained in a petition along with exhausted claims, a district court may either invite the petitioner to abandon his unexhausted claims and proceed with only the exhausted claims, or, in order to avoid foreclosing federal review of the unexhausted claims, the court may "stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims."*Rhines,* 544 U.S. at 275, 277–78.

In order to invoke the "stay-and-abeyance" procedure for a mixed habeas petition, a district court must first ensure that certain criteria are met. *See id.* at 277–78 (stating that "stay and abeyance should be available only in limited circumstances"). Specifically, the court must ensure that (1)

good cause exists for the petitioner's failure to exhaust his claims in state court; (2) the unexhausted claims are not "plainly meritless," and (3) the petitioner has not engaged in intentionally dilatory litigation tactics. *Id.*

**\*5** As Respondent points out, the currently pending direct appeal is limited to issues concerning the 2011 resentencing. Respondent correctly argues that Petitioner cannot utilize this direct appeal to challenge any other aspect of his 2004 conviction, such as his unexhausted ineffective assistance of appellate counsel claims. *See People v. Lingle,* 16 N.Y.3d at 635–36, 926 N.Y.S.2d 4, 949 N.E.2d 952 (holding that a defendant's right to appeal after a resentencing is "limited to the correction of errors or the abuse of discretion at the resentencing proceeding"); *see also People v. Lakatosz,* 89 A.D.3d 1329, 1330, 933 N.Y.S.2d 439 (3d Dept.2011). As noted above, Petitioner's assigned appellate counsel has declined to raise any claims pertaining to the underlying criminal conviction because such a challenge is expressly prohibited under current New York law. Any *pro se* attack on the 2004 conviction by Mills in connection with the direct appeal of his 2011 resentencing will be futile.

As discussed further below, the claims pertaining to the resentencing are not unexhausted, as they were raised in a C.P.L. §§ 440.10/440.20 motion, making the direct appeal arguably redundant. Furthermore, the resentencing claims raise only non-cognizable issues of state law and, in any event, are plainly meritless.

Under these circumstances, it would be an abuse of this Court's discretion to employ the stay-and-abeyance procedure. *See Rhines,* 544 U.S. at 277 ("[T]he district court would abuse its discretion if it were to grant [petitioner] a stay when his unexhausted claims are plainly meritless"). Accordingly, the Court shall rely upon § 2254(b)(2) to deny Mills' petition in its entirety on the merits, notwithstanding the fact that it contains unexhausted claims.

The habeas statute does not articulate a standard for denying a petition containing unexhausted claims on the merits, and neither the Supreme Court nor the Second Circuit has established one. The rationale behind 28 U.S.C. § 2254(b)(2) has been described as "spar[ing] state courts from needlessly wasting their judicial resources on addressing meritless claims solely for the sake of exhaustion."*Keating v. New York,* 708 F.Supp.2d 292, 299 n. 11 (E.D.N.Y.2010). On the other hand, comity demands that state courts be afforded the opportunity to pass upon any constitutional claim that is at

least potentially meritorious before a federal habeas court decides it. *See, e.g., Reid v. Angelone,* 369 F.3d 363, 373 (4th Cir.2004) (habeas court should not deny unexhausted claims if "reasonable jurists could debate" their merits).

In this Circuit, the various formulations for the proper standard to be used share "the common thread of disposing of unexhausted claims that are unquestionably meritless."*Keating,* 708 F.Supp.2d at 299 n. 11 (citing *Williams v. Artus,* 691 F.Supp.2d 515, 526–27 (S.D.N.Y.2010) (relying upon 28 U.S.C. § 2254(b)(2) where unexhausted claims were "plainly meritless"); *Robinson v. Phillips,* No. 04–CV–3446 (FB), 2009 WL 3459479, at \*1 (E.D.N.Y. Oct.23, 2009) (relying upon 28 U.S.C. § 2254(b)(2) where unexhausted claims were "patently frivolous")). Here, invocation of 28 U.S.C. § 2254(b)(2) to deny Mills' amended petition containing unexhausted claims is appropriate given that the claims are unquestionably meritless, and their lack of merit is not subject to debate by reasonable jurists.

### IV. Merits of the Claims Raised in Petitioner's 2006 Habeas Petition and Re–Raised in this Proceeding

**\*6** This Court has previously held that, pursuant to *Magwood v. Patterson,* ––– U.S. ––––, 130 S.Ct. 2788, 2797, 2802, 177 L.Ed.2d 592 (2010), Mills' current habeas petition is not a second or successive petition within the meaning of 28 U.S.C. § 2244(b), despite the fact that it asserts numerous claims pertaining to the 2004 convictions that he was in the position to raise in 2006. *See* Dkt # 19 at 18 ("Based upon the majority's holding in *Magwood* and upon the dissent's characterization of the scope of the majority's ruling, this Court concludes that the current habeas petition, filed after Petitioner's resentencing in state court, is not 'second or successive' within the meaning of 28 U.S.C. § 2244(b), because there was a new, intervening judgment [i.e., the 2011 resentencing] between the first and second petitions.") (citations omitted).

In *Magwood,* the dissent raised concerns that a petitioner now may "reraise every argument against a sentence that was rejected by the federal courts during the first round of federal habeas review,"130 S.Ct. at 2810 (dissenting opn.). The majority characterized this as "hyperbolic[,]" noting that "[i]t will not take a court long to dispose of such claims where the court has already analyzed the legal issues."130 S.Ct. at 2802 n. 15.

Here, Magistrate Judge Bianchini and District Judge Arcara have already analyzed the legal issues concerning a number of the claims that Mills now re-asserts in the present amended habeas petition, namely Ground Ten (Fourth Amendment violations), Ground Thirteen (conviction for criminal possession of marijuana was against the weight of the evidence and unsupported by legally sufficient evidence; and trial counsel was ineffective in connection therewith), Ground Fourteen (the verdicts for attempted murder and assault were against the weight of the evidence and unsupported by legally sufficient evidence), Ground Seventeen (violation of Sixth Amendment right to a speedy trial), Eighteen (defective indictment), Ground Twenty (Count Nine was improperly joined), and Ground Twenty–One (judicial bias).

This Court reads the *Magwood* majority's comment in footnote 15, *see* 130 S.Ct. at 2802 n. 15, as sanctioning the summary dismissal of previously-raised habeas claims in a subsequent petition when such claims have already been analyzed by the federal court in an earlier petition. Here, in connection with Mills' 2006 habeas petition, Magistrate Judge Bianchini analyzed all of the claims listed in the foregoing paragraph on the merits under a *de novo* standard of review-the most favorable standard possible from a petitioner's standpoint-and found that they did not warrant habeas relief. District Judge Arcara adopted in full Magistrate Judge Bianchini's findings of fact and conclusions of law. The United States Court of Appeals for the Second Circuit dismissed Petitioner's appeal, agreeing that he had failed to make a substantial showing as to the denial of a constitutional right.

 **\*7** This Court has reviewed the pleadings and transcripts filed in both the 2006 and 2011 habeas proceedings, and concurs fully with Magistrate Judge Bianchini's and District Judge Arcara's disposition of the claims asserted in the 2006 petition. Accordingly, the Court dismisses Ground Ten (Fourth Amendment violations), Ground Thirteen (conviction for criminal possession of marijuana was against the weight of the evidence; unsupported by legally sufficient evidence; and trial counsel was ineffective in connection therewith), Ground Fourteen (the verdicts for attempted murder and assault were against the weight of the evidence and unsupported by legally sufficient evidence), Ground Seventeen (violation of Sixth Amendment right to a speedy trial), Eighteen (defective indictment), Ground Twenty (Count Nine was improperly joined), and Ground Twenty–One (judicial bias), for the reasons stated in Magistrate Judge

Bianchini's Report and Recommendation in *Mills v. Poole,* 1:06–cv–00842–RJA–VEB (W.D.N.Y. May 14, 2008).

## V. Preliminary Matters Concerning the Newly Raised Claims

The Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to Mills' amended petition, filed in 2011. AEDPA "revised the conditions under which federal courts may grant habeas relief to a person in state custody." *Kruelski v. Connecticut Superior Court for Judicial Dist. of Danbury,* 316 F.3d 103, 106 (2d Cir.2003) (citing 28 U.S.C. § 2254). Under AEDPA, a federal court may grant a writ of habeas corpus under 28 U.S.C. § 2254 only if the state court's adjudication of the petitioner's claim on the merits ruling is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or involved an "unreasonable determination of the facts" in light of the evidence presented, 28 U.S.C. § 2254(d)(2). *See also Gilchrist v. O'Keefe,* 260 F.3d 87, 93 (2d Cir.2001) ("[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.").

The Second Circuit has stated that "it is often appropriate in considering a habeas petition under the AEDPA for the federal court to go through two steps: first, the court determines what the correct interpretation of Supreme Court precedent is; second, if the state court's understanding or application of that precedent is determined to be erroneous, the federal court must still ask whether that error was a reasonable one." *Kruelski,* 316 F.3d at 106; *see also Messiah v. Duncan,* 435 F.3d 186, 197 (2d Cir.2006) ("We need not determine here whether Messiah's claims were adjudicated on the merits by the state courts, thereby triggering AEDPA review, because his claims would fail even if we apply the less deferential, pre-AEDPA standard.").

 **\*8** Here, the Court follows the suggestion set forth in *Kruelski,* determining first what the correct interpretation of Supreme Court precedent is and whether the state courts' rulings were correct in light of that interpretation. In other words, the Court initially views Mills' claims through a pre-AEDPA lens. As discussed more fully below, all of Mills' claims fail under this standard. Because they cannot pass muster under the pre-AEDPA standard, they necessarily

cannot provide a basis for habeas relief under the more stringent, post-AEDPA standard of review.

## VI. Analysis of Merits of Claims Raised for the First Time in This Habeas Proceeding

### A. Constitutional Errors at Resentencing (Amend. Pet., Ground One)

At Mills' original sentencing, the trial court imposed a fifteen-year determinate prison term on his conviction for attempted first degree assault. However, the trial court erroneously failed to impose a five-year period of post-release supervision, which was mandatory under P.L. § 70.45. Pursuant to P.L. § 70.85, the trial court was authorized to re-impose the original term of imprisonment without a term of PRS, upon the consent of the District Attorney's Office. However, the Penal Law provides no authority to modify any other aspect of a defendant's sentence. The District Attorney's Office agreed to the re-imposition of the original sentence without a term of PRS.

At resentencing, the trial court simply announced that Mills' originally imposed sentence would remain unchanged-that is, 15 years with no PRS. [1] Mills was not produced to appear in court. Mills now contends that he was denied his rights under the First, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution by being denied his right to be present at resentencing and to have counsel appointed.

The trial court, in rejecting Mills' constitutional claims on the merits, found that Petitioner could not be considered aggrieved given that it had *not* enhanced Petitioner's determinate sentence by imposing a term of PRS. Since Petitioner was not prejudiced by the resentencing, the trial court found, holding a hearing and appointing counsel would have been an unnecessary expenditure of public resources.

The trial court did not incorrectly apply federal law. As an initial matter, the First and Eighth Amendments are not implicated in this claim. At most, Petitioner's allegations raise issues under the Sixth Amendment and the Fifth Amendment as made applicable to the states via the Fourteenth Amendment.

The constitutional right to presence is largely based in the Confrontation Clause of the Sixth Amendment, *e.g., Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), although it also is "protected by the Due Process Clause in some situations where the defendant is not actually

confronting witnesses or evidence against him."*United States v. Gagnon,* 470 U.S. 522, 526, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985) (citing *Snyder v. Massachusetts,* 291 U.S. 97, 105–06, 54 S.Ct. 330, 78 L.Ed. 674 (1934) (A defendant has a due process right to be present at a proceeding "whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.... [T]he presence of a defendant is a condition of due process *to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only."*) (emphasis supplied)).

**\*9** Contrary to Mills' contention, his presence would have added nothing to the resentencing, which was essentially a non-event. Mills received the same sentence that was originally imposed-a determinate term of 15 years without any term of PRS. The only difference was that the absence of a term of PRS in the new sentence was legal, since the prosecution had consented to it. Under these circumstances, Mills' personal attendance at the resentencing was not constitutionally required. *See Gagnon,* 470 U.S. at 527 (holding that the presence of defendants and their counsel at the *in camera* discussion with a juror and attorney for one defendant; defendants "could have done nothing had they been at the conference, nor would they have gained anything by attending") (citing *Snyder,* 291 U.S. at 108).

The Court is hard-pressed to see how Mills' constitutional rights were violated. Even where defendants have been defendants to lengthier sentences, courts have found no constitutional infirmity. *See DeWitt v. Ventetoulo,* 6 F.3d 32, 34 (1st Cir.1993) ("The Constitution contains no general rule that prohibits a court from increasing an earlier sentence where the court finds that it was erroneous and that a higher sentence was required by law. On the contrary, this has occurred, and been upheld against constitutional or other challenges.... [I]n principle, there is no difference between such cases and a case like this one in which a sentence is reduced and later, finding the reduction to be unlawful, the court reinstates the original sentence.").

Finally, the New York Court of Appeals' decisions in *People v. Sparber,* 10 N.Y.3d 457, 465, 859 N.Y.S.2d 582, 889 N.E.2d 459 (2008), and *Matter of Garner v. New York State Dept. of Corr. Servs.,* 859 N.Y.S.2d 590 (2008), stating that subject to limited exceptions, the defendant must be personally present at the time sentence is pronounced, do not assist Mills here. Those decisions were based solely upon commands contained in New York statutory law, namely, C.P.L. §§ 380.20 and 380.40(1), and not on constitutional

grounds. It is beyond debate that a trial court's alleged breach of a state law is not cognizable in a federal habeas proceeding. *See, e.g., Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (citation omitted).

### B. Violation of Ex Post Facto Clause at Resentencing (Amend. Pet., Ground Two)

The Ex Post Facto provision of the Constitution, *see* U.S. CONST., art. I, § 10, bars any "enactments, which by retroactive operation, increase the punishment for a crime after its commission." *Garner v. Jones,* 529 U.S. 244, 249, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000). The Ex Post Facto clause, however, does not apply here.

As noted above, P.L. § 70.45 mandates the imposition of a term of PRS where, as here, the trial court imposes a determinate prison term for a conviction of attempted first degree assault. This statute was in effect in 2001, when Petitioner committed the crimes for which he was convicted and sentenced in 2004. However, Judge Noonan failed to impose any term of PRS when he sentenced Petitioner, and this rendered the sentence illegal.

**\*10** In the interim, the Second Circuit specifically recognized that a term of PRS could be modified upon resentencing by the trial court. See *Earley v. Murray,* 462 F.3d 147, 149 (2d Cir.2006). However, New York state law generally does not allow the court to *sua sponte* order a resentencing. See *People v. Riggins,* 164 A.D.2d 797, 797–98, 559 N.Y.S.2d 535, 536 (1st Dept.1990). To deal with the confusion created by *Earley,* the New York Court of Appeals subsequently held that, where a trial court erroneously fails to pronounce a PRS term, the matter must be remitted for resentencing. *E.g., People v. Sparber,* 10 N.Y.3d at 465, 859 N.Y.S.2d 582, 889 N.E.2d 459. Though both *Sparber* and *Garner* dealt with the legality of DOCCS' administrative imposition of PRS where the sentencing courts had failed to pronounce PRS as a part of a determinate sentence, neither was decided on constitutional grounds and neither cited *Earley.*

*Sparber* explained that C.P.L. § 380.20 and § 380.40 "collectively require that courts 'must pronounce sentence in every case where a conviction is entered' and that —subject to limited exceptions ... '[t]he defendant must be personally present at the time the sentence is pronounced.' " *Sparber,* 859 N.Y.S.2d at 587, 889 N.E.2d 459. *Sparber* rejected the defendants' assertion, however, that the failure of the sentencing court to orally pronounce their PRS terms

at sentencing entitled them to have the PRS expunged from their sentences. Because of the mandatory nature of PRS, the defendants were not entitled to expungement, only resentencing. The failure of the court to pronounce the PRS term mandated by P.L. § 70 .45(1) was described as "only a procedural error, akin to a misstatement or clerical error which the sentencing court could easily remedy." *Sparber,* 859 N.Y.S.2d at 589, 889 N.E.2d 459.

To deal with the issues created by *Sparber* and *Garner,* the New York State legislature enacted a provision authorizing a trial court to resentence a defendant, like Mills, to no term of PRS upon consent of the district attorney. *See* N.Y. PENAL LAW § 70.85. This option was invoked in Mills' case, in the form of an amended sentence and commitment order entered in 2011, stating specifically that Mills had been resentenced to the same determinate term of imprisonment with zero months of PRS.

As Respondent argues, Judge Noonan's subsequent resentencing of Mills pursuant to P.L. § 70.85 allowed Mills to lawfully maintain the more favorable-albeit illegal-sentence he originally received. Mills' punishment was *not* increased after his resentencing. The Ex Post Facto Clause simply is inapplicable here.

### C. Confrontation Clause Violation In Connection With Ballistics Report (Amend. Pet., Ground Three)

Mills contends that his rights under the Confrontation Clause of the Sixth Amendment were violated because the prosecution introduced a ballistics report without also presenting the testimony of report's drafter, John Clark ("Clark").

**\*11** "The Confrontation Clause of the Sixth Amendment provides that, '[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.'" *Williams v. Illinois,* ––– U.S. ––––, ––––, 132 S.Ct. 2221, 2232, 183 L.Ed.2d 89 (2012) (quoting U.S. CONST., amend VI). Here, however, it was the defense, rather than the prosecution, who introduced Clark's ballistics report for the purposes of showing that the rifle was not operable when it was first delivered to the laboratory for testing but was made operable after it was properly reassembled by laboratory personnel. The prosecutor was reluctant to agree to the stipulation because there already had been testimony that Inv. Stone jammed the rifle when he attempted to remove a bullet from the weapon immediately after the incident. The prosecutor preferred to call Clark as a witness rather

than simply introducing his report. Defense counsel, citing convenience, wished to introduce the report only. Ultimately, the prosecutor agreed to the stipulation.

Mills' claim thus is wholly meritless. *See Williams,* 132 S.Ct. at 2242 ("Even if the Cellmark report had been introduced for its truth, we would nevertheless conclude that there was no Confrontation Clause violation. The Confrontation Clause refers to testimony by *'witnesses against'* an accused. Both the noted evidence scholar James Henry Wigmore and Justice Harlan interpreted the Clause in a strictly literal sense as referring solely to persons who testify in court, but we have not adopted this narrow view.") (emphasis supplied); *see also Bullcoming v. New Mexico,* 564 U.S. ——, 131 S.Ct. 2705, 2710, 180 L.Ed.2d 610 (2011) (holding that a scientific report could not be used as substantive evidence against the defendant unless the analyst who prepared and certified the report was subject to confrontation).

**D. Confrontation Clause Violation in Connection with the Drug Analysis Report and Related Claim of Ineffective Assistance of Trial Counsel (Amend. Pet., Ground Four)**

**1. Confrontation Clause Claim**
Mills claims that his Confrontation Clause rights were violated because the prosecution introduced a laboratory report concerning an analysis performed on the marijuana recovered from Mills' home. Mills contends that his right to confront witnesses was violated because Moses S. Schanfield, who merely signed the report as an "administrative reviewer", did not testify at trial.

Schanfield did not prepare the report; Kathleen McCully did. McCully, who actually performed the analysis, testified at trial concerning her methodology and her findings, and defense counsel fully cross-examined her. Schanfield merely signed the report as the administrative reviewer.

Even if Schanfield had testified instead of McCully, a Confrontation Clause issue would not necessarily have been raised. *See Bullcoming,* 131 S.Ct. at 2710. In *Bullcoming,* the prosecution had introduced into evidence the results of a blood test through the testimony of a colleague of the actual analyst, and the colleague who testified "had neither observed nor reviewed [the primary author's] analysis."*Id.* at 2712. The Supreme Court held this substitute testimony of this colleague was not the equivalent of the actual analyst's for purposes of the Confrontation Clause. *Id.* at 2710. Whether a supervisor or

reviewer, such as Schanfield, may be permitted to testify *in place of* the report's primary author under the Confrontation Clause "was therefore explicitly left open." *Meras v. Sisto,* 676 F.3d 1184, 1192 (9th Cir.2012) (concurring opn.) (emphasis supplied). Here, however, McCully, the actual drafter of the report testified and was subject to cross-examination. Accordingly, Mills' Confrontation Clause rights were not violated.

**2. Ineffective Assistance of Trial Counsel Claim**
 **\*12** In order to establish that he received the ineffective assistance of trial counsel, a petitioner must show that his attorney provided deficient representation, and that he was prejudiced as a result of counsel's shortcomings. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The performance prong of *Strickland* requires a petitioner to show that "counsel's representation fell below an objective standard of reasonableness."*Id.* at 686.The prejudice prong requires a petitioner to show that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."*Id.* at 694."This does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland* 's prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.' " *Harrington v. Richter,* —— U.S. ——, —— – ——, 131 S.Ct. 770, 791–92, 178 L.Ed.2d 624 (2011) (quoting *Strickland,* 466 U.S. at 693, 697). "The likelihood of a different result must be substantial, not just conceivable." *Harrington,* 131 S.Ct. at 792.

Here, as discussed above, there was no violation of Mills' rights under the Confrontation Clause. Trial counsel's alleged omissions in regard to the report signed by Schanfield could not have any effect whatsoever on the verdict. Mills therefore is unable to demonstrate prejudice. Accordingly, his *Strickland* claim must fail. *See*466 U.S. at 697 (A reviewing court need not address both of *Strickland*'s prongs if, as is usually the case, the court can "dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice[.]").

**E. Ineffective Assistance of Trial Counsel—Errors in Connection with the Evidentiary Stipulation (Amend. Pet., Ground Five)**
According to Mills, trial counsel was ineffective because he stipulated to the admission of the 911 tapes without

explaining that Mills' right of confrontation was implicated, and that if cross-examination of the witnesses on the tapes was not allowed, the tapes were inadmissible. Mills appeared on the tapes, along with Dep. Duyssen, who testified at trial and was available for cross-examination. Trial counsel had no legal basis on which to object to the prosecution's introduction of Mills' statements as they constituted admissions against a party opponent. *See People v. Chico,* 90 N.Y.2d 585, 589, 665 N.Y.S.2d 5, 687 N.E.2d 1288 (1997) ("[A]dmissions by a party of any fact material to the issue are always competent evidence against him, wherever, whenever, or to whomsoever made.").

Mills contends that he had the right to confront *everyone* involved in the making of the 911 tapes. However, the Confrontation Clause applies only to testimonial hearsay, *e.g., Davis v. Washington,* 547 U.S. 813, 821, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), and Mills has not established that testimonial hearsay was contained on the tapes. *See Collins v. Berghuis,* No. 09–cv–10627, 2012 WL 666517, at *17 (E.D.Mich. Feb.29, 2012) ("The trial court admitted the [911] dispatcher's statement for a non-hearsay purpose, and instructed the jury that it could not be considered for its truth, and therefore the admission of the testimony did not violate the Confrontation Clause. The primary purpose of the dispatcher's statement identifying the source of the 911 call was to assist the police in responding to an ongoing emergency and was therefore non-testimonial .") (internal citations omitted).

### F. Violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (Amend. Pet., Ground Six)

**\*13** Petitioner asserts that the prosecution violated its due process obligations under *Brady* by withholding certain documents that he asserts were favorable to the defense: (1) a Technical Reviewer checklist, (2) several Administrative Review checklists, (3) Firearms Evidence worksheets, (4) Dep. Duyssen's victim impact statement, and (5) intake reports completed during the booking process that document Petitioner's mental illness.

The prosecution's obligation pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, is well-settled. "To the extent that [a] prosecutor knows of material evidence favorable to the defendant in a criminal prosecution, the government has a due process obligation to disclose that evidence to the defendant."*Disimone v. Phillips,* 461 F.3d 181, 192 (2d Cir.2006) (citations omitted). There are three components to a true *Brady* violation: (1) the evidence

at issue is favorable to the accused, either because it is exculpatory, or because of its impeachment value; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice resulted from the non-disclosure. *Banks v. Dretke,* 540 U.S. 668, 691, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004) (citing *Strickler v. Greene,* 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Mills' contention that his rights under *Brady* were violated is specious. Apart from his self-serving and conclusory assertions, he has not established that any of the allegedly withheld documents had exculpatory or impeachment value. As Respondent notes, the Technical Reviewer checklist, Administrative Review checklists, and Firearms Evidence worksheets are simply documents showing that the work of various laboratory analysts had been reviewed by supervisory personnel. *See* Record Volume ("RV") 3, Ex. 3 to Pet. (Dkt # 1). The documents further show that the analysts had performed their work properly and that their findings were correct. Thus, the documents had no exculpatory or impeachment value and their disclosure was not required.

Indeed, the disclosure of the documents was not even required under state law because the preparers of those documents did not testify at trial. *See People v. Rosario,* 9 N.Y.2d 286, 289, 213 N.Y.S.2d 448, 173 N.E.2d 881 (N.Y.) (requiring disclosure to defendant of any prior statement by a witness relating to the subject matter of the witness's testimony, regardless of the statement's value to the defense), *cert. denied,*368 U.S. 866, 82 S.Ct. 117, 7 L.Ed.2d 64 (1961). It is well-established that *Rosario* defines a right broader in scope than *Brady. E.g., Copes v. Schriver,* No. 97 CIV. 2284(JGK), 1997 WL 659096, at *4 (S.D.N.Y. Oct.22, 1997) ("Th[e] rule [under *Rosario* ], however, is grounded in state law and a violation of the rule would not establish a constitutional violation or entitle the petitioner to relief on a petition for habeas corpus.") (internal citation and footnote omitted; citing *United States ex rel. Butler v. Schubin,* 376 F.Supp. 1241, 1247 (S.D.N.Y.1974), *aff'd without opinion,*508 F.2d 837 (2d Cir.1975); *Cruz v. Scully,* 716 F.Supp. 766, 769 n. 5 (S.D.N.Y.1989)).

**\*14** Likewise, Mills cannot assert a *Brady* violation with respect to his own medical records. DOCCS provides inmates with access to their health records, and New York's Public Health Law protects an individual's ability to inspect or copy his medical records. *See Pratt v. Goord,* 20 A.D.3d 827, 827–28, 799 N.Y.S.2d 611, 2005 N.Y.

Slip Op. 06139 (3d Dept.2005) ("Petitioner's related claim that he was entitled to access his medical records under the Freedom of Information Law is equally unavailing as the provisions of [N.Y.] Public Health Law § 18 [ (2) (e) ] govern any effort by petitioner to inspect or copy his medical records[.]") (citations omitted). Thus, the jail records containing medical information collected during Mills' booking were not "suppressed" within the meaning of *Brady.*

With respect to the victim impact statement ("VIS") completed by Dep. Duyssen, the prosecutor informed the trial court that, notwithstanding Mills' insistence to the contrary, no such document was in his possession. If the prosecutor does not actually or constructively possess the alleged *Brady* material, he cannot suppress it. *See Morgan v. Salamack,* 735 F.2d 354, 358 (2d Cir.1984) ( "Clearly the government cannot be required to produce that which it does not control and it never possessed or inspected.") (citations and internal quotation omitted). Most important, Mills has not established the VIS's exculpatory or impeachment value. Dep. Duyssen's comment to the effect that he did not see himself as a victim simply does not make the document exculpatory or imbue it with impeachment value. Thus, Mills cannot show that the withholding of this evidence, even assuming it had been withheld, caused him prejudice.

## G. Actual Innocence (Amend. Pet., Ground Seven)

Petitioner relies upon the following statement made by Judge Noonan during the 2002 criminal proceedings to establish a claim of actual innocence: "I don't think pointing a loaded gun at somebody, even if it's operable, constitutes attempted murder."Amend. Pet., ¶ 159 (Dkt # 7) (quoting "R2, ex. 6, pg. 13 (transcript 2002)"). Petitioner goes on to state that there is "no scientific ballistics evidence at all what so ever [sic] to prove that the weapons were operable or dangerous and loaded with live ammunition."*Id.,* ¶ 161 (Dkt # 7). Petitioner asserts that "R2, ex. 3, pg. 23" is newly discovered evidence that the prosecution withheld, indicating that the gun was " 'non-functioning' and was only test fired with laboratory ammunition, and no bullets were able to be tested, they broke up in the tank."*Id.* ¶¶ 162(A), (B). Petitioner also asserts that there were "no positive results for the marijuana[,]" proving that he is innocent of the drug-possession charge. *Id.,* ¶ 163 (Dkt # 7).

The Court agrees with Respondent that Mills' purported claim of actual innocence does not entitle him to habeas relief. "[c]laims of actual innocence based on newly discovered

evidence have never been held [by the United States Supreme Court] to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."*Herrera v. Collins,* 506 U.S. 390, 400, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). This stems from the well-settled principle that a habeas court is concerned with " 'not [with] the petitioners' innocence or guilt but solely [with] the question whether their constitutional rights have been preserved.'"*Id.* (quoting *Moore v. Dempsey,* 261 U.S. 86, 87–88, 43 S.Ct. 265, 67 L.Ed. 543 (1923)).

**\*15**  Here, the "newly discovered evidence" is not, in fact, "newly discovered" at all. The evidence regarding the inoperability of the weapon and the alleged lack of positive test results for the seized marijuana was available at the time of Mills' trial and presented to the jury. However, the jury rejected the arguments urged by trial counsel with regard to the inferences they should draw from the evidence. It is not the function of review courts on habeas review to second-guess the jury's assessment of the weight of the evidence and inferences to be drawn from that evidence. *See, e.g., United States v. Rea,* 958 F.2d 1206, 1221–22 (2d Cir.1992) ("Matters of the choice between competing inferences, the credibility of the witnesses, and the weight of the evidence are within the province of the jury, and we are not entitled to second-guess the jury's assessments.")). Where, as here, the jury acted rationally in coming to its verdict, there is no constitutional issue. Finally, Judge Noonan's comment in 2002 giving his opinion about what constitutes attempted murder obviously does not constitute newly discovered evidence of Petitioner's actual, factual innocence.

In short, Petitioner's claim of actual innocence is unsupported by the record. Moreover, there is no precedent for finding that actual innocence is a free-standing basis for federal habeas relief.

## H. Denial of the Right to Present a Defense and Denial of a Jury Instruction on Extreme Emotional Disturbance (Amend. Pet., Ground Eight)

Mills asserts that he was denied his due process right to a fair trial and to present a defense because the trial court refused to charge the jury on the defense of extreme emotional disturbance ("EED") with respect to the attempted murder charges and refused to give a special instruction regarding Mills' psychiatric condition as it related to the element of intent.

It is well-settled that the propriety of a state trial court's jury instructions is ordinarily a matter of state law that does not raise a federal constitutional question. *E.g., Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). When complaining that his constitutional rights were violated by the trial court's failure to give a particular jury instruction, the petitioner's burden is "especially heavy." *Henderson v. Kibbe,* 431 U.S. 145, 155, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977). The state court's failure to give a particular jury instruction does not raise a federal question unless the error "so infected the entire trial that the resulting conviction violates due process." *Id.* at 147; *see also, e.g., Jackson v. Edwards,* 404 F.3d 612, 624 (2d Cir.2005). An "omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law [.]" *Henderson,* 431 U.S. at 154.

The Court cannot say that the trial court erred as a matter of state law in declining to instruct the jury on the EED defense. EED can be an affirmative defense to first degree intentional murder where "[t]he defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be." N.Y. PENAL LAW § 125.27(1)(a). Even assuming that Mills was suffering from an "extreme emotional disturbance," the evidence did not show that there was a "reasonable explanation" for it, as the trial court explained during the charge conference. Rather, the evidence showed that Mills believed that the police were entering the house to arrest him, and he wanted to prevent this. *See Wilson v. Phillips,* No. 05–CV–1208–ENV, 2010 WL 545862, at *7 (E.D.N.Y. Feb.16, 2010) ("Wilson's actions after the crime, such as his failure to return home and denial of involvement in the shooting, also counsel against EED.") (citing *Shiwlochan v. Portuondo,* 345 F.Supp.2d 242, 269 (E.D.N.Y.2003) (explaining that "leaving the scene of the crime and taking other steps to avoid apprehension have been found to be inconsistent with the loss of control associated with an EED defense"); *People v. Roche,* 98 N.Y.2d 70, 77, 745 N.Y.S.2d 775, 772 N.E.2d 1133 (2002) (defendant's "presence of mind" to "contrive[ ] a false explanation for the victim's wounds" and "attempt to evade detection" was found to be "conduct inconsistent with the loss of self-control")).

**\*16** Judge Noonan reasonably concluded that, while the psychiatric evidence was sufficient to permit the argument that Mills lacked the mental capacity to form the requisite

intent to commit certain of the crimes charged, it was not sufficient to warrant a jury instruction on the EED defense. "In the absence of the requisite proof, an extreme emotional disturbance charge should not be given because it would invite the jury to engage in impermissible speculation concerning [the] defendant's state of mind at the time of the homicide." *Roche,* 98 N.Y.2d at 76, 745 N.Y.S.2d 775, 772 N.E.2d 1133 (citation omitted). "Notably, a defendant's outright claim of innocence cannot by itself defeat entitlement to the extreme emotional disturbance instruction." *Buckner v. Burge,* 2010 WL 1328982, at *6 (E.D.N.Y. Mar.31, 2010) (citing *White,* 79 N.Y.2d at 903, 581 N.Y.S.2d 651, 590 N.E.2d 236).

Even if the trial court improperly denied Mills' request for a supplemental intent or EED charge, that decision did not " 'so infect[ ] the entire trial that the resulting conviction violates due process.' " *Jackson v. Edwards,* 404 F.3d at 624 (quoting *Cupp,* 414 U.S. at 147); *see also id.* (noting that a due process violation occurs when the denial of a jury instruction was " 'sufficiently harmful to make the conviction unfair' ") (quoting *Davis,* 270 F.3d at 124); *Davis,* 270 F.3d at 131 (granting writ where denial of a jury instruction on justification "completely deprived Davis of his highly credible defense to the homicide charge and guaranteed his conviction"). Here, Mills was not "completely deprived" of the EED defense, since the jury could rely on defense counsel's arguments in to determine if, and to what extent, Mills' psychiatric condition affected his ability to form the intent necessary to satisfy the elements of the relevant crimes.

Furthermore, the defense was not "highly credible." As discussed above, the evidence established that Mills' criminal conduct was motivated by his desire to hold off the police and avoid apprehension. He deliberately ordered all officers except for Dep. Duyssen, who happened to be a family friend, to stay away from the house, which demonstrated that he was capable of making a rational decision. Thus, even if the trial court's denial of the instruction were erroneous, that error did not deprive Mills of a defense on which he was likely to prevail. *See Buckner,* 2010 WL 1328982, at *10 ("The denial did not ensure his conviction, nor was the denial in any sense 'catastrophic.' *Davis,* 270 F.3d at 132. Thus, even were Buckner entitled to the instruction, which the Court finds he was not, the absence of the extreme emotional disturbance instruction did not render the trial unfair in any constitutional sense.").

Case 7:12-cv-04878-CS Document 24 Filed 01/28/16 Page 127 of 150

## H. Erroneous Denial of Petitioner's Second Omnibus Motion (Amend. Pet., Ground Nine)

Petitioner contends the trial court improperly denied as untimely Attorney Morabito's supplemental omnibus motion. As Respondent explains, Petitioner was granted a hearing on his supplemental omnibus motion, and Attorney Morabito noted that Judge Noonan had granted permission to address the suppression of the marijuana evidence. However, Judge Noonan ultimately denied the suppression motion as untimely. *See* Resp't Ex. T at 114–15.

**\*17** Here, Petitioner argued the merits of his suppression issues on direct appeal and clearly received a full and fair opportunity to litigate his Fourth Amendment claims in the state courts. The Supreme Court has held that where, as here, "the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell,* 428 U.S. 465, 481–82, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

## I. Violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (Amend. Pet., Ground Fifteen)

Mills contends that his statements to the police should have been suppressed because they were taken in violation of his *Miranda* rights. However, the prerequisites of a valid *Miranda* claim are absent in this case.

*Miranda* held that "preinterrogation warnings are required in the context of *custodial interrogations* given 'the compulsion inherent in custodial surroundings.' " *Yarborough v. Alvarado,* 541 U.S. 652, 661, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) (quoting *Miranda,* 384 U.S. at 458) (emphasis supplied). The Supreme Court explained in *Miranda* that "custodial interrogation" meant "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444;*see also Thompson v. Keohane,* 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995).

The Court agrees with Respondent that the circumstances of this case demonstrate most clearly that Mills was not in custody when the police came to his father's house. Importantly, Dep. Duyssen, who was a friend of Petitioner's

family, came to the scene *at Petitioner's request.*Petitioner in fact threatened to shoot anyone other than Dep. Duyssen who approached the house.

Before Dep. Duyssen even entered the house, he spoke on the phone to Petitioner, who told him that he was in possession of several loaded guns. Petitioner gave Dep. Duyssen permission to enter the house, where Dep. Duyssen found Petitioner sitting at a table with a shotgun, ammunition, and a bottle of whiskey. Petitioner explained to Dep. Duyssen that he had been using drugs, that he suffered from bipolar disorder, and that he was upset over his failed marriage and his financial troubles.

As Petitioner and Dep. Duyssen were speaking, Petitioner observed Inv. Stone approaching the house. Upset that the officers had ignored his demand to stay back, Petitioner pointed a rifle at him and announced that he was going to shoot him in the head. Dep. Duyssen leapt up and attempted to wrest the weapon away from Petitioner. As the situation deteriorated, Dep. Duyssen called for help, and the other officers rushed in to assist him. During the ensuing melée, Petitioner exclaimed that the safety was off the weapon. A bullet was fired, narrowly missing Dep. Duyssen's head.

**\*18** As Respondent notes, Petitioner's statements were made either before he committed the crimes, or during the commission of them. Under no view of the evidence could it reasonably be said that Petitioner was in police custody when he made the challenged statements. To the contrary, he essentially was holding Dep. Duyssen hostage. Because Petitioner was not subjected to custodial interrogation, he was not entitled to receive *Miranda* warnings, and the statements were properly admitted at trial.

## J. Failure to Hold Hearing Pursuant to *People v. Huntley,* 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965)

Petitioner contends that his rights to due process, equal protection of the laws, effective assistance of trial, and a fair trial were violated by the trial court's failure to hold a *Huntley* hearing. As an initial matter, a defendant is not entitled to a hearing pursuant to *People v. Huntley* to determine the voluntariness of his statements to the police as a matter of right. *E.g., People v. Buckman,* 70 Misc.2d 220, 221, 333 N.Y.S.2d 452 (N.Y.Co.Ct.1972) ("The statute, [N.Y. CRIM. PROC. LAW § ] 710.60(1), provides that the defendant, moving for suppression, must, in writing, [s]tate the ground

or grounds of the motion [a]nd set forth [s]worn allegations of fact supporting such grounds."). Here, there was no legal basis to hold a *Huntley* hearing because, as discussed above, Petitioner's statements to the police were made prior to, or during the commission of, the crimes for which he was indicted. Consequently, they were not "suppressible upon motion" by the defense. Holding a hearing regarding Petitioner's statements at the time he committed the crimes would have been futile and certainly would not have changed the outcome of the trial.

## K. Ineffective Assistance of Trial Counsel (Amend. Pet., Ground Twenty–Four)

### 1. Pre–Trial Counsel (Attorney Lapine)

#### a. Failure to Move to Suppress the Marijuana Seized at Petitioner's House

After Petitioner was arrested at his father's house, where he had the stand-off with the police, he requested that the officers bring him to his own home so that he could retrieve his psychiatric medication. When the officers escorted Petitioner into his house, they observed marijuana (aggregating 1.27 pounds) in open view throughout the residence. They, quite properly, seized it. There is no reasonable probability that any motion to suppress the marijuana would have succeeded. Counsel cannot be found ineffective on the basis that he failed to raise a non-meritorious claim or motion. *See United States v. Arena,* 180 F.3d 380, 396 (2d Cir.1999), *cert. denied,*531 U.S. 811, 121 S.Ct. 33, 148 L.Ed.2d 13 (2000).

#### b. Misplacing of a C.P.L. § 730 Competency Examination Report

Petitioner contends that Attorney Lapine was ineffective because he supposedly lost one of his client's C.P.L. § 730 competency examination reports. At a pre-trial appearance on August 25, 2004, Attorney Lapine stated that he did not have a copy of the report, noting that it possibly had been misfiled. The trial court provided Attorney Lapine with another copy of the report. Misplacing a report that was easily replaced does not establish that Attorney Lapine was professionally unreasonable. Moreover, there is a singular absence of prejudice in connection with the allegedly missing report. When Attorney Morabito took over the defense, Petitioner underwent further psychiatric review. Both examiners concluded that Petitioner was mentally fit to participate in his trial.

#### c. Improper Release of Psychiatric Records to the Court
**\*19** Petitioner faults Attorney Lapine for allowing his psychiatric records to be released to the trial court. This claim is nonsensical given that Petitioner has consistently urged every court to find him to be incompetent to stand trial because of his mental illness.

#### d. Failure to Move to Suppress Petitioner's Statements to the Police

Petitioner asserts that Attorney Lapine was professionally unreasonable in failing to move to suppress Petitioner's statements to the police on the grounds of mental incompetence and intoxication. As discussed above, Attorney Lapine did move to suppress the statements made by Petitioner during the incident, albeit on different grounds. The motion to suppress was denied not because meritorious arguments were omitted by Attorney Lapine, but because there were no statements that could have been the proper subject of a suppression motion, i.e., statements for which the prosecution had been required to serve notice pursuant to C.P.L. § 710.30. Therefore, Petitioner cannot demonstrate how he was prejudiced by Attorney Lapine's failure to seeks suppression of his statements on the purported bases of mental incompetence and intoxication.

### 2. Trial Counsel (Attorney Morabito)

#### a. Failure to Call an Expert Regarding Petitioner's Competency

Petitioner contends that Attorney Morabito should have called a medical expert to present his defenses of intoxication and extreme emotional disturbance."[T]here is no *per se* rule that requires trial attorneys to seek out an expert."*Gersten v. Senkowski,* 426 F.3d 588, 609 (2d Cir.2005). Rather, "[c]ounsel [is] entitled to formulate a strategy that [is] reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies."*Richter,* 131 S.Ct. at 789. "The decision not to call a particular witness is typically a question of trial strategy that courts are ill-suited to second guess ... [C]ounsel's decision as to whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional judgment,"*Greiner v. Wells,* 417 F.3d 305, 323 (2d Cir.2005) (internal citations and quotations omitted).

Mills has not come forward with affidavits or other admissible evidence showing that there was, indeed, an expert witness

who would have testified as he hoped. Notably, all of the psychological experts who examined Petitioner prior to trial determined that he was mentally competent to participate in his defense. Mills' assertions of prejudice are based purely upon his own self-serving speculation.

Even without an expert, trial counsel was able to put forward a defense based on Mills' intoxication and mental illness through other proof, such as Mills' own admissions; Mrs. Mills' testimony regarding her son's extensive history of mental illness; testimony from Inv. Stone and Deputies Duyssen and Weis about their having been summoned because there was a report of person with bipolar disorder who was threatening suicide; and testimony from Dep. Duyssen that when he arrived at the house, Petitioner had a half-full whiskey bottle on the table in front of him.

### b. Failure to Object to Introduction of Petitioner's Statements to Police on Hearsay Grounds

*20 Petitioner asserts that Attorney Morabito was ineffective in failing to object to the introduction of Petitioner's statements to the police on the basis that they were inadmissible hearsay. Contrary to Petitioner's contention, Attorney Morabito had no colorable legal argument to make in this regard, as Petitioner's spontaneous, non-custodial statements to the police were properly introduced by the prosecution as admissions against a party opponent. *See People v. Chico,* 90 N.Y.2d 585, 589, 665 N.Y.S.2d 5, 687 N.E.2d 1288 (1997) (" '[A]dmissions by a party of any fact material to the issue are always competent evidence against him, wherever, whenever, or to whomsoever made [.]' ") (quotation omitted); FED.R.EVID. 801(d)(2)(A) ("Statements That Are Not Hearsay. A statement that meets the following conditions is not hearsay: ... (2) An Opposing Party's Statement. The statement is offered against an opposing party and: (A) was made by the party in an individual or representative capacity....").

### c. Failure to Object to Inv. Stone's Testimony

Petitioner argues that Attorney Morabito was ineffective in failing to object to Inv. Stone's testimony regarding the ballistics test, on the basis that it violated Petitioner's rights under the Confrontation Clause. As discussed above, there was no Confrontation Clause violation in connection with Inv. Stone's testimony. Accordingly, Attorney Morabito did not err in failing to object, and any objection would have been overruled. Thus, Petitioner suffered no prejudice.

### d. Failure to Request a Missing Witness Charge for John Clark

Petitioner contends that Attorney Morabito should have requested an adverse inference jury charge based upon the prosecution's failure to call John Clark, the preparer of the ballistics report. As discussed above, at Attorney Morabito's request, and contrary to the prosecution's preference, the ballistics report was admitted into evidence without the necessity of calling Clark. This was part of the defense strategy to cast doubt upon the operability of the rifle, since the firearm's operability was a necessary element of the crimes with which Petitioner was charged. Thus, trial counsel was not ineffective.

### e. Failure to Object to Kathleen McCully's Testimony

Petitioner argues that Attorney Morabito was ineffective in failing to object to Kathleen McCully's testimony regarding the tests she performed on the seized marijuana, on the basis that it violated Petitioner's rights under the Confrontation Clause. As discussed above, there was no Confrontation Clause violation. Moreover, McCully was subjected to cross-examination by Attorney Morabito. This claim plainly is without merit.

### f. Errors Regarding the 911 Tapes

Petitioner argues that Attorney Morabito was ineffective for failing to allow him to listen to the 911 tapes prior to trial. In addition, he faults counsel for stipulating to the admission of the tapes without explaining that the tapes were inadmissible as violative of his Confrontation Clause rights.

*21 Petitioner's claim is factually baseless. The record shows that before the 911 tapes were admitted, Petitioner had heard them and had received a copy of the transcripts of the tapes. Petitioner noted on the record that some parts of the tape were inaudible, which he could not have known had he not listened to the tapes. Furthermore, trial counsel asked Petitioner on the record whether he had any questions about the tapes, and Petitioner answered no. Petitioner then told counsel on the record that he had his own copy of the transcript of the recordings and expressed his understanding that both the tapes and the transcript would be admitted into evidence.

Trial counsel's decision to admit them was reasonably made in furtherance of a consistent and plausible strategy-namely, to show that Petitioner was an extremely mentally disturbed

person who became suicidal after his propane tanks had been repossessed. Counsel utilized the tapes to support his argument that Petitioner lacked the mental ability to form the intent necessary for the crimes with which he had been charged.

**h. Failure to Request Adverse Inference Instruction**

Petitioner faults Attorney Morabito for failing to ask the trial court to instruct the jury that it could draw an adverse inference based upon Inv. Stone's tampering with the rifle. However, as explained above and as the testimony makes clear, Inv. Stone did not "tamper" with the rifle but instead disassembled the loaded weapon because it had jammed. Even if trial counsel sought such a charge, it would not have been granted because there was no reasonable view of the evidence that would support it. *See People v. Bailey,* 24 A.D.3d 106, 106, 805 N.Y.S.2d 50 (1st Dept.2005) ("[A]n adverse inference instruction was not required since there was no bad faith on the part of the People [in failing to preserve a 911 tape] and defendant was not prejudiced.") (citation omitted), *habeas corpus denied, Bailey v. Ercole,* No. 06 Civ. 5811(PKC)(MHD), 2007 WL 4707738, at *9, *11 (S.D.N.Y. Aug. 17, 2007).

**i. Failure to Move to Dismiss on State Speedy Trial Grounds**

Petitioner claims that trial counsel erred in failing to file a motion to dismiss on state speedy trial grounds, C.P.L. § 30.30. However, the record indicates that Petitioner filed a *pro se* motion to dismiss the indictment pursuant to C.P.L. § 30.30, which Attorney Morabito adopted the motion on the eve of trial. Judge Noonan calculated that only 39 days were chargeable to the prosecution for purposes of C.P.L. § 30.30 and accordingly denied the motion. Petitioner thus cannot establish that trial counsel erred in the manner he contends, or that he was prejudiced by counsel's performance.

**j. Failure to Challenge Inaccuracies in Pre–Sentence Investigation Report**

Petitioner argues that trial counsel was ineffective for failing to challenge what he characterizes as grossly prejudicial inaccuracies contained in the PSIR. As explained below, Petitioner has not established that there were inaccuracies, much less any of constitutional magnitude. It bears emphasizing that Petitioner, who has never shown a reluctance to address the court himself, failed to raise these

purported inaccuracies when he had the opportunity to do so. This claim is patently frivolous.

**k. Cumulative Effect of Counsel's Alleged Errors**

**\*22** "[T]he accumulation of non-errors does not warrant a new trial." *United States v. Lumpkin,* 192 F.3d 280, 290 (2d Cir.1999) (citation omitted). Here, as discussed above, the deficiencies attributed to Petitioner's pre-trial counsel and trial counsel were not in fact errors at all. Thus, considering them in the aggregate does not change this Court's conclusion that Mills received effective assistance as guaranteed by the Sixth Amendment throughout his criminal proceedings.

Moreover, the record demonstrates that Mills' pre-trial and trial attorneys were effective overall, mounting a consistent and cogent defense that there was insufficient evidence of intent for the most serious criminal charges due to Petitioner's mental health issues, intoxication, and marijuana use. Notably, the jury was persuaded to acquit Petitioner on several of the top counts of the indictment, the attempted first-degree murder charge against Dep. Duyssen, as well as the lesser-included attempted second-degree murder charge, and the attempted first-degree assault charges involving Deputies Duyssen and Weis. Counsels' zealous advocacy on Petitioner's behalf spared him exposure to additional, possibly consecutive, sentences.

**L. Erroneous Probation Report (Amend. Pet., Ground Twenty–Two)**

Petitioner argues that he is entitled to habeas relief because the PSIR prepared by the probation department contained numerous mistakes with regard to his pedigree information, the identity of his attorney, the charges against him, his drug use, his biographical background and medical history, and the nature of the crimes for which he was tried. Petitioner further asserts that he was not permitted to file a memorandum to be attached to the report.

For due process to be offended by errors in a PSIR, and the drastic relief of resentencing or reversal to be warranted, the error in the report must amount to "misinformation of a constitutional magnitude." *United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972). Plainly, this was not the case here. The Court finds it noteworthy that Petitioner, when he addressed Judge Noonan at his initial sentencing, did not raise any objections to the PSIR. This claim is specious and must be dismissed.

**M. Juror Bias (Amend. Pet., Ground Twenty–Three)**

Mills claims that he was denied his right to a fair trial by a panel of impartial jurors, *see Turner v. Louisiana,* 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965), because one of the jurors, Murray Mamau, knew Dep. Duyssen from church.

It bears noting that judicial scrutiny of counsel's performance must be "highly deferential." *Strickland,* 466 U.S. at 689. Trial counsel is "accorded particular deference when conducting voir dire[,]" and "[a]n attorney's actions during voir dire are considered to be matters of trial strategy."*Hughes v. United States,* 258 F.3d 453, 457 (6th Cir.2001) (citing *Nguyen v. Reynolds,* 131 F.3d 1340, 1349 (10th Cir.1997) (citation omitted))."A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness."*Hughes,* 258 F.3d at 457 (citation omitted).

**\*23** Here, trial counsel mounted successful challenges-for-cause with regard to six prospective jurors who expressed actual concerns about their ability to be impartial. Mamau, on the other hand, expressed no such concerns. When the trial court asked Mamau if he had any preconceived opinions as to Dep. Duyssen's credibility as a witness, he responded that he had none. Mamau assured Judge Noonan that he could be fair and objective. When trial counsel questioned the prospective jurors, he asked Mamau if he would simply accept Dep. Duyssen's testimony as above reproach, or if he would keep an open mind. Mamau replied that he would keep an open mind. Trial counsel's decision not to challenge Mamau certainly was not objectively unreasonable, particularly in light of Mamau's consistent responses that he could be fair and impartial, and would not assign undue weight to Dep. Duyssen's testimony based upon the fact they were acquaintances or based upon Dep. Duyssen's status as a police officer.

Where, as here, a petitioner asserts a claim of ineffective assistance based on trial counsel's failure to challenge a prospective juror during voir dire, the petitioner must show that the prospective juror was actually biased against him. *Murphy v. Florida,* 421 U.S. 794, 800, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975). Here, as noted above, neither actual nor implied bias is detectable in Mamau's voir dire responses. Because Petitioner cannot establish that Mamau was biased against him, he cannot establish that he was prejudiced by counsel's failure to challenge Mamau's seating on the jury panel.

**N. Denial of Right to Appeal and Ineffective Assistance of Appellate Counsel (Amend. Pet., Ground Twenty–Five)**

**1. Denial of Right to Appeal**

Petitioner argues that the Appellate Division deprived him of his constitutional right to an appeal by having Randolph Zickl, the Genesee County Assigned Counsel Administrator, assign Del Atwell, Esq., as his appellate counsel. Randolph Zickl happens to be Judge Noonan's cousin. Two of Randolph Zickl's brothers are assistant district attorneys in Genesee County. According to Petitioner, the Zickl brothers and Judge Noonan have formed a cabal to violate his constitutional rights.

Federal district courts cannot grant habeas relief based upon unsubstantiated surmise, opinion or speculation. *See Wood v. Bartholomew,* 516 U.S. 1, 8, 116 S.Ct. 7, 133 L.Ed.2d 1 (1995) (federal courts may not grant "habeas relief on the basis of little more than speculation with slight support"). Mills' claim of an official conspiracy is based upon nothing more than rank speculation with no record support. Accordingly, it cannot provide a basis for habeas relief. *See, e .g., Youngblood v. Conway,* 426 F.Supp.2d 107, 125 (W.D.N.Y.2006) (because petitioner's claim was "based on nothing more than mere speculation, it cannot provide a basis for habeas relief"); *Osinoiki v. Riley,* CV–90–2097, 1990 WL 152540, at \*3 (E.D.N.Y. Sept.28, 1990) (denying petition for writ of habeas corpus, where, *inter alia,* two of petitioner's bases for relief were based on "nothing more than rank speculation").

**2. Ineffective Assistance of Appellate Counsel**

**\*24** Petitioner faults his first appellate counsel, Attorney Atwell, for emphasizing trial evidence that should have been suppressed and misstating facts in a way that was prejudicial to Petitioner's case. Petitioner complains that his second appellate attorney, Fred Rearick, Esq., was ineffective because he "allowed" the Appellate Division to find that the insufficient evidence claim was unpreserved, did not file a motion to reargue, and did not seek leave to appeal to the New York Court of Appeals.

*Strickland*'s two-pronged standard also applies to appellate counsel.*Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.) (citation omitted), *cert. denied,*513 U.S. 820, 115 S.Ct. 81, 130 L.Ed.2d 35 (1994). It is not sufficient for a

petitioner to show that appellate counsel omitted a colorable argument, as counsel is not required to raise all colorable, nonfrivolous claims on appeal. *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Rather, a petitioner must demonstrate that his appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."*Clark v. Stinson,* 214 F.3d 315, 322 (2d Cir.2000). To satisfy the prejudice prong of *Strickland* in the context of ineffective assistance of appellate counsel, a petitioner must show that absent counsel's deficient performance, there was a reasonable probability that his appeal would have been successful before the state's highest court. *Mayo,* 13 F.3d at 534.

Petitioner contends that Attorney Atwell he effectively "prosecuted" him by referring to inadmissible hearsay evidence, i.e., by including in the recitation of facts the testimony that "Mills warned [that] the safeties of both guns were off". Amend. Pet. at 86 (quotation to record omitted) (Dkt # 7). As discussed above, Mills' statements during the incident were properly introduced by the prosecution as admissions by a party opponent and were *not* inadmissible hearsay.

Petitioner also contends that Attorney Atwell "twisted the facts" by stating that "a bullet was in fact discharged in the kitchen. The rifle bullet was later recovered from the kitchen ceiling."*Id.* (quotation to record omitted). Petitioner "challenges" Respondent to "provide any transcript page or other evidence where a bullet was ever recovered from the ceiling[.]"*Id.*Whether or not a bullet was recovered from the ceiling was entirely immaterial to the prosecution's case against Petitioner. Identity was not in issue, that is, the prosecution did not need to match a bullet to a particular weapon so as to identify the person who attacked the police deputies.

In any event, this comment was not prejudicial to Petitioner's case. It was made in the context of Attorney Atwell's argument that the verdict for attempted murder of Inv. Stone was against the weight of the evidence because there was no evidence of intent to kill Inv. Stone. Attorney Atwell properly emphasized that the gun discharged incidentally to Petitioner's struggle with Dep. Duyssen. Notably, the jury acquitted Petitioner of the attempted murder of Dep. Duyssen.

**\*25** Unsatisfied with the brief filed by Attorney Atwell, Petitioner's family retained Attorney Rearick to represent their son. Petitioner contends that Attorney Rearick was

ineffective in failing to seek reargument on the basis that the Appellate Division erroneously found that Petitioner's legal insufficiency claim was unpreserved. Even if Attorney Rearick had made such a motion, there is no reasonable probability that it would have had an effect on Petitioner's appeal. The Appellate Division considered the substance of the legal insufficiency claim in the alternative and found it to be meritless.

Mills also asserts that Attorney Rearick "filed no papers to the court of appeal to petitioners [sic] knowledge."Amend. Pet. at 87. Assuming that Attorney Rearick erred as Mills contends, the Court cannot find that prejudice resulted since Mills himself filed a leave application to the New York Court of Appeals with regard to the claims raised in his *pro se* brief and by Attorney Atwell.

In sum, neither of Mills' appellate attorneys provided deficient representation. Moreover, Mills was not prejudiced by any of appellate counsels' alleged errors which were not, in fact, errors at all.

### O. Double Jeopardy (Amend. Pet., Ground Twenty–Six)

Mills argues that the Fifth Amendment's Double Jeopardy Clause should protect him from what he describes as the repeated and vindictive errors by the trial court and the prosecution. As Respondent notes, Petitioner's specific complaints are unclear. Liberally construed, his allegations appear to allege that he was erroneously retried in 2004 after he successfully moved to vacate his guilty plea and that, in 2011, he was resentenced illegally.

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."U.S. CONST., amend. V. "Under this Clause, once a defendant is placed in jeopardy for an offense, and jeopardy terminates with respect to that offense, the defendant may neither be tried nor punished a second time for the same offense ."*Sattazahn v. Pennsylvania,* 537 U.S. 101, 106, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003). The law is well-settled that when a defendant wins reversal of his conviction, the Double Jeopardy Clause does not bar retrial. *E.g., North Carolina v. Pearce,* 395 U.S. 711, 719–720, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *see also Sattazahn,* 537 U.S. at 115 (finding that prospect of second capital sentencing proceeding, which arose when defendant who was convicted of murder and sentenced to life imprisonment under Pennsylvania law after jury deadlocked at first capital-sentencing proceeding successfully appealed

conviction, did not implicate any of perils against which the Double Jeopardy Clause sought to protect).

Here, after Mills initially pleaded guilty to a Superior Court Information of attempted murder and related charges, *he himself* successfully moved to vacate judgment on the ground that New York law forbids a defendant to waive a grand jury indictment to a class A felony. His success in vacating his conviction permitted the prosecutor to obtain an indictment charging him for the attempted murder and related charges.

 **\*26**  After he was convicted the second time, the trial court imposed a determinate sentence but erroneously omitted a mandatory term of PRS. When Mills was resentenced pursuant to P.L. § 70.85, the prosecutor consented to the omission of a term of PRS. Thus, Mills' sentence after resentencing was exactly the same, except that the absence of a PRS term now was lawful based upon the prosecutor's consent. In other words, Mills was permitted to maintain a sentence that was more lenient than that to which he was otherwise entitled. Indeed, Mills' contentions defy logic. His Double Jeopardy claims have no basis in law or fact, and habeas relief is therefore unavailable.

## V. Petitioner's Other Motions

Petitioner has moved to have Respondent held in contempt and sanctioned (Dkt # 35). Petitioner's request for sanctions is patently frivolous. The Court denies Petitioner's request to have Respondent provide him with copies of all of the state court records in this case since Petitioner indicates in his pleadings that he already has copies of the documents he is demanding. Petitioner's request, in his motion for sanctions, to strike Respondent's affirmative defenses for failure to raise them properly in an answer is moot since this Court has considered all of Petitioner's habeas claims on the merits.

Petitioner also has moved to further supplement his petition (Dkt # 37) with what appear claim identical to those asserted in his amended petition. This motion is futile since the claims he seeks to add are duplicative of the claims already asserted and have been found to be meritless by this Court, *see supra.*

## VI. Conclusion and Orders

After considering Petitioner's amended petition under a *de novo,* pre-AEDPA standard of review, the Court finds that Petitioner has failed to meet his burden of demonstrating a violation of his constitutional rights. *See Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir.1997).

Accordingly, it is **ORDERED** that the amended petition (Dkt # 7) in this matter is **DENIED** and **DISMISSED;** and it is further

**ORDERED** that Petitioner's motion for a stay (Dkt # 14) is **DENIED** and **DISMISSED;** and it is further

**ORDERED** that Petitioner's motion for sanctions and miscellaneous relief (Dkt # 35) is **DENIED** and **DISMISSED;** and it is further

**ORDERED** that Petitioner's motion to file a supplemental petition (Dkt # 37) is **DENIED** and **DISMISSED;** and it is further

**ORDERED** that a certificate of appealability shall not issue with respect to any of the claims set forth in the Petition as Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a) (3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

 **\*27**  Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

## APPENDIX I

### REPORT AND RECOMMENDATION

VICTOR E. BIANCHINI, United States Magistrate Judge.

## I. Introduction

Richard Mills ("Mills" or "petitioner") has filed a *pro se* petition for a writ of habeas corpus challenging his conviction on December 16, 2004, following a jury trial in New York State County Court, Genesee County, on charges of attempted first degree murder (New York Penal Law ("P.L.") §§

110.00, 125.27(1)(a)(i)); attempted first degree assault (P.L. §§ 110.00, 120.10(1)); first degree reckless endangerment (P.L. § 120.25); third degree criminal possession of a weapon (two counts) (P.L. § 265.02(1)); and third degree criminal possession of a weapon (P.L. § 221.20). Mills was sentenced to concurrent sentences, the longest of which was twenty years to life. He is presently incarcerated pursuant to this judgment of conviction.

Mills' habeas proceeding has been referred to the undersigned pursuant 28 U.S.C. § 636(b) for, *inter alia,* the issuance of a report and recommendation regarding the disposition of his petition. For the reasons that follow, I recommend that the petition be dismissed.

## II. Factual Background and Procedural History

### A. Pre–Trial Proceedings

The conviction here at issue stems from an incident that occurred on December 21, 2001, following repossession by Griffiths Oil Company of the propane tank regulator at Mills' father's house due to non-payment of the bill. The police responded to the house after a representative from the oil company and Mills' father called 911 to report that Mills had threatened the oil company employee, stated that he was going to kill himself, and vowed to shoot any police officer who came to the house. Mills allowed one deputy, who happened to be a family friend, to come in and talk with him. When another a deputy and a sheriff's investigator arrived on the scene, the situation deteriorated: Mills announced that he was "gonna shoot 'em in the head", picked up the loaded rifle on his lap and pointed it through an open window at one of the officers. The deputy inside the house with Mills grabbed the gun barrel and a struggle ensued. Mills was able to seize a shotgun from the table with his free hand, forcing the deputy to grab that gun as well. During the melée, the deputy was in the unenviable position of having the barrels of both guns up against his chest. Hearing that deputy's calls for back-up, the investigator and the other deputy rushed into the house and struggled to get the guns away from Mills. During the fracas, the rifle discharged into the ceiling, barely missing striking the first deputy's face and the second deputy's head. The officers were finally able to subdue Mills and bring him into custody. When the police brought petitioner back to his house to retrieve his psychiatric medication, they found marijuana —over one pound total—stashed throughout the house.

**\*28** Mills subsequently was charged on March 4, 2002, with attempted first degree murder, first degree reckless

endangerment, fourth degree criminal possession of a weapon, and second degree criminal possession of marijuana. Through his attorney, Mills waived his right to an indictment and pled guilty to the lesser included charge of attempted second degree murder and second degree criminal possession of marijuana. He was sentenced on April 5, 2002, to an aggregate term of ten years in prison. Respondent's Exhibits ("Resp't Exs.") [1] S at 38; T at 98, 119; & U at 4. On October 7, 2003, Genesee County Court Judge Robert Noonan granted Mills' *pro se* motion to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 because Mills' waiver of the indictment was invalid. *See* Resp't Exs. T at 98 & U at 4). [2] New counsel was assigned to represent Mills, and the case was returned to pre-waiver status. *See* Resp't Exs. T at 120 & U at 4–5.

On October 23, 2003, Mills was re-indicted on two counts of attempted first degree murder—one count for pointing the rifle at the investigator and the other count for firing the rifle and narrowly avoiding killing the two deputies. He was also charged with two counts each of attempted first degree assault, first degree reckless endangerment (for the investigator and the two deputies), and third degree criminal possession of a weapon (for possessing the shotgun and the rifle). Finally, the indictment charged Mills with one count of third degree possession of marijuana with respect to the 1.27 pounds of that substance found in his house.

Mills appeared in Genesee County Court before County Court Judge Robert Noonan on November 6, 2003, and informed the court that he was firing his attorney. He also demanded a competency examination pursuant to C.P.L. § 730.30. *See* Resp't Ex. U at 5; Transcript of November 6, 2003 Pre– Trial Hearing ("11/06/03 Tr.") at 2–4, 7. [3] Defense counsel informed the court that such an examination was unnecessary, and the prosecutor indicated that a competency examination had been done previously in connection with the first indictment. According to the prosecutor, that examination had shown petitioner was competent to stand trial. *See* Resp't Exs. T at 119 & U at 5; 11/06/03 Tr. at 7–8. On December 17, 2003, while Mills' court-assigned counsel was present, Mills appeared with a new retained attorney, Felix Lapine, Esq., for arraignment. *See* Resp't Ex. U at 5; 12/17/03 Tr. at 2–3. Mills again requested a competency examination, but attorney Lapine stated that there was no need for such an examination. *See* Resp't Ex. U at 5; 12/17/03 Tr. at 5–6.

Attorney Lapine filed a pre-trial omnibus motion on January 12, 2004, requesting, *inter alia,* suppression of all property

and statements taken from petitioner, and dismissal of counts seven and eight alleging criminal possession of a weapon because the indictment mistakenly cited "Penal Law § 165.02," which does not exist. Defense counsel also sought dismissal of the remaining counts of the indictment, except for count nine relating to the marijuana possession. *See* Resp't Ex. T at 10–29. At the suppression hearing held on March 19, 2004, attorney Lapine argued that Mills had standing to assert a Fourth Amendment challenge to the seizure of the guns from his father's house. 3/19/04 Tr. at 3–5. Judge Noonan denied the suppression motion in its entirety in a written decision filed March 26, 2004. In particular, the trial court found that petitioner had no privacy interest in his father's house, and that the reference to Penal Law § 165.02 in counts seven and eight was a "scrivener's error" and could be amended to read Penal Law § 265.02 through a special information. *See* Resp't Ex. T at 101–04. [4]

**\*29** Mills, through defense counsel, then filed a motion seeking to have Judge Noonan recuse himself on the basis that he had a prior business relationship with Genesee County District Attorney prosecuting Mills' case. *See* Resp't Ex. T at 48–50. Judge Noonan ruled that although he had previously practiced law with the district attorney and in private practice, his business relationship had been severed long before he became a judge. Therefore, he denied Mills' recusal motion. *See* Resp't Ex. T at 105–06.

On April 24, 2004, defense counsel for Mills filed a late notice of intent to offer psychiatric evidence but did not state what type of defense would be offered or what issues would be involved. Oral argument on the motion was held on May 18, 2004, before Judge Noonan. *See* Resp't Ex. T at 51, 61–62; 5/18/04 Tr. at 3–5. During further argument on May 25, 2004, the trial court stated that it had received letters from Mills complaining about attorney Lapine's representation and stating that he still wanted a C.P.L. § 730.30 examination. After hearing extensively from both parties, the trial court ordered a C.P.L. § 730.30 examination and reserved decision on defense counsel's request to file a late notice of intent to offer psychiatric evidence until after the competency exams. *See* Resp't Ex. U at 5–6; 5/25/04 Tr. at 2–17.

Mills was examined on July 19 and July 24, 2004, by two different psychiatrists. Both doctors noted in their reports that Mills had a history of alcohol/chemical substance dependency and mental illness, including treatment for bipolar disorder from 1998–1999. Also, five days before the incident, Mills had been prescribed new medication for his bipolar disorder.

Notwithstanding his history and present diagnosis, both psychiatrists concluded, Mills was mentally competent to stand trial. *See* Resp't Ex. T at 131–38.

At a subsequent pre-trial hearing held on August 25, 2004, the trial court noted that "both psychiatric examiners f[ou]nd the [petitioner] to be competent." 8/25/04 Tr. at 3; Resp't Exs. S at 16 & T at 119, 121–22. Mills voiced an objection to the reports on the basis that he believed the psychiatrists had used his medical records without obtaining his signed consent. He also asked that attorney Lapine be relieved from representing him, and requested new assigned counsel. 8/25/04 Tr. at 3–6; Resp't Exs. S at 16 & U at 6. Judge Noonan, after hearing from Mills and attorney Lapine on the issue, and noting the tension between them, relieved Lapine and indicated that he would assign new counsel. 8/25/04 Tr. at 6–10; Resp't Exs. S at 16 & U at 6–7.

On September 7, 2004, Mills appeared with newly assigned counsel David Morabito, Esq., and the trial court indicated that it would adjourn the proceedings to allow Mills to decide whether attorney Morabito would act as his trial counsel or as standby counsel. 9/07/04 Tr. at 2–6; Resp't Exs. S at 16 & U at 6–7. Mills also inquired as to what Judge Noonan "was going to do about the 730 evals [sic]." 9/07/04 Tr. at 6–7; Resp't Ex. U at 6. Mills subsequently elected to have attorney Morabito act as his trial counsel. 9/13/04 Tr. at 2–3.

**\*30** At the September 13, 2004 court appearance, Judge Noonan raised the issue of Mills' letter claiming that attorney Lapine had not received advance notice of the C.P.L. § 730.30 exams. Attorney Morabito informed the judge that notice and his client's competence were no longer in issue. 9/13/04 Tr. at 9–12; Resp't Ex. U at 6. Defense counsel also argued that he should be allowed to file a late notice of intent to present a psychiatric defense on the basis that the newly prescribed drug Topamax® caused Mills' psychosis at the time of the incident. *Id.* at 4–9.

A week later, on September 20, 2004, counsel for Mills filed a supplemental omnibus motion requesting, *inter alia,* suppression of all statements made by Mills and of the evidence illegally seized from the house, leave to file a late notice of intent to offer psychiatric evidence, and severance of count nine of the indictment involving marijuana possession. *See* Resp't Ex. T at 71–74. At oral argument, attorney Morabito contended that the psychiatric evidence would show that Mills lacked the requisite intent to commit the crimes. 9/30/04 Tr. at 2–12. On October 5, 2004, Judge Noonan court

summarily denied the remainder of petitioner's motion, but it granted Mills permission to file a late notice of intent to offer psychiatric evidence, provided that Mills consent to be examined by a psychiatrist designated by the prosecutor. *See* Resp't Ex. T at 114–15.

## B. The Trial

Mills' jury trial commenced on November 15, 2004, before Judge Noonan. The prosecution presented testimony that on December 20, 2001, Genesee County Sheriff's Office Deputies responded to petitioner's father's house on Griswold Road near the Town of Stafford. T.280–83, 343–44. [5] They were responding to two 911 calls, one of which had been made by Jim Hardigan, a manager at Griffith Oil Company. Hardigan reported that a customer with mental health problems (Mills) had threatened Hardigan's life over the phone because the company had repossessed, for non-payment, Mills' propane tank regulators. *See* Resp't Ex. T at 154–55. Mills' father, Elmer Mills, had also called 911 to say that his son was bipolar, had recently been prescribed new medication, and was "flippin['] out" after Griffith Oil had repossessed the propane regulators. *See id.* at 156–58.Mills' father informed the 911 operator that Mills had consumed some alcohol and smoked some marijuana. In addition, Mills had recently threatened to commit suicide, was in possession of a loaded rifle and a loaded shotgun, and intended to shoot any sheriff's deputy who came to the house. *See id.* at 156–59;*see also* T.280.

Three deputies arrived on the scene: Investigator Roger Stone ("Inv.Stone"), Deputy John Weis ("Dep.Weis"), and Deputy John Duyssen ("Dep.Duyssen"). Dep. Duyssen was a friend of petitioner's family, who came over at Mills' request. Mills vowed to shoot anyone other than Dep. Duyssen who approached the house. *See* Resp't Ex. T at 163–64; T.280–82, 340–45. Dep. Duyssen spoke to Mills via cell phone; Mills informed him that he had some loaded guns with him. He gave Dep. Duyssen, who was unarmed and in civilian clothes, permission to enter the house to talk as long as Duyssen was unarmed and the other deputies did not come in. *See* Resp't Ex. T at 163–64, 167–68; T.290–91, 343–47.

**\*31** Once inside, Dep. Duyssen found Mills seated at a table with a loaded shotgun, some ammunition, and a whiskey bottle in front of him, and a rifle leaning against the wall. T.345–47, 358. Dep. Duyssen sat down and Mills told him that he was bipolar, had smoked some "dope," but not crack cocaine, and was "distraught" because his wife had left him and he was in financial trouble, culminating in the repossession of his propane tank regulators. *See* Resp't Ex. T at 169–70; T.345–46.

Meanwhile, Inv. Stone had positioned himself with Dep. Weis about 100 yards away from the house. T: 280–82, 290–92, 306, 314. (Although Inv. Stone had a "beanbag shotgun" and a ballistics shield, the shield could have been penetrated by the high-powered rifle petitioner had with him.) As Dep. Duyssen and Mills talked about Mills' concern that he would be arrested for having threatened to "shoot up" Griffith Oil if they did not return his regulators, Mills spied Inv. Stone approach closer to the house and poke his head outside the ballistics shield. T.347, 349–51, 353. Exclaiming that he was "gonna shoot 'em in the head," Mills grabbed the rifle and pointed it at Inv. Stone through the open window of the house such that the barrel was outside. T. 294, 347–48, 351, 353. According to Dep. Duyssen, Mills assumed a "shooter's stance," putting his eye up to the scope of the rifle, and "his hand was going on the trigger."T.352. Dep. Duyssen then grabbed the barrel of the rifle, pulled it back around, and struggled with Mills for control of the gun. T.294, 351–60. Dep. Duyssen managed to push Mills down into a chair, but petitioner grabbed the shotgun from the table with his free hand, forcing Dep. Duyssen to grab that weapon as well. Dep. Duyssen related that he was then holding the barrels of both guns up against his chest. T.355, *see also* T.347–48, 350–56. Mills started yelling, and Dep. Duyssen shouted to Inv. Stone that "[it] wasn't going well, [and] to get in here."Inv. Stone and Dep. Weis rushed into the house. T.294–95, 356.

Inv. Stone was able to get petitioner's hand off the shotgun, and Dep. Weis, who had his own shotgun in his right hand, put his left hand over Dep. Duyssen's hands on the barrels of both guns, which were pointing above Dep. Weis's head. T.295–96, 410–11. Mills, who had the rifle in his hand, exclaimed that the "safe's off," T.358. Then a shot "rang off," striking the ceiling. T.295–96, 304–05, 353–60, 411. At that point, the barrels of both guns still were directly in front of Dep. Duyssen's face; he indicated that it would have taken only "a fraction of a twist or pull" for the rifle to "have blown [his] head off." T.359–60. The deputies were then able to subdue petitioner. T.297, 304–05, 353–60. [6]

**\*32** After taking Mills' back to his father's house to retrieve his medications, the deputies found "marijuana everywhere" in the house. T.363. The seized drugs totaled 1.27 lbs. T.362–63, 427–29, 443–44. Inv. Stone, Dep. Duyssen and Dep. Weis all testified, however, that they did not believe that petitioner

had been intoxicated or under the influence of drugs during the incident. T.333, 364, 413.

The first witness for the defense was Robert Chapman ("Chapman"), a neighbor and family friend. Chapman testified that Mills had called him on the day of the incident to tell him to get to Mills' father's house right away. T.471–72, 506. When Chapman arrived and realized what was going on, he asked the deputies to let him try to calm petitioner down, but this request was refused. T.472–73. Chapman testified that he had seen Mills in his father's garage the day before, looking "very depressed." They had talked about a mutual friend who had recently committed suicide. T.474–76, 479–82.

Petitioner's mother, Joanne Mills ("Mrs.Mills"), testified that she had seen petitioner the day before the incident looking "very irritable" and "real depressed." Mrs. Mills explained that her son would get "confused at times" when he was "really depressed." T.493–95. Mrs. Mills stated that Mills had first attempted suicide when he was about seven years old; after this incident, he had been taken to a psychiatric center, and had taken psychiatric medication for awhile. T.497–98. After another suicide attempt in 1999, Mills spent about ten days in the psychiatric center, and had been seeing a psychiatrist since then on an outpatient basis. T.499. Mrs. Mills stated that her husband had taken Mills to the psychiatrist about a week before the incident, because he had been threatening to commit suicide again. At that appointment, Mills was prescribed new medication. T.499–500.

Mills did not testify in his behalf at trial.

On November 17, 2004, the jury returned a verdict acquitting petitioner of the charges of attempted first degree murder and attempted first-degree assault counts involving his firing of the rifle near Deputies Duyssen and Weis, as well as the alternative lesser-included attempted second degree murder charge. However, the jury found him guilty of first degree reckless endangerment charge involving those deputies, and of the remaining counts of attempted first degree murder and attempted first degree assault for aiming the rifle at Inv. Stone. In addition, the jury convicted Mills of the counts of third degree criminal possession of a weapon and third degree criminal possession of marijuana. T.668–70.

**\*33** At the sentencing hearing on December 16, 2004, defense counsel for Mills moved to set aside the verdict

pursuant to C.P.L. § 330.30 on the attempted first-degree murder conviction and requested that the trial court impose the minimum sentence possible based on his client's psychiatric problems. 12/16/04 Tr. at 2, 4–6. Judge Noonan declined to entertain the motion. *Id.* at 6. Defense counsel renewed his motion for recusal, now alleging that the judge's familial relationship as cousins within the sixth degree of kinship to assistant district attorneys Robert and William Zickl created a basis for recusal.[7] *Id.* at 6–7.Judge Noonan denied the recusal motion. He then sentenced petitioner to an aggregate term of twenty years to life in prison, specifically sentencing him to (1) an indeterminate term of twenty years to life imprisonment for the attempted first degree murder charge; (2) a determinate fifteen-year prison term for the attempted first degree assault charge; (3) an indeterminate sentence of two and one-third to seven years for the reckless endangerment charge; (4) two concurrent indeterminate terms of two and one-third to seven years for the two third degree criminal possession of a weapon charges; and (5) an indeterminate term of one and one-third to four years for the third degree criminal possession of marijuana charge. The sentences for the reckless endangerment charge were served consecutively to the two concurrent terms for the weapons possession charges, which in turn were served consecutively to the drug charge. These four sentences were set to run concurrently with the first two prison terms (for the attempted murder and attempted assault charges).*See* 12/16/04 Tr. at 8–9.

**C. Post–Conviction Proceedings**
Before filing his direct appeal, Mills filed a *pro se* motion to vacate the judgment pursuant to C.P.L. § 440.10 on February 23, 2005. *See* Resp't Ex. A. Mills argued that his pre-trial and trial attorneys were ineffective on numerous grounds. Mills further alleged that the trial court lacked jurisdiction because the judge improperly refused to recuse himself due to his familial relationship with assistant district attorneys William and Robert Zickl; the trial judge was biased and "altered" pre-trial discovery and the bill of particulars; the indictment was defective; the jury was improperly instructed on intent, attempt, and overt acts; his statements made while in police custody should have been suppressed; the verdicts were inconsistent and repugnant; and his speedy trial right was violated. *See id.* at 4–17;*see also* Resp't Exs. B & C.

**\*34** On June 2, 2005, Judge Noonan denied the C.P.L. § 440.10 motion without a hearing. *See* Resp't Ex. D. Judge Noonan rejected the recusal claim, reiterating that his

business relationship with the prosecuting district attorney had been severed well before the time he was sworn as a judge. *See id.* at 2. Although the judge acknowledged that he was related within the fifth degree of kinship [8] to assistant district attorneys William and Robert Zickl, Section 100.3(E)(1)(e) of the Rules of the Chief Administrator only required disqualification when *an attorney appearing before the court* is related to the judge within the fourth degree. *Id.* at 2–3. [9] Judge Noonan also rejected any request for discretionary recusal based upon any "potential appearance of partiality or impropriety," because petitioner offered "[n]othing but unfounded castigation and speculation" to support his claim that the court was biased in favor of the District Attorney based upon those familial relationships. *See* Resp't Ex. D at 3. Judge Noonan rejected the claim that the trial court lacked jurisdiction and that trial counsel was ineffective in failing to call a psychiatric expert, noting that Mills had offered nothing but speculation that the potential witnesses would have testified to support his defense that he was unable to form intent. *See id.* at 3–4.Finally, Judge Noonan summarily rejected petitioner's claims that counsel was ineffective for failing to cross-examine the sheriff's investigator who had transported the seized evidence, as well as Mills' claims involving the sufficiency of the indictment, the propriety of the jury instructions, the admissibility of his statements to the police, trial counsel's overall effectiveness, the repugnancy of the verdict, and the violation of his speedy trial right because they were all issues that could be addressed on direct appeal. *See id.* at 4; N.Y. CRIM. PROC. LAW § 440.10(2)(c). On May 3, 2006, the Appellate Division denied petitioner's C.P.L. § 440 leave application. *See* Resp't Exs. E, F & G. His application for leave to appeal to the New York Court of Appeals was dismissed on May 26, 2006, because the order appealed from was unappealable as a matter of New York law. *See* Resp't Exs. H & I .; N.Y. CRIM. PROC. LAW § 450.90(1). Mills filed a second *pro se*C.P.L. § 440.10 motion on October 3, 2005, asserting a raft of new errors. *See* Resp't Ex. J. On October 20, 2005, the trial court denied the second C.P.L. § 440 motion without a hearing, *see* Resp't Ex. L, finding that most of petitioner's claims were amenable to direct review on appeal, *see*N.Y. CRIM. PROC. LAW § 440.10(2)(c). Judge Noonan further found that Mills' claims as to his state of psychosis, and the purported misconduct of the court and the prosecutor, were "entirely unsubstantiated on the instant record."*See id.* at 2. The Appellate Division denied leave to appeal. *See* Resp't Exs. M, N & O. The New York Court of Appeals dismissed Mills' application for leave to appeal because the Appellate Division order was not

appealable. *See* Resp't Exs. P, Q & R; N.Y. CRIM. PROC. LAW § 450.90(1).

In the meantime, Mills was assigned new counsel, Del Atwell, Esq., to assist him in connection with his direct appeal. Attorney Atwell filed a brief in the Appellate Division arguing that (1) there was no finding on the record that Mills was mentally competent; (2) the evidence in support of the attempted murder counts was insufficient and against the weight of the evidence, and the trial court erred in denying the C.P.L. § 330.30 motion to set aside the verdict because petitioner's mental state and diminished capacity rendered him incapable of forming intent; and (3) the sentence was excessive. *See* Resp't Ex. S at 16–40 (Petitioner's Appellate Brief). Not satisfied with the brief appellate counsel had submitted, Mills subsequently filed a *pro se* supplemental brief alleging fourteen additional claims. *See* Resp't Mem. at 17–18; Resp't Ex. V at 6–45. The prosecutor filed responses to both briefs *See* Resp't Exs. U & W. Petitioner filed a reply (Resp't Ex. X) to the prosecutor's brief opposing his *pro se* brief.

**\*35** On April 28, 2006, the Appellate Division unanimously affirmed petitioner's conviction in a memorandum, decision, and order. *People v. Mills,* 28 A.D.3d 1156, 813 N.Y.S.2d 592 (App.Div. 4th Dept.2006). Mills submitted a *pro se* letter in which he sought leave to appeal the Appellate Division's decision. *See* Resp't Ex. Z. The prosecution opposed the granting of leave. *See* Resp't Ex. BB. On November 30, 2006, the New York Court of Appeals denied petitioner's leave application. *People v. Mills,* 7 N.Y.3d 903, 826 N.Y.S.2d 612, 860 N.E.2d 74 (N.Y.2006).

Next, on January 14, 2006, petitioner filed a *pro se* application for a writ of error *coram nobis.*He demanded, among other things, that the Appellate Division strike the appellate brief filed by his assigned counsel, appoint new counsel, and revoke appellate counsel's law license. *See* Resp't Ex. DD at 1. Petitioner claimed that attorney Atwell, his assigned appellate counsel, was ineffective on numerous grounds, and alleged that he operated under a conflict of interest since he was appointed by a member of Judge Noonan's "political gang," namely, Randolph Zickl, who was the Genesee County Assigned Counsel Administrator for the Fourth Department, and the brother of assistant district attorneys Robert and William Zickl. The prosecutor filed an opposing affirmation in response and petitioner filed a reply. *See* Resp't Exs. EE & FF, respectively. On February 22, 2006, the Appellate Division denied petitioner's *coram nobis* motion. *See* Resp't

Ex. GG. Petitioner filed a *pro se* application on February 27, 2006, in which he sought leave to appeal to the New York Court of Appeals, and argued the same issues raised in his motion before the Appellate Division. *See* Resp't Ex. HH. On April 7, 2006, leave to appeal was denied. *See* Resp't Ex. II.

Mills filed a third *pro se* C.P.L. § 440.10 motion to vacate the judgment on May 30, 2006, raising yet another exhaustive list of claims which included allegations that his trial counsel erroneously failed to call the court-appointed psychiatrist to testify to petitioner's affirmative defense of extreme emotional disturbance and refused to move to dismiss the marijuana possession count. *See* Resp't Ex. JJ. The prosecution filed an affirmation in response. *See* Resp't Ex. KK. On August 28, 2006, Judge Noonan denied this C.P.L. § 440.10 motion without a hearing because all of petitioner's claims either were, or could have been, raised in his prior C.P.L. § 440.10 motions or in his direct appeal. *See* Resp't Ex. LL at 1–2 (citing N.Y. CRIM. PROC. LAW § 440.10(2) (a), (c)). Leave to appeal was opposed by the prosecution and ultimately denied by the Appellate Division on February 5, 2007. *See* Resp't Exs. MM, NN, & OO.

### D. The Instant Habeas Petition

**\*36** While Mills' third C.P.L. § 440.10 motion was pending, he commenced this habeas corpus proceeding. In his petition dated December 16, 2006, petitioner repeats his claims made in his *pro se* supplemental appellate brief (1) there was legally insufficient evidence to support attempted first degree murder and assault charges; (2) the indictment was defective; (3) the verdicts were inconsistent; (4) there was improper joinder of count nine; (5) there was excessive force used during his arrest; (6) the trial court erred in admitting evidence of the rifle without also admitting the lab report showing that it was nonfunctional when first received; (7) the Genesee County officials, Judge Noonan, the District Attorney, his trial attorneys Morabito and Lapine, and the sheriff's deputies and investigator all conspired to cover up the illegally-seized evidence and his mental health issues, in violation of 18 U.S.C. §§ 1503, 1505, 241, 242; (8) his Fourth Amendment rights were violated by the illegal search and seizure of marijuana from his home, the admission of his statements, the 911 tapes, and his confession without notice or a hearing, and by the trial court's erroneous ruling that he had no standing to challenge the seizure of the guns in his father's house; (9) Judge Noonan should have recused himself; (10) his Sixth Amendment right to a speedy trial was violated; (11) his pre-trial and trial attorneys were ineffective, with respect to attorney Lapine for (a) getting sick and making failed

attempts to file a notice of intent to offer psychiatric evidence; (b) failing to move to suppress the marijuana evidence; (c) failing to challenge the improper joinder of count nine under C.P.L. § 200.20; and with respect to attorney Morabito for failing to (a) call a medical expert to present his intoxication and mental health defense; (b) object to the admission of his statements at trial; (c) object to the People's use of Inv. Stone as a "ballistics expert" or the Monroe County Public Safety Laboratory Report; (d) cross-examine Inv. Stone as to the operability of the weapons, and the other officers as to the chain of custody; (e) call his father as a witness or to question Robert Chapman as to the inoperability of the rifle; and for (f) conspiring with the judge and the District Attorney to conceal witnesses relating to petitioner's mental condition during the first few days he was incarcerated, weapon expert testimony, and evidence of his intoxication and mental health problems; (g) attempting to coerce petitioner to plead guilty; and (h) failing to request a missing witness charge for the weapons expert, the medical examiner, and his father. Finally, Mills claims that (12) the Appellate Division deprived him of his right to appeal by appointing appellate counsel who was ineffective. *See* Pet. at 12–36 (Dkt.# 1).

Respondent filed an answer (Dkt.# 32–1) and memorandum of law (Dkt.# 32–43) in opposition to the petition. Respondent does not challenge the timeliness of the petition but' asserts that a number of Mills' claims are unexhausted and procedurally defaulted. *See* Respondent's Memorandum of Law ("Resp't Mem.") (Dkt.# 32–43). Respondent also argues that all of Mills' claims are entirely without merit. Mills subsequently filed a reply brief (Dkt.# 66).

Mills has sought various forms of interlocutory relief and judgment on the pleadings; all of these motions, save for his motion to seal certain documents, were denied as meritless. The matter is now fully briefed and ready for decision. For the reasons that follow, I recommend that the petition be dismissed and that no certificate of appealability issue with regard to any of Mills' claims

### III. General Legal Principles

**\*37** Federal habeas review is available for a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Errors of state law are not subject to federal habeas review. *E.g., Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Thus, to be entitled to habeas relief, a petitioner must demonstrate that his

conviction resulted from a state court decision that violated federal constitutional law. *Id.* at 68.

With regard to an exhausted federal claim that has been adjudicated on the merits in the state court, habeas relief is unavailable unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 375–76, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

## IV. Analysis of the Claims Raised in the Petition

**A. Petitioner's insufficiency of the evidence claim is procedurally barred and is, in any event, without merit.**

On direct appeal, the Appellate Division stated that "[petitioner] failed to renew his challenge to the legal sufficiency of the evidence after he presented evidence and thus failed to preserve for our review his contention that the conviction [wa]s not supported by legally sufficient evidence ... and his posttrial motion pursuant to C.P.L. 330.30[wa]s insufficient to preserve his present contention for our review." *People v. Mills,* 28 A.D.3d at 1157, 813 N.Y.S.2d 592 (citations omitted). It further explained that, "[i]n any event, [petitioner's] contention lacks merit, as does [petitioner's] further contention that the verdict [wa]s against the weight of the evidence." *Id.* (citations omitted).

Respondent argues that the Appellate Division's reliance upon a state procedural rule to dismiss the claim that the evidence was legally insufficient to prove the attempted first degree murder and assault charges involving Inv. Stone constitutes an "adequate and independent" state ground precluding federal habeas review of the claim. *See* Resp't Mem. at 28–29 (Dkt.# 32–43) (citing *Coleman v. Thompson,* 501 U.S. 722, 729–30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Harris v. Reed,* 489 U.S. 255, 260–61, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)). I agree.

Here, the Appellate Division's decision contained a "plain statement" that the issue was "unpreserved," which is sufficient to indicate that it was relying on a procedural bar; the result is not altered even if, as here, the state court also rejected the claim on the merits in the alternative. *See Harris,* 489 U.S. at 264 n. 10 (stating that "a state court need not

fear reaching the merits of a federal claim in an alternative holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision); *accord, e.g., Green v. Travis,* 414 F.3d 288, 294 (2d Cir.2005) (When a state court finds that a claim is "not preserved for appellate review" and then rules "in any event" on the merits, such a claim is not preserved for federal habeas review.).

**\*38** The New York Court of Appeals clearly has held that the contemporaneous objection rule, *see* C.P.L. § 470.05(2), requires that a motion to dismiss alert the trial court to the specific deficiency alleged in order to preserve an insufficiency of the evidence claim for appeal. *People v. Gray,* 86 N.Y.2d 10, 19, 629 N.Y.S.2d 173, 652 N.E.2d 919 (N.Y.1995). Moreover, when a defendant presents evidence after the trial court has declined to grant a motion to dismiss under C.P.L. § 290.10(1) following the close of the prosecution's case, he waives his Section 290.10(1) claim. He may not present a legal insufficiency argument through a C.P.L. § 330.30 motion to set aside the verdict unless it has been properly preserved for review during the trial by renewing his motion to dismiss at the close of *all* the evidence. *People v. Hines,* 97 N.Y.2d 56, 61–62, 736 N.Y.S.2d 643, 762 N.E.2d 329 (N.Y.2001); [10] *see also People v. Harris,* 98 N.Y.2d 452, 492, 749 N.Y.S.2d 766, 779 N.E.2d 705 (N.Y.2002). Thus, without a doubt, the procedural rule relied on by the Appellate Division constituted an "independent" state law ground for its decision dismissing petitioner's insufficiency claim as unpreserved, because petitioner failed to renew his motion after he presented evidence.

I also agree with respondent that the rule relied upon by the Appellate Division was "firmly established and regularly followed state practice," *see, e.g., People v. Lane,* 7 N.Y.2d 888, 889 (N.Y.2006), sufficient to satisfy the "adequate" prong of the "adequate and independent" test. *See Lee v. Kemna,* 534 U.S. 362, 376, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002); *accord Garvey v. Duncan,* 485 F.3d 709, 713–14 (2d Cir.2007). In determining adequacy of a state procedural bar, the Second Circuit has looked at (1) whether the alleged procedural violation was actually relied on in the state court, and whether perfect compliance with the state rule would have changed the state court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest. *Cotto*

*v. Herbert,* 331 F.3d 217, 240 (2d Cir.2003) (citing *Lee,* 534 U.S. at 386–87).

Here, the rule was "actually relied upon" by the state courts, and it appears that had petitioner complied, the courts would have entertained his insufficiency claim on the merits rather than dismissing it as unpreserved. However, the trial court was not given the opportunity to address petitioner's motion to dismiss based on insufficiency during trial, and found that Mills' C.P.L. § 330.30 motion at sentencing was insufficient for preservation purposes. 12/16/04 Tr. at 4–6.

**\*39** As for the second factor, "state caselaw indicate[s] that compliance with the rule was demanded in the specific circumstances presented,"*Cotto,* 331 F.3d at 240, for it is well established as a matter of New York law that a defendant who does not rest after the court fails to grant a motion to dismiss at the close of the People's case, "proceeds with the risk that he will inadvertently supply a deficiency in the People's case," and waives subsequent review of that determination. *People v. Hines,* 97 N.Y.2d at 61, 736 N.Y.S.2d 643, 762 N.E.2d 329 (citing, *inter alia, People v. Kirkpatrick,* 32 N.Y.2d 17, 21, 343 N.Y.S.2d 70, 295 N.E.2d 753 (N.Y.1973)). The "rationale underlying this rule is that a reviewing court should not disturb a guilty verdict by reversing a judgment based on insufficient evidence without taking into account all of the evidence the jury considered in reaching that verdict, including proof adduced by the defense."*Id.* This specific preservation rule requiring renewal of a motion appears analogous to case law holding that a general motion to dismiss fails to preserve a specific claim of insufficiency as to a specific count. *See, e.g., People v. Lane,* 7 N.Y.3d at 889, 826 N.Y.S.2d 599, 860 N.E.2d 61.

As to the third *Cotto* factor, it is clear that Mills did not make an effort to "substantially" comply with this rule, for he failed to renew his motion to dismiss at the close of all the evidence. *Cotto,* 331 F.3d at 240. Although trial counsel made a motion to dismiss after the close of the prosecution's direct case, and the court reserved decision until after the defense case, trial counsel failed to renew his motion after the close of all the evidence. *See* T.454–62, 464, 503–04.

Consideration of the relevant factors weighs in favor of finding that the procedural bar rule, as applied by the state courts in Mills' case, was "adequate" to preclude federal habeas review. *Cf. Evans v. Sewkowski,* No. 03–CV–416S, 2006 U.S. Dist. LEXIS 69026, at *15–16, 2006 WL 6924262 (W.D.N.Y. Sept.26, 2006) (Skretny, D.J.) (finding

the invocation of the state procedural bar rule to be adequate even where petitioner's trial counsel made a general motion to dismiss at the end of the prosecution's case, and, after the defense rested, "simply sought simply sought to 'renew the motions [he] made earlier'"; trial counsel failed to argue any specific rationale in support of either application).

A finding of procedural default will "bar federal habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.' " *Coleman,* 501 U.S. at 749–50 (internal citation omitted); *accord, e.g., Fama v. Commissioner of Corr. Servs.,* 235 F.3d 804, 809 (2d Cir.2000). To demonstrate a "fundamental miscarriage of justice," a petitioner must demonstrate "actual innocence." *Calderon v. Thompson,* 523 U.S. 538, 559, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998); *accord Dunham v. Travis,* 313 F.3d 724, 730 (2d Cir.2002). On the instant record, Mills is unable to establish cause for the default or prejudice attributable thereto. Furthermore, Mills has not come forward with new evidence tending to demonstrate that he is factually innocent, and so cannot fulfill the requirements of the "fundamental miscarriage of justice" exception. Accordingly, I recommend dismissing this claim on the basis that it is subject to an unexcused procedural default.

**\*40** In the alternative, the legal insufficiency claim may be dismissed on the merits. A habeas petitioner "bears a very heavy burden" when challenging the legal sufficiency of his state criminal conviction. *Einaugler v. Supreme Court of the State of New York,* 109 F.3d 836, 840 (2d Cir.1997). Under the clearly established law set forth in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), a reviewing court must view the trial evidence in the light most favorable to the prosecution and uphold the conviction if *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."*Jackson,* 443 U.S. at 319 (emphasis in original). The reviewing court is required to defer to the fact-finder's assessment of the strength of the evidence and credibility of the witnesses and may not substitute its view of the evidence for that of the fact-finder. *Id.; accord, e.g., Maldonado v. Scully,* 86 F.3d 32, 35 (2d Cir.1996).

In evaluating the sufficiency of the evidence to support Mills' state-court conviction, I " 'must look to state law to determine the elements of the crime.' " *Ponnapula v. Spitzer,*

297 F.3d 172, 179 (2d Cir.2002) (quoting *Quartararo v. Hanslmaier,* 186 F.3d 91, 97 (2d Cir.1999), *cert. denied,*528 U.S. 1170, 120 S.Ct. 1196, 145 L.Ed.2d 1100 (2000)). Here Mills has only challenged the legal sufficiency of the evidence supporting the (1) attempted first degree murder conviction involving Inv. Stone and (2) the assault conviction involving Inv. Stone. To establish Mills' guilt of attempted first degree murder, the prosecution had to prove that, "with intent to commit" [11] a crime, petitioner "engage[d] in conduct which tend[ed] to effect the commission" of first degree murder of a police officer. The elements of this crime are as follows: the defendant, with "intent to cause the death of another person, ... causes the death of such person ..." and the "intended victim was a police officer as defined in" C.P.L. § 1.20(34), and "who was at the time of the killing engaged in the course of performing his official duties, and the defendant knew or reasonably should have known that the intended victim was a police officer." N.Y. PENAL LAW §§ 110.00, 125.27(1)(a)(i). To establish the elements of attempted first degree assault, the prosecution must to prove that the defendant, "with intent to commit" a crime, "engage[d] in conduct which tend[ed] to effect the commission" of first degree assault. First degree assault requires that a person with "intent to cause serious physical injury to another person" caused such injury "by means of a deadly weapon or dangerous instrument." N.Y. PENAL LAW §§ 110 .00, 120.10(1). "Serious physical injury" is defined as physical injury which creates a "substantial risk of death, or which causes death...." N.Y. PENAL LAW § 10.00(10). Finally, a "deadly weapon" includes "any loaded weapon from which a shot, readily capable of producing death or other serious physical injury, may be discharged" N.Y. PENAL LAW § 10.00(12). [12]

With regard to the element of intentionally engaging in conduct which constituted an attempt to intentionally cause death or serious physical injury to a police officer, "[i]ntent may be inferred from [petitioner's] conduct and the surrounding circumstances."To be found guilty of "attempt," a defendant must have "engaged in conduct that came 'dangerously near' commission of the completed crime."*People v. Stoby,* 4 A.D.3d 766, 766–67, 771 N.Y.S.2d 623 (App.Div. 4th Dept.2004). A rational jury easily could have found that the prosecution proved beyond a reasonable doubt that petitioner, "with intent to commit" first degree murder of a police officer and first degree assault, "engage[d] in conduct which tend[ed] to effect the commission of" or "came dangerously near commission of" those completed crimes. When petitioner saw Inv. Stone approach closer to his father's house and stick his head outside his ballistics shield,

he was heard by Dep. Duyssen to suddenly shout that he was "gonna shoot 'em in the head." Upon uttering that threat, Dep. Duyssen saw petitioner grab the loaded rifle and point it at Inv. Stone. *See* T.294, 347–48, 351–53. Mills aimed the rifle at Inv. Stone by pointing it out the open window with the barrel outside. He assumed a "shooter's stance," putting his eye up to the scope of the high-powered rifle, which was capable of penetrating Inv. Stone's ballistics shield, *see* T.290–92, 306, with "his hand ... going on the trigger."T.351, 352.

**\*41** After hearing petitioner's threat and seeing him start to carry it out, Dep. Duyssen grabbed the barrel of the rifle, and a struggle ensued. *See* T.294, 351–60. How close petitioner came to effecting the commission of the charged crime was shown by the fact that the rifle was loaded, petitioner had the rifle in his hand when he shouted that the safety was off, and the rifle was fired into the ceiling, narrowly missing the heads of Deputies Duyssen and Weis. *See* T.295–96, 304–05, 353–61, 412. Based on Mills' shouted threat that he was "gonna shoot 'em in the head," combined with his concomitant actions (i.e., pointing the rifle at Inv. Stone while in a shooter's stance with his eye on the rifle scope and moving his hand toward the trigger, a rational jury would have had little difficulty inferring that petitioner "came dangerously near [the] commission" of intending to cause death or serious physical injury to Inv. Stone. Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence for the jury to infer from petitioner's conduct and the surrounding circumstances that petitioner had engaged in conduct which tended to effect the commission of both first degree murder and first degree assault. Thus, under the *Jackson v. Virginia* standard, the evidence should be found to be legally sufficient to support petitioner's attempted first degree murder and attempted first degree assault convictions. Accordingly, I recommend that in the alternative, the legal insufficiency claim be denied as without merit.

**B. Petitioner's claims alleging defects in the indictment, inconsistent verdicts, improper joinder, the use of excessive force by the sheriffs, the erroneous admission of evidence, and conspiracy should be dismissed as non-cognizable on federal habeas review.**

**\*42** Respondent argues that Mills' claims, raised in his *pro se* supplemental appellate brief (Resp't Ex. V at 6–13, 18–41), alleging (1) a defective indictment; (2) inconsistent verdicts; (3) improper joinder; (4) excessive force; (5) erroneous admission of evidence; and (6) conspiracy, are not cognizable on federal habeas review. *See* Pet. at 12–16, 21–34 (Dkt.# 1).

**1. Defective indictment**

Mills contends that the indictment was factually insufficient under C.P.L. § 200.50(7)(a), because counts one through six merely recited the statutory language. *See* Pet. at 13–15 (Dkt.# 1), Resp't Ex. V at 9–10. This claim should be dismissed because it does not state a federal constitutional violation. The law is well settled that there is no federal constitutional right to indictment by a grand jury in a state criminal prosecution. *See Alexander v. Louisiana,* 405 U.S. 625, 633, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972) ("Although the Due Process Clause guarantees petitioner a fair trial, it does not require the States to observe the Fifth Amendment's provision for presentment or indictment by a grand jury."); *see also LanFranco v. Murray,* 313 F.3d 112, 118 (2d Cir.2002) (noting that the Fifth Amendment's right to a grand jury indictment has not been incorporated against the states through the Fourteenth Amendment) (citations omitted). The New York Court of Appeals has recognized that "[t]he right to indictment by a Grand Jury in New York is dependent solely upon [the] State Constitution...."*People v. Iannone,* 45 N.Y.2d 589, 594 n. 3, 412 N.Y.S.2d 110, 384 N.E.2d 656 (N.Y.1978) (citation omitted).

Federal habeas relief is not available for mere violations of state law, however. *Estelle v. McGuire,* 502 U.S. at 67–68. Furthermore, federal courts have held that "[h]abeas corpus is not available to test the sufficiency of the indictment."*United States ex rel. Mintzer v. Dros,* 403 F.2d 42, 43 (2d Cir.1967) (citing *United States ex rel. Tangredi v. Wallack,* 343 F.2d 752 (2d Cir.1965) (citing *Knewel v. Egan,* 268 U.S. 442, 446, 45 S.Ct. 522, 69 L.Ed. 1036 (1925)); *see also Marcus v. Conway,* No. 04 Civ. 0064(JSR) (KNF), 2007 U.S. Dist. LEXIS 33411, at *11 (S.D.N.Y. Apr. 30, 2007) ("The petitioner's claim, that he had a constitutional right to be tried for robbery based on a grand jury indictment free of defect, does not provide a basis for habeas review because the claim does not present a federal question, as required by 28 U.S.C. 2254(a)."), *report and recommendation adopted by*2007 U.S. Dist. LEXIS 48961, 2007 WL 1974305 (S.D.N.Y. July 3, 2007). Likewise, claims based on alleged defects in grand jury proceedings are not cognizable in a federal habeas petition unless they present an independent federal constitutional claim. *See Lopez v. Riley,* 865 F.2d 30, 32–33 (2d Cir.1989) ("If federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in a federal court.").

Here, the indictment was sufficient to inform Mills of the charges against him since it recited the elements of the statute as well as the date, place, and alleged victim. Furthermore, it also had enough detail to allow him to plead double jeopardy. *See* Resp't Ex. T at 4–7. Thus, Mills has failed to demonstrate that there was an error of state law, let alone an error of federal constitutional law. *See De Vonish v. Keane,* 19 F.3d 107, 108 (2d Cir.1994) (*per curiam* ) ("An indictment is sufficient when it charges a crime (1) with sufficient precision to inform the defendant of the charges he must meet and (2) with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events.") (citations omitted). Accordingly, Mills' claim that the indictment was defective because it allegedly merely recited the sections of the Penal Law and was factually insufficient under C.P.L. § 200.50(7)(a) should be dismissed as not cognizable and, in any event, meritless.

**2. Inconsistent verdicts**

**\*43** Mills argues that the verdicts for his attempted first degree murder, attempted first degree assault, and reckless endangerment with regard to Inv. Stone were inconsistent with the not guilty verdicts involving Deputies Duyssen and Weis. *See* Pet. at 21–22 (Dkt.# 1); Resp't Ex V at 18–19. This claim should be dismissed, however, because it is non-cognizable in this federal habeas proceeding.

It is well-settled that inconsistent jury verdicts are not a ground for federal habeas relief. *See, e.g, Dowling v. United States,* 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990) (stating that "inconsistent verdicts are constitutionally tolerable"). In *United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), the Supreme Court explained that

> where truly inconsistent verdicts have been reached, [the] most that can be said ... is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt ... It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the [other] offense.

*Id.* at 64, 65 (internal quotations omitted).*See also Harris v. Rivera,* 454 U.S. 339, 345, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981) ("Inconsistency in a verdict is not a sufficient reason for setting it aside."). Even if this Court were to assume that the verdicts reached in Mills' case were inconsistent, that nevertheless does not provide a basis for habeas relief. *See United States v. Acosta,* 17 F.3d 538, 544–45 (2d Cir.1994) ("Even assuming that the verdict against Acosta was inconsistent with the verdicts as to his codefendants, we find no basis for relief, for it has long been established that inconsistency in jury verdicts of guilty on some counts and not guilty on others is not a ground for reversal of the verdicts of guilty."). Accordingly, I recommend that the inconsistent verdicts claim be dismissed because it fails to state a federal constitutional question cognizable on habeas review.

**3. Improper joinder**

**\*44** Mills argues that count nine of the indictment accusing him of criminal possession of marijuana was improperly joined with the remaining counts of the indictment. *See* N.Y. CRIM. PROC. LAW §§ 200.20, 210.20(1)(a); Pet. at 25–26 (Dkt.# 1); Resp't Ex. V at 22–23. However, a claim of improper joinder of counts in an indictment ordinarily does not present a federal constitutional issue cognizable in a habeas petition absent a showing of *actual* prejudice. *See Herring v. Meachum,* 11 F.3d 374, 377–78 (2d Cir.1993) (stating that improper joinder amounts to a constitutional violation only if it "actually renders petitioner's state trial fundamentally unfair and hence, violative of due process"); *United States v. Lane,* 474 U.S. 438, 446 n. 8, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986); *see also Spencer v. Texas,* 385 U.S. 554, 562, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967) (holding that the convenience of trying different crimes against the same person in a single trial is a valid governmental interest and therefore justified under the United States Constitution). Where a defendant alleges a due process violation based upon joinder of offenses, "he must, to succeed, go beyond the potential for prejudice and prove that actual prejudice resulted from the events as they unfolded during the joint trial."*Herring,* 11 F.3d at 377–78. "[S]ubstantial prejudice does not simply mean a better chance of acquittal."*United States v. Alvarado,* 882 F.2d 645, 655 (2d Cir.1989).

No prejudice is discernible on the record before this Court based on Mills' allegation of improper joinder. In fact, defense counsel indirectly used the allegations in count nine that Mills criminally possessed over a pound of marijuana to support the defense that Mills, as a result of drug use, lacked intent

to attempt to assault or murder the officers. Furthermore, Mills was not prejudiced by the joinder with regard to the length of his aggregate prison term, since the sentence with regard to count nine was the shortest of all the sentences Mills received, and it was set to run concurrently with the longest sentence which were imposed for the top counts of the indictment. *See* S.8–9. Accordingly, I recommend that Mills' improper joinder claim be dismissed because he has failed to demonstrate "actual prejudice" so as to make the claim rise to a cognizable constitutional violation.

**4. Claims of evidentiary error**

Mills argues that his Fourteenth Amendment due process rights were violated by the trial court's admission of the guns, shell casings, and a silhouette target with two holes on it, without permitting defense counsel to verbally enter on the record the lab report that the rifle was nonfunctional when it was first received. *See* Pet. at 15–16 (Dkt.# 1); Resp't Ex. V at 11–13. " '[H]abeas corpus relief does not lie for errors of state law,'*Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990), and that necessarily includes erroneous evidentiary rulings."*Hawkins v. Costello,* 460 F.3d 238, 244 (2d Cir.2006). As an initial matter, Mills' purported evidentiary challenge is lacking in a factual basis since the lab report that he complains should have been admitted into evidence actually was admitted into evidence by stipulation. *See* T.470, 504. The report in question indicated the rifle, when it was received by the lab, was nonfunctional due to improper assembly. However, it was in working order after it was properly assembled, since Inv. Stone test-fired it. T.298–304; Resp't Ex. T at 185. The proof at trial was that, during the incident, the rifle was loaded and actually was fired; it was only after the incident, while attempting to unload the rifle, that Dep. Duyssen accidently jammed it. *See* T.295–96, 304–05, 353–60, 411–12, 419–20. It therefore was entirely proper for the trial court to have admitted into evidence the rifle, proven at trial be operable, along with the shotgun, shell casings, the silhouette target with two holes in it, and the lab report. Mills has failed to demonstrate that there was an error of state evidentiary law, much less an error of federal constitutional magnitude. Accordingly, I recommend his evidentiary claim be dismissed.

**5. Conspiracy**

**\*45** Mills contends that Judge Noonan, the Genesee County District Attorney, his trial attorneys, Deputies Weis and Duyssen, Inv. Stone, and various other Genesee County officials were engaged in a conspiracy to cover-up the

Mills v. Lempke, Not Reported in F.Supp.2d (2013)
Case 7:12-cv-04878-CS Document 24 Filed 01/28/16 Page 145 of 150
2013 WL 435477

allegedly illegal search and seizure and Mills' mental health issues, in violation 18 U.S.C. §§ 1503, 1505, 241 & 242. *See* Pet. at 22–23 (Dkt.# 1); Resp't Exs. V at 19–20 & JJ at 10–11. These statutes have no applicability to Mills' habeas challenge to the constitutionality of his state court conviction. Sections 1503 and 1505 of Title 18 of the U.S.C. involve the obstruction of justice occurring in federal court or before federal departments, agencies, or committees. *See* 18 U.S.C. § 1503(a) ("Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States magistrate judge or other committing magistrate, in the discharge of his duty ..."); *see also* 18 U.S.C. § 1505. Sections 241 and 242 of Title 18 of the U.S.C. deal with the federal prosecution of civil rights violations involving a conspiracy among two or more persons to deprive another person of the free exercise of any constitutional right, on account alienage, color, or race. *See, e.g.,* 18 U.S.C. § 242 ("Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens ..."); *see also* 18 U.S.C. § 241. Thus, not only is Mills' claim of conspiracy legally baseless, it is factually baseless as well, premised only on speculation. I accordingly recommend that it be dismissed.

**6. Excessive force**

Mills contends that Inv. Stone used "excessive force" in arresting him. *See* Pet. at 31 (Dkt.# 1); Resp't Ex. V at 39–40. As respondent argues, a claim of excessive force arises under 42 U.S.C. § 1983, which is based upon the Fourth Amendment. In *Graham v. Connor,* 490 U.S. 383 (1989), the Supreme Court held that *"all* claims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard.'" *Lennon v. Miller,* 66 F.3d 416, 425 (2d Cir.1995) (quoting *Graham,* 490 U.S. at 395) (emphasis in original). Fourth Amendment claims are barred from review on federal habeas pursuant to the doctrine articulated by the Supreme Court in *Stone v. Powell,* 428 U.S. 465, 482, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976)

("[W]here the State has provided an *opportunity* for full and fair litigation of a Fourth Amendment claim," federal habeas corpus relief will not lie) (emphasis supplied). Moreover, an excessive force claim does not implicate the validity of the defendant's state court conviction. *See Jackson v. Suffolk County Homicide Bureau,* 135 F.3d 254, 257 (2d Cir.1998) (noting that "a claim for use of excessive force lacks the requisite relationship to the conviction") (citing *Heck v. Humphrey,* 512 U.S. 477, 487, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)); 28 U.S.C. § 2254(a). Accordingly, I recommend that Mills' excessive force claim be dismissed as not cognizable on federal habeas review.

**7. Fourth Amendment violations**

**\*46** Mills contends that his Fourth Amendment rights were violated because: (1) he has tried for four years to suppress the marijuana taken from his house which he claims was illegally searched and seized as he did not give the deputies permission to enter his house; and (2) the trial court improperly denied his motion to suppress the evidence taken from his father's house, "due to excessive force and no authorization to enter the house," and the court improperly ruled that he had no standing to challenge evidence taken from his father's house. *See* Pet. at 23–24, 31–32 (Dkt.# 1); Resp't Ex. V at 20–21, 39–41. Mills, however, cannot dispute that he took advantage of the opportunity to litigate these claims in state court. The law is well-settled that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim," federal habeas corpus relief will not lie for a contention that evidence recovered through an illegal search or seizure was introduced at trial. *Stone v. Powell,* 428 U.S. at 482; *accord Graham v. Costello,* 299 F.3d 129, 133–34 (2d Cir.2002) (citing *Capellan v. Riley,* 975 F.2d 67, 70 (2d Cir.1992)).

The Second Circuit has made it clear that all *Stone v. Powell* requires is that the state provide the petitioner the *opportunity* to litigate a Fourth Amendment claim; it matters not whether the petitioner actually availed himself of that opportunity. *See McPhail v. Warden, Attica Corr. Facility,* 707 F.2d 67, 69–70 (2d Cir.1983); *Gates v. Henderson,* 568 F.2d 830 (2d Cir.1977) (*en banc* ), *cert. denied,* 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978). Thus, in order to receive habeas review of a Fourth Amendment claim, a petitioner must demonstrate either (1) that the State failed to provide any "corrective procedures" by which Fourth Amendment claims could be litigated; or (2) that the State had such procedures in place, but that the petitioner was unable to avail himself of those procedures "because of an unconscionable breakdown in the underlying process." *Capellan,* 975 F.2d at 70.

In this case, Mills cannot and does not contend that New York failed to provide appropriate corrective procedures to address his Fourth Amendment claims. "[T]he federal courts have approved New York's procedure for litigating Fourth Amendment claims," embodied in C.P.L. §§ 710.20 to 710.70.*Capellan,* 975 F.2d at 70 n. 1 (internal quotation and citations omitted); *see also Gates,* 568 F.2d at 837 & n. 4.

As for the second exception to the *Stone v. Powell* bar, Mills likewise has not demonstrated that there was an "unconscionable breakdown" in the process, or that the state courts "failed to conduct a reasoned method of inquiry into relevant questions of fact and law."*Capellan,* 975 F.2d at 71 (internal quotations and citation omitted); *Shaw v. Scully,* 654 F.Supp. 859, 864 (S.D.N.Y.1987). Mills believes that there was an "unconscionable breakdown", essentially because the state courts reached, in his opinion, an incorrect conclusion. However, a "mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process"*Capellan v. Riley,* 975 F.2d at 72.

It is undisputed that Mills took full advantage of New York's corrective procedures by moving to suppress, through attorney Lapine's omnibus motion, all property and statements taken from petitioner. *See* Resp't Ex. T at 10, 18–19. The trial court granted a hearing on the omnibus motion, where defense counsel argued, albeit unsuccessfully, that petitioner had a privacy interest in his father's house sufficient to give him standing to challenge the guns seized. *See* 3/19/04 Tr, at 3–5; Resp't Ex. T at 102. On September 20, 2004, petitioner, through new counsel, attorney Morabito, also sought suppression of all statements and evidence illegally seized from him, including the marijuana. *See* Resp't Ex. T at 73–74, 86–88. Mills was granted a hearing on his supplemental omnibus motion, and attorney Morabito noted that the court had granted him leave to address the suppression of the marijuana evidence, though the court ultimately denied the suppression motion as untimely. 9/30/04 Tr. at 3–4; Resp't Ex. T at 114–15. Moreover, petitioner not only litigated these suppression issues before the trial court, but relitigated them on direct appeal. *See* Resp't Ex. V at 20–21, 24–26. Therefore, petitioner clearly received a full and fair opportunity to litigate his Fourth Amendment claims in the state courts. He should now be barred from further review of these claims in this habeas proceeding. *See, e.g., Plunkett v. Johnson,* 828 F.2d 954, 956 (2d Cir.1987) (holding that petitioner, convicted of grand larceny under state law, was not entitled

to habeas corpus relief on ground that evidence obtained in unconstitutional search or seizure was introduced at his trial, where issue was fully litigated in suppression hearing, and was subject to state appellate review). Accordingly, I recommend that Mills' Fourth Amendment claims be dismissed.

**C. Petitioner's cognizable claims regarding the denial of recusal, the denial of the right to a speedy trial, the ineffectiveness of trial counsel, and the ineffectiveness of appellate counsel should be dismissed as without merit.**

**1. Denial of recusal**

**\*47** Mills contends that Judge Noonan was disqualified and should have recused himself, under state law and the Fourteenth Amendment, due to his business relationship to the District Attorney and familial relationship to assistant district attorneys Robert and William Zickl. *See* Pet. at 12–13 & Resp't Ex. V at 6–8. This claim should be denied, however, because the rejection of Mills' argument by both the first C.P.L. § 440 court and the Appellate Division was neither contrary to, nor based on an unreasonable application of, Supreme Court law.

Recusal motions are committed to the sound discretion of the district court. *E.g., LoCascio v. United States,* 473 F.3d 493, 495 (2d Cir.2007). The Supreme Court has explained that adverse judicial rulings, standing alone, are not probative of judicial bias. *Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994); *see also Henriquez v. McGinnis,* 2007 U.S. Dist. LEXIS 2121, at \*29 (S.D.N.Y. Jan. 10, 2007)."[J]udicial rulings and judicial remarks during the course of a trial that are disapproving of, or even hostile to, counsel, the parties, or their cases do not support a claim of bias or partiality unless they reveal 'such a high degree of favoritism or antagonism as to make fair judgment impossible.' "*Francolino v. Kuhlman,* 365 F.3d 137, 143 (2d Cir.2004) (quoting *Liteky,* 510 U.S. at 555).

In order to prevail on a claim of judicial bias, the petitioner must show that he was denied a trial "by an unbiased and impartial judge without a direct personal interest in the outcome of the hearing."*Ungar v. Sarafite,* 376 U.S. 575, 584, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964). A state court judge is only required to recuse himself if he has demonstrated "deep seated favoritism or antagonism that would make fair judgment impossible."*Liteky,* 510 U.S. at 555; *McMahon v. Hodges,* 382 F.3d 284, 290 (2d Cir.2004) (holding that judge's statement that defendant would likely be convicted given

evidence at co-defendant's trial did not require recusal); *see also LoCascio,* 473 F.3d at 496–97 (recusal properly denied where rulings did not evidence deep-seated antagonism).

**\*48** Here, none of the conduct about which petitioner complains involving Judge Noonan's business or familial relationships comes even close to approaching these standards. Judge Noonan rejected this claim on the merits when raised in the support of Mills' first C.P.L. § 440.10 motion, stating that his business relationship with the District Attorney had been long severed before he became a judge. *See* Resp't Ex. D at 2. Also, although Judge Noonan noted that he is first cousins with the Zickl brothers, their relationship did not legally preclude him from presiding over this case. *Id.* at 2–3.In fact, the New York state judicial disqualification rule apparently was not even applicable here because the District Attorney himself (and not the Zickl brothers, who were assistant district attorneys), tried the case. *See* T.1. Thus, Judge Noonan was not required to recuse himself under the due process clause merely for an appearance of impropriety based on relationships that did not even qualify for recusal under state law. *See Hardy,* 878 F.2d at 97. Additionally, petitioner did not proffer any evidence that, due to these relationships, Judge Noonan exhibited "deep seated favoritism or antagonism that would make fair judgment impossible."*Liteky,* 510 U.S. at 555. Finally, petitioner's allegations that Judge Noonan, among other things, "altered" pretrial and "discovery motions" because of his familial relationships is based on nothing more than petitioner's own speculative and unsupported assertions. *See* Pet. at 12–13 (Dkt.# 1).

The familial relationship between the judge and members of the district attorney's office about which Mills complains are clearly too far removed to be of constitutional significance. The relationship would not support recusal under either state or federal law, as under New York law, a fifth-degree relation to a party is necessary for recusal, while under 28 U.S.C. § 455(b)(5)(i), applicable to federal district judges, a third-degree relation to a party is required for recusal. The distant relationship raise no question concerning Judge Noonan's impartiality, and does not support any claim that there was an appearance of impropriety, much less one that rises to the level of a fundamental constitutional defect resulting in the denial of Mills' right to a fair trial. Nor does the fact that long before he even became a judge, Judge Noonan practiced law with, and had business dealings with, employees of the district attorney's office, give rise to a basis for recusal. *United States v. Lovaglia,* 954 F.2d 811, 817 (2d Cir.1992) (finding

that recusal was not required where presiding judge had social and business dealings with a family whose business entities were the victims of the defendants' racketeering activity, where the judge's relationship with the family "ended seven or eight years prior to sentencing"); *United States v. Thompson,* 76 F.3d 442, 451 (2d Cir.1996) (finding no error where judge declined to recuse himself on the basis of judge's prior employment as a federal prosecutor, where plaintiff had no knowledge of the investigation related to the instant case); *United States v. Martin–Trigona,* 759 F.2d 1017, 1021 (2d Cir.1985) (finding that judge properly denied recusal motion where plaintiff had sued judge and judge's wife).

To the extent that Mills is claiming that the trial judge was biased as evidenced by his judicial rulings contrary to the defense, he has failed to set forth a violation of the due process clause. *See Liteky,* 510 U.S. at 556 ("All of these grounds are inadequate under the principles we have described above: They consist of judicial rulings, routine trial administration efforts, and ordinary admonishments (whether or not legally supportable) to counsel and to witnesses. All occurred in the course of judicial proceedings, and neither (1) relied upon knowledge acquired outside such proceedings nor (2) displayed deep-seated and unequivocal antagonism that would render fair judgment impossible."). Accordingly, I recommend that Mills' claim that the trial judge erroneously failed to recuse himself be dismissed.

## 2. Denial of right to a speedy trial

**\*49** Mills contends that his constitutional right to a speedy trial was violated because the incident occurred on December 20, 2001, and his trial did not commence until November 17, 2004. *See* Pet. at 30–31 (Dkt.# 1); Resp't Ex. V at 30–39. However, Mills neglects to mention that his first conviction on the charges stemming from the December 20, 2001 incident was vacated on October 7, 2003, after his successful C.P.L. § 440.10 motion arguing that the trial court improperly allowed Mills to waive indictment on class A felony charges. After that, the matter was returned to a pre-waiver of indictment status on October 15, 2003. Judge Noonan found that the vacatur of the superior court information following his grant of petitioner's C.P.L. § 440.10 motion "was tantamount to a withdrawal of his guilty plea" such that any delay before October 15, 2003, "should not be included in the statutory ready-for-trial [13] computation."Resp't Ex. T at 120–21 (citations omitted). Judge Noonan further found that the time between Mills' request for a mental health evaluation as ordered on January 7,

2002, through the October 15, 2003 order vacating the waiver and dismissing the superior court information was properly excluded because it was occasioned by the defense. In any event, the new indictment was handed down on October 23, 2003. The trial court ordered an adjournment of the proceedings until December 17, 2003, because Mills had decided to discharge his attorney. When the parties appeared in court on December 17, 2003, for Mills' arraignment, the prosecution announced its readiness for trial. *See* Resp't Ex. T at 120–21.

Mills' trial did not commence until November 15, 2004, which was 334 days (or 10 months and 29 days) after his arraignment on the second indictment. Contrary to his contention, I cannot find that this delay of 334 days violated his right to a speedy trial as guaranteed by the Sixth and Fourteenth Amendments to the Constitution. Even if I were to accept Mills' argument that the relevant period for calculating the delay is the interval between his arrest on December 20, 2001, and the commencement of trial on November 15, 2004 (2 years, 10 months, and 26 days, or 1061 days), I still do not recommend finding that the delay was extraordinary or presumptively prejudicial. *See Barker v. Wingo,* 407 U.S. 514, 515, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)).

In *Barker,* the Supreme Court adopted a "balancing test," and identified the following four factors to be used in determining whether a defendant has been denied his Sixth Amendment right to a speedy trial: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the existence prejudice to the defendant. *Barker,* 407 U.S. at 529–33; *accord, e.g., United States v. Jones,* 129 F.3d 718, 724 (2d Cir.1997), *cert. denied,* 524 U.S. 911, 118 S.Ct. 2075, 141 L.Ed.2d 150 (1998). As the Supreme Court explained in *Barker,* unless there is some delay that is "presumptively prejudicial," there is no need for inquiry into the other factors. *Id.* at 530; *accord, e.g., Rayborn v. Scully,* 858 F.2d 84, 89 (2d Cir.1988).

 **\*50** The Supreme Court and the Second Circuit have found that no constitutional speedy trial violation existed in cases in which the period between arrest and trial was even longer than that present in Mills' case. *See, e.g., Barker v. Wingo,* 407 U.S. at 533–34 (noting that it was "clear that the length of delay between arrest and trial-well over five years-was extraordinary"; however, the fact that the delay caused "minimal" prejudice and the record showed no action "that could be construed as the assertion of the [defendant's] speedy trial right" "outweigh[ed] th[o]se deficiencies"); *United States*

*v. Vasquez,* 918 F.2d 329, 338 (2d Cir.1990) ("The length of the delay here [26 months] was less extensive than that tolerated in other cases."); *Rayborn v. Scully,* 858 F.2d 84, 89 (2d Cir.1988) (period of over seven years elapsed between the date that an arrest warrant was issued for appellant and the date on which petitioner was ultimately convicted on the New York murder charge); *United States v. McGrath,* 622 F.2d 36, 41 (2d Cir.1980) (24 months); *United States v. Lane,* 561 F.2d 1075, 1078 (2d Cir.1977) ("The delay here was quite lengthy[-]approximately 58 months or just under five years[-]but nevertheless was shorter than that in other cases in which no Sixth Amendment violation has been found."); *United States v. Infanti,* 474 F.2d 522, 527 (2d Cir.1973) ("The length of time from arrest to indictment was 21 months and from arrest to trial 28 months, neither extraordinary."); *United States v. Teyibo,* 877 F.Supp. at 858–59 ("[A]n eighteen-month delay is considerably shorter than the delays in other cases in which courts have found no Sixth Amendment violation."); *Holmes v. Bartlett,* 810 F.Supp. 550, 562 (S.D.N.Y.1993) ("In this case, the length of delay, eighteen months, was considerably shorter than the delays in other cases where courts found no Sixth Amendment violation.").

Even if I were to agree that the delay from his initial arrest on and the start of trial was "presumptively prejudicial," which I explicitly do not find to be the case, the other three *Barker* factors weigh against a finding of a speedy trial violation. The first *Barker* consideration, the reason for the delay, weighs heavily against petitioner. Nearly two years (specifically, 1 year, 11 months, and 27 days, or from December 20, 2001, until December 17, 2003), was taken up with the criminal proceedings on the first indictment, Mills' successful motion for vacatur of his conviction by guilty plea with regard to that indictment, the necessity of re-indicting and re-arraigning him, and his dismissal of his trial counsel. With regard to the delays that occurred before Mills went to trial on the second indictment, those were caused for the most part by his numerous *pro se* motions, such as his requests for a competency examination, that postponed the trial proceedings from May 25, 2004, until August 25, 2004. In addition, the court was kept busy with Mills' frequent firings of his attorneys. Thus, Mills was the reason for most, if not all, of the delays, making the "reasons for the delay" *Barke* r factor weigh against him. There simply is no evidence of bad faith or deliberate delays occasioned by the prosecution here; nothing in the record indicates a deliberate attempt by the prosecution to delay the trial in order to hamper Mills' defense. *See Amable v. Scully,* 91 Civ. 4694(MGC), 1993

WL 300036 at *3 (S.D.N.Y. Aug. 4, 1993) (stating that petitioner's "conclusory allegation" that "delay was due to the State's attempt to secure an 'unfair advantage' ... is not supported by any evidence of bad faith on the part of the State"); *United States v. Lane,* 561 F.2d at 1079 (finding no speedy trial violation because, *inter alia,*"[w]hile the record here contain[ed] some rather long unexplained delays, there [wa]s no indication that these [we]re attributable either to deliberate procrastination or even negligent inaction on the part of the Government").

**\*51**  By the same token, there was no apparent prejudice to Mills given that the delays were to allow resolution of his requests for relief and for substitutions of counsel. *See United States v. McGrath,* 622 F.2d 36, 41 (2d Cir.1980) ("Finally, appellants can point to no specific and substantiated prejudice arising from the delay. The professions of anxiety and concern, and of loss of witnesses' memory, are ephemeral. Absent specific assertions of such prejudice, it cannot tip the balance here."). The Second Circuit has explained that "[a]lthough 'a showing of prejudice is not a prerequisite to finding a sixth amendment violation, courts generally have been reluctant to find a [constitutional] speedy trial violation in the absence of genuine prejudice.' " *United States v. Jones,* 129 F.3d 718, 724 (2d Cir.1997) (quoting *Rayborn v. Scully,* 858 F.2d at 94).

Finally, the *Barker* factor that looks at the timeliness of defendant's assertion of his speedy trial right does not weigh in Mills' favor. Mills did not raise this issue until May 26, 2004, [14] in a motion to dismiss the indictment—2 years, 5 months, and 6 days after the date of his arrest. Moreover, even though Mills claimed a violation of his right to a speedy trial, he only cited C.P.L. § 30.30, which is the state's trial-readiness statute. He did not cite C.P.L. § 30.20, the section of the statute that embodies the Sixth Amendment's constitutional guarantee to a speedy trial. *See* Resp't Ex. T at 63–68. Thus, Mills did not properly assert his constitutional right to a speedy trial at that point. Notably, he did not raise it, under C.P.L. § 30.20 and in Sixth Amendment terms, until *after* trial in his first C.P.L. § 440.10 motion, and again in his *pro se* supplemental appellate brief. *See* Resp't Exs. A at 14–15 & V at 30. The belated assertion of his rights under the state trial-readiness statute and the even longer delay in asserting a constitutional speedy trial violation weigh heavily against a finding that petitioner's right to a speedy trial was violated. *See, e.g., United States v. Vasquez,* 918 F.2d 329, 338 (2d Cir.1990) (finding that the third *Barker* factor "weigh[ed] heavily" against petitioners where they "waited

roughly 22 months before advancing their speedy trial claim," which "hardly render[ed] plausible their contention that an expeditious resolution of their cases was a matter of pressing constitutional importance for them"); *United States v. McGrath,* 622 F.2d 36, 41 (2d Cir.1980) (finding that "third [*Barker* ] factor weigh[ed] against [petitioners who] waited until immediately before trial to file their motion to dismiss on speedy trial grounds"); *United States v. Lane,* 561 F.2d 1075 (2d Cir.1977) (finding that petitioner's "eve of trial" speedy trial motion was "indicative of an interest in having the indictment dismissed, rather than of an interest in expediting the proceedings"); *Buress v. Henderson,* 814 F.Supp. 313, 322 (W.D.N.Y.1993) (Curtin, D.J.) (adopting report and recommendation and holding that petitioner's delay in assertion of right until commencement of trial was not "the type of 'aggressive' assertion of speedy trial rights necessary to warrant the relief sought"). Accordingly, I recommend that Mills' claim alleging a violation of his Sixth Amendment right to a speedy trial be dismissed.

### 3. Ineffective assistance of trial counsel

**\*52**  Mills re-asserts his claims, made on direct appeal, that he was denied the effective assistance of trial counsel. *See* Pet. at 17–21, 33–36 (Dkt.# 1); Resp't Ex. V at 13–18, 41–42, 44–45. The Appellate Division, however, summarily rejected these claims, *Mills,* 28 A.D.3d at 1157, 813 N.Y.S.2d 592, in a ruling which constituted an adjudication on the merits for purposes of AEDPA. *See Sellan v. Kuhlman,* 261 F.3d 303, 311–13 (2d Cir.2001). Whether evaluated under pre-AEDPA or AEDPA standards, Mills has not come close to fulfilling the heavy burden imposed by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

In *Strickland,* the Supreme Court held that, to establish ineffective assistance of counsel, a petitioner must satisfy a two-pronged test by showing that (1) his counsel supplied deficient representation that "fell below an objective standard of reasonableness ... under prevailing professional norms"; and (2) he suffered prejudice as a result. 466 U.S. at 687–88;*accord, e.g., Greiner v. Wells,* 417 F.3d 305, 319 (2d Cir.2005) (stating that, in assessing the first prong, federal courts "must apply a 'heavy measure of deference to counsel's judgments' " and "will not normally fault counsel for foregoing a potentially fruitful course of conduct if that choice also entails a significant potential downside") (internal quotations and citations omitted). As for the prejudice prong, petitioner must show there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different."*Strickland, 466 U.S. at 694;accord Greiner, 417 F.3d at 319*. Where the court can "dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice," it need not address the performance prong of *Strickland. See* 466 U.S. at 697.

*\*53* Mills complains about the performance of his pre-trial counsel, attorney Lapine, and his trial counsel, attorney Morabito, who also represented him during some pre-trial proceedings. Mills faults attorney Lapine for (a) getting sick and making failed attempts to file a notice of intent to offer psychiatric evidence; (b) failing to move to suppress the marijuana evidence; and (c) failing to challenge the improper joinder of count nine under C.P.L. § 200.20. After petitioner discharged attorney Lapine on August 25, 2004, his was assigned new counsel, attorney Morabito. Mills faults attorney Morabito for (a) failing to call a medical expert to present his intoxication and mental health defense; (b) failing to object to the admission of his statements to police at trial; (c) failing to object to the People's use of Inv. Stone as a "ballistics expert" or the Monroe County Public Safety Laboratory Report; (d) failing to cross-examine Inv. Stone as to the operability of the weapons, and the other officers as to the chain of custody; (e) failing to call his father, Elmer Mills, as a witness, or question the neighbor, Robert Chapman, as to the inoperability of the rifle; (f) conspiring with the judge and the District Attorney to conceal witnesses relating to petitioner's mental condition during the first few days he was incarcerated, weapon expert testimony, and evidence of his intoxication and mental health problems; (g) attempting to coerce petitioner into pleading guilty; and (h) failing to request a missing witness charge for the weapons expert, the medical examiner, and Mills' father. *See* Pet. at 17–21, 33–34, 35–36 (Dkt.# 1); Resp't Ex. V at 13–18, 41–42, 44–45.

### a. Pre-trial instances of counsels' ineffectiveness

*\*54* The claims alleged against attorneys Lapine and Morabito are either factually baseless or without merit. First, it was through no fault of his own that attorney Lapine suffered a heart-attack on January 2, 2004. As a result, he was forced to file a late notice of intent to offer psychiatric evidence. When he did so on April 24, 2004, and the trial court reserved decision on the motion until after the completion of the competency examinations. *See* Resp't Ex. T at 51, 61–62; 5/18/04 Tr. at 3–5, 16–17. Thus, Mills has not demonstrated how he was prejudiced as a result in the fact that attorney Lapine filed a late notice of intent to offer psychiatric evidence. Second, attorney Lapine *did* file a pre-trial omnibus motion requesting suppression of all property seized at Mills'

father's house and the statements made by Mills to the police. *See* Resp't Ex. T at 10–29. This was denied by the trial court without prejudice with leave to refile. Shortly after being assigned, attorney Morabito filed a supplemental omnibus motion on September 20, 2004, requesting, *inter alia,* suppression of all statements by petitioner and all evidence illegally seized, including the marijuana, a late notice of intent to offer psychiatric evidence, and severance of count nine involving the marijuana possession. *See* 8/25/04 Tr. at 6–10; Resp't Ex. T at 71–74. After a hearing, the trial court granted Mills leave to file a late notice of intent to offer psychiatric evidence, provided that he first be examined by a psychiatrist designated by the prosecutor. The trial court summarily denied the remainder of the supplemental omnibus motion. *See* Resp't Ex. T at 114–15. Thus, with respect to his pre-trial attorneys, petitioner's claims should be denied as baseless because they undertook all three of the actions that he claims they failed to perform.

### b. Failure to call expert witnesses and other witnesses and failure to request a missing witness charge

I turn next to petitioner's claim that attorney Morabito should have called a medical expert to present his intoxication and mental health defense. The Second Circuit has noted that "there is no *per se* rule that requires trial attorneys to seek out an expert."*Gersten v. Senkowski,* 426 F.3d 588, 609 (2d Cir.2005). In general, whether or not to hire an expert is the type of strategic choice by counsel that may not be second-guessed on habeas corpus review. *See United States v. Best,* 219 F.3d 192, 201 (2d Cir.2000) ( "[C]ounsel's decision as to 'whether to call specific witnesses-even ones that might offer exculpatory evidence-is ordinarily not viewed as a lapse in professional representation' ") (citations omitted), *cert. denied,*532 U.S. 1007, 121 S.Ct. 1733, 149 L.Ed.2d 658 (2001); *see generally Strickland,* 466 U.S. at 689 (actions or omissions by counsel that "might be considered sound trial strategy" do not constitute ineffective assistance) (citations omitted); but *see Pavel v. Hollins,* 261 F.3d 210 (2d Cir.2001) (finding that trial counsel's failure to call medical expert in sexual abuse case involving a child victim where medical evidence was crucial, considered cumulatively with other errors, constituted ineffective assistance). Mills' contention that the outcome would have been different had trial counsel only retained an expert witness is based on nothing more than Mills' own speculative assertions. Significantly, he has not come forward with affidavits or other admissible evidence showing that there was, indeed, an expert witness who would have testified as he hoped. In any event, trial counsel was able to put forward a defense based on his client's intoxication and